UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.

STELOR PRODUCTIONS, L.L.C., a
Delaware corporation, f/k/a STELOR
PRODUCTIONS, INC.,

**05-80393**

Plaintiff,

vs.

**CIV-HURLEY**

STEVEN A. SILVERS, a Florida resident,

Defendant.

_HOPKINS

_____/

## PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff STELOR PRODUCTIONS, L.L.C., f/k/a STELOR PRODUCTIONS, INC.

("Stelor"), by and through its undersigned attorneys and pursuant to Rule 65 of the Federal Rules

of Civil Procedure, hereby moves on an emergency basis for the entry of a temporary restraining

order and/or a preliminary injunction against Defendant STEVEN A. SILVERS ("Silvers").

### I. INTRODUCTION

Stelor brings this Emergency Motion for Temporary Restraining Order and/or

Preliminary Injunction to enjoin Silvers from taking and continuing unilateral actions that

materially breach his contractual obligations and interfere with Stelor's business operations and,

if left unstopped, will have a disastrous impact upon and irreparably injure Stelor, its business,

and the intellectual property rights which Silvers has licensed and entrusted exclusively to Stelor.

## II. STATEMENT OF FACTS

In or about 1991, Silvers published a children's book entitled "Googles and the Planet of Goo." Verified Complaint ("Compl.") at ¶ 6. The book made little critical or commercial impact when it entered the marketplace. Id. at ¶ 8. Undaunted, Silvers envisioned a program to transform this creation into an expansive, multimedia entertainment and educational empire. To that end, Silvers licensed the Florida-based Aurora Collection, Inc. ("Aurora") to develop and commercialize the "Googles" concept. Id. That relationship, however, did not bear fruit. Id. Silvers had many personal and business hurdles to overcome. Significant among them was the increasingly adverse relationship between him and Aurora and his sordid personal background,[1] which made him unsuited to serve as figurehead or spokesperson for an enterprise aimed at providing wholesome and enriching entertainment to an audience of impressionable children. Id.

Accordingly, when Stelor was formed to develop Silvers' concept into a reality, Stelor's enthusiasm and interest were tempered by legitimate concerns and reservations. Id. at ¶ 9. Stelor saw potential in the "The Googles" story, trademarks, copyrights, and other intellectual property and Stelor's founders also had confidence in their ability to raise the needed funds and to create a compelling and attractive "Googles" universe that would enlighten, entertain, educate, and develop children by providing them with fascinating and uplifting products, programs, and services. Id. But aware of Aurora's aborted effort, and wary that Silvers' background could jeopardize the "Googles" program, Stelor insisted that any arrangement with Silvers contain safeguards and protections. Id.

---

[1] Silvers was incarcerated for conspiring to possess with intent to distribute cocaine, possession with intent to distribute cocaine, interstate travel in aid of racketeering, and conspiring to defraud the United States. See United States v. Silvers, 90 F.3d 95 (4th Cir. 1996).

2

Thus, when on or around June 1, 2002 Stelor and Silvers entered into a "License, Distribution and Manufacturing Agreement" ("License Agreement") and a Consulting Agreement, Stelor bargained for, and obtained, the following promises, commitments, and obligations from Silvers designed to ensure Stelor's ability to develop the "Googles" program free from undue interference by Silvers:

(a)    The License Agreement gives Stelor exclusive rights in the "Googles" products, trademarks, and intellectual property and specifies that those rights are exclusive even as to Silvers (Ex. "A" to Verified Complaint at ¶¶ IA, IB).

(b)    The License Agreement gives Stelor an irrevocable power of attorney to apply for, maintain, enforce and defend intellectual property rights, including trademarks, websites, and domain names.    The power of attorney specifically gives Stelor the right "to act for and on [Silvers'] behalf and instead of [Silvers]."    Stelor, not Silvers, assumed responsibility for handling all Googles Trademark and other Intellectual Property matters (id. at ¶ VIIIA).

(c)    The License Agreement and Consulting Agreement require Silvers to fully cooperate with Stelor, while the Consulting Agreement makes plain that Silvers shall have no power to direct or control the daily activities of Stelor (id. at ¶ VIIIE; Ex. "B" to Verified Complaint at ¶ 3).

(d)    Finally, to protect Stelor from possible public embarrassment, both the License Agreement and Consulting Agreement expressly prohibit Silvers

3

from initiating or maintaining "any relationship or conversation with [Stelor's] current or prospective clients, vendors, any company relationships with the media (press, etc.), without the prior express written request by [Stelor]."

Compl. at ¶ 10; License Agreement (Ex. "A" to Verified Complaint), at ¶¶ I, VIII; Consulting Agreement (Ex. "B" to Verified Complaint), at ¶ 2.

Stelor, believing it had the necessary rights and protections, then threw itself enthusiastically into the task of using its best efforts to develop The Googles concept and intellectual property. Compl. at ¶ 11. To this end, Stelor has spent millions of dollars, and its principals and employees have devoted themselves tirelessly to making Stelor and the "Googles" successful and profitable, both for themselves and for the benefit of Silvers. Id.

Notwithstanding his contractual agreements, Silvers displayed an unwillingness to abide by his obligations and commenced a campaign to inject and entwine himself into the very fabric of Stelor's business. He subverted Stelor's intellectual property rights by diverting communications from the United States Patent and Trademark Office ("USPTO") from Stelor to himself, despite the fact that, under the irrevocable power of attorney Silvers granted Stelor under the License Agreement, all such communications from the USPTO must go directly to Stelor, as Stelor has the right "to act for and on [Silvers'] behalf and instead of" Silvers in protecting and enforcing the Googles Intellectual Property. License Agreement at ¶ VIIIA. He interfered with litigation undertaken by Stelor against third parties. He held himself out as a Stelor representative at crucial industry trade shows. He threatened to communicate directly with the trade and press concerning the GOOGLES IP. He withheld information vital to Stelor's

4

ability to carry out the business of transforming the basic Googles idea into a thriving and profitable business and denied it access to Googles domain names. All of these actions were in violation of the License Agreement, which requires Silvers to cooperate fully with Stelor in protecting, preserving, and enforcing the Googles intellectual property rights. Compl. at ¶ 12.

In sum, Silvers demonstrated that he was fixated on controlling every aspect of the "Googles" development. He continually and persistently eschewed his contractual commitments and obligations, held key information and documents hostage, interfered with Stelor's daily activities, refused to cooperate and contribute when requested, and endangered Stelor's business prospects with threats to make unauthorized contacts with the media and prospective customers.

As a result of Silvers' actions, Stelor was left with no choice other than to file a complaint against him for injunctive, declaratory and other relief related to his breaches. The Complaint was filed on or about October 18, 2004 and the cause was styled <u>Stelor Productions, Inc. v. Steven A. Silvers</u>, Case No. 04-80954-Civ-Hurley, United States District Court for the Southern District of Florida ("the prior litigation"). The Complaint sought injunctive relief requiring Silvers to notify the USPTO that it was to communicate with Stelor, to provide Stelor with access to the Googles domain names, to refrain from communicating with the media and vendors concerning the GOOGLES IP, and to refrain from interfering in litigation undertaken by Stelor, as well as a declaration that Stelor was in compliance with the Licensing Agreement. Silvers subsequently filed a counterclaim asserting that Stelor was in breach and he purported to terminate the License Agreement. <u>Id.</u> at ¶ 13.

On or about January 28, 2005, Stelor and Silvers entered into a Confidential Settlement Agreement ("Settlement Agreement") resolving the prior litigation. <u>Id.</u> at ¶ 14. Among other

5

things, the Settlement Agreement vindicated the positions taken by Stelor in the prior litigation. The Settlement Agreement gives Stelor the right to control the domain names (see Settlement Agreement at ¶ 1(a)), requires Silvers to cooperate in all respects in pending and future trademark and domain name dispute proceedings filed by Stelor (id. at ¶ 2), withdraws Silvers' purported termination of the License Agreement and reaffirms his obligations under it (id. at ¶ 3), and makes Stelor's counsel the sole correspondent with the USPTO (id. at ¶ 5). The Settlement Agreement also required the dismissal of the prior litigation(id. at ¶ 20), with a reservation of exclusive continuing jurisdiction with the United States District Court for the Southern District of Florida to enforce its terms (id. at ¶ 17), with the prevailing party in any enforcement action recovering reasonable attorneys' fees and costs. Id. Silvers was paid valuable consideration for entering into the Settlement Agreement. Compl. at ¶ 15.

On February 8, 2005, Stelor and Silvers filed a Joint Stipulation of Dismissal without Prejudice of the prior litigation. The stipulation was granted by Order dated February 17, 2005 and the prior litigation was administratively closed. Id. at ¶ 16.

Unfortunately, soon thereafter, Silvers once again proved himself unwilling to abide by the terms of his contractual undertakings. He repeatedly failed to cooperate in pending and future trademark and domain name dispute proceedings. He repeatedly failed to provide evidence of paid insurance premiums. And, most importantly, he schemed to undo Stelor's business activities and steal its work. Id. at ¶ 17.

As he did in the prior litigation when he purported to terminate the License Agreement, only to withdraw the notice of termination and reaffirm his obligations under the License Agreement, Silvers has once again purported to terminate the License Agreement. By letter

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM WWW.BWSKB.COM

dated April 27, 2005, counsel for Silvers wrote to Steven Esrig of Stelor reinstating the notice of termination of the License Agreement based on five, invalid grounds. Id. at ¶ 18; Ex. "C" to Verified Complaint.

Counsel for Stelor responded by letter dated April 29, 2005, in which Stelor refuted each of the specious grounds cited by Silvers, offered to cure any conceivable breaches, and demanded withdrawal of the notice of termination, confirmation that Silvers would abide by the terms of the License Agreement and the Settlement Agreement, and written assurance that Silvers will make no efforts to interfere in any manner with the business of Stelor. Id. at ¶ 19; Ex. "D" to Verified Complaint.

On May 2, 2005, Silvers' counsel dispatched a letter refusing to comply with the reasonable demands made by Stelor. Indeed, the letter, in stating that Silvers "intends to go in a different direction to develop his characters and intellectual property", essentially conceded that Silvers is planning immediate actions that are prohibited by the License Agreement and the Settlement Agreement and violative of Stelor's rights under those agreements, notwithstanding the fact that the License Agreement requires 60 days notice and an opportunity to cure prior to termination (Ex. "A" at ¶ IX). Compl. at ¶ 20; Ex. "E" to Verified Complaint.

Silvers began acting on the threat made in his counsel's letter before the letter was dispatched, even though his notice of termination, even if valid, is not effective until June 26, 2005. On April 28, 2005, Stelor learned from godaddy.com, a domain name registrar, that Silvers had violated the License Agreement and the Settlement Agreement by changing 78 different Googles domain names from Stelor's control to Silvers' control and improperly excluded Stelor from being the administrative contact with the domain name registrar. Due to

BURLINGTON · WEIL · SCHWIEP · KAPLAN (&) BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

Silvers' actions in violation of the agreements, Stelor is currently unable to reassert control over the domain names that it has licensed. Id. at ¶ 21.

Moreover, Silvers hijacked the entirety of the content of the website located at www.googles.com and developed, produced and operated by Stelor at great expense. Stelor received notice of this conduct on May 3, 2005 from Verio, Inc., a web hosting firm, which informed that another customer (obviously Silvers) had requested to add googles.com to their account, at which point Stelor learned that the website had been deactivated and brought down. Having taken this action in express violation of the agreements, Silvers has taken from Stelor content in which it has made a seven-figure investment, and has taken from Stelor the ability to control intellectual property that it has licensed and that it has created. Id. at ¶ 22.

In doing so, Silvers has essentially put Stelor out of business. Without its website content, Stelor cannot display its product and meet with potential licensees. It cannot demonstrate its product to its users and their customers. It cannot launch and protect pending expansions to its brand. Advertisements that have been placed promoting the website for an upcoming trade show have been rendered useless and, as a result, Stelor's reputation has been damaged and it has lost industry goodwill. Moreover, its ability to prepare and submit materials for that trade show has been compromised. Yesterday, Stelor was actively advancing the business on all fronts. Today, it can do nothing. Id. at ¶ 23.

Furthermore, Stelor developed the content and exclusively operated the website devoted to the "Googles" characters, offering a variety of services and features geared to delighting children and their parents. The website is the public's window into the Googles' world. Being able to operate and modify this website is among Stelor's most important priorities. Yesterday,

8

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

the website was filled with intellectual property and content created by Stelor. Today, as a result of Silvers' dishonesty and maliciousness, the intellectual property has been taken from Stelor's control and the website has been destroyed, replaced with a message created by Silvers, presumably. Id. at ¶ 24; Ex. "F" to Verified Complaint. Without immediate entry of a temporary restraining order and/or an injunction, the harm to Stelor will be irreparable.

Stelor has embraced enthusiastically its duty to transform the "Googles" story and characters into a thriving entertainment phenomenon. Stelor bargained for, and obtained, the right to do so with Silvers remaining squarely in the background, cooperating fully when called upon, and not placing stumbling blocks in Stelor's path. Stelor has lived up to its obligations, Silvers has not. Having now been sneak attacked by Silvers and improperly deprived of its ability to protect the critical intellectual property in which it has invested so heavily, Stelor now brings this Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction to preserve and reestablish the status quo while this case is pending and prevent the irreparable harm Stelor will undoubtedly suffer if Silvers' malicious actions go unchecked.

## III. ARGUMENT

Stelor seeks the entry of a temporary restraining order and/or an emergency preliminary injunction to preserve and reestablish the status quo and to prevent the further, irreparable injury to its valuable intellectual property rights. To obtain a temporary restraining order or a preliminary injunction, Stelor must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to Stelor outweighs the harm an injunction may cause Silvers; and (4) that the injunction would not disserve the public interest. International Cosmetics Exch., Inc. v. Saba,

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM WWW.BWSKB.COM

2001 U.S. Dist. LEXIS 2453, at *49 (S.D. Fla. Oct. 19, 2001), citing American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407 (11th Cir. 1998); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 n. 2 (11th Cir. 1998).

**A.    Stelor Has a Substantial Likelihood of Success on its Breach of Contract Claim**

To prove a breach of contract under Florida law, Stelor must establish (1) the existence of a contract, (2) a breach thereof and (3) damages. Profilet v. Cambridge Fin. Corp., 231 B.R. 373, 382 (S.D. Fla. 1999); Berk v. Lazard Freres & Co., L.L.C., 175 F.3d 913, 914 (11th Cir. 1999).

**1.    Stelor and Silvers Entered into a Valid License Agreement and Consulting Agreement and a Valid Subsequent Settlement Agreement**

As shown in Exhibits "A" and "B" to the Verified Complaint, Stelor and Silvers entered into a valid License Agreement and Consulting Agreement. Likewise, the Settlement Agreement (which has been filed separately under seal in accordance with its terms) is a valid and enforceable contract. The agreements were entered into freely after negotiation. See Settlement Agreement at ¶ 22. Indeed, there is no dispute that the License Agreement and the Settlement Agreement are binding contracts. The only dispute concerns compliance with their terms.

**2.    Silvers Has Materially Breached Various Provisions of the License Agreement and the Settlement Agreement**

Under Paragraph VIII(A) of the License Agreement, Silvers granted to Stelor "all right, power and interest to seek, obtain, and maintain all Intellectual Property Rights associated with the Licensed Intellectual Property and Licensed Trademarks, Licensed Copyrights, and other Intellectual Property Rights." Ex. "A" at ¶ VIIIA. In the same paragraph, Silvers also granted to Stelor an "irrevocable power of attorney" to execute and file all documents necessary to "maintain" the rights to the Googles Intellectual Property and to act for and instead of Silvers.

BURLINGTON · WEIL · SCHWIEP · KAPLAN ⟨&⟩ BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

Id. This irrevocable power of attorney clearly gives Stelor the exclusive right and duty to file, maintain, and renew all trademark applications and registrations relating to the Googles Intellectual Property.

Furthermore, paragraph IA of the License Agreement provides Stelor with "the exclusive (even as to [Silvers]) worldwide ... right and license to use, reproduce, modify, create derivative works of, manufacture, have manufactured, market, advertise, sell, distribute, display, perform, and otherwise commercialize [the Googles concept]. The license includes a license under any and all intellectual property rights and interests therein, including by way of explanation, products which deal with the creative characters known as The Googles, anything that contains the letters GOO (in upper or lower case) together with any and all products, which comprise and which will comprise those characters likenesses, which include ... **computer web site(s)**, membership lists, clubs, materials, patterns, prototypes, logos, trademarks, service marks, clothing, merchandise, educational products, marketing and promotional data and tools, packaging and advertising, modifications, updates and variations, and all other items associated therewith whether in singular or plural" (emphasis added).

The License Agreement also creates a limited termination right. It provides that it "may be terminated by either party upon (60) days written notice to the other party in the event of a breach of a material provision of this Agreement by the other party, provided that, during the sixty (60) days period, the breaching party fails to cure such breach." Id. at ¶ IX.

In the Settlement Agreement, not only did Silvers withdraw his prior notice of termination of the License Agreement and "reaffirm[] his obligations under the License Agreement" (see Settlement Agreement at ¶ 3), but he also granted Stelor "the right to control

11

BURLINGTON · WEIL · SCHWIEP · KAPLAN(&)BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

the [domain name] records and make changes to the administrative contact information for all GOOGLES IP domain names, and shall advise the domain name registrar known as godaddy.com to this effect.  Silvers will provide proof that Stelor has such rights no later than February 15, 2005." Id. at ¶ 1(a).

Notwithstanding these binding obligations, Silvers has maliciously violated them all, with impunity.  His actions concerning the domain names violate his obligations under paragraphs I and VIII of the License Agreement and paragraph 1(a) of the Settlement Agreement.  By tampering with the www.googles.com website, Silvers has taken both property that he has licensed to Stelor and property that Stelor has created.  In doing so, he has again breached his obligations under paragraphs I and VIII of the License Agreement and paragraph 1(a) of the Settlement Agreement.  Furthermore, in taking such rash, impermissible actions long before his purported notice of termination could possibly be effective, he has breached paragraph IX of the License Agreement that he expressly reaffirmed in the Settlement Agreement.

There is no conceivable justification for Silvers' actions.  His cited grounds for claiming a breach of the Settlement Agreement and purportedly terminating the License Agreement are all invalid.  As explained in Exhibit "D" to the Verified Complaint, Stelor has met its obligation to offer unit interests to Silvers, it has paid or attempted to pay all royalty advances that Silvers could possibly claim, it has cooperated in the audit of the books and records, it has offered to make samples of licensed products available, and it has provided a royalty statement showing that no royalties are owed.  Compl. at ¶ 19.  And, even if there was some technical breach by Stelor – which is expressly denied – there has been no material breach and, more importantly, Silvers has not met his contractual obligation to provide an opportunity to cure any such breach.

12

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

As a result, Stelor more than meets its burden of establishing a substantial likelihood of success on the merits.

### 3.     Silvers' Breaches of the License Agreement and Settlement Agreement Are Causing Stelor Continuing and Incalculable Damage

Silvers' numerous breaches of the License Agreement and Settlement Agreement, as detailed above, have caused Stelor significant damage and essentially put it out of business. Without its website content, Stelor cannot display its product and meet with potential licensees. It cannot demonstrate its product to its users and their customers. It cannot launch and protect pending expansions to its brand. Advertisements that have been placed promoting the website for an upcoming trade show have been rendered useless and, as a result, Stelor's reputation has been damaged and it has lost industry goodwill. Moreover, its ability to prepare and submit materials for that trade show has been compromised. Compl. at ¶ 23. Being able to operate and modify this website is among Stelor's most important priorities. Yesterday, the website was filled with intellectual property and content created by Stelor. Now, as a result of Silvers' dishonesty and maliciousness, the intellectual property has been taken from Stelor's control and the website has been destroyed. Id. at ¶ 24.

In these circumstances, Silvers' breaches of the License Agreement and the Settlement Agreement have caused, and will continue to cause, Stelor irreparable harm that cannot possibly be remedied through the payment of mere money damages. See McDonald's, 147 F.3d at 1310 (threat of lost profits and damage to reputation, where there is no realistic way to determine damages, constitutes irreparable harm); United States v. Bowman, 341 F.3d 1228, 1237 (11th Cir. 2003) (potential harm to business from loss of goodwill and inability to sell products constitutes irreparable harm); Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1449 (11th

13

BURLINGTON • WEIL • SCHWIEP • KAPLAN &⃝ BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

Cir. 1991) (damage to a business resulting from "the loss of customers and goodwill is an 'irreparable' injury").

**B.    Stelor Faces a Substantial Threat of Irreparable Injury if an Injunction is Not Granted Immediately**

For the reasons discussed above, Silvers' material breaches of the License Agreement and the Settlement Agreement have caused Stelor to face a substantial threat of irreparable injury. This irreparable injury will materialize if a temporary restraining order or a preliminary injunction is not immediately granted in this case. Absent such relief, Stelor cannot conduct business and cannot use the intellectual property to which it has exclusive rights. Injury to intangible assets such as trademark rights and other intellectual property rights is irreparable. McDonald's, 147 F.3d at 1310.

Furthermore, absent an immediate injunction enforcing the terms of the License Agreement and the Settlement Agreement, nothing prevents Silvers from negotiating directly with Google, Inc. and Stelor is in reasonable fear that Silvers either has already done so or will do so if not enjoined. Compl. at ¶ 32. Paragraph 18 of the Settlement Agreement expressly provides that any attempt to negotiate with Google, Inc. without Stelor's participation constitutes a breach of the Settlement Agreement that creates irreparable harm and for which injunctive relief will be necessary to maintain the rights of the non-breaching party. Both Stelor and Silvers agreed in the Settlement Agreement to the issuance of injunctive relief to prevent such a breach. Id.

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

**C.    The Threatened Injury to Stelor Outweighs the Harm an Injunction May Cause Silvers**

As detailed above, Stelor faces a substantial threat of irreparable injury if a temporary restraining order or a preliminary injunction is not immediately granted in this case.  This threatened injury clearly outweighs any harm Silvers might suffer if an injunction is granted.  In fact, granting an injunction in this case will merely force Silvers to comply with his contractual obligations and will not cause him any harm whatsoever.  His actions with regard to the domain names and the website serve no business purpose and restoration of the status quo pending a determination of the declaratory judgment claim will not result in any judicially cognizable harm.  Indeed, the License Agreement gives Stelor the exclusive right to "maintain" the Googles Intellectual Property.

**D.    A Temporary Restraining Order or Preliminary Injunction Would Not Disserve the Public Interest**

Requiring Silvers to comply with his contractual obligations, as detailed above, clearly does not disserve the public interest.  Instead, complying with contractual obligations and upholding the sanctity of such obligations is necessary for a legal system depending on the rule of law and is in the public interest.

**E.    Issuance of a Temporary Restraining Order in these Circumstances Is Appropriate**

Rule 65(b) of the Federal Rules of Civil Procedure authorizes issuance of a temporary restraining order without notice if a verified complaint clearly shows that immediate and irreparable injury, loss or damage will result prior to a hearing and there is a certification of the reasons why notice should not be given.  Stelor has submitted precisely such a Verified Complaint in conjunction with this motion.  Notice should be dispensed with in these

15

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

circumstances because Stelor has been, as a practical matter, put out of business by Silvers' wanton actions and any additional delay in reactivating its business would be catastrophic. Indeed, it is apparent from the exchange of correspondence between counsel appended to the Verified Complaint that Silvers' improper actions were undertaken precisely after he was given notice to comply with his agreements, to withdraw his improper notice of termination, and not to interfere with Stelor's business. Reestablishing the status quo for a ten-day period pending hearing while not harm Silvers in the least and will permit Stelor to get back on its feet.

**F.    Only the Posting of Nominal Security Is Warranted**

Rule 65(c) requires that security be posted in support of a temporary restraining order or preliminary injunction to secure costs and damages that may be suffered by a wrongfully enjoined party and Stelor stands ready to do so. However, Stelor should not be required to post a bond of greater than $5,000, given that no money damages will befall Silvers if injunctive relief is issued, his actions are indefensible, and a hearing will occur within ten days of the issuance of any temporary restraint.

## IV.  CONCLUSION

For the reasons set forth above, Stelor respectfully requests that this Court grant Stelor's motion for a temporary restraining order and/or a preliminary injunction under the terms set forth in the accompanying proposed Order.

Dated this ⁴⁾ day of May 2005.

16

BURLINGTON · WEIL · SCHWIEP · KAPLAN (&) BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM WWW.BWSKB.COM

Respectfully submitted,

BURLINGTON, WEIL, SCHWIEP,
  KAPLAN & BLONSKY, P.A.
Attorneys for Plaintiff
Office in the Grove, Penthouse A
2699 South Bayshore Drive
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261

By: _____
       Kevin C. Kaplan
       Florida Bar No. 933848
       Daniel F. Blonsky
       Florida Bar No. 972169
       David J. Zack
       Florida Bar No. 641685

17

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM