UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

STELOR PRODUCTIONS, L.L.C., a
Delaware corporation, f/k/a STELOR
PRODUCTIONS, INC.,

    Plaintiff,

v.

STEVEN A. SILVERS, a Florida resident,

    Defendant,
_____/

CASE NO. 05-80393-CIV-HURLEY
Magistrate Hopkins

**NOTICE OF FILING PROPOSED REPORT AND RECOMMENDATION
DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendant, Steven Silvers, hereby gives notice of filing Proposed Report and Recommendation Denying Plaintiff's Motion for Preliminary Injunction upon a referral by the district court (DE #7), having conducted a hearing on May 23, 2005.

Respectfully submitted,

DIMOND, KAPLAN & ROTHSTEIN, P.A.
Co-Counsel for Defendant
200 S.E. First Street, Suite 708
Miami, FL 33131
Telephone: (305) 374-1920
Adam T. Rabin, Esq.

KOZYAK TROPIN & THROCKMORTON, P.A.
Counsel for Defendant
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800

By: _____
Kenneth R. Hartmann
Florida Bar No: 664286
Gail M. McQuilkin
Florida Bar No. 969338

3339/101/253746.1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was faxed and mailed this 27th day of May, 2005, to: Kevin C. Kaplan, Esq., Daniel F. Blonsky, Esq. and David Zack, Esq., Burlington, Weil, Schwiep, Kaplan & Blonsky, P.A., Counsel for Plaintiff, Office in the Grove, Penthouse A, 2699 South Bayshore Drive, Miami, FL 33133.

By: _____
Kenneth R. Hartmann

3339/101/253746.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| STELOR PRODUCTIONS, L.L.C., a Delaware corporation, f/k/a STELOR PRODUCTIONS, INC., | CASE NO. 05-80393-CIV-HURLEY<br>Magistrate Hopkins |
| Plaintiff, | |
| v. | |
| STEVEN A. SILVERS, a Florida resident, | |
| Defendant, | |
| _____/ | |

**PROPOSED**
**REPORT AND RECOMMENDATION DENYING**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** having come before this Court upon a referral by the district court (DE #7), having conducted a hearing on May 23, 2005, and being otherwise duly advised in the premises, the Court enters this Report and Recommendation.

1.   This is an action by Stelor Productions, LLC ("Stelor") against Steven A. Silvers ("Silvers") arising from Silvers' termination of a License Agreement with Stelor. Stelor's verified complaint (DE #1) alleges Silvers breached the License Agreement and Settlement Agreement entered into by the parties (Count I) and seeks a declaration that the License Agreement and Settlement Agreement are valid and effective, and continue to bind the parties (Count II), despite the termination.

2.   Simultaneously with filing the verified complaint, Stelor filed a motion for preliminary injunction (DE #2) seeking to invalidate the termination and compel Silvers to specifically perform the agreements.

3. Silvers owns an assortment of trademarks, copyrights, patents and domain name registrations relating to alien creatures from the planet of Goo, known as the "Googles" who come to earth after their planet explodes ("the "Googles IP"). By way of the License Agreement, Silvers granted Stelor the exclusive use of the Googles IP subject to fulfilling its obligations under the License Agreement. The parties entered into the License Agreement effective June 1, 2002 and, about the same time, entered into a Letter Agreement whereby Silvers provided consulting services to Stelor, in return for compensation by Stelor.

4. The License Agreement contains specific provisions relating to termination of the license, and requires Silvers to provide notice of any breach of Stelor's obligations under the license prior to termination, allowing Stelor a 60-day period to cure. License Agreement, ¶IX.

5. Under the Letter Agreement, Stelor's failure to compensate Silvers pursuant to paragraph 1(b) gives Silvers the right to terminate the License Agreement. Letter Agreement, ¶1(c).

6. On November 12, 2004, Silvers invoked the termination clause of the License Agreement, and sent a letter to Stelor notifying it of its alleged breach of the License Agreement and the Letter Agreement, and Silvers' intent to terminate the License Agreement unless Stelor cured those breaches.

7. According to Silvers, Stelor failed to cure the outstanding breaches within 60 days and, on January 13, 2005, Silvers provided another letter to Stelor reflecting his termination of the License Agreement.

8. At about the same time Silvers began the termination process, Stelor filed suit against Silvers alleging breach of the License Agreement and the Letter Agreement, and seeking to obtain a preliminary injunction to enjoin Silvers from further breaches for those agreements; Silvers filed

a counterclaim for breach of the agreements (Stelor I). On January 28, 2005, the parties entered into a Settlement Agreement and the Stelor I action was dismissed without prejudice.

9.   In the recitals for the Settlement Agreement, the parties recited that "Silvers on January 13, 2005 sent a notice of termination of the Licensing, Distributing and Manufacturing Agreement to Stelor."

10.   In the Settlement Agreement, Silvers agreed to "withdraw his notice of termination of the License Agreement, and reaffirms his obligations under the License Agreement." Settlement Agreement, ¶3. Silvers did not, however, withdraw the notice of breach letter dated November 12, 2004.

11.   Under the Settlement Agreement, Stelor was required to cure most of the same breaches set forth in Silvers' prior notice of breach letter and termination letter, and assumed additional obligations such as paying Silvers advance royalties. Silvers and Stelor also agreed to certain provisions relating to pending disputes with Google, Inc. regarding the Googles IP, and the administration of domain names included in the Googles IP.

12.   The Settlement Agreement provides, in the recitals, that Stelor's full performance of the Settlement Agreement would constitute a cure of Stelor's alleged breaches of the License Agreement and Letter Agreement.

13.   Silvers claims that Stelor failed to cure the breaches which underlie the Settlement Agreement, and further failed to perform additional obligations it had under the Settlement Agreement. On April 27, 2005, Silvers sent a letter notifying Stelor that he was terminating the License Agreement based on the uncured breaches of the License Agreement and Letter Agreement,

and corresponding breach of the Settlement Agreement. Silvers did not provide Stelor with notice of Stelor's breach or his intent to terminate, and did not allow a 60-day period to cure.

14. Since the April 27, 2005 termination, Silvers took complete control of the domain names included in the Googles IP. For example, Silvers instructed the registrar for the Googles.com and other domain names to point to his own website, instead of Stelor's. Silvers concedes this is inconsistent with the agreements and claims that, in light of the termination, he is no longer bound by the License Agreement. To date, Silvers has not put restrictions on other aspects of the Googles IP, due to unsettled issues pertaining to Stelor's allowed post-termination activity.

15. Pursuant to the License Agreement, ¶X(B), Stelor is entitled upon termination to sell any Licensed Products then on hand or on order for a period of six months, subject to meeting certain requirements.

16. Pursuant to the License Agreement, ¶¶X(B) and (C), Stelor's right to use the Googles IP reverts back to Silvers upon termination and, except for using names associated with the products, Stelor is required to discontinue use of the Googles IP.

17. Up to the April 27, 2005 termination, Stelor operated a website accessible through the domain name "Googles.com." That website, after the termination, is still accessible through the "Stelorproductions.com" domain name.

18. Stelor claims the termination, if not invalidated, interferes with its plan to launch its business, and in particular diminishes the value of its investment in an upcoming trade show associated with the launch.

19. Silvers contends an injunction, if entered, would prevent him from using the Googles IP himself, and that he anticipates generating substantial income from such use.

## CONCLUSIONS OF LAW

20. To obtain a preliminary injunction, Stelor must demonstrate: (i) substantial likelihood of success on the merits; (ii) irreparable injury absent the injunction; (iii) the injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and, (iv) if issued, the injunction would not be adverse to the public interest. *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989). In the 11th Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion'" as to the four requisites. *Id.*

21. In this case, Stelor must meet a higher burden to obtain a preliminary injunction, because it seeks to compel Silvers to take affirmative action. *Tom Doherty Assocs., Inc. v. Seban Entertainment, Inc.*, 60 F. 3d 27, 34 (2d Cir. 1995). Stelor's motion seeks a mandatory injunction in that the requested injunction would invalidate Silvers' termination, reinstate the License Agreement, and compel Silvers to specifically perform his obligation under that agreement. This would change rather than maintain the status quo. Such an injunction is proper only in rare circumstances. *Burgos v. University of Central Florida Board of Trustees*, 283 F. Supp. 2d 1268, 1271 (M.D. Fla. 2003) (quoting *Harris v. Witter*, 596 F.2d 678 (5th Cir. 1979). Stelor must therefore show it has a clear and convincing probability of prevailing on the merits. *See Cornwell v. Sachs*, 99 F. Supp. 2d 695, 704 (E.D. Va. 2000), and cases cited therein.

22. Plaintiff alleges subject matter jurisdiction based on diversity. In a diversity case, state law applies to Stelor's claims for breach of contract and declaratory relief. However, federal law controls the procedure applicable the entry of a preliminary injunction. Accordingly, the Court looks to both state and federal authorities to resolve the injunction issues.

5

23. As to the question of injunctive relief, Florida law indicates Stelor is foreclosed from obtaining injunctive relief to compel specific performance of a contract which has been terminated. *Airlines Reporting Corp. v. Incentive Int'l Travel, Inc.*, 566 So.2d 1377, 1379 (5th DCA 1990); *Jacksonville Electric Authority v. Beemik Builders & Constr., Inc.*, 487 So.2d 372, 373-74 (1st DCA 1986); *Collins v. Pic-Town Waterworks, Inc.*, 166 So.2d 760, 762 (2d DCA 1964). The case of *Town of Bel Aire v. Florida Power Corp.*, 897 So.2d 1261 (Fla. 2005) does not dispose of this rule. Rather, the *Bel Aire* case involved the question of whether the court could order a party to pay a fee based on an expired contract, during a holdover period which was expressly contemplated in the contract.

24. In the same vein, an injunction is not available under Florida law to prevent termination of an agreement; Stelor's sole remedy for any termination later determined to be wrongful is an action for damages. *Shearson Lehman Hutton, Inc. v. Meyer*, 561 So.2d 1331, 1332 (5th DCA 1990). Thus, the result would be no different if Stelor sought an injunction prior to the terminations instead of after it.

25. An analogous rule - - that alleged wrongful termination does not provide a basis to reinstate a license agreement - - is found in the *Burger King* line of cases decided in this district. In these cases,[1] the franchisor terminates the franchise agreement and corresponding trademark license,

---

[1] *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1505-06 (S.D. Fla. 1995) (franchisee's allegation that the franchisor did not allow proper renewal of the franchise agreement does not authorize continuing use of franchisor's trademarks, and remedy is an action for money damages); *Burger King Corp. v. Mageed*, 805 F. Supp. 994, 1003 (S.D. Fla. 1992) ("as a matter of law, a terminated franchisee's remedy for wrongful termination is an action for money damages and not the continued unauthorized use of the franchisor's trademarks"); *Zuckerman v. McDonald's Corp. Bus. Franch. Guide (CCH)*, ¶9904 (D. Mass. Oct. 31, 1991) (franchisee's claims it was not allowed to extend expired franchise agreement; remedy for such breach of contract claim is for money damages, not "holding over" and using franchisor's trademarks); *Burger King Corp. v. Austin*, 805 F. Supp. 1007 (S.D. Fla. 1990). *See also*

and seeks a preliminary injunction to prohibit the franchisee's use, post-termination, of the trademarks. The franchisee seeks to continue use of the licensed trademarks based on alleged wrongful termination. These cases hold that the franchisee's wrongful termination claim does not provide a basis to continue using the franchisor's trademarks (i.e. to undo the termination), and that the remedy for the franchisee's claim for wrongful termination is damages. Here, Stelor seeks by its motion to continue using Silvers' Googles IP despite the termination, based on wrongful termination. Thus, the *Burger King* cases are analogous.

26.   Stelor contends the rule limiting the party claiming wrongful termination to damages - - as opposed to continued use of the terminating party's intellectual property - - was changed by the 11th Circuit in *McDonald's Corp. v. Robertson,* 147 F.3d 1301. There, the 11th Circuit questioned the *Burger King Corp. v. Hall* opinion, and its application of the rule without any standards for the termination. In *McDonald's*, the 11th Circuit defined the standard where the terminating party seeks to enjoin the terminated party from post-termination use of the licensed trademarks, and required the movant to make "some type of showing that the franchisor properly terminated the contract." *Id. at* 1308. Here, Stelor is the movant, not Silvers, and thus the *McDonald's* standard is not directly applicable. Moreover, the *McDonald's* opinion adopted the reasoning of *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3d Cir. 1992) upholding the franchisor's right to terminate "independent of any claims the franchisee might have against the franchisor." *Id. at* 1309.

27.   Stelor has not shown a clear and convincing probability that Silvers' termination on April 27, 2005 violated the notice and cure provision of the License Agreement. While Silvers agreed in the Settlement Agreement to withdraw the termination of January 13, 2004, he did not

---

*Burger King Corp. v. Hall,* 770 F. Supp. 633, 638-39 (S.D. Fla. 1991).

withdraw the November 12, 2004 notice of breach. Thus, Silvers provided the requisite notice of termination and cure period prior to the April 27, 2005 termination. The Settlement Agreement does not require Silvers to provide an additional notice and a cure period for Stelor's breach of the Settlement Agreement or failure to cure the breaches underlying the Settlement Agreement.

28. Stelor has not shown a clear and convincing probability that it will prevail on its claim that Silvers wrongfully terminated the License Agreement. Silvers' termination of the License Agreement, as reflected by the April 27, 2005 letter, is based on, *inter alia*, the following breaches of the Settlement Agreement:

 a. Stelor's obligation, pursuant to the Letter Agreement, to provide Silvers with an option agreement entitling him to stock in Stelor. While Stelor has not provided the agreement, it claims its delay is justified due to converting from a corporation to a limited liability company.

 b. Stelor's obligation, pursuant to the License Agreement, to provide Silvers access to Stelor's records for an audit. Silvers initially requested the audit on November 5, 2004. Stelor never provided a date for the audit, but contends it has cooperated in arranging the audit.

 c. Stelor's obligation, per the License Agreement, to provide royalty reports and pay royalties to Silvers. Stelor has provided some reports, but these have been untimely and do not conform with the requirements of the License Agreement. The reports do not reflect any sales of Licensed Product from 2002 through 2004, despite evidence of Stelor merchandising Googles' music on the Itunes website and articles on the CafePress.com website during that period. Stelor contends it did not authorize the CafePress.com sales, but has not explained the failure to report the Itunes sales.

      d.     Stelor's obligation to provide samples of Licensed Product to Silvers. Stelor claims it has; Silvers claims Stelor has not.

      e.     Stelor's obligation, pursuant to the Settlement Agreement to cure the above described breaches, and to pay an advance royalty to Silvers each month. Stelor was late on some payments, and failed to pay a portion of the April advance royalty, although it offered to do so two days after Silvers' termination. Stelor also offered at this time to cure other beaches. Stelor contends Silvers caused these delays.

29.    With the exception of the advance royalty issues, these alleged breaches of the Settlement Agreement were identified by Silvers' notice of breach letter dated November 12, 2004.

30.    While Stelor may prevail at trial on these issues, based on the present record the Court cannot conclude that Stelor has a clear and convincing probability of prevailing. If Silvers were seeking an injunction here under the standard in *McDonald's*, he would have to make "some type of showing" that he properly terminated the License Agreement. While this standard does not apply to Silvers - - in that Stelor, not Silvers, seeks the injunction. - - the Court finds that Silvers has satisfied this requirement.

31.    While Stelor will be impacted absent an injunction, it has not demonstrated irreparable injury under the heightened standard. The records reflects any injury to Stelor is eventual or contingent, thus negating a finding of irreparable harm. *Jacksonville Electric Authority, supra*, 487 So.2d at 372-73. Further, Stelor's harm from an injunction can be remedied by damages.

32.    While both parties will be adversely impacted by entry or lack of an injunction, the balance of harm tips in favor of Stelor.

33. The public interest would not be served by granting injunctive relief, in that Stelor's unauthorized use of the Googles IP is likely to cause customer confusion. *Kason Indus., Inc. v. Component Hardware Group, Inc.* 120 F.3d 1199, 1207 (11th Cir. 1987) (public interest served when customer confusion presented).

The undersigned recommends as follows:

1. Stelor's motion for preliminary injunction should be denied.

2. The trial on the merits on Stelor's claims should be expedited.

_____
United States Magistrate Judge

3339/101/253715.1