FILED by _____ D.C.
ELECTRONIC

**Jun 17 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA.

STELOR PRODUCTIONS, L.L.C.,
a Delaware corporation,
f/k/a STELOR PRODUCTIONS, INC.,

      Plaintiff,                              Case No. 05-80393-CIV-HURLEY

v.

STEVEN A. SILVERS, a Florida resident,

      Defendant.

_____

# MOTION TO STRIKE DECLARATION OF STEVEN A. ESRIG, SET ASIDE MAGISTRATE'S FINDINGS AND REPORT AND RECOMMENDATION, AND TO VACATE TRO

Defendant, Steven A. Silvers, respectfully submits this motion to strike the sworn Declaration of Steven A. Esrig filed in support of Stelor Productions' Motion for Preliminary Injunction.   Esrig's Declaration contains intentionally false, and perhaps perjured, testimony. Because Esrig's testimony was the primary evidence considered by the Magistrate Judge at the preliminary hearing, and extensively relied on in the Report and Recommendation recommending preliminary injunctive relief, Silvers requests that the Court set aside the Magistrate Judge's findings and Report and Recommendation, vacate the TRO implementing the injunctive relief, and grant such other relied as may be appropriate.

      I.      Relevant Background Facts

      Silvers owns a host of intellectual property, including trademarks, copyrights, and a patent, relating to an animated concept he created called the "Googles From The Planet Goo." Silvers also owns dozens of domain names, including "Googles".com.  Silvers and Stelor entered into a License Agreement in 2002 in which Silvers licensed to Stelor the use the "Googles" trademark and related intellectual property.

1

2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 | Phone 305.372.1800 | Fax 305.372.3508 | kttlaw.com

Dockets.Justia.com

The License Agreement requires Stelor to pay Silvers royalties from sales, provide certified statements showing sales regardless of whether there are sales, and provide Silvers with samples of all merchandise being offered for sale. For three years Stelor provided no royalties, certified royalty statements, very few samples of merchandise or advertising and promotional materials (despite appearing at two International Licensing shows), and generally just performed miserably under the License Agreement.

Silvers long suspected that Stelor was selling merchandise he did not know about, hiding sales, and perhaps diverting sales revenue. On November 5, 2004, Silvers exercised his contractual right to an audit. Stelor flat out refused to comply with the request. For that reason, and all the other breaches Stelor had committed over the past three years, Silvers put Stelor on notice that it had 60 days to cure the breaches or face termination. After Stelor failed to cure a single breach, on January 13, 2005, Silvers sent notice that he had terminated the License Agreement.

Immediately, Stelor offered to cure the breaches if Silvers would reinstate the License Agreement. On January 28, 2005, Silvers and Stelor entered into a Settlement Agreement under which Silvers agreed to reinstate the License Agreement, provided Stelor cured the breaches. Stelor was required to cooperate with the audit, provide samples of merchandise, and provide past royalty statements. Stelor was also required to make certain payments to Silvers on the first of every month going forward.

Again, Stelor refused to comply with Silvers' audit request and either delayed or simply refused to perform its other obligations under the Settlement Agreement. After 90 days of waiting for Stelor to perform, Silvers reinstated the January 13, 2005 termination. Two days later, Stelor sent a letter offering to perform if Silvers once again withdrew the termination notice. By now, Silvers had no interest in continuing a relationship with Stelor and was prepared to move forward

2

with a new more responsible licensee.

Realizing that the end had come, Stelor quickly filed this action claiming it had been wrongfully terminated, and requesting emergency injunctive relief to compel Silvers to reinstate the License Agreement.   Although the Court denied the "emergency" nature of the motion, the Magistrate Judge set a hearing on the preliminary injunction request for May 23, 2005.

On the morning of the hearing, Stelor filed the sworn Declaration of Steven A. Esrig, president of Stelor.  Silvers' counsel was already en route to the hearing when this Declaration was served and did not see it until it was handed out in a notebook at the hearing.  The Declaration contained mostly emotional argument, and unsubstantiated and dubious statements intended to refute each basis Silvers had for terminating the License Agreement.   Because we had not seen this declaration prior to the hearing, we were unable to offer evidence to challenge the credibility of this testimony.

We now, however, have very strong evidence that shows Esrig lied in his Declaration when he disavowed knowledge of any licensed products being offered for sale, made false statements intending to mislead the Court regarding the harm Stelor would suffer without injunctive relief, and made the patently false representation that Silvers had dismissed his prior claims against Stelor with prejudice.

A.    <u>False Testimony Regarding CafePress.com</u>

Esrig made the following statements in support of Stelor's position that it had not breached the License Agreement for failure to provide royalty reports or samples of "Googles" branded merchandise being offered for sale online through Cafepress.com:

> "Stelor has advised Silvers' counsel that it was only just made aware that an on-line shop at Cafepress.com was carrying "Googles" merchandise, without Stelor's authorization or knowledge.  We were previously unaware of the existence of this shop, and suspect that it was established by someone outside of Stelor using our company information.  After further analysis, we discovered the shop was established in September of 2002. . ."

3

Exhibit A is the sworn Declaration of Paul Worsham ("Worsham Decl.") with attached email correspondence to and from Esrig that shows Esrig not only knew about the "Googles" merchandise being offered for sale on Cafepress.com, he originated the CafePress.com account, approved the design, selected the merchandise, and directed people to create a link between the Cafepress.com website and the "Googles" website.

In July, 2002, Esrig asked Worsham to set up an account at Cafepress.com so that Stelor could market and sell merchandise with the "Googles" name and logo. Worsham Decl., ¶ 5. Esrig directed Worsham to work with Salil Kumar, an individual helping on the website design, to set up a link from the "Googles" website to Cafepress.com. Worsham Decl., ¶¶ 4, 5. Worsham attaches a July 26-27, 2002 email exchange between himself, Esrig, and Salil Kumar about the Cafepress idea. Worsham Decl., Ex. B.

The Googles-themed Cafepress shop was established by Esrig during August, 2002. Worsham Decl., ¶ 6. As part of the configuration of the account and the shop, Worsham went to Esrig's house and sat with him in his home office while they worked on a "Googles"-themed Cafepress account using Esrig's personal computer. Worsham Decl., ¶ 6. Esrig provided Worsham with the original email address at googles.com to use to set up the initial account. Worsham Decl.,¶ 6. Worsham consulted Esrig often during the design phase. Worsham's sent Esrig an email while he worked on the Cafepress project containing Cafepress web site material for Esrig's approval. Worsham Decl., Ex. C.

On August 7, 2002, Esrig sent an email to Worsham attaching the "Googles" artwork for the Cafepress project. Worsham Decl.,¶ 8. Esrig also gave him a CD with all of the "Googles" artwork that Worsham used for the Cafepress project. Worsham Decl., ¶ 8. Esrig asked Worsham to design a "Googles" word logo to use in addition to the artwork for the Cafepress merchandise

4

that would be sold in the "Googles" store. Worsham Decl., ¶ 8. Esrig approved the merchandise from Cafepress that he wanted to brand and sell with the "Googles" name and logos, and approved the markup amount for each item from the base price charged by Cafepress. Worsham Decl., ¶¶ 7 and 8.

In September, 2002, Worsham worked with Esrig and Salil Kumar to establish a link on the "Googles" website to the Googles-themed Cafepress store. Worsham Decl., ¶ 9. A link was established to http://www.cafeshops.com/"Googles" (cafeshops is operated by Cafepress.com.) Worsham Decl.,¶ 9. Worsham attaches an email exchange from September 12-13, 2002 between himself, Esrig and Salil Kumar about working on the link between googles.com and Cafeshops.com/googles. Worsham Decl., Ex. G.

In mid-September, 2002, Esrig asked Worsham to send him the information on how to log in to the "Googles" store at Cafepress.com. Worsham Decl., ¶ 10. Worsham sent an email to Esrig in response with the log in information. Worsham Decl., Ex. H. At a later date, Worsham assisted Esrig at his home office with changing information on the Cafepress account to Esrig's name and contact information. Worsham Decl., ¶ 10. Esrig provided Worsham with his personal email at Stelor Productions to enter into the Cafepress account information, along with validating the telephone number and address on the account. Worsham Decl.,¶ 10.

In October, 2002, Worsham was in Esrig's home office for a discussion on the "Googles" project when they logged into the Cafepress account and viewed information on a large order for "Googles" merchandise. Worsham Decl., ¶ 10. Worsham and Esrig discussed that Cafepress indicated that there was a problem with the order, and Worsham assisted Esrig in investigating the problem. Worsham Decl., ¶ 10.

On June 7, 2005, Silvers' counsel contacted Cafepress and asked for information on the seller of "Googles" merchandise through the Cafepress.com/googles store. *See* Declaration of

5

Gail A. McQuilkin, Esq. attached as Exhibit B.  In response, Ryan Ellison, a Cafepress Content Usage Associate, sent an email with the contact information for the user of the service.  The contact person listed is Steven Esrig, complete with street and address, and telephone number.

B.     Testimony Regarding Harm To The Gootopia Website

Esrig's testimony regarding the harm to Stelor necessitating injunctive relief is largely hyperbolic and unsubstantiated, and the few facts set out in his Declaration are false. Esrig stated that by virtue of Silvers redirecting the googles.com domain name away from the Gootopia Website, Silvers had "shut down the website" and "taken control of the website content" and "Stelor no longer has access to the Gootopia website;" he offered no technical information to substantiate those claims.  The fact is that none of what Esrig said is true.  Silvers had no ability to cause such problems.  Stelor controls the website.

Attached as Exhibit C is the Declaration of Russell Tewksbury, an Internet expert and consultant.  He reviewed the testimony of Esrig, looked at Gootopia website, and Stelor's  server information at Verio.  Stelor contracted with Verio to host the Gootopia Website.  When Stelor created their Verio Web hosting account, Stelor was given a user-login and password for their VPS server and Verio's customer administrative backroom and product control panel.  Tewksbury Decl. at ¶ 6.  The user-login and password to Stelor's Verio VPS server provides secure access for Stelor to their Gootopia Website and enables Stelor to control the content of their Website.  *Id.* Unless Stelor gave their Verio VPS user-login and password information to a third party, only they and Verio possess password-access to the VPS server where Stelor's Gootopia website is hosted.  *Id.* Stated another way, unless Stelor has given their user-login and password to Silvers, he cannot access the Gootopia Website or control the content on the Gootopia Website.  *Id.*

Any person wanting to view the Gootopia Website on the Internet can do so by simply entering the numeric IP address 128.121.122.247; the user will be connected to the Gootopia

6

Website.  Tewksbury Decl. at ¶ 7.  Silvers Ent. Group, Inc. is the lawful registrant for the

googles.com domain name, and only Silvers should direct the DNS records that associate the

googles.com domain name with any particular IP address.  Tewksbury Decl. at ¶ 8.  Up until

recently, Silvers maintained the DNS records for the googles.com domain name to point to

Verio's name servers (ns1.secure.net and ns2.secure.net), which in turn directed website visitors to

the IP address associated with Stelor's Gootopia Website.  Thus, when a person typed in the

domain name googles.com they were connected to Stelor's Gootopia Website.  Tewksbury Decl.

at ¶ 9.

     When Silvers terminated the license agreement with Stelor, he logged into his

Godaddy.com domain name account and directed the DNS records of the googles.com domain

name to point to an IP address for a Website he controls.  Esrig testified that because Silver

directed the DNS records away from the Gootopia Website "Silvers shut down the (Gootopia)

Website."  That is false and misleading.  As Tewksbury explains, because Silvers was not a party

to the Web hosting agreement between Stelor and Verio,  only Stelor had access to the (password

protected) Gootopia Website, which they created, and only Verio or Stelor has the ability to shut

down the Gootopia Website.  Tewksbury Decl. at ¶ 11.

     Esrig testified that because Silvers directed the DNS records away from the Gootopia

Website "Stelor no longer has access to the (Gootopia) Website."  That is also false and

misleading.  Stelor's access to the Gootopia Website is an issue between Stelor and Verio, and

Silvers has no authority or ability to direct Verio to do anything relating to Stelor's account or

access thereto.  Tewksbury Decl. at ¶ 12.  In addition, even if Verio unilaterally decided to deny

Stelor access to its server, Stelor should have access to their Gootopia Website content through

back-up copies.  *Id.*  It is normal and customary for a Website developer to have multiple back-up

copies of a Website.  *Id.*  Finally, Stelor always has the option to contract with another Web

hosting company (other than Verio) to host their Gootopia Website. *Id.*

Esrig's testimony that because Silvers directed the DNS records away from the Gootopia Website "Silvers redirected the Website" is false and misleading. Silvers redirected the DNS for the googles.com domain name to point to a Web server under his control. Tewksbury Decl. at ¶ 13. Silver's action does not prohibit or restrict Stelor's ability to access, modify, alter or delete any content on their Gootopia Website. *Id.*

Likewise, Esrig's testimony that because Silvers directed the DNS records away from the Gootopia Website "Stelor can't operate the (Gootopia) Website without the googles.com domain name." Stelor does not *need* the googles.com domain name to operate the Gootopia Website. Tewksbury Decl. at ¶ 14. The Gootopia Website exists completely independent of any domain name. *Id.* If, by the word "operate," Esrig means to imply people can't access the Gootopia Website via the Internet, that is also false. All that his needed for the Gootopia Website to be accessible via the Internet, is a Web hosting account and a publicly accessible IP address. *Id.* And, if the preference is to have a domain name for easier user access, Stelor can register a multitude of other domain names and have those point to the Gootopia Website. *Id.*

Esrig also falsely testified that because Silvers directed the DNS records away from the Gootopia Website "Silvers took the Website (Gootopia) content." Unless Stelor gave Silvers password access to their Verio VPS server where their Gootopia Website was hosted, Silvers is not able to remove or in any other way restrict Stelor's access to their Gootopia Website content. Tewksbury Decl. at ¶ 15. Only Stelor has that control. *Id.*

Further, Esrig falsely testified that because Silver directed the DNS records away from the Gootopia Website "Stelor can't demonstrate the site to anyone." Stelor has multiple options to demonstrate the Gootopia Website. Tewksbury Decl. at ¶ 16. It can do so over the Internet using an IP address, or any other domain name it chooses. *Id.* Or, it can demonstrate off-line on a local

8

computer or from a DVD or CD-Rom.  *Id.*

The discrepancy between what Esrig testified to and what we now know to be true is significant.   Stelor is a web-based business.  It is inexplicable that Esrig would not know that changing the DNS records for the googles.com domain name has <u>zero</u> effect on the Gootopia Website.  The only conclusion is that he knowingly made false statements to mislead the Magistrate Judge as the to the harm.

     C.    <u>Testimony That The Parties Had Dismissed Prior Claims With Prejudice</u>

Esrig also falsely testified that Silvers agreed to dismiss his claims against Stelor with prejudice.  Esrig wanted the Magistrate Judge to believe that the  Silvers had resolved all of his claims against Stelor when he entered into Settlement Agreement.  But that testimony is patently false.  Silvers never agreed to dismiss his claims with prejudice, the Settlement Agreement provides that the claims are to be dismissed "without prejudice" and that is what the Court ordered.  See Exhibit D.

## CONCLUSION

Esrig's testimony is riddled with false testimony and intentional misrepresentations.   The Magistrate Judge, however, relied heavily on this evidence in his findings that Stelor is likely to prevail on its wrongful termination claim, and that it will suffer irreparable harm.  The Magistrate Judge found that because Esrig disavowed any knowledge of "Googles" merchandise being offered for sale, Stelor is likely to prevail against Silvers' claim that he had the right to terminate the License Agreement because Stelor failed to provide Silvers samples of such merchandise or account to Silvers for sales.  He also gave that testimony great weight in finding that, if there are no sales as Esrig states, there is no reason for Stelor to provide a royalty statement to Silvers (notwithstanding that the License Agreement requires a quarterly statement regardless of sales.).

The Magistrate Judge likewise used this testimony in finding that the Stelor will suffer

9

irreparable harm. He found that Stelor would suffer harm from the "loss" of the Gootopia

website, loss of control of the website contents, and could not function without the googles.com

domain name. The only evidence of this is Esrig's false testimony.

Esrig's Declaration should be stricken in its entirety. Further, because the Magistrate's

findings and Report and Recommendation are based almost entirely on Esrig's testimony, the

Court should set aside the Magistrate Judges' findings and Report and Recommendation, and

vacate the TRO.

<table>
<tr><td></td><td><u>s/ Gail A. McQuilkin</u></td></tr>
<tr><td>Adam T. Rabin, Esq.</td><td>Kenneth R. Hartmann, Fl. Bar No. 664286</td></tr>
<tr><td>DIMOND KAPLAN & ROTHSTEIN, P.A</td><td>Gail M. McQuilkin, Fl. Bar No. 969338</td></tr>
<tr><td>200 SE First Street, Suite 708</td><td>KOZYAK TROPIN & THROCKMORTON, P.A.</td></tr>
<tr><td>Miami, FL 33131</td><td>2525 Ponce de Leon, 9th Floor</td></tr>
<tr><td>T: 305-374-1920</td><td>Miami, Florida 33134</td></tr>
<tr><td>Co-Counsel for Defendant</td><td>T: 305-372-1800 / F: 305-372-3508</td></tr>
<tr><td></td><td>Counsel for Defendant</td></tr>
</table>

=====================================================================

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 17th

day of June, 2005, to: Kevin C. Kaplan, Daniel F. Blonsky and David Zack at Burlington Weil

Schwiep Kaplan & Blonsky, P.A., 2699 S. Bayshore Drive, Penthouse A, Miami, FL 33133.

<u>s/ Gail A. McQuilkin</u>

3339/101/254478.1

# Exhibit  A

IN UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

STELOR PRODUCTIONS, L.L.C., a
Delaware corporation, f/k/a STELOR
PRODUCTIONS, INC.,

CASE NO. 05-80393-CIV-HURLEY
Magistrate Hopkins

     Plaintiff,

v.

STEVEN A. SILVERS, a Florida resident,

     Defendant,

_____/

## DECLARATION OF PAUL WORSHAM

I, Paul Worsham, make this Declaration based on personal knowledge.

1. I reside in Potomac, Maryland (Montgomery County) and make this Declaration from my own personal knowledge.

2. I was introduced to Steven A. Esrig in 2001. I was asked by Esrig in the fall of 2001 to help with internet-related aspects of the Googles project, including the website Googles.com. I produced a draft plan for the "information technology" aspects of the project around that time, and it included ideas for online merchandising of products with various Googles images and logos.

3. By the middle of 2002, I had my own account with Cafepress and was experienced in setting up a Cafepress online store. CafePress.com is an online marketplace that allows sellers to independently create and sell a wide variety of products branded with the sellers name and logo through an independent online store. I told Esrig about Cafepress.com and suggested this would be a good place to market "Googles" merchandise.

1

4. In July 2002, I was assisting Esrig with graphics work relating to the Googles project. See Email dated July 30, 2002 attached as Exhibit A. At that time, a person named Salil Kumar from the company Spinning Doors was helping Esrig with the Googles web site design, hosting, and webmaster work. I did not have access to update the Googles.com website. The updates to the website were done by people that worked for Spinning Doors. Esrig told me that he had found Spinning Doors through one of the people involved with Stelor Productions.

5. While I was working with Esrig in July, 2002, he asked me to set up an account at Cafepress.com so that Stelor could market and sell merchandise with the Googles name and logo. He directed me to work with Salil Kumar to set up a link from the Googles web site to Cafepress.com. Attached is an email exchange from July 26-27, 2002 between myself, Esrig and Salil Kumar about the Cafepress idea. Exhibit B.

6. During August 2002, the Googles-themed Cafepress shop was established. As part of the configuration of the account and the shop, I went to Esrig's house and sat with him in his home office while we worked on a Googles-themed Cafepress account using his personal computer. I helped set up the initial Cafepress account for Esrig using an email address provided at googles.com, with Esrig's approval.

7. I spoke to Esrig often about the Cafepress project during the design phase. Attached as Exhibit C is an email dated August 1, 2002 I sent to Esrig while I worked on the Cafepress.com project. Esrig also approved the markup amount for each item from the base price charged by Cafepress. Attached as Exhibit D is an email dated August 5, 2002 from Esrig to me asking me to call him at 301-419-6363 in response to an email I sent him on August 2, 2002 that referenced a Cafepress newsletter.

2

8. On August 7, 2002, Esrig sent me an email attaching the artwork for the Cafepress project. Exhibit E. Esrig also gave me a CD with all of the Googles artwork that I used for the Cafepress project and other activities. Esrig asked me to design a "Googles" word logo to use in addition to the artwork for the Cafepress merchandise that would be sold in the Googles store. Attached as Exhibit F is a copy of the Googles store from the Cafepress.com web site. The images and logos that appear are the ones I helped create and uploaded to Cafepress.com at Esrig's direction. Esrig approved the merchandise from Cafepress that he wanted to brand and sell with the "Googles" name and logos.

9. In September, 2002 I worked with Esrig and Salil Kumar to establish a link on the googles.com web site to the Googles-themed CafePress store. A link was established to http://www.cafeshops.com/googles (cafeshops.com is operated by CafePress.com). Attached as Exhibit G is an email exchange from September 12-13, 2002 between myself, Esrig and Salil Kumar about working on the link between googles.com and Cafeshops.com/googles.

10. In mid-September, 2002 Esrig asked me to send him the information on how to log in to the Googles store at Cafepress.com. Attached as Exhibit H is the email I sent on September 16, 2002 in response to Esrig's request. At a later date, I assisted Esrig at his home office with changing the information on the Cafepress account to his name and contact information. Esrig provided me with his personal email at Stelor Productions to enter into the Cafepress account information, along with validating the telephone number and address on the account.

11. In or around October 2002, I was in Esrig's home office for a discussion on the Googles project when we logged into the Cafepress account and viewed information on a large order for Googles merchandise. We discussed that Cafepress indicated that there was a problem with the order. I assisted Esrig in investigating the problem. The sale did not go through because Cafepress

3

could not obtain credit card authorization for the buyer's credit card, and that the order would not be shipped.

12.  After the October-November 2002 timeframe, I did not log into or assist with the Googles store Cafepress account.

**I HEREBY DECLARE** under penalty of perjury that I have read the foregoing Declaration and that the facts stated in it are true, and that all the emails attached are true and correct copies.

Dated this _15th_ day of June, 2005.

_Paul Worsham_

Paul Worsham

4

# Exhibit  A

## to Declaration
## of Paul Worshaw

**From:**       "Steven Esrig" <egginternational@hotmail.com>
**To:**         <paul@zz8.com>
**Date:**       7/30/2002 10:13:35 PM
**Subject:**    Re: Revised Googles Artwork files

>From: "Paul Worsham" <paul@zz8.com>
>To: <egginternational@hotmail.com>
>Subject: Revised Googles Artwork files
>Date: Mon, 29 Jul 2002 23:51:42 -0400
>
>Steve,
>
>I have edited one of the images and put it online in this folder, as we
>discussed last night:
>
>   http://googlesmail.com/steve/  (you should see at least the file named:
>GOO_01_PWc.jpg )
>
>Note that the original image was a 1 megabyte file, and this image was
>reduced to a lower resolution for faster uploading/downloading.  But I will
>work a higher resolution for the next images.
>
>Let me know what you think of the erasing/replacing work on the image.
>
>
>Paul
>

I tried calling on both lines just now-they worked fine!-but the shoes and
stickers arena tad too small-can they be made bigger in proportion?
Call soon!

Chat with friends online, try MSN Messenger: http://messenger.msn.com

# Exhibit  B

## to Declaration
## of Paul Worshaw

Case 9:05-cv-80393-DTKH     Document 39     Entered on FLSD Docket 06/17/2005     Page 19 of 50

**From:**           "Paul  Worsham" <paul@zz8.com>
**To:**             "Salil Kumar" <salil@s-d.biz>, "Paul Worsham" <paul@zz8.com>, "Steven Esrig"
<egginternational@hotmail.com>
**Date:**           7/27/2002 10:04:53 AM
**Subject:**        RE: requirements specification for Googles.com - first draft

All - my message is being rejected due to some issue with Salil's address.
I am trying again, but may have to remove his address in order to get it
sent.  Below is what I wrote yesterday:

---------------

Hello Salil,

Thank you for the draft document.  I have reviewed it, and will re-review it
tomorrow.  Steve and I will also need to have some discussions on the
overall Googles online approach (vision, strategy, goals, and timelines).

You should try the Cafe Press website again - it was up when I visited it
just now: http://www.cafepress.com


Paul


-----Original Message-----
From: Salil Kumar [mailto:salil@s-d.biz]
Sent: Friday, July 26, 2002 5:55 AM
To: Paul Worsham; Steven Esrig
Cc: Arun
Subject: requirements specification for Googles.com - first draft


Hi Paul, Steve:

Attached is a first draft of the requirements specification document for
redesign of Googles.com. This document strives to formalize the process of
defining the requirements and is based on various emails and discussions
that we have had recently. Our intention is to work with you to agree upon
the accurate set of functionality needed for googles.com as soon as
possible.


REGARDING TIME AND COST:

Please note that the time and cost sections in this document are initial
estimates. I would like to emphasize that we are flexible and committed to
coming up with a mutually agreeable time frame and cost for the entire
project.

I will try to call you regarding this Friday (26th) morning (your early
afternoon) - hopefully you will have a chance to look through this before
that.

Thanks

Case 9:05-cv-80393-DTKH    Document 39    Entered on FLSD Docket 06/17/2005    Page 20 of 50

Salil

(SpinningDoors)


**CC:**              "Arun" <arun@s-d.biz>

# Exhibit  C

## to Declaration
## of Paul Worshaw

**From:**   "Paul Worsham" <paul@FreedomStudio.com>
**To:**     <egginternational@hotmail.com>
**Date:**   8/1/2002 6:06 PM
**Subject:** FW: CafePress.com: Back to School Products Are HERE!

Steve - I will probably order myself a "Googles" bag once I get the stuff online in a test "CafePress" shop.  I'll also give you the link once I do that, probably by Saturday.  You can see from the information below that they have a focus on the same vertical (Kids) as Googles.com!

Paul.

-----Original Message-----
**From:** CafePress.com [mailto:reply@cafepress.com]
**Sent:** Thursday, August 01, 2002 3:24 PM
**To:** admin@usa999.com
**Subject:** CafePress.com: Back to School Products Are HERE!



**August 2002**

## In This Issue

**Back to School Products**
**Premium Shops**
**Shipping Promotion**

**What's New**

Check out the upcoming store promotions in the Toolbox of your member account. Promotions until the end of September have been announced.

**August Contest Winner**

Congratulations Cat! Cat Hope is our Stamp of the Month Contest winner for August.



If you're interested in submitting your entry for our Stamp of the Month

## Back to School Products

Our new Back to School products are here! The new products are:

- Backpack (black)
- Metro Bag (black)
- Unistrap Bag (black)
- Briefcase (black)
- Yellow Messenger Bag
- Ash Grey Hoodie
- Black Cotton Cap
- Retro Lunch Box
  *Coming later this month!*

The black cotton caps and black bags are customized using a 4" x 2" patch with an embroidered edge.

Check out these must-haves for Back to School by visiting the Product Center at: http://www.cafepress.com/cp/info/products

Get ready for Back to School and add these new products to your store TODAY!

### Introducing CafePress.com Premium Shops

CafePress.com Premium Shops allow you to take your online store to the next level with complete store customization options. Offer multiple page stores with product categories and subcategories. Plus, add as many products to your store as you like.

Contest, click here to learn how.

**Member Testimonial**

*"Let me thank you for even existing! The past few days I've been working a bit on setting up stores with you, and enjoying it! This is a great service you offer."*

Kurt T. Francis, BangkokAtoZ

**CafePress.com Forum**

 Have ideas for new products? Need help promoting your store? Checkout the CafePress.com Forum and discuss with CP staff and members ways to grow your online store.

Join in the Discussions

Try out the new Premium Shops service for FREE! For a limited time, all CafePress.com members receive a 15-day FREE trial of the Premium Shops service. Just login to your account and add a new store. When adding a new store, be sure to choose the Premium Store feature. After your trial, Premium Shops are as low as $5 per month.

See how other members are using the Premium Shops Service:
http://www.cafeshops.com/teamkamm
http://www.cafeshops.com/usaaf
http://www.cafeshops.com/rudy_park
http://www.cafeshops.com/pawshopzone

For more information on Premium Shops, visit
http://www.cafepress.com/cp/info/sell/premium.aspx

**Shipping Promotion**

CafePress.com is having a Back to School shipping promotion! Until August 25, your customers receive FREE shipping when they spend $50 or more. For more details, check out the promotional banner on your store.

Let your customers know about the FREE shipping promotion with banners and buttons! Get your promotional banners and buttons at:
http://www.cafepress.com/cp/members/toolbox/banners_pr.aspx

If you wish to cancel your subscription to this newsletter, click here.
© Copyright 1999-2002 CafePress.com. All rights reserved. Privacy

# Exhibit  D

## to Declaration
## of Paul Worshaw

Case 9:05-cv-80393-DTKH     Document 39     Entered on FLSD Docket 06/17/2005     Page 25 of 50

| | |
|---|---|
| **From:** | "Steven Esrig" <egginternational@hotmail.com> |
| **To:** | <paul@zz8.com> |
| **Date:** | 8/5/2002 12:51:19 PM |
| **Subject:** | Re: Your voicemails / domain name ALERT |

>From: "Paul  Worsham" <paul@zz8.com>
>To: <egginternational@hotmail.com>
>Subject: Your voicemails / domain name ALERT
>Date: Fri, 2 Aug 2002 00:51:36 -0400
>
>CafeNewsletter :: August 200212:00 am
>
>Steve,
>
>Just retrieved your voicemail from earlier tonight.  Did you know that
>Googles.NET will expire in 1 week (currently registered to Aurora)?
>Googles.org was registered by someone in Michigan on May 9, 2002.
>
>If you want Googles.net, you can either pay up for another year and get it
>transfered, or use the SnapNames.com service ($79) to lock it now.  They
>will pick up the name the minute it expires and register it in your name.
>I
>would do that - my brother used SnapNames to get JunkFax.com for his law
>practice (anti-junk faxing cases), and it worked.  You would not get
>Googles.net on August 9 - it would happen whenever the name gets deleted.
>SnapNames only takes one "reservation" per domain name, so if you pay $79
>then they will not take another person's $79 for the same name.
>
>- - - - Other - - - -
>
>I wanted to give a little more detail about how a "Googles ISP" would work.
>It could be part of the subscription-type of services that you are
>interested in - and I have ideas that would work for Googles.  Here are
>some
>basic workable scenarios:
>
>1.) Googles.Net Express - $19.99 per month, includes nationwide filtered
>kid-friendly internet dialup access, and 5 email addresses
>2.) Googles.Net Basic Club - $21.99 per month, includes internet access, 5
>email accounts, and members-only newsletter
>3.) Googles.Net Gold Club - $29.99 per month - Same as Googles.Net club,
>plus get a CD when you sign up, and a plush toy every month for first 3
>months.  After that, the price drops down to $21.99 per month (Basic Club
>price).  But Gold Club members would get first access to new (and help
>test)
>Googles Games and other website features.
>4.) Google.Net Full Access - $17.99 per month, includes nationwide internet
>dialup access, 5 emails, no filtering
>
>So, let me know if you want to move on setting up a pilot Googles ISP
>service using Googlesmail.com, or a new domain such as 2Goo.com or
>Googles2.com.  It would cost $10 to add Googles2.com to have nationwide
>dialup access.  The basic service wholesale cost is about $8.50 per month
>including the credit card processing fee, so charging $19.99 or a similar
>AOL-and-MSN-range price would allow for a good margin.  Filtering (or
>kid-friendly filtering) costs an additional $3.00 per month, and can be

Case 9:05-cv-80393-DTKH    Document 39    Entered on FLSD Docket 06/17/2005    Page 26 of 50

>automatically bundled in if we don't want to offer anyone non-filtered
>service.
>
>The main costs to run the Googles2 service above the $8.50 per month are
>the
>people time to manage the accounts, and after 2 years of running an ISP it
>can be profitable with that type of margin per account.  With 1,000 members
>the gross before expenses would be $10,000 per month.
>
>- - - -
>
>Finally, checking ATT.COM just now for toll-free numbers, I did not find
>any
>with the full "GOOGLES" spelled out, as in 1-888-GOOGLES.  I did find
>866-Google1 and 866-Google0 (ends in zero).  Numbers such as 1-8**-GooKids
>or 1-8**-Gootime were not available.
>
>
>Paul


Please call as soon as you receive this!-I just returned and need to speak
with you!!!
Page 301-419-6363

_____

Chat with friends online, try MSN Messenger: http://messenger.msn.com

# Exhibit  E

## to Declaration
## of Paul Worshaw

Case 9:05-cv-80393-DTKH     Document 39     Entered on FLSD Docket 06/17/2005     Page 28 of 50

| | |
|---|---|
| **From:** | "Steven Esrig" <egginternational@hotmail.com> |
| **To:** | <paul@zz8.com> |
| **Date:** | 8/7/2002 12:55:51 AM |
| **Subject:** | art |

rrrrr

---

Chat with friends online, try MSN Messenger: http://messenger.msn.com

Case 9:05-cv-80393-DTKH    Document 39    Entered on FLSD Docket 06/17/2005    Page 29 of 50



# Exhibit  F

## to Declaration
## of Paul Worshaw

Back to Googles.com.



**Hey Kids! Hey Adults! Hey Everyone!!** Get your Googles merchandise here at our new store, with all-new merchandise. Also, use our feedback form to email us product suggestions. We know you will enjoy getting these products for yourself and your favorite people!



Googles GooShip Snap Bib
$6.99



Googles Infant/Toddler T-Shirt
$9.99



Googles (word) Black Cap
$15.99



Googles (word) Wall Clock
$11.99



Googles (TM) T-Shirt - White
$15.99



Googles (word) White T-Shirt
$15.99





Googles (word) Golf
Shirt
$19.99

Googles Baseball Jersey
$17.99

Googles (word) Baseball
Jersey
$18.99







Googles (TM)
Sweatshirt
$24.99

Googles (TM) Mug
$13.99

Googles (word) Mug
$12.99





Mousepad
$10.99

Googles (word)
Mousepad
$12.99

(C) 2002 Googles.com from Stelor Productions, Inc.

This shop is powered by CafePress.com.
Copyright © 1999-2005 CafePress.com. All rights reserved.
Privacy Policy | Trademark & Copyright Information

# Exhibit  G

## to Declaration
## of Paul Worshaw

Case 9:05-cv-80393-DTKH    Document 39    Entered on FLSD Docket 06/17/2005    Page 34 of 50

| | |
|---|---|
| **From:** | "Salil Kumar" <salil@s-d.biz> |
| **To:** | "Steven Esrig" <sesrig@stelorproductions.com>, "Paul Worsham" <paul@ujazz.com> |
| **Date:** | 9/13/2002 6:00:01 PM |
| **Subject:** | RE: Googles.com work |

Hi Paul/Steve:

As you may have noticed, the shopping links have been updated.

I would like to schedule some time with you tomorrow (Sat.) morning for a
phone conference. My colleague Alka Soni, who is managing the overall design
efforts would like to go over the theme for each site. Since Alka is based
in Germany, I think the best time for all of us is probably after 9am
pacific time. Please let me know if you can make it tomorrow - if not, we
can try to find another time good for all of us.

Thanks

Salil
-----Original Message-----
From: Paul Worsham [mailto:paul@ujazz.com]
Sent: Thursday, September 12, 2002 8:01 PM
To: arun@s-d.biz; Steven Esrig
Cc: Salil Kumar
Subject: Googles.com work


Salil/Arun,

1) It looks like the shops link for the CafePress site is not working (it
was up this afternoon).  I think that is due to their moving to a different
domain for hosting (they are not "dot gone", as they have a real business
model... and I like the shirt they sent to me yesterday!).

Please change the shopping links that we just added on Googles.com to go to
this link:

  http://www.cafeshops.com/googles

This is a priority, since we'd really like to see if people buy the designs
(I will be adding more as fast as I can).


2) Also, it is a GO! with Steve on your awesome designs... and the winner
is:

  http://s-d.biz/googles/goog2.0a1/design/googlesclient/home3.htm

  (Note: GewRue's eyes need to move differently - he is the gray one)

However, we would like to listen to the theme and idea behind each of the
sites, as envisioned by your designer(s).  I liked the little icons above
the links on design #1.

3) Note that one of the most common things that people do when the get to a
site is "search", so we will need that functionality and space on the home

page once there is enough content to search.  The search function should be
easy to find - probably on top.


Paul


CC:            "Alka Soni" <alka@s-d.biz>, "Arun" <arun@s-d.biz>

# Exhibit  H

## to Declaration
## of Paul Worshaw

Case 9:05-cv-80393-DTKH    Document 39    Entered on FLSD Docket 06/17/2005    Page 37 of 50

**From:**       "Paul Worsham" <paul@ujazz.com>
**To:**          "Steve Esrig" <sesrig@stelorproductions.com>
**Date:**       9/16/2002 7:54:11 PM
**Subject:**    CafePress.com account info

Steve,

The CafePress.com store can be logged in at this web address:

   http://www.cafepress.com

and the account info is:

  Account Name/
  Email Address: pworsham@googles.com
  Password: arun


As of 7:00pm today, there have not been any sales.


Paul

# Exhibit  B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA.

STELOR PRODUCTIONS, L.L.C.,
a Delaware corporation,
f/k/a STELOR PRODUCTIONS, INC.,

      Plaintiff,                        Case No. 05-80393-CIV-HURLEY

v.

STEVEN A. SILVERS, a Florida resident,

      Defendant.

_____

## <u>DECLARATION OF GAIL A. MCQUILKIN</u>

I, GAIL A. MCQUILKIN, declare under penalty of perjury that the following is based upon my personal knowledge and is true and correct, and that the email attached as Exhibit A is a true and correct copy.

1.     I am a partner and managing shareholder in the firm of Kozyak Tropin & Throckmorton, counsel for defendant, Steven A. Silvers ("Silvers"). I was also counsel for Silvers in the prior action before this Court entitled <u>Stelor Productions, Inc. v. Steven A. Silvers,</u> Civil Action No. 04-80954 (the "District Court Action").

2.     I am the attorney who has been primarily involved in the dispute between Silvers and Stelor Productions ("Stelor"), and the person with the most personal knowledge of the communications between this office and Stelor's counsel.

3.     On June 7, 2005, I sent an email to Cafepress.com inquiring as to the identity of the user of its service that established the "Googles" store on the Cafepress.com website.

4.     That afternoon, I received an email from Ryan Ellison, Content Usage Associate, providing me with the contact information of the user of the Cafepress.com service, a true and correct copy of which is attached as Exhibit A.   The contact information is Steve Esrig, 14701

1

Mockingbird Drive, Darnestown, Maryland 20874, email: sesrig@stelorproductions.com, telephone 301-963-3636.

Dated: June 15, 2005

Gail A. McQuilkin

/254534.1

2

# Exhibit  C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA.

STELOR PRODUCTIONS, L.L.C.,
a Delaware corporation,
f/k/a STELOR PRODUCTIONS, INC.,

       Plaintiff,                   Case No. 05-80393-CIV-HURLEY

v.

STEVEN A. SILVERS, a Florida resident,

       Defendant.

---

## DECLARATION OF RUSSELL TEWKSBURY

    I, Russell Tewksbury, declare under penalty of perjury that the following is based upon my personal knowledge and is true and correct:

    1.    I am an Internet Strategist and technology consultant, writer and lecturer with more than a decade of related experience. I have lectured about Internet technologies at key industry conferences in Europe, the Caribbean and throughout North America. My writings have been published in technology & communications journals/publications, distributed in more than one hundred countries. I am listed in a number of Marquis' Who's Who publications, including, but not limited to: Who's Who in the World; Who's Who in America and Who's Who in the Media and Communications.

    2.    I personally know Steven A. Silvers, and via public Whois look-up, have reviewed the domain name registration information for the googles.com domain name. I have also reviewed limited information (IP address and server data) pertaining to the Gootopia Website operated by Stelor Productions.

    3.    I submit this declaration in support of Steven A. Silvers' Motion to Strike Steven A. Esrig's Declaration, and Objection to Magistrate's Report and Recommendation.

1

---

2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 | Phone 305.372.1800 | Fax 305.372.3508 | kttlaw.com

4.    It is my understanding Stelor licensed from Silvers the right to use certain

trademarks and characters called the "Googles." It is my understanding Stelor created and

developed a Website that Stelor refers to as the "Gootopia Website." It is my understanding

Stelor incorporated the licensed property in the content of the Gootopia Website.

5.    It is my understanding Stelor is the owner, creator and operator of the Gootopia

Website. According to public Whois information, it appears Stelor Productions, Inc. entered into

a Web hosting agreement with Verio Inc. for a Virtual Private Server (VPS) shared-hosting

account.

6.    It is my understanding Stelor Productions, Inc. Gootopia Website is hosted on a

Verio Virtual Private Server shared-hosting account. The current name servers for the Gootopia

Website are: *ns1.secure.net* and *ns2.secure.net*. Verio, Inc, assigned Stelor an IP address of

128.121.122.247 for Stelor's VPS account where the Gootopia Website is currently hosted

(ARIN & RIPE IP search). The Gootopia Website server type is Apache/ 1.3.33 (Unix)

mod_jk/1.2.5 PHP/4.3.11 (Name Intelligence, Inc. Whois database Look-Up for googles.com).

7.    When Stelor created their Verio Web hosting account, Stelor was given a user-

login and password for their VPS server and Verio's customer administrative backroom and

product control panel. The user-login and password to Stelor's Verio VPS server provides

secure access for Stelor to their Gootopia Website and enables Stelor to control the content of

their Website. Unless Stelor gave their Verio VPS user-login and password information to a

third party, only they and Verio possess password-access to the VPS server where Stelor's

Gootopia website is hosted. Stated another way, unless Stelor has given their user-login and

password to Silvers, he does not have administrative access the server that hosts the Gootopia

Website, nor does he have any control over the content on the Gootopia Website.

8.    Any person wanting to view the Gootopia Website on the Internet can do so by

2

simply entering the numeric IP address 128.121.122.247; the user will be connected to the Gootopia Website.

9.      A Whois search reveals Silvers Ent. Group, Inc. listed as the registrant for the Googles.com domain name. As the lawful registrant for the Googles.com domain name, only Silvers should direct the DNS records that associate the Googles.com domain name with any particular IP address or name server(s).

10.     Up until recently, Silvers maintained the DNS records for the Googles.com domain name to point to Verio's name servers (ns1.secure.net and ns2.secure.net), which in turn directed website visitors to the IP address associated with Stelor's Gootopia Website. Simply stated, when a person typed in the domain name googles.com, they were connected to Stelor's Gootopia Website.

11.     It is my understanding when Silvers terminated the license agreement with Stelor, he logged into his Godaddy.com domain name account and directed the DNS records of the Googles.com domain name to point to a different IP address (Web server) hosting a Website he controls.

12.     Esrig's testified that because Silver directed the DNS records away from the Gootopia Website "Silvers shut down the (Gootopia) Website." It is my understanding Silvers was not a party to the Web hosting agreement between Stelor and Verio, Inc. That being the case, only Stelor and Verio had access to the (password protected) Gootopia Website, which Stelor created. Only Verio or Stelor has the ability to shut down the Gootopia Website. Access to the VPS server that hosts the Gootopia Website is an issue between Stelor and Verio, Inc. Unless Verio suspended Stelor's VPS account, the Gootopia Website remained accessible via IP address once Silvers pointed the DNS for his googles.com domain name to a different IP address (Web server) hosting a Website he controls.

3

13.    Esrig testified that because Silver directed the DNS records away from the Gootopia Website "Stelor no longer has access to the (Gootopia) Website." As previously stated, Stelor's access to the Gootopia Website is an issue between Stelor and Verio. Even if Verio suspended Stelor's VPS account –denying Stelor access to their VPS server, Silvers has no authority or ability to direct Verio to do anything relating to Stelor's account or access thereto. In addition, Stelor should have access to their Gootopia Website content through back-up copies. It is normal and customary for a Website developer to have back-up copies of their Website. Finally, Stelor has the option to contract with another Web hosting company (other than Verio) to host their Gootopia Website.

14.    Esrig testified that because Silver directed the DNS records away from the Gootopia Website "Silvers redirected the Website." This statement is incorrect. Silvers redirected the DNS for the Googles.com domain name to point to an IP address (Web server) under his control. Silver's action does not prohibit or restrict Stelor's ability to access, modify, alter or delete any content on their Gootopia Website.

15.    Esrig testified that because Silver directed the DNS records away from the Gootopia Website "Stelor can't operate the (Gootopia) Website without the googles.com domain name." That is incorrect. Stelor does not *need* the googles.com domain name to operate the Gootopia Website. The Gootopia Website exists completely independent of any domain name. If, by the word "operate," Esrig means to imply people can't access the Gootopia Website via the Internet, that is incorrect. All that his needed for the Gootopia Website to be accessible via the Internet, is a Web hosting account (Web server) and a publicly accessible IP address. If the preference is to have a domain name associated with the Gootopia Website, Stelor can register a multitude of other domain names and have those point to the Gootopia Website.

16.    Esrig testified that because Silver directed the DNS records away from the

4

Gootopia Website "Silvers took the Website (Gootopia) content." That is incorrect. Unless Stelor gave Silvers password access to their Verio VPS server where their Gootopia Website was hosted, Silvers is not able to remove or in any other way restrict Stelor's access to their Gootopia Website content. Only Stelor has that control.

17.     Esrig testified that because Silver directed the DNS records away from the Gootopia Website "Stelor can't demonstrate the site to anyone." That is incorrect. Stelor has multiple options to demonstrate the Gootopia Website. It can do so over the Internet using an IP address, or any other domain name it chooses. Or, it can demonstrate off-line on a local computer or from a DVD or CD-Rom.

Dated:  June 17, 2005


Russell Tewksbury

254545.1

5

2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 | Phone 305.372.1800 | Fax 305.372.3508 | ktflaw.com

# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-80954-CIV-HURLEY

STELOR PRODUCTIONS, INC.,
    plaintiff,

vs.

STEVEN A. SILVERS,
    defendant.

_____/

CLOSED CASE

## ORDER OF FINAL DISMISSAL WITHOUT PREJUDICE AND CLOSE-OUT

**THIS CAUSE** is before the court upon the parties' joint stipulation for dismissal without prejudice filed February 8, 2005. Having considered the stipulation, it is hereby

**ORDERED AND ADJUDGED:**

1. This case is **DISMISSED WITHOUT PREJUDICE**, with each side to bear its own costs and attorneys' fees.

2. There being nothing further for the court to resolve, it is further ordered that the Clerk of the Court shall enter the case as **CLOSED** and terminate all pending motions as **MOOT.**

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this _17_ day of February, 2005.

Daniel T. K. Hurley
United States District Judge

Copies furnished:
Adam T. Rabin, Esq.
Kenneth R. Hartmann, Esq.
Yano Rubinstein, Esq.

FILED by _MC_ D.C.
ELECTRONIC

Feb 8 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.· MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

STELOR PRODUCTIONS, INC.,
a Delaware corporation,

     Plaintiff,

v.

STEVEN A. SILVERS,
a resident of Palm Beach County, Florida

     Defendant.

CASE NO. 04-80954-CIV-HURLEY
Magistrate Judge James M. Hopkins

---

### JOINT STIPULATION FOR DISMISSAL,
### WITHOUT PREJUDICE, OF ALL CLAIMS

     Plaintiff, Stelor Productions, Inc. and Defendant Steven A. Silvers, hereby jointly stipulate,

pursuant to Fed.R.Civ.P.41(a)(1), to the dismissal, without prejudice, of all claims asserted by each

party against the other party in this action.

     Respectfully submitted,

Adam T. Rabin
DIMOND KAPLAN & ROTHSTEIN, PA
200 S.E. First Street, Suite 708
Miami, FL 33131
T: 305-374-1920
Co-Counsel for Defendant

Kenneth R. Hartmann  (FBN: 664286)
Gail A. McQuilkin  (FBN: 969338)
KOZYAK TROPIN & THROCKMORTON, PA
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
T: 305-372-1800  /  F: 305-372-3508
Counsel for Defendant

Yano L. Rubinstein, Esq.
SUMMERS RUBINSTEIN
580 California Street, 16th Floor
San Francisco, California 94104
Counsel for Plaintiff

3339/101/249255.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

STELOR PRODUCTIONS, L.L.C., a
Delaware corporation, f/k/a STELOR
PRODUCTIONS, INC.,

      Plaintiff,

v.

STEVEN A. SILVERS, a Florida resident,

      Defendant,

_____/

CASE NO. 05-80393-CIV-HURLEY
Magistrate Hopkins

### NOTICE OF FILING DECLARATION OF GAIL M. McQUILKIN

Defendant, Steven Silvers, hereby gives notice of filing the attached Declaration of Gail M.

McQuilkin.

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing was hand-delivered this

_____ day of June, 2005, to: Kevin C. Kaplan, Esq., Daniel F. Blonsky, Esq. and David Zack, Esq.,

Burlington, Weil, Schwiep, Kaplan & Blonsky, P.A., Counsel for Plaintiff, Office in the Grove,

Penthouse A, 2699 South Bayshore Drive, Miami, FL 33133.

                        Respectfully submitted,

DIMOND KAPLAN & ROTHSTEIN, P.A.
Co-Counsel for Defendant
200 S.E. First Street, Suite 708
Miami, FL 33131
Telephone: (305) 374-1920
Adam T. Rabin, Esq.

KOZYAK TROPIN & THROCKMORTON, P.A.
Counsel for Defendant
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800

_____
Kenneth R. Hartmann
Florida Bar No: 664286
Gail M. McQuilkin
Florida Bar No. 969338

3339/101/254549.1