UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA.



FILED by _____ D.C.

JUN 1 7 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · W.P.B

STELOR PRODUCTIONS, L.L.C.,
a Delaware corporation,
f/k/a STELOR PRODUCTIONS, INC.,

      Plaintiff,                  Case No. 05-80393-CIV-HURLEY

v.

STEVEN A. SILVERS, a Florida resident,

      Defendant.

_____

## DECLARATION OF GAIL A. MCQUILKIN

     I, GAIL A. MCQUILKIN, declare under penalty of perjury that the following is based upon my personal knowledge and is true and correct, and that all emails and letters attached as Exhibits are true and correct copies.

     1.      I am a partner and managing shareholder in the firm of Kozyak Tropin & Throckmorton, counsel for defendant, Steven A. Silvers ("Silvers"). I was also counsel for Silvers in the prior action before this Court entitled <u>Stelor Productions, Inc. v. Steven A. Silvers</u>, Civil Action No. 04-80954 (the "District Court Action").

     2.      I am the attorney who has been primarily involved in the dispute between Silvers and Stelor Productions ("Stelor"), and the person with the most personal knowledge of the communications between this office and Stelor's counsel.

     3.      I was unable to attend the May 23, 2005 preliminary injunction hearing before Magistrate Judge Hopkins due to a prearranged trip out of the country from May 13 – 31. Prior to my departure on this trip, I had a telephone conversation with Stelor's counsel, Kevin Kaplan, in which I informed him that I was leaving to go out of the country. Mr. Kaplan asked me if I was attending the hearing. I informed him that I was not, but that my partner Ken Hartmann would be there. On the morning of the hearing, Stelor filed a lengthy declaration from its

president, Steven Esrig, and one from Mr. Kaplan, containing a few emails from me that they represented to be the bulk of my communications regarding Stelor's performance under the Settlement Agreement. Esrig also attributed several unsubstantiated statements to me, which were untrue. And, as shown below, these emails were but a small fraction of the dozens of emails I had exchanged with Mr. Kaplan, and Stelor's prior counsel, asking for Stelor to comply with the Settlement Agreement.

4.      This declaration is submitted in support of Silvers' Objection to the Magistrate Judge's Report and Recommendation, and to provide the Court with the true facts that support Silvers' lawful right to terminate the License Agreement.

## I.      Silvers Initial Right To Terminate the License Agreement

5.      Paragraph V (A) and (C) of the License Agreement between Silvers and Stelor Productions ("Stelor") gives Silvers, the Licensor, the right upon 30 days notice to audit the books and records of Stelor. *See* Exhibit A. On November 5, 2004, I sent notice to Stelor that Silvers wanted the audit and sought for a date that the audit can take place. *See* Exhibit B. On or about November 10, 2004, Stelor's counsel informed me that Stelor would not permit the audit.

6.      The License Agreement also gives Silvers the contractual right to terminate the License Agreement once he provides Stelor with notice that it is in breach, and gives Stelor 60 days to cure the breach. *See* Exhibit C. On November 12, 2004, I sent Stelor the requisite 60-day notice of its numerous breaches of the License Agreement, the failure to permit the audit being just one of many breaches. *See* Exhibit D. This letter was not "notice of termination of the License Agreement" but notice to Stelor that it had 60 days to cure its breaches as required under the License Agreement, in order to remain as licensee. In fact, this provision gives Silvers 60-days to consider whether he will exercise the option to terminate.

7.      Stelor failed to cure a single breach within the 60-day cure period. On January

2

11, 2005, Silvers exercised his right to terminate the License Agreement, and on January 13, 2005, I sent Stelor a notice of termination of the License Agreement advising it that the post-termination provisions now controlled. *See* Exhibit E.

## II.     The Settlement Agreement

8.     Once terminated, Stelor's counsel approached me to negotiate a settlement. I worked with Stelor's then counsel, Yano Rubinstein, Esq., to negotiate the dispute, including the pending claims each party had filed against the other in the District Court Action. I participated in drafting the Settlement Agreement between the parties that was executed on January 28, 2005. *See* Exhibit F.

9.     In the Settlement Agreement, the parties preserved their positions and claims asserted in the District Court Action. As reflected in the fifth WHEREAS clause in the Settlement Agreement, the parties intended that only by virtue of Stelor's full performance of its obligations under the Settlement Agreement would Stelor's breaches of the License Agreement be considered cured.

10.     Consistent with this intent, in paragraph 3 of the Settlement Agreement, Silvers agreed to "withdraw his notice of termination of the Licensing Agreement." Stelor acknowledges that the notice of termination of the License Agreement is the January 13, 2005 letter. Silvers *never* agreed to withdraw his 60-day notice to Stelor regarding its breaches or to provide Stelor with a second 60-day cure period if it did not perform under the Settlement Agreement. Silvers agreement to withdraw the termination was premised entirely upon Stelor's full performance under the Settlement Agreement. That is why there is no release provision in the Settlement Agreement or a provision requiring Silvers to give additional notice to Stelor of its failure to perform, or an additional cure period. The Settlement Agreement is terminable at will, and if terminated the parties are simply restored to their pre-settlement position.

3

11.     Esrig's sworn statement that this dispute was "entirely resolved by the parties, pursuant to the Confidential Settlement Agreement," and by virtue of "a stipulation of dismissal with prejudice" of the District Court Action, is patently false.   Silvers agreed to dismiss his claims against Stelor **without prejudice** to protect his right to re-file an action against Stelor if necessary.   And that is what this Court expressly ordered. *See* Exhibit G.

**III.     Stelor Refuses To Adhere to The Settlement Agreement**

A.     The Audit

12.     Esrig's sworn statement that the first time I asked for an audit after the Settlement Agreement was April 22, 2005 is completely false.   Starting February 1, 2005 - two days after the Settlement Agreement was signed – until April 26, 2005, the day before Silvers reinstated the termination, I repeatedly asked for an audit date.   Stelor either refused to respond, or stonewalled.

13.     On February 1, 2005, I sent an email to Mr. Rubinstein, Stelor's counsel, asking him to, among other things, provide a date for the audit. *See* Exhibit H.   Two weeks later on February 15, 2005 I sent another email to Mr. Rubinstein asking him whether he had confirmed a date for the audit. *See* Exhibit I.   Portions of the email are redacted to protect confidential litigation strategy relating to Google, Inc.

14.     I received no response confirming an audit date.   A week later on February 22, 2005, I sent an email to Mr. Rubinstein asking him for, among other things, a date for the audit. *See* Exhibit J.   Another week passed without a response to my request for an audit date.

15.     On or around March 1, 2005, I learned that Mr. Rubinstein was no longer representing Stelor, and that I should communicate with Mr. Kaplan, Stelor's then local counsel. On March 2, 2005 I sent an email to Mr. Kaplan advising him that Stelor needed to provide a date for the audit. *See* Exhibit K.   Portions of the email are redacted to protect confidential

4

litigation strategy relating to Google, Inc.

16.     On March 5, 2005, I received a response from Mr. Kaplan that Stelor will provide an audit date prior to March 15. *See* Exhibit L.

17.     On that same day I sent a reply email letting Mr. Kaplan know that they must comply with the audit request immediately, giving him three days to provide us with an audit date. *See* Exhibit M. Portions of the email are redacted to protect confidential litigation strategy relating to Google, Inc.

18.     Stelor did not provide me with an audit date within three days, and did not provide an audit date by March 15, 2005 as stated by Mr. Kaplan in his March 5, 2005 email. Over the next five days I called Mr. Kaplan about the audit but he would not confirm a date. On March 22, 2005, I sent another email to Mr. Kaplan again asking for a date for the audit. *See* Exhibit N.   Stelor continued to stonewall, and rather than cooperate and provide me with an audit date, Mr. Kaplan responded to me that he wanted to see a document that would confirm the scope of the audit. *See* Exhibit O. That same day I responded to Mr. Kaplan informing him that the scope of the audit is set out in the License Agreement. *See* Exhibit P.

19.     Tired of Stelor's stonewalling, I told Mr. Kaplan in a telephone conversation that the audit would take place on April 26, 2005 and asked for confirmation that the auditor would be permitted onsite at Stelor. He told me he would check with Stelor and get back to me. On or about April 10, 2005, I had a telephone conversation with Mr. Kaplan in which he informed me "Stelor was going through some personnel changes" and April 26, 2005 would not work, but did not suggest alternate dates. It had now been almost 90 days since the Settlement Agreement was executed and Stelor was still refusing to cooperate with the audit.

20.     While I was patiently waiting for Stelor to cooperate with the audit, I was working on a draft complaint against Google, Inc. for trademark infringement. I needed Stelor's

5

cooperation in providing me information about the work it did to develop the Gootopia Website and related projects.   As reflected in my email to Mr. Kaplan dated April 7, 2005, by this date Stelor had not provided me this information. *See* Exhibit Q.

21.     On or about April 11, 2005 I had a telephone conversation with Mr. Kaplan in which I told him that Silvers would reinstitute the termination of the License Agreement if Stelor continued to refuse to adhere to its obligations under the Settlement Agreement, including providing me with a date for the audit.  That evening, I received an email directly from Esrig in which in advised me that the Stelor board was not interested in "adherence to the license and settlement agreement" and that that he would be happy to see us "finance Mr. Silvers' next lawsuit with Stelor."   He also informed me that only when I provide them with a copy of the draft complaint against Google, Inc. I had drafted would Stelor comply with their obligations to Silvers under the Settlement Agreement.  *See* Exhibit R.

22.     On April 12, 2005, in response to Mr. Esrig's email, I sent a lengthy email to Mr. Kaplan explaining that:  (a) I had no obligation to provide my work product to them; (b) why a complaint of this magnitude takes time to develop; (c) asking that Esrig not contact me directly; (d) asking Stelor to please comply with its obligations under the Settlement Agreement; and (e) once again for Stelor to cooperate by providing me information I needed to prepare the complaint.  *See* Exhibit S.  Portions of the email are redacted to protect confidential litigation strategy relating to Google, Inc.

23.     On April 13, 2005, I sent an email to Mr. Kaplan again asking for a response for the audit date letting him know that Silvers was very frustrated with Stelor's non-performance. *See* Exhibit T.

24.     On Friday April 22, 2005, I sent an email to Mr. Kaplan once again attempting to persuade him to provide a date for the audit by suggesting possible dates. *See* Exhibit U.    That

6

same day Mr. Kaplan responded that he now had several boxes of information from Stelor for the complaint, but completely ignored my question about the audit dates. *See* Exhibit V.   I promptly replied to Mr. Kaplan's email asking about the audit dates. *See* Exhibit W.  Mr. Kaplan responded by saying he had passed this on to Esrig, but giving no indication what that meant. *See* Exhibit X.

25.    On Monday April 25, 2005, I received an email from Mr. Kaplan that contained no response to my last request for an audit date. *See* Exhibit Y.  Promotly, I responded to Mr. Kaplan again asking for the audit date. *See* Exhibit Y.  I received an email response from Mr. Kaplan that once again ignored my question about the audit date, but demanding to know when the complaint I was drafting would be ready. *See* Exhibit Y.  On April 26, 2005, I received a lengthy email from Mr. Kaplan but it made no mention of an audit date. *See* Exhibit Z.

B.    <u>Samples of Licensed Product</u>

26.    Paragraph VI-C of the License Agreement requires that before commencement of the manufacture and sale of Licensed Product, Stelor shall provide Silvers with a reasonable number of samples of all such Licensed Product and all related advertising and promotional materials. *See* Exhibit AA.  Licensed Product is defined in comprehensive terms. *See* Exhibit AA, page 2.

27.    Stelor's repeated failure to provide samples of Licensed Product and advertising and promotional materials to Silvers was one of the many breaches that led Silvers to terminate the License Agreement.

28.    Under paragraph 15 of the Settlement Agreement, Stelor agreed to cure this breach and provide Silvers with samples of the products it was offering for sale. *See* Exhibit F.

29.    On March 2, 2005, I sent an email to Mr. Kaplan asking him for the samples. *See* Exhibit BB, page 2.  On March 5, 2005, Mr. Kaplan sent an email to me stating, "there are no

7

such samples, as Stelor is not yet offering any product for sale." *See* Exhibit CC.   Skeptical of the truth of that statement, I responded to Mr. Kaplan that Stelor needed to provide us with that statement signed under oath. *See* Exhibit DD.

30.     On March 8, 2005, Esrig provided a sworn declaration that Stelor had no products offered for sale "except for the music available on [I]tunes." *See* Exhibit FF.  Because Stelor had never reported such sales on any royalty statement, I asked Stelor to provide proper royalty statements for the last two quarters of 2004 to reflect the Itunes sales.   When Stelor failed to provide such royalty statements, Silvers tried to uncover the sales through Itunes.  He discovered that the Googles music was one of the world's most downloaded children's songs. *See* Exhibit EE.  Yet, Stelor had not reported a single penny of sales or provided Silvers with any statements as required under the License Agreement.

31.     And, contrary to Esrig's sworn statement, Silvers discovered that Stelor had been offering Googles merchandise for sale online through Cafepress.com since 2002 yet he had never been provided a single sample of the merchandise.  On March 9, 2005, I notified Mr. Kaplan about the discrepancy between Esrig's sworn statement and what we had discovered. *See* Exhibit GG.  Portions of the email are redacted to protect confidential litigation strategy relating to Google, Inc.

32.     On or about March 20, 2005, Silvers discovered that Stelor had placed an advertisement relating to its appearance at the upcoming 2005 International Licensing Show in which it references the launch of a totally new web site.  On March 23, 2005, I called Mr. Kaplan and asked him why Silvers had not been provided with the advertisement.  Mr. Kaplan asked me to send him the advertisement, which I did. *See* Exhibit HH.  I received no response.

33.     Other than two CDs and one color folder, I received no samples of Licensed Product from Stelor.   Esrig's sworn statement that Mr. Kaplan advised me on April 26, 2005

that samples were in his office for review is absurd. Mr. Kaplan's April 26, 2005 email refers to the information I had been waiting for from Stelor to complete the general allegations in the draft complaint against Google, Inc. *See* Exhibit Z. The relevant email exchange between Mr. Kaplan and myself is attached as Exhibits W, Y and Z.

      C.     <u>Reimburse Silvers For Past Health Insurance Payments</u>

      34.     Paragraph 10(c) of the Settlement Agreement required Stelor to reimburse Silvers for health insurance payments he had made to Aurora Collections during his tenure as consultant to Stelor within 15 days of providing some form of proof of payment. See Exhibit F. Because Silvers did not have canceled checks, Brian Blumquist of Aurora Collections complied a very detailed chart listing the payments made by Silvers to Aurora. On February 15, 2005, I sent Mr. Rubinstein an email attaching the chart. *See* Exhibit II. I received no confirmation that payment would be made. On February 22, 2005, I sent an email to Mr. Rubinstein asking him to please confirm that payment to reimburse Silvers would be sent by the end of the month. See Exhibit JJ. Still, no payment.

      35.     After I learned that Mr. Kaplan had replaced Mr. Rubinstein as Stelor's counsel, I sent an email to him on March 2, 2005 again attaching the chart of payments provided by Aurora Collections and asking when reimbursement for these payments would be sent. *See* Exhibit KK.

      36.     On March 3, 2005, I sent an email to Mr. Kaplan again asking him when we would receive the payment to reimburse Silvers for the insurance premium payments. *See* Exhibit LL. On March 5, 2005, Mr. Kaplan responded to my email by saying that "Stelor finds the chart confusing" and asking for additional proof of payment. *See* Exhibit MM.

      37.     On March 5, 2005, I sent an email to Mr. Kaplan refuting that the chart is confusing, and giving Stelor 3 additional days to comply with this provision of the Settlement Agreement. *See* Exhibit NN.

38.     In mid-March, Mr. Kaplan told me that Stelor now wanted a statement from Brian Blumquist confirming that Silvers had made these payments. On April 1, 2005, I provided to Mr. Kaplan a copy of a letter Mr. Blumquist sent to me electronically. *See* Exhibit OO.  The letter invited Mr. Kaplan or Stelor to call him if they needed additional information.

39.     Continuing to stonewall, Mr. Kaplan added another condition, requesting that he be provided an actual signed letter even though the letter was clearly an electronic communication.  I responded to Mr. Kaplan that he should call Mr. Blumquist to verify this letter.  This email exchange is attached as Exhibit PP.

D.     Advance Royalty Payments

40.     Under paragraph 10 (a) and (b) of the Settlement Agreement, Stelor was required to pay Silvers by the first of the month beginning February 1, 2005, two monthly royalty advances:  one for $5,000 and one to cover the cost of Silvers' health care premiums.  *See* Exhibit F.

(i)     The $5,000 Monthly Advance

41.     Immediately after the Settlement Agreement was executed, on February 1, 2005, I sent an email to Mr. Rubinstein telling him to have all checks for Silvers made out to Silvers Entertainment Group. *See* Exhibit QQ.  On February 7, 2005, I received a check from Stelor for the $5,000 royalty advance required under paragraph 10(a) of the Settlement Agreement - the check was made out to Steven Silvers rather than Silvers Entertainment Group as instructed by me six days earlier.  I called Mr. Rubinstein and he instructed me to send the check back to Stelor to the attention of Mike Sagan. *See* Exhibit RR.

42.     By February 22, 2005, I had yet to receive the first payment Stelor was obligated to make under paragraph 10(a).  On February 22, 2005, I sent an email to Mr. Rubinstein asking

10

him to confirm that February's payment was sent, and that we would have the March payment on time. *See* Exhibit SS.

43.    After learning the Mr. Kaplan had replaced Mr. Rubinstein, on March 2, 2005, I sent an email to him advising him that Stelor had not sent the $5000 checks for February and March. *See* Exhibit TT. I followed this email with another email on March 3, 2005 making the same inquiry. *See* Exhibit UU.

44.    On the afternoon of March 3, 2005, I finally received the $5,000 payments for February and March.

45.    On April 5, 2005, five days late, I received the April $5,000 payment. A copy of the Federal Express package containing the check is attached as Exhibit VV. The check, however, was once again made out to Steven Silvers, not Silvers Entertainment Group as previously requested. On April 7, 2005, I sent an email to Mr. Kaplan asking the status of the payments owed to Silver. *See* Exhibit WW. On April 8, 2005, I sent an email to Mr. Kaplan again asking about the payment and asking why Stelor continues to make out the checks to Silvers in his own name, rather than as we instructed twice before. *See* Exhibit XX.

46.    On April 8, 2005 I received an email from Stelor's administrative person stating that a replacement check would be sent out. *See* Exhibit YY

47.    On April 11, 2005, I received an email from Esrig stating that Stelor would not make the payments owed to Silvers unless I provided them a copy of the complaint I was drafting against Google, Inc. *See* Exhibit ZZ.

11

(ii)    The Health Insurance Premium Payment

48.    Esrig's sworn statement that Silvers was required to provide Stelor with evidence of paid premiums before Stelor is obligated to make the second payment under paragraph 10 (b) of the Settlement Agreement is intentionally misleading.  There is no such language in paragraph 10(b).  *See* Exhibit F.  Furthermore, we advised Stelor on February 15, 2005 what the current premium was.  *See* Exhibit AAA.

49.    After learning that Mr. Kaplan had replaced Mr. Rubinstein, on March 2, 2005, I sent an email to him with the chart prepared by Aurora Collections showing the current premium amounts and advising him that we had not received payment for February or March.  *See* Exhibit BBB.  On March 3, 2005, I sent another email to Mr. Kaplan asking for response on the status of the payments.  See Exhibit CCC.  That afternoon I received checks from Stelor for the two missing $5,000 payments, but nothing for the health care premiums.  On March 5, 2005, I sent an email to Mr. Kaplan advising him that we had not received the 10(c) payment.  *See* Exhibit DDD.

50.    On or around the beginning of April, Mr. Kaplan informed me that Stelor now determined that they would require Silvers to sign a declaration that he needed $1,000 per month to maintain his health insurance coverage before they would make the payments.  On April 5, 2005, I sent Mr. Kaplan that declaration.  *See* Exhibit EEE.

51.    On April 7, 2005, I sent an email to Mr. Kaplan asking him the status of the checks.  *See* Exhibit FFF.  I received no response.

52.    On April 8, 2005, I sent an email to Mr. Kaplan again asking for the February, March and now April insurance premium payments.  *See* Exhibit GGG.

53.    On April 11, 2005, I received an email from Esrig stating that Stelor would not make the payments owed to Silvers unless I provided them a copy of the complaint I was

12

drafting against Google, Inc. *See* Exhibit HHH.

54.     On April 14, 2005, Stelor finally sent the payments owing for February and March, but neglected to send the April payment. On April 17, 2005, I sent Mr. Kaplan an email confirming that I received two payments but that Stelor owed another payment for April. *See* Exhibit III. I received no response to my email.

E.     Stelor Has Refused to Perform Other Obligations Under the Settlement

55.     Stelor has not provided to me Silvers' unit interest in Stelor LLC as required under paragraph 9 of the Settlement Agreement.

56.     Stelor has not provided to me certified royalty statements for the third and fourth quarter of 2004 as required under paragraph III-A of the License Agreement.

IV.     **Silvers Reinstates His Termination of The Licensed Agreement**

57.     By April 26, 2005, more than 90 days had passed and Stelor had not cooperated with the audit (in fact, it had been over 4 months since our initial audit request), and had simply refused to cure its breaches of the License Agreement by full performance under the Settlement Agreement. Accordingly, Silvers exercised his right to reinstate his notice that the License Agreement is terminated. On April 27, 2005, I sent a letter to Stelor similar to the one I had sent on January 13, 2005, to advise Stelor that the License Agreement was terminated and the post-termination provisions controlled. See Exhibit JJJ.

58.     True to Stelor's past performance of refusing to comply with its obligations until the License Agreement is terminated, Stelor's counsel sent a letter to me on April 29, 2005 offering to perform **if** Silvers withdrew the termination. *See* Exhibit KKK.

Dated: June 15, 2005

Gail A. McQuilkin

==================================================================================

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this ___17___ day of June, 2005, to:   Kevin C. Kaplan, Daniel F. Blonsky and David Zack at Burlington Weil Schwiep Kaplan & Blonsky, P.A., 2699 S. Bayshore Drive, Penthouse A, Miami, FL  33133.

3339.101/254343.1

14

# Exhibit A

E.    All payments due hereunder shall be made in United States currency drawn on a United States bank, unless otherwise specified between the parties and may offset or be offset from any other payments due to LICENSEE under this or any other agreement between the parties.

F.    Late payments shall incur interest at the rate of ONE PERCENT (1%) per month from the date such payments were originally due.

## IV. AUDIT

A.    LICENSOR shall have the right, at its own expense, to have a nationally recognized certified public accounting firm, upon at least thirty (30) days written notice and no more than twice per calendar year, to inspect during normal business hours, LICENSEE's books and records and all other documents and material in the possession of or under the control of LICENSEE with respect to the subject matter of this Agreement at the place or places where such records are normally retained by LICENSEE.

B.    In the event that such inspection reveals an underpayment discrepancy greater than 5% of the amount of Royalty owed LICENSOR from what was actually paid, LICENSEE shall have the opportunity to conduct its own audit.  If LICENSEE agrees to the amount, if any, of any discrepancy, LICENSEE shall pay such discrepancy, plus interest, calculated at the rate of ONE AND ONE-HALF PERCENT (1 1/2%) per month.  Upon settlement of any underpayment discrepancy, no further audit by LICENSOR shall be requested that year.  That period end date shall represent the new period start date for future audits for underpayment discrepancies.  In the event that such discrepancy is in excess of TEN THOUSAND UNITED STATES DOLLARS ($10,000.00), LICENSEE shall also reimburse LICENSOR for the cost of auditing fees in connection therewith.

C.    All books and records relative to LICENSEE's obligations hereunder shall be maintained and kept accessible and available to LICENSOR for inspection for at least three (3) years after the expiration of the initial or any subsequent term.

D.    In the event that an investigation of LICENSEE's books and records is made, certain confidential and proprietary business information of LICENSEE may necessarily be made available to the person or persons conducting such investigation. It is agreed that such confidential and proprietary business information shall be held in confidence by LICENSOR and shall not be used by LICENSOR or disclosed to any third party for a period of two (2) years from the date of disclosure, or without the prior express written permission of LICENSEE unless required by law, except LICENSOR may not disclose at any time to any third party any such confidential and proprietary business information which are trade secrets of LICENSEE. It is understood and agreed, however, that such information may be used by LICENSOR in any proceeding based on LICENSEE's failure to pay its actual Royalty obligation.

## V. WARRANTIES AND OBLIGATIONS

A.    LICENSOR represents and warrants that:

(i)    the execution, delivery and performance of this Agreement have been duly authorized by all necessary action of LICENSOR and this Agreement is a valid and binding obligation of LICENSOR, enforceable in accordance with its terms;

(ii)    the execution, delivery and performance by LICENSOR of this Agreement will not violate or conflict with any applicable U.S. law or regulation, or any order, writ, judgment or decree of any court or governmental authority to which LICENSOR is subject, or result in a violation, breach of, or default under any contract, lease, or other agreement binding on LICENSOR;

(iii)    LICENSOR owns the exclusive rights in and to the Licensed Intellectual Property, Licensed Trademarks, Licensed Patents and Licensed Copyrights necessary to effectuate the granting of the Licensing Rights from the LICENSOR to the LICENSEE as contemplated herein.

3

Exhibit  B

Kozyak Tropin & Throckmorton, P.^

2525 Ponce de Leon, 9ᵗʰ Floor
Coral Gables, Florida 33134

Gail A. McQuilkin
gam@kttlaw.com

Telephone (305) 372-1800
Fax (305) 372-3508

Via Overnight Delivery
Federal Express Tracking No. 7903-2948-5586

November 5, 2004

Steven A. Esrig
President
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland  20874

     Re:    Silvers/Stelor License Agreement

Dear Mr. Esrig:

We represent Steven Silvers, Licensor under the License, Distribution and Manufacturing Agreement dated June 1, 2002 ("Agreement"). Pursuant to Paragraph IV of the Agreement, this will serve as the Licensor's 30-day notice to Stelor that Mr. Silvers is exercising his right to have a certified public accountant conduct an audit of Stelor's "books and records and all other documents and material in the possession of or under the control of" Stelor that relate to this Agreement, the Licensed Intellectual Property and the Licensed Products.  In addition to Stelor's books and records, the particular documents and other material that should be made available for this audit include:

1.     All documents, including advertisements, marketing materials, correspondence, agreements, and letters of intent,  that show your efforts to "promote, market, sell and distribute" the Licensed Products;

2.     All sublicenses;

3.     All copyright and trademark registration applications and registrations;

4.     All domain name registrations;

5.     All documents regarding enforcing rights as to third-party uses of the Licensed Intellectual Property; and

6.     Proof of insurance as required under Paragraph XIV.

Page 2


In addition, Mr. Silvers is requesting that a number of samples of all Licensed Products manufactured, or in production be produced during this audit.

You, or your counsel, should schedule and coordinate the audit through us by providing us with a date and location.

Very truly yours,

Gail A. McQuilkin

c:    Steven Silvers
      Kenneth R. Hartmann, Esq.

/245617.1

Exhibit  C



## VIII. INTELLECTUAL PROPERTY PROTECTION

A.      LICENSOR hereby grants LICENSEE all right, power and interest to seek, obtain and maintain all Intellectual Property Rights associated with the Licensed Intellectual Property and Licensed Trademarks, Licensed Copyrights and any other Intellectual Property Rights granted herein. LICENSOR further agrees to assist LICENSEE as may be required to apply for and obtain recordation of and from time to time enforce, maintain and defend such Intellectual Property Rights. LICENSOR hereby grants LICENSEE an irrevocable power of attorney for the initial and any subsequent terms of this Agreement to act for and on LICENSOR's behalf and instead of LICENSOR, at LICENSEE's expense, to execute and file any such document(s) and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by LICENSOR.

B.      LICENSOR shall retain all rights, title and interest in the Licensed Intellectual Property and Licensed Trademarks and any modifications thereto based solely on such Licensed Intellectual Property. LICENSEE acknowledges LICENSOR's exclusive rights in the Licensed Intellectual Property and, further, acknowledges that the Licensed Intellectual Property and/or the Licensed Trademarks rights are unique and original to LICENSOR and that LICENSOR is the owner thereof. LICENSEE shall not, at any time during or after the effective Term of the Agreement, dispute or contest, directly or indirectly, LICENSOR's exclusive right and title to the Licensed Intellectual Property and/or the Licensed Trademarks(s) or the validity thereof.

C.      LICENSEE agrees that its use of the Licensed Intellectual Property and/or the Licensed Trademarks(s) inures to the benefit of LICENSOR and that the LICENSEE shall not acquire any rights in the Licensed Intellectual Property and/or the Licensed Trademarks(s) except for the license granted herein

D.      LICENSOR shall retain all rights, title and interest in and to the Licensed Intellectual Properties. The LICENSOR owns the exclusive rights to the Licensed Intellectual Property. LICENSOR hereby waives and releases LICENSEE from any and all current or future claims or causes of actions by third parties, whether known or unknown, arising out of or relating to such Licensed Intellectual Properties including, but not limited to, any claim that Licensed Products violate, infringe on or misappropriate any of LICENSOR's Intellectual Property Rights.

E.      Each party shall execute all papers, testify on all matters, and otherwise cooperate in every way necessary and desirable to effect any of the provisions under this Section (Intellectual Property Protection). The party requesting such shall reimburse the other party for the expenses incurred as a result of such cooperation. The parties agree to take any actions or prepare or execute any documents reasonably requested by the other party. Furthermore, during the term of this agreement, LICENSOR shall not initiate or maintain any relationship or conversations with LICENSEE'S current or prospective clients, vendors, any Company relationships with the media (press etc.) without the prior express written request by LICENSEE.

## IX. TERMINATION

A.      Right to Terminate on Notice. This Agreement may be terminated by either party upon sixty (60) days written notice to the other party in the event of a breach of a material provision of this Agreement by the other party, provided that, during the sixty (60) days period, the breaching party fails to cure such breach



Exhibit  D

LAW OFFICES

# Kozyak Tropin & Throckmorton, P.A.

2525 PONCE DE LEON • 9TH FLOOR

CORAL GABLES, FLORIDA 33134-6037

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

Via Federal Express
AWB#7927-7747-7745

November 12, 2004

Steven A. Esrig
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland 20874

Re:    Silvers/Stelor License Agreement

Dear Mr. Esrig:

We represent Steven Silvers, Licensor under that License, Distribution and Manufacturing Agreement dated June 1, 2002 ("Agreement"). Pursuant to paragraph IX-A of the Agreement, this serves as notice that Stelor has breached the Agreement and that Mr. Silvers will exercise his right to terminate the Agreement unless Stelor cures the following breaches within 60 days:

a.    Failure to pay royalties under paragraph III (A);

b.    Failure to provide a written certified royalty statement under paragraph III (C);

c.    Failure to provide a list of all sub licenses under paragraph III (C);

d.    Failure to use commercially reasonable efforts to promote, market, sell and distribute the Licensed Products under paragraph V (B)(iii);

e.    Failure to accommodate Licensor's request to audit the books and records of Stelor made under paragraph IV (A) and (C);

f.    Failure to provide samples of all Licensed Products you intend to manufacture and sell, and all promotional and advertising materials associated with those products under paragraph VI (C);

g.    Failure to include appropriate legal notices with the Licensed Products under paragraph VI(A);

h.    Failure to maintain the requisite level of quality for the Licensed Products under paragraph VI (B);

Page 2

     i.      Failure to maintain Licensor's Intellectual Property Rights, namely failure to maintain the domain names googlegame.com, googlesgames.com, and googlegame.com, under paragraph VIII;

     j.      Failure to register Licensor's Intellectual Property Rights in the name of Licensor, and instead registering copyrights and trademarks in Stelor's name;

     k.      Failure to oppose trademark applications for the name Googles, and the domain name registration googles.org, and otherwise protect the Licensed Intellectual Property; and

     l.      Unlawful use of the limited power of attorney granted under the Agreement, namely retaining counsel for Mr. Silvers without his knowledge or consent, filing an action in the name of Mr. Silvers to dispute Google, Inc.'s right to use the domain name google.com, and filing an answer in the name of Mr. Silvers in Cancellation Proceeding 92043737.

This also serves as notice under the Letter Agreement dated June 1, 2002, that Stelor has breached the Letter Agreement by its:

     a.  Failure to pay Mr. Silvers consultancy fees and expenses;

     b.  Failure to provide Mr. Silvers with an agreement granting him stock options for 1,000 shares of Stelor's stock;

     c.  Making unauthorized statements and representations on behalf of Mr. Silvers; and

     d.  Attempting to transfer, release and waive Mr. Silvers right, title, and interest in his intellectual property.

Pursuant to paragraph 1 of the Letter Agreement, Mr. Silvers will exercise his right to terminate the License, Distribution and Manufacturing Agreement unless Stelor cures these breaches within 30 days.

Very truly yours,

Gail A. McQuilkin

c:    Steven A. Silvers
      Laurence Hefter

/245615.1

# Exhibit E

LAW OFFICES

# KOZYAK TROPIN & THROCKMORTON, P.A.

2525 PONCE DE LEON • 9TH FLOOR
CORAL GABLES, FLORIDA 33134–6037

GAIL A. MCQUILKIN
DIRECT DIAL (305) 377-0656
gam@kttlaw.com

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

Via Federal Express
AWB# 7914-4506-9106

January 13, 2005

Steven A. Esrig
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland 20874

Re:     Silvers/Stelor License Agreement

Dear Mr. Esrig:

As you know we represent Steven Silvers, Licensor under the License, Distribution and Manufacturing Agreement dated June 1, 2002 ("License Agreement"), and party to the Letter Agreement dated June 1, 2002 ("Letter Agreement"). On November 12, 2004 we served notice on Stelor that it was in breach of several material provisions of both the License Agreement and Letter Agreement, a copy of which is attached.

Pursuant to paragraph 1(c) of the Letter Agreement, and paragraph IX-A of the License Agreement, this serves as notice that Mr. Silvers is exercising his option to terminate the License Agreement for Stelor's failure to cure its breach of the Letter Agreement within thirty (30) days, and breach of the License Agreement within sixty (60) days.

Pursuant to paragraph X of the License Agreement, Stelor must immediately provide Mr. Silvers with a complete schedule of all inventory of Licensed Products on hand or on order. Stelor has six (6) months to continue to sell this Inventory in accordance with the License Agreement. So long as Stelor is actively selling its inventory of Licensed Products, it may continue the use of the Licensed Intellectual Property associated with the inventory for this period. Outside the scope of its efforts to sell its inventory of Licensed Products, Stelor must immediately cease use of the Licensed Intellectual Property, including names, trademarks, signs, advertising and anything else that might make it appear that it is still handling the articles and products of Mr. Silver. Further, Stelor must return to Mr. Silvers all material relating to the Licensed Intellectual Property and inform its sub-licensees of the termination of the License Agreement.

Because the License Agreement is terminated, Stelor may not proceed to represent the interests of Mr. Silvers in TTAB Opposition Proceeding No. 91161251, TTAB Cancellation Proceeding No. 92043496, the domain dispute against Google pending before the National

Steven A. Esrig
Page 2


Arbitration Forum, or participate in TTAB Cancellation Proceeding No. 92043737. And, because the License Agreement is terminated, the action pending in federal district court is now moot. Thus, we will file the appropriate notices in these proceedings.

     Our client regrets that this relationship did not work out, and would like very much to keep the relationship amicable throughout the six month inventory sell-off period.

Sincerely,

Gail A. McQuilkin

c:     Steven A. Silvers
        Laurence Hefter
        Yano A. Rubinstein
        William Borchard

/248587.1

Exhibit  F

## CONFIDENTIAL SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by Stelor Productions, Inc. ("Stelor") and Steven A. Silvers ("Silvers"). Stelor and Silvers are collectively referred to herein as "the Parties."

WHEREAS, Stelor brought a complaint in the United States District Court for the Southern District of Florida (Case No. 04-80954-CIV-HURLEY) against Silvers alleging breach of, (1) the License, Distribution and Manufacturing Agreement; and (2) the Letter Agreement;

WHEREAS, Silvers brought a counter-complaint against Stelor alleging breach of, (1) the License, Distribution and Manufacturing Agreement; and (2) the Letter Agreement;

WHEREAS, Silvers on January 13, 2005 sent a notice of termination of the Licensing, Distribution and Manufacturing Agreement to Stelor;

WHEREAS, Stelor has invested substantial time, effort, and money in developing a business involving the GOOGLES IP and fully intends to continue developing and commercializing such business, including sub-licensing some or all of the GOOGLES IP;

WHEREAS, the Parties intend that full performance by each Party of its obligations under this agreement cures the breaches alleged against each by the other Party, and

WHEREAS, the Parties wish to resolve all of the foregoing disputes to their mutual satisfaction.

//

//

SILVERS_____                                1                        STELOR_____

THEREFORE, the Parties hereby agree as follows:

1. <u>Domain Name Administration:</u>

     a. Silvers shall give Stelor, as the administrative contact for the GOOGLES IP domain names, the right to control the DNS records and make changes to the administrative contact information for all GOOGLES IP domain names, and shall advise the domain name registrar known as godaddy.com to this effect. Silvers will provide proof that Stelor has such rights no later than February 15, 2005. Silvers shall cooperate with any other request from Stelor regarding necessary administrative issues relating to the domain names, and all communications by Silvers, relating to domain names, shall be through Kozyak Tropin and Throckmorton ("KTT").

     b. KTT will create and control a domain name renewal database to ensure timely renewal of domain names owned by Silvers, and will communicate with Stelor's counsel regarding any deadlines or other administrative issues.

2. <u>Pending and Future Actions Relating to the GOOGLES IP:</u>   Silvers will cooperate with Stelor and Stelor's counsel in all respects in pending and future trademark and domain name dispute proceedings filed by Stelor, including but without limitation, providing any and all documents and other evidence needed to support Stelor's position.

3. <u>The License, Distribution and Manufacturing Agreement:</u>   Silvers withdraws his notice of termination of the License Agreement, and reaffirms his obligations under

SILVERS_____                    2                    STELOR_____ 

the License Agreement.

4. <u>Post-Settlement Communications:</u>   Silvers shall communicate with Stelor solely

through KTT.

5. <u>USPTO Correspondent of Record:</u>   Silvers shall change the correspondent on all

GOOGLES IP trademark applications and registrations to the name of Stelor's

counsel no later than February 15, 2005, and shall not change the correspondent in the

future as long as the Licensing, Manufacturing and Distribution Agreement is in

effect.  Stelor's counsel shall copy KTT with all correspondence to and from the

USPTO

6. <u>Sale or Assignment of the GOOGLES IP:</u>   KTT and Stelor's counsel shall include

each other in any and all negotiations and discussions with Google Inc. that relate to

resolving the pending trademark and domain name disputes or the sale or assignment

of the GOOGLES IP.

7. <u>Domain Name Renewal Expenses:</u>   Stelor agrees to reimburse Silvers for

documented expenses incurred to date in renewing GOOGLES IP domain names.

Future GOOGLES IP domain name renewal expenses will be reimbursed by Stelor.

All requests for reimbursement will be submitted by KTT to Stelor, and all payments

by Stelor will be sent to Silvers through KTT.

8. <u>Options Acknowledgement:</u> Stelor agrees that it will confirm in writing that no

additional options have been granted that would obligate it to provide such options

under the now expired Letter Agreement.

9. <u>LLC Acknowledgement:</u> The Parties acknowledge that Stelor Inc., a Delaware "C"

Corporation, is in the process of converting to a Delaware LLC. Any options granted

SILVERS_____                                3                        STELOR 

to Silvers from the Stelor Inc. "C" Corporation will be converted to a like amount of

unit interests under the LLC.

10. <u>Royalty Advances:</u>

    a.  For as long as the Licensing, Distribution and Manufacturing Agreement

        is in effect, Stelor shall advance Silvers $60,000 a year against future

        royalties.  The advance will be made in equal monthly installments

        payable on the first of each month beginning February 1, 2005.

    b.  For as long as the Licensing, Distribution and Manufacturing Agreement

        is in effect, Stelor will provide Silvers with an additional monthly advance

        on expected future royalties equivalent to that amount required by Silvers

        to maintain his insurance coverage through the Aurora Collection, Inc. (or

        other insurance or medical provider of Silvers' choosing), as long as such

        coverage is offered. Such advance will not exceed $1,000 per month.

    c.  Stelor will reimburse Silvers for insurance premiums through the

        expiration of the "Letter Agreement," not to exceed $4,000. Such

        reimbursements will be provided to Silvers within 15 days of Stelor

        receiving evidence of paid premiums.

11. <u>Recoupment and Termination of Royalty Advances:</u>   Royalties advanced under this

    Agreement will be recaptured by Stelor once royalty payments exceed the amount

    specified in paragraph ~~9~~ *10 (b)* Such deductions will not exceed 20% of any given royalty

    payment. *[handwritten initials]*

12. <u>Royalty Statements:</u>   Stelor shall confirm in writing that no royalty payments are

    outstanding, and thus no royalty statements are due.



13. <u>Trademark Registrations:</u>   Stelor shall provide to Silvers through KTT proof that all applications and registrations for trademarks and domain names with the "GOO" prefix or identified as Googles IP in the License Agreement filed by or on behalf of Stelor show Silvers as the owner.

14. <u>Audit:</u>   Stelor shall cooperate in the audit of the books and records of Stelor by Aronson and Company onsite at Stelor Productions as per section IV of the Licensing, Distribution and Manufacturing Agreement.  Any information obtained by the auditor will be restricted to KTT , on an "attorneys' eyes only" basis and the identity of any licensee, sub-licensee, vendor, or any other third-party shall remain confidential.

15. <u>Licensed Products Samples:</u>   Stelor shall provide Silvers through KTT samples of any Licensed Product that is being offered for sale.

16. <u>USPTO Correspondence:</u>   Stelor's counsel shall keep KTT advised as to the status of any pending or future trademark or domain name disputes filed by Stelor against Google Inc. by copying KTT on all pleadings and correspondence, and by giving notice to KTT of any other trademark or domain name disputes filed against Google Inc.

17. <u>Reservation of Jurisdiction:</u>   The Parties agree to submit to the exclusive continuing jurisdiction of the United States District Court, Southern District of Florida, for enforcement of all provisions of this Agreement.  In the event that a dispute arises concerning the obligations of any Party under this Agreement, the Parties agree to submit any such dispute to this court for resolution.  The successful or prevailing party (as determined by the Court) shall be entitled to recover its reasonable attorneys'



fees and other costs incurred in that litigation from the unsuccessful or non-prevailing party in addition to any other relief to which the prevailing party might be entitled.

18. <u>Injunctive Relief:</u> The Parties hereby agree that there is no adequate remedy of law in the event that either party negotiates or settles the disputes with Google Inc. without the other party. In the event that either party attempts to negotiate with Google Inc. without the other party's participation, that shall be a breach of this Agreement, and such breach will create irreparable harm, and that injunctive relief will be necessary to maintain the rights of the non-breaching party. Accordingly, each party agrees to such injunctive relief.

19. <u>Joint Settlement Negotiations with Google Inc.:</u>

     a.    In view of the current existence of litigation and proceedings in the TTAB, jointly referred to as "Litigation", the parties recognize the need to resolve this Litigation reasonably such that Stelor can continue to develop and promote its business.

     b.    Due to the present status of development of Stelor's business, any event that causes Stelor to delay offering its web-based service to the public will cause severe injury to Stelor. Silvers therefore agrees that, in the event of a settlement with Google Inc., he will not object to Stelor's continued use of the googles.com domain to transition to a new domain name. The length of time of such transition will be at Stelor's sole discretion.

     c.    In the event of a monetary, stock, or similar settlement with Google Inc., Such sale will include a complete sale or assignment of the GOOGLES IP, The proceeds from that settlement shall be divided as follows:

SILVERS_____

6

STELOR 

Silvers shall receive 70% of the first $30 million; 50% of the next $20 million; 30% of the next $30 million; 20% of the next $20 million; 10% of the next $20 million and 5% of any amount over $120 million, with the remainder in each case going to Stelor. Silver's total share of the proceeds shall not exceed $50 Million in any event.

d. Nothing in this provision creates an affirmative action by either party to enter any settlement with Google Inc., or to sell or assign the GOOGLES IP to Google Inc. Silvers understands and agrees that he cannot sell or assign the GOOGLES IP to Google Inc. without obtaining Stelor's written approval. Both parties agree that they will negotiate in good faith.

20. Confidentiality and Disposition of this Action:

a. The settlement shall not be provided to the court unless necessary to enforce rights, and then under seal. A Joint Stipulated motion to withdraw actions shall be filed no later than Friday, January 28, 2005. The fact that a settlement has been reached and all terms and obligations shall be confidential except to the extent necessary to advise Google Inc. that the parties have resolved all differences.

b. The complaint and counterclaim shall be dismissed without prejudice.

21. Exclusive Authority/No Assignment:

a. Stelor and Silvers represent and warrant that no other person or entity has or had any interest in the Claims, demands, obligations, or causes of action

7

SILVERS_____                                        STELOR 

released as part of this Agreement, that they have the sole right and exclusive authority to execute this Agreement and receive the considerations specified herein, and that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the Claims, demands, obligations, or causes of action released as part of this Agreement.

    b.   The signatories to this Agreement each warrant that they have the power to bind the person or entity on whose behalf they signed, and will hold harmless any party to this Agreement for any attorney fees, costs, expenses, or damages incurred or paid as a result of finding that such person or entity lacks such authority, or does not have sole right to the Claims that are the subject of this Agreement, or that any such Claim has been assigned.

22. <u>Voluntary Agreement</u>:   Stelor and Silvers each represent that the Agreement is freely and voluntarily entered into, with the independent advice of each party's attorneys and they have not been induced to execute this Agreement by reason of the disclosure or non-disclosure of any fact or representation not set forth in this Agreement.

23. <u>Non-disparagement</u>:  Each Party, on behalf of itself, its officers, directors, attorneys, agents, and employees, agrees not to make or publish, either orally or in writing, any disparaging statements concerning the other Party or its current and former officers, directors, attorneys, agents, shareholders, or employees.

24. <u>Entire Agreement</u>:   This Agreement constitutes the entire agreement between the parties and supersedes all prior and contemporaneous contracts, agreements, promises



and understandings, with the exception of the License, Distribution and

Manufacturing Agreement as well as the Letter Agreement previously entered into by

the parties. This Agreement may not be altered, modified or otherwise changed in

any respect except by writing, duly executed by Stelor and Silvers. No

representations, circumstances or conditions existing before the Agreement shall be

used in any way by any party to the Agreement to modify the Agreement.

25. <u>Joint Preparation</u>:   Stelor and Silvers declare that they have read this Agreement, and

know and understand its contents, and they each comprehend and agree to all its

terms, conditions, and meanings and their significance; all signatories and their

counsel have cooperated in the drafting and preparation of this Agreement, and this

Agreement therefore shall not be construed against any signatory. The Agreement

shall not be construed against any of them based upon any claim of unequal

sophistication or bargaining power.

26. <u>Governing Law</u>:   This Agreement shall be deemed to be made under, shall be

construed in accordance with, and shall be governed by the laws of the State of

Florida.

27. <u>Duplicate Originals</u>:   This Agreement may be executed in duplicate originals, each of

which is equally admissible in evidence in an action to enforce this Agreement, and

each original shall fully bind each party who has executed it.

28. <u>Facsimile Signatures</u>:   The signatures required for the execution of this Agreement

may be transmitted by facsimile, and any such signature shall be deemed a duplicate

original, and may be admitted in evidence and shall fully bind the party and person

making such signature.

SILVERS_____                                                     STELOR_____ 

29. <u>Effective Date</u>:  The Effective Date of this agreement shall be the date on which all

Parties have signed this Agreement.

30. <u>Each Party Agrees to operate in good faith as to the terms of this agreement</u>.

[Signature Page Follows]



THE FOREGOING IS AGREED TO BY:

DATED: January 28, 2005          Stelor Productions, Inc.

                            By: _____

                            Its: _____

DATED: January ___, 2005          Steven A. Silvers

                            By: _____

APPROVED AS TO FORM AND CONTENT:

DATED: January 28, 2005          Summers Rubinstein, P.C.

                            By: _____

                            Yano L. Rubinstein, Esq.

                            Attorneys for Stelor Productions, Inc.

DATED: January ___, 2005          Kozyak, Tropin & Throckmorton, P.A.

                            By: _____

                            Gail McQuilkin, Esq.

                            Attorneys for Steven A. Silvers

Exhibit  G

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 04-80954-CIV-HURLEY

STELOR PRODUCTIONS, INC.,
     plaintiff,

vs.

STEVEN A. SILVERS,
     defendant.

_____/



**CLOSED CASE**

### ORDER OF FINAL DISMISSAL WITHOUT PREJUDICE AND CLOSE-OUT

**THIS CAUSE** is before the court upon the parties' joint stipulation for dismissal without prejudice filed February 8, 2005. Having considered the stipulation, it is hereby

**ORDERED AND ADJUDGED:**

1. This case is **DISMISSED WITHOUT PREJUDICE,** with each side to bear its own costs and attorneys' fees.

2. There being nothing further for the court to resolve, it is further ordered that the Clerk of the Court shall enter the case as **CLOSED** and terminate all pending motions as **MOOT.**

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this  *17*  day of February, 2005.

Daniel T. K. Hurley
United States District Judge

Copies furnished:
Adam T. Rabin, Esq.
Kenneth R. Hartmann, Esq.
Yano Rubinstein, Esq.

FILED by ___MC___ D.C.
ELECTRONIC

**Feb 8 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

STELOR PRODUCTIONS, INC.,                    CASE NO. 04-80954-CIV-HURLEY
a Delaware corporation,                       Magistrate Judge James M. Hopkins

      Plaintiff,

v.

STEVEN A. SILVERS,
a resident of Palm Beach County, Florida

      Defendant.

_____

## JOINT STIPULATION FOR DISMISSAL,
## WITHOUT PREJUDICE, OF ALL CLAIMS

    Plaintiff, Stelor Productions, Inc. and Defendant Steven A. Silvers, hereby jointly stipulate,

pursuant to Fed.R.Civ.P.41(a)(1), to the dismissal, without prejudice, of all claims asserted by each

party against the other party in this action.

    Respectfully submitted,


Adam T. Rabin                                    Kenneth R. Hartmann  (FBN: 664286)
DIMOND KAPLAN & ROTHSTEIN, PA                    Gail A. McQuilkin  (FBN: 969338)
200 S.E. First Street, Suite 708                 KOZYAK TROPIN & THROCKMORTON, PA
Miami, FL 33131                                  2525 Ponce de Leon, 9th Floor
T: 305-374-1920                                  Coral Gables, Florida 33134
Co-Counsel for Defendant                         T: 305-372-1800 / F: 305-372-3508
                                                 Counsel for Defendant


Yano L. Rubinstein, Esq.
SUMMERS RUBINSTEIN
580 California Street, 16th Floor
San Francisco, California 94104
Counsel for Plaintiff

3339/101/249255.1

Exhibit  H

## GAIL A MCQUILKIN - settlement

**From:**     GAIL A MCQUILKIN
**To:**       Yano Rubinstein
**Date:**     2/1/2005 8:52 AM
**Subject:**  settlement

Yano -

 A few housekeeping items.

1.  Who is going to be the correspondent for Stelor for the trademark registrations - Hefter or you?

2.  All payments paid directly to Silvers need to be made out to Silvers Entertainment Group, Inc.

3.  How is the insurance premium payments going to be handles?  Paid directly to Aurora?

4.  It is probably a good idea for me to have a contact person at Stelor regarding the payments who can call me as well if there are issues or problems.  I also need to ask about Silvers 1099 for 2004.  Probably a good idea to send it to me.

5.  Domain names.  There are several "GOO" domain names that Stelor registered through a registrar different than godaddy.com   To create the database for renewals we need to have all the "GOO" related domain names registered at Godaddy.  I'm not sure how to make this change.  It might be a good idea for me to speak to a person at Stelor who has responsibility for this.  That way I can also informed directly if there are admin issues that need to be addressed by Silvers.

6.  We need a date for the auditor to go to Stelor.  We should talk about what we want from the auditor that will help us with Inc.

7.  We need to file a joint stipulation of dismissal.  I drafted one already and will send it to you under a different e-mail.

Call me later when you have time.  I am leaving to go out of town this evening but have my cell.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

# Exhibit  I

## GAIL A MCQUILKIN - items

**From:**    GAIL A MCQUILKIN
**To:**      Yano Rubinstein
**Date:**    2/15/2005 11:13 AM
**Subject:** items

Hi Yano -

Did you confirm a date to go to Stelor to look at documents?  Also,
Let me know.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  J

## GAIL A MCQUILKIN - stuff

**From:**    GAIL A MCQUILKIN
**To:**       Yano Rubinstein
**Date:**     2/22/2005 11:27 AM
**Subject:**  stuff

Yano -

   I have not heard back from Esrig and I need to get answers to some things.  Can you run interference?

1.  Confirm that we are getting a check for these at the end of this month

      Feb and March payment
      reimbursement for the insurance premiums
      reimbursement for the domain name renewals

2.  A date to go there next week (I really need to get this scheduled asap).

3.  What information we are sending to Bridges now

4.  Need a letter from Aurora terminating Steve's coverage so he can convert to an individual plan under NHP.
The wording on this needs to be careful so we need to discuss.

Can you find this out and then call me later today.  Thanks.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  K

**From:**       GAIL A MCQUILKIN
**To:**         kkaplan@bwskb.com
**Date:**       3/2/2005 4:42:32 PM
**Subject:**    Googles

Kevin -

Here are the issues we need to resolve under the settlement agreement:

1. Silvers is owed two checks for $5000 each for Feb and March.  The checks going forward need to be to me by the 1st of the month.

2. Attached is the chart showing payments made by Silvers on his insurance premiums during the life of the consulting agreement.  The only two payments Stelor is **not** to reimburse him for are Dec 2004 and Jan 2005.  Under the settlement he is to be reimbursed staring Feb. 1.  He is now owed for March 2005 too.  By my calculation the total it comes to $5,141.96.

3. Health insurance termination.  This is very critical to Silvers so that he can continue with health care coverage.  Silvers is trying to convert to an individual plan through NHP, Aurora's insurance company. That will reduce the premiums by a couple hundred dollars a month.  But to do that Aurora needs to **send to Neighborhood Health Partnership on Aurora official letter head, addressed to "Premium Services" informing them that April 1, 2005, Aurora will no longer be offering health insurance benefits to "ANY" of their employees, and that they have informed Steven A. Silvers of this event and that he has 63 days within which to secure a non-group conversion policy.**  This really needs to get done asap for everyone's benefit.

4. Silvers is owed  for domain name registration renewals.  He submitted the receipts for these to Stelor already for $318.00.

5. Options.  Under the consulting agreement Silvers was entitled to 1,000 options for Stelor stock under Stelor stock option plan, and another 1,000 if anyone's available options increase.  Before the settlement, Stelor sent Silvers an option agreement that provided only for 1000 options that would vest over time. As part of the settlement Stelor was to provide written confirmation that no additional options have been granted.

6.  Stelor needs to confirm in writing that no royalty payments to Silvers are outstanding and thus no royalty statements are due.

7.  Audit.  We need a date for the auditor to go to Stelor.  As we discussed, the sooner the better, and we can work on how we will use him to benefit our negotiations with Inc.

8.  Stelor needs to provide us with samples of all products they are offering for sale.

9.  Stelor needs to provide proof that all trademark applications and registrations and domain names with the "GOO" prefix or identified as Googles IP in the License Agreement show Silvers as the owner.

One of the things Silvers needed to do was to change the correspondent on all trademark registrations to Larry Hefter.  We did that and I have informed Larry of that.

Yano and I discussed the issue of the domain name password.  Under the agreement Silvers agreed to give Stelor as the Admin contact the ability to control the DNS records (to select and change the server). We learned form Godaddy that it cannot do that so it is impossible to do.  Yano and I agreed that if Stelor needs to change the server for the domain name, they will call me and I will have the records changed and that will satisfy this.

**REDACTED**

**REDACTED**

Talk to you soon.


Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  L

**From:**      "Kevin C. Kaplan" <kkaplan@bwskb.com>
**To:**        <GAM@kttlaw.com>
**Date:**      3/5/2005 10:17:04 AM
**Subject:**   Googles

Gail,

I have the following information in response to your recent email.

1. I understand you received the checks.

2. Stelor finds the chart confusing. Please just provide us with receipts or proof of the actual payments, and Stelor will provide the reimbursement.

3. Stelor is just trying to work through the pending issues with Aurora, and is committed to taking care of this issue expeditiously. Please allow Stelor a few more days to do so.

4. Stelor has no record of receiving the receipts. Please provide us with copies, and Stelor will provide the reimbursement.

5. Stelor will confirm in writing that no one's available options have increased.

6. Stelor will provide written confirmation.

7. Stelor will provide a date prior to March 15, 2005.

8. There are no such samples, as Stelor is not yet offering any product for sale.

9. Stelor will provide proof regarding the applications, registrations and names.

10. By the same token, Stelor requires proof that Silvers changed the correspondent information. As of my last conversation with Larry Hefter, he was unaware that had been done. Please provide us with this proof as soon as possible.

I appreciate your view on providing information to Bridges. I will get back to you on that quickly.

Kevin

*******************************************
Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
   Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: (305) 858-2900
Fax: (305) 858-5261
kkaplan@bwskb.com

*******************************************

Exhibit  M

## GAIL A MCQUILKIN - Re: Googles

**From:** GAIL A MCQUILKIN
**To:** Kevin C. Kaplan
**Date:** 3/5/2005 11:12 AM
**Subject:** Re: Googles

Kevin -

REDACTED

He is giving them three buisness
days to get into compliance.

1. I understand you received the checks.  **Yes we did.**

2. Stelor finds the chart confusing.  Please just provide us with receipts or proof of the actual payments, and Stelor will provide the reimbursement.  **There is nothing in the least bit confusing about the chart.  Stelor has three days to get us the check.  FYI - putting aside the amounts paid thru Nov that Silvers is to be reimbursed for, the settlement was signed in Jan and Stelor was to provide us up front payment for Feb (which they did not) and March (which they did not).**

3. Stelor is just trying to work through the pending issues with Aurora, and is committed to taking care of this issue expeditiously. Please allow Stelor a few more days to do so.  **They have three days.**

4. Stelor has no record of receiving the receipts.  Please provide us with copies, and Stelor will provide the reimbursement.  **He has provided these three times already.  They have three days to pay.**

5. Stelor will confirm in writing that no one's available options have increased.  **Make it under oath, notarized, under penalty of perjury.**

6. Stelor will provide written confirmation.  **Make it under oath, notarized and under penalty of perjury.**

7. Stelor will provide a date prior to March 15, 2005.  **Three days to give us a date.**

8. There are no such samples, as Stelor is not yet offering any product for sale. **Make it under oath, notarized, and under penalty of perjury.**

9. Stelor will provide proof regarding the applications, registrations and names. **They have three days**

10. By the same token, Stelor requires proof that Silvers changed the correspondent information.  As of my last conversation with Larry Hefter, he was unaware that had been done.  Please provide us with this proof as soon as possible. **There is nothing in the agreement that obligates us to do this, and everything was changed electronically so there is nothing to provide. Stelor knows how to go online to the USPTO office to view the changes.  It will take all of ten minutes to do this.  I talked to Larry and showed him the e-mail I had sent him, and he knows about the changes.**

REDACTED

Exhibit  N

## GAIL A MCQUILKIN - dates for audit

**From:**     GAIL A MCQUILKIN
**To:**       kkaplan@bwskb.com
**Date:**     3/22/2005 11:55 AM
**Subject:**  dates for audit

Kevin -

   We need to set up the date for the auditor to go to Stelor.  These are they dates they have open.  Let me know today which dates works best.  Otherwise I will just select one. Thanks.

Thursday March 31st, Friday April 1st , or Monday April 4th.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  O

## GAIL A MCQUILKIN - RE: dates for audit

**From:**    "Kevin C. Kaplan" <kkaplan@bwskb.com>
**To:**      "GAIL A MCQUILKIN" <GAM@kttlaw.com>
**Date:**    3/23/2005 9:24 AM
**Subject:** RE: dates for audit

Gail,

Can you send me over the documents confirming the scope of your proposed audit. Is there an engagement letter or other correspondence? We'll call you at 11 today.

Kevin

*****************************************

Kevin C. Kaplan, Esq.

Aragon, Burlington, Weil

  Schwiep, Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel: (305) 858-2900

Fax: (305) 858-5261

kkaplan@abwlaw.com

*****************************************

CONFIDENTIALITY NOTE: This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

Exhibit P

## GAIL A MCQUILKIN - RE: dates for audit

| | |
|---|---|
| **From:** | GAIL A MCQUILKIN |
| **To:** | Kevin Kaplan |
| **Date:** | 3/23/2005 9:47 AM |
| **Subject:** | RE: dates for audit |

The scope of the audit based on Silvers' rights under the license agreement is : "Stelor's books and records and all other dcouments and material in the possession of or under the control of Stelor with respect to the subject matter of the License Agreement." I think that just about covers everything that Stelor has relating to the Googles project. FYI - based on our settlement, the results of the audit are for attorney eyes only. The only way we can disclose anything to Inc. is upon our agreement.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

>>> "Kevin C. Kaplan" <kkaplan@bwskb.com> 03/23/05 9:22 AM >>>

Gail,


Can you send me over the documents confirming the scope of your proposed audit. Is there an engagement letter or other correspondence? We'll call you at 11 today.


Kevin


*******************************************

Kevin C. Kaplan, Esq.

Aragon, Burlington, Weil

  Schwiep, Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel: (305) 858-2900

Fax: (305) 858-5261

kkaplan@abwlaw.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTE: This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Tuesday, March 22, 2005 11:55 AM
**To:** Kevin C. Kaplan
**Subject:** dates for audit

Kevin -

   We need to set up the date for the auditor to go to Stelor. These are they dates they have open. Let me know today which dates works best. Otherwise I will just select one. Thanks.

Thursday March 31st, Friday April 1st, or Monday April 4th.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

# Exhibit  Q

## GAIL A MCQUILKIN - information from Stelor

**From:**    GAIL A MCQUILKIN
**To:**      kkaplan@bwskb.com
**Date:**    4/7/2005 5:01 PM
**Subject:** information from Stelor

Kevin -

   Esrig said he would get me a disc with all the presentation stuff.  I need it asap so I can work that information into the complaint.  Also, remember to get from him samples of confusion evidence.  Thanks.

Gail.

Checks????????????????????

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  R

## GAIL A MCQUILKIN - Latest threats

**From:**    Steven Esrig <steven@stelorproductions.com>
**To:**    <gam@kttlaw.com>, Marty Jeffery <marty@stelorproductions.com>
**Date:**    4/11/2005 6:05 PM
**Subject:**    Latest threats
**CC:**    "Kevin C. Kaplan" <kkaplan@bwskb.com>

Gail,

Just got off the phone with Kevin. Do you think we can possibly move beyond the posturing and ridiculous threats and get on to business?-I am willing to go out on a limb in spite of my Boards position regarding adherence to our license and settlement agreement but I am just as willing to run my business and let you finance Mr. Silvers next lawsuit with Stelor.
I am deeply concerned that these silly little turf wars could cost all of us the big picture.
In other words, do you plan to proceed as a co-counsel or counsel for Steven A. Silvers only. Marty and I look forward to a phone call from you at your earliest convenience.

Steve

Ps-you promised us your "work of art" last Friday. We will take care of all Silvers outstanding checks upon receipt of the complaint. I have authorized Kevin to release the checks he is holding to you as well when we receive the draft complaint.

STEVEN A. ESRIG



301.963.0000

Exhibit  S

## GAIL A MCQUILKIN - follow up

| | |
|---|---|
| **From:** | GAIL A MCQUILKIN |
| **To:** | kkaplan@bwskb.com |
| **Date:** | 4/12/2005 4:35 PM |
| **Subject:** | follow up |

Kevin -

I appreciate our conversation today. As you requested here is an update on the complaint. This must be kept extremely confidential .

Because this complaint will draw intense scrutiny from the court and the media, it must be as factually accurate and legally sound as possible. I am doing an enormous amount of research to make sure that happens.

All of this takes tremendous time to do. But my practice has always been to research a case thoroughly before signing my name to a complaint - I'm probably one of the few attorneys who takes the obligations of Rule 11 to heart. Trust me, it pays off in the end.

While it may seem like this is dragging, a good complaint can take weeks or months. But we should have a good first draft soon. I am working on nothing else this week. I _really_ need your help to get me the information from your client that I have been promised so I can weave it into the facts. I cannot understand why this has not been provided.

I hope your client understands that it is my client's intellectual property rights that are at issue so I take this case very seriously. Although we are "co-counsel" on this, I am not working for your client and do not feel obligated to perform based on their time line, nor should the drafting of this complaint have any bearing on their obligation to perform under the settlement. By no means am I holding up sending you the draft because of the owed payments. It is the distraction of dealing with these issues that is holding me up. No one wants

this complaint filed more than my client.

And, as much as I enjoy speaking with the good folks over there, please let your client know that I cannot under the rules of professional conduct have direct communications, even e-mail, with any of them unless I have express authority from you.

Finally, you know how important I feel it is for us to stay aligned.  This is easily accomplished if your client will just comply with the settlement, especially the financial part.  I don't make threats or posture, my time is too expensive to waste on that.  I communicate only what I must when I must to protect my clients interests.  I agree that this has gotten silly, and I am sure the board would rather focus its discussions on the upcoming launch and trade show than obsessing over these rather small advances to my client.  I have spent considerable time getting my client to focus on what your client has and will accomplish rather than what they have not done, although his list in that regard is long.  He really is very happy with the project and excited about the launch and upcoming show.  He knows the success of the project is the result of the work and investment made by everyone over there.   But, he needs to feel he is being treated fairly, and frankly it doesn't take much by your client to instill that in him.

Please get your client to pay my guy what is owed so I can dedicate all my efforts on this complaint.


Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  T

## GAIL A MCQUILKIN - please get me a response to where we are, my client is

**From:**    GAIL A MCQUILKIN
**To:**      kkaplan@bwskb.com
**Date:**    4/13/2005 11:10 AM
**Subject:** please get me a response to where we are, my client is

going nuts over this and I can't hold him off another day.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  U

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Friday, April 22, 2005 1:35 PM
**To:** Kevin C. Kaplan
**Subject:** audit


Kevin -

  The auditor is preparing a letter that will outline the documents and records he will need available at Stelor to do the audit.  He needs to schedule the date for his visit.  Please give me a date in the next two weeks, other than April 28th and 29th which are not good for him, for the visit.  Thanks.

Gail.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  V

>>> "Kevin C. Kaplan" <kkaplan@bwskb.com> 04/22/05 2:21 PM >>>

I have received several fedex boxes of information from Stelor addressing the questions you have raised in preparation of the complaint. Are you available Monday afternoon to come over and look?

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Kevin C. Kaplan, Esq.

Burlington, Weil, Schwiep,

   Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel:  (305) 858-2900

Fax: (305) 858-5261

kkaplan@bwskb.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Friday, April 22, 2005 1:35 PM
**To:** Kevin C. Kaplan
**Subject:** audit

Kevin -

   The auditor is preparing a letter that will outline the documents and records he will need available at Stelor to do the audit.  He needs to schedule the date for his visit.  Please give me a date in the next two weeks, other than April 28th and 29th which are not good for him, for the visit.  Thanks.

file://C:\Documents%20and%20Settings\Administrator\Local%20Settings\Temp\GW}0000...    5/9/2005

# Exhibit  W

## GAIL A MCQUILKIN - RE: audit

**From:**    GAIL A MCQUILKIN
**To:**      Kevin Kaplan
**Date:**    4/22/2005 4:20 PM
**Subject:** RE: audit

I'd have to clear off some appointments but it may be possible.  What about the audit dates?

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

>>> "Kevin C. Kaplan" <kkaplan@bwskb.com> 04/22/05 2:21 PM >>>

I have received several fedex boxes of information from Stelor addressing the questions you have raised in preparation of the complaint.  Are you available Monday afternoon to come over and look?


*******************************************

Kevin C. Kaplan, Esq.

Burlington, Weil, Schwiep,

  Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel:  (305) 858-2900

Fax: (305) 858-5261

kkaplan@bwskb.com


*******************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

Exhibit  X

## GAIL A MCQUILKIN - RE: audit

| | |
|---|---|
| **From:** | "Kevin C. Kaplan" <kkaplan@bwskb.com> |
| **To:** | "GAIL A MCQUILKIN" <GAM@kttlaw.com> |
| **Date:** | 4/22/2005 5:27 PM |
| **Subject:** | RE: audit |

I've forwarded it on to Steve, but haven't heard back yet.  He may come down Monday too.

*****************************************

Kevin C. Kaplan, Esq.

Burlington, Weil, Schwiep,

   Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel:  (305) 858-2900

Fax: (305) 858-5261

kkaplan@bwskb.com

*****************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Friday, April 22, 2005 4:21 PM
**To:** Kevin C. Kaplan
**Subject:** RE: audit

I'd have to clear off some appointments but it may be possible.  What about the audit dates?

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA

Exhibit  Y

## GAIL A MCQUILKIN - RE: Inc

**From:**     "Kevin C. Kaplan" <kkaplan@bwskb.com>
**To:**       "GAIL A MCQUILKIN" <GAM@kttlaw.com>
**Date:**     4/25/2005 9:46 AM
**Subject:**  RE: Inc

And, when will the complaint be in circulation?

*******************************************
Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
   Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel:  (305) 858-2900
Fax: (305) 858-5261
kkaplan@bwskb.com

*******************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Monday, April 25, 2005 9:44 AM
**To:** Kevin C. Kaplan
**Subject:** Re: Inc

Kevin -

   No, I cannot be there tomorrow.  Please let me know what is in the boxes so I can at least determine if it is relevant.  I need the date for the audit.  Thanks.

Gail.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

>>> "Kevin C. Kaplan" <kkaplan@bwskb.com> 04/25/05 9:21 AM >>>
Gail,

Steve plans to be in Miami tomorrow.  Can you meet at our office at 2:00 p.m.?  Please confirm.  We will have the Stelor information for your review.  We expect you will have a draft of the complaint for our review.

In terms of schedule, I am leaving town on Friday for vacation.  Stelor and I plan to have the complaint filed (or

ready to be filed) before I leave. Please help us with that goal by circulating your draft.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
   Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: (305) 858-2900
Fax: (305) 858-5261
kkaplan@bwskb.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTE: This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

Exhibit  Z

**From:**      GAIL A MCQUILKIN
**To:**        kkaplan@bwskb.com
**Date:**      4/26/2005 8:19:54 PM
**Subject:**   Re: Stelor/Silvers/Inc

Kevin -

I cannot get into this with you right now.  I assure you I will get back to you and Stelor by Friday.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com
>>> "Kevin C. Kaplan" <kkaplan@bwskb.com> 04/26/05 12:35 PM >>>
Gail,

As we discussed, we were impressed and pleased when we received your recent email describing the
extensive efforts you have made in preparing a draft complaint.  No doubt the complaint will reflect the
substance of your work.  In the meantime, however, we still have not received a draft of the complaint, and
our continued requests that you circulate a draft have been ignored.

As I have advised you, the Stelor information is in my office, and we have been attempting to set up a time
for you to review it.  Steve committed the resources of his people to assemble this information, which took
three people in excess of three weeks.  I am also prepared immediately to input into the draft complaint
any missing information or sections relating to Stelor's work.  To do that, obviously, I need to have the
draft to see what you believe is missing and where it needs to go.

This process needs to be completed, and the complaint needs to be filed promptly.  In fact, you yourself
emphasized the urgency of getting this filed we when the TTAB dismissed the opposition more than a
month ago.  At that time, you committed to having a complaint prepared within the week!  To say the least,
we need to see the draft now.  If you have some reason for refusing to circulate it to us, please advise us
immediately.  Otherwise, please circulate the draft to us today.  We have welcomed and will continue to
welcome your input and work on the anticipated litigation.  We understand that, to date, you have done the
lion's share of the work on the complaint, but that was at your election.  You wanted to revise the initial
draft we provided you, and we had no objection to your doing that.  As I say, we recognize and very much
appreciate the hard work you have apparently done.  But, it is no good to anyone unless the draft gets
circulated, finalized, and filed.

As we see it, there is no conceivable reason for you to continue to "withhold" the complaint, or for that
matter, for its filing to be delayed any further.  Yet, you continue to sit on the draft, without any apparent
reason.  The situation concerns us, and we have reached the point where - either your version needs to
be circulated and we can collaborate on completing it - or we will simply move forward to prepare and file
our own version of the complaint this week.  Please make no mistake, the License and Settlement
Agreements clearly provide that any such lawsuit is to be filed by Stelor.  Your client has an explicit duty to
"cooperate with Stelor and Stelor's counsel in all respects" but the proceedings are to be "filed by Stelor".

GAIL A MCQUILKIN - Re: Stelor/Silver | c | Page 2

Settlement ¶ 2.

Please continue to cooperate with us by promptly providing your draft.

*******************************************

Kevin C. Kaplan, Esq.

Burlington, Weil, Schwiep,

   Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel:  (305) 858-2900

Fax: (305) 858-5261

kkaplan@bwskb.com

*******************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

# Exhibit  AA

(iv)        the Licensed Intellectual Property and Licensed Trademarks do not infringe the rights, including without limitation, Intellectual Property Rights, of any third party, and

(v)        except as set forth in Schedule B attached hereto, LICENSOR has not received any notice from any third party of any alleged or actual infringement of the Licensed Intellectual Property or Licensed Trademarks and the Licensed Intellectual Property and/or Licensed Trademarks are not the subject, and has not been the subject, of any previous or pending litigation with the exception of the Ganz litigation which has been resolved.

B.   LICENSEE represents and warrants that

(i)        the execution, delivery and performance of this Agreement have been duly authorized by all necessary action of LICENSEE and this Agreement is a valid and binding obligation of LICENSEE, enforceable in accordance with its terms;

(ii)       the execution, delivery and performance by LICENSEE of this Agreement will not violate or conflict with any applicable U.S. law or regulation, or any order, writ, judgment or decree of any court or governmental authority to which LICENSEE is subject, or result in a violation, breach of, or default under any contract, lease, or other agreement binding on LICENSEE; and

(iii)      it will use its commercially reasonable efforts to promote, market, sell and distribute the Licensed Products.

C.   Disclaimer of Warranties  EXCEPT AS EXPRESSLY PROVIDED ABOVE, NEITHER PARTY MAKES ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND, EITHER EXPRESS OR IMPLIED, REGARDING THIS AGREEMENT AS TO ANY MATTER INCLUDING, BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

D.   LICENSEE shall be solely responsible for the manufacture, production, sale and distribution of the Licensed Products or to have such Licensed Products manufactured, produced, sold and distributed, and will bear all related costs associated therewith

## VI.  NOTICES, QUALITY CONTROL, AND SAMPLES

A.   The Licensed Products, as well as all promotional, packaging and advertising material relative thereto, shall include all appropriate legal notices

B.   The Licensed Products shall be of a high quality which is at least equal to comparable products manufactured and marketed by LICENSEE and in conformity with a standard sample provided by LICENSEE.

C.   Prior to the commencement of manufacture and sale of the Licensed Products, LICENSEE shall submit to LICENSOR for his input, at no cost to LICENSOR, a reasonable number of samples of all Licensed Products which LICENSEE intends to manufacture and sell and of all promotional and advertising material associated therewith.

## VII.  NOTICES AND PAYMENT

A.   Any notice required to be given pursuant to this Agreement shall be in writing and delivered personally to the other designated party at the above-stated address or mailed by certified or registered mail, return receipt requested or delivered by a recognized national overnight courier service.

B.   Either party may change the address to which notice or payment is to be sent by written notice to the other in accordance with the provisions of this paragraph.



## "SCHEDULE A"

### LICENSED INTELLECTUAL PROPERTY

The following Licensed Intellectual Property forms part of this Agreement: A License under any and all intellectual property rights and interests therein, including by way of explanation, products which deal with a creative character known as Googles, anything that contains the letters GOO (in upper or lower case), together with any and all products, which comprise and which will comprise those characters, likenesses, which include Iggle, Oogle, Oggle, Gooroo, Gootian(s), the Planet Goo, slides, computer web site(s), membership lists, clubs, materials, patterns, prototypes, logos, trademarks, service marks, clothing, merchandise, educational products, marketing and promotional data and tools, packaging and advertising, modifications, updates and variations, and all other items associated therewith whether in singular or plural

### LICENSED TRADEMARKS

The following Licensed Trademarks form part of this Agreement: (i) "The Googles" (word and design) Trademarks in International Class Code (016) of the U.S.P.T.O and the co-existent Trademarks Agreement with Ganz, Inc. of Canada in International Class Code (028) of the U.S.P.T.O., which is hereto attached and made a part of this "Schedule A" document. (ii) "Oogle", (iii) "Iggle", (iv) "Oggle", (v) "GooRoo", (vi) "Planet Goo", (vii) "GooMu", (viii) "GooToons", (ix) "GooStuff", (x) "GooKids", (xi) "GooStore" and (xii) any other trademarks, whether registered, pending or future or common law, used in connection with the Licensed Property, including , but not limited to, any trademark incorporating the phrase "Goo" currently in existence.

### LICENSED PRODUCTS

The following Licensed Products form part of this Agreement: all products which comprise the likenesses, stories, ideas, concepts, or designs of the Licensed Property, including without limitation, stuffed toy figurines, videos, stickers, t-shirts or other clothing items, slides, movies, cartoons, books (comic and otherwise), posters, playing, trading and collector cards, CDs, cassette tapes, DVDs, TV programs, motion pictures, all other forms of communication and publication, programs, computer Web site(s), membership lists and clubs, and any other products.

### DERIVATIVES

A Derivative as defined in this agreement shall mean a product or service that is utilized by the LICENSEE and developed by a party other than the LICENSOR but is used in conjunction with licensed products, articles and /or services. It can be a product or service produced by the LICENSEE or a third party (inventor, sub licensee etc,) that in its use enhances the value of the Googles Universe but does not have a conflict with an already existing Googles product idea or concept as outlined in this agreement. It may not possess the "Googles" or "GOO" in it's name and would therefore fall under the LICENSOR'S exclusive ownership as defined in the amended agreement but can be used in conjunction with the "Goo" Universe by the LICENSEE.

### TERRITORY

The following countries shall constitute the Territory. Global/Worldwide rights.

### TERM

This Agreement shall commence on the date executed below by both parties and shall be for a thirty (30) year term This Agreement shall automatically renew for one additional ten (10) year term on the same terms and conditions provided for herein ("Renewal Term"). Upon expiration of the first Renewal Term of ten (10) years, this Agreement shall automatically renew for a second ten (10) year extended Term on the

10



# Exhibit  BB

Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel:  (305) 858-2900
Fax: (305) 858-5261
kkaplan@bwskb.com

*********************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains
information from the law firm of Aragon, Burlington, Weil, Schwiep,
Kaplan & Blonsky, PA, which may be confidential or privileged. The
information is intended to be for the use of the individual or entity
named above. If you are not the intended recipient, please immediately
delete this e-mail and be aware that any disclosure, copying,
distribution or use of the contents of this information is prohibited.

-----Original Message-----
From: GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
Sent: Wednesday, March 02, 2005 4:43 PM
To: Kevin C. Kaplan
Subject: Googles

Kevin -

    Here are the issues we need to resolve under the settlement
agreement:

1.  Silvers is owed two checks for $5000 each for Feb and March.  The
checks going forward need to be to me by the 1st of the month.

2.  Attached is the chart showing payments made by Silvers on his
insurance premiums during the life of the consulting agreement.  The
only two payments Stelor is not to reimburse him for are Dec 2004 and
Jan 2005.  Under the settlement he is to be reimbursed staring Feb. 1.
He is now owed for March 2005 too.  By my calculation the total it comes
to $5,141.96.

3.  Health insurance termination.  This is very critical to Silvers so
that he can continue with health care coverage.  Silvers is trying to
convert to an individual plan through NHP, Aurora's insurance company.
That will reduce the premiums by a couple hundred dollars a month.  But
to do that Aurora needs to send to Neighborhood Health Partnership on
Aurora official letter head, addressed to "Premium Services" informing
them that April 1, 2005, Aurora will no longer be offering health
insurance benefits to "ANY" of their employees, and that they have
informed Steven A. Silvers of this event and that he has 63 days within
which to secure a non-group conversion policy.  This really needs to get
done asap for everyone's benefit.

4.  Silvers is owed  for domain name registration renewals.  He
submitted the receipts for these to Stelor already for $318.00.

5.  Options.  Under the consulting agreement Silvers was entitled to
1,000 options for Stelor stock under Stelor stock option plan, and

another 1,000 if anyone's available options increase. Before the settlement, Stelor sent Silvers an option agreement that provided only for 1000 options that would vest over time. As part of the settlement Stelor was to provide written confirmation that no additional options have been granted.

6.   Stelor needs to confirm in writing that no royalty payments to Silvers are outstanding and thus no royalty statements are due.

7.  Audit.  We need a date for the auditor to go to Stelor.  As we discussed, the sooner the better, and we can work on how we will use him to benefit our negotiations with Inc.

8.  Stelor needs to provide us with samples of all products they are offering for sale.

9.  Stelor needs to provide proof that all trademark applications and registrations and domain names with the "GOO" prefix or identified as Googles IP in the License Agreement show Silvers as the owner.

One of the things Silvers needed to do was to change the correspondent on all trademark registrations to Larry Hefter.  We did that and I have informed Larry of that.

Yano and I discussed the issue of the domain name password.  Under the agreement Silvers agreed to give Stelor as the Admin contact the ability to control the DNS records (to select and change the server).  We learned form Godaddy that it cannot do that so it is impossible to do. Yano and I agreed that if Stelor needs to change the server for the domain name, they will call me and I will have the records changed and that will satisfy this.

## REDACTED

Talk to you soon.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit CC

**From:**      "Kevin C. Kaplan" <kkaplan@bwskb.com>
**To:**        <GAM@kttlaw.com>
**Date:**      3/5/2005 10:17:04 AM
**Subject:**   Googles

Gail,

I have the following information in response to your recent email.

1.  I understand you received the checks.

2.  Stelor finds the chart confusing.  Please just provide us with
receipts or proof of the actual payments, and Stelor will provide the
reimbursement.

3.  Stelor is just trying to work through the pending issues with
Aurora, and is committed to taking care of this issue expeditiously.
Please allow Stelor a few more days to do so.

4.  Stelor has no record of receiving the receipts.  Please provide us
with copies, and Stelor will provide the reimbursement.

5.  Stelor will confirm in writing that no one's available options have
increased.

6.  Stelor will provide written confirmation.

7.  Stelor will provide a date prior to March 15, 2005.

8.  There are no such samples, as Stelor is not yet offering any product
for sale.

9.  Stelor will provide proof regarding the applications, registrations
and names.

10.  By the same token, Stelor requires proof that Silvers changed the
correspondent information.  As of my last conversation with Larry
Hefter, he was unaware that had been done.  Please provide us with this
proof as soon as possible.

I appreciate your view on providing information to Bridges.  I will get
back to you on that quickly.

Kevin

*****************************************
Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
   Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel:  (305) 858-2900
Fax: (305) 858-5261
kkaplan@bwskb.com

*****************************************

Exhibit  DD

## GAIL A MCQUILKIN - Re: Googles

**From:**    GAIL A MCQUILKIN
**To:**    Kevin C. Kaplan
**Date:**    3/5/2005 11:12 AM
**Subject:**    Re: Googles

Kevin -

REDACTED

He is giving them three buisness

days to get into compliance.

1.  I understand you received the checks.  **Yes we did.**

2.  Stelor finds the chart confusing.  Please just provide us with
receipts or proof of the actual payments, and Stelor will provide the
reimbursement.  **There is nothing in the least bit confusing about the chart.  Stelor has three days to
get us the check.  FYI - putting aside the amounts paid thru Nov that Silvers is to be reimbursed
for, the settlement was signed in Jan and Stelor was to provide us up front payment for Feb
(which they did not) and March (which they did not).**

3.  Stelor is just trying to work through the pending issues with
Aurora, and is committed to taking care of this issue expeditiously.
Please allow Stelor a few more days to do so.  **They have three days.**

4.  Stelor has no record of receiving the receipts.  Please provide us
with copies, and Stelor will provide the reimbursement.  **He has provided these three times already.  They
have three days to pay.**

5.  Stelor will confirm in writing that no one's available options have
increased.  **Make it under oath, notarized, under penalty of perjury.**

6.  Stelor will provide written confirmation.   **Make it under oath, notarized and under penalty of perjury.**

7.  Stelor will provide a date prior to March 15, 2005.  **Three days to give us a date.**

8.  There are no such samples, as Stelor is not yet offering any product
for sale.  **Make it under oath, notarized, and under penalty of perjury.**

9.  Stelor will provide proof regarding the applications, registrations
and names.  **They have three days**

10.  By the same token, Stelor requires proof that Silvers changed the
correspondent information.  As of my last conversation with Larry
Hefter, he was unaware that had been done.  Please provide us with this
proof as soon as possible.  **There is nothing in the agreement that obligates us to do this, and
everything was changed electronically so there is nothing to provide.  Stelor knows how to go
online to the USPTO office to view the changes.  It will take all of ten minutes to do this.  I talked
to Larry and showed him the e-mail I had sent him, and he knows about the changes.**

REDACTED

# Exhibit  EE

## CERTIFICATION

Pursuant to the January 28, 2004 Settlement Agreement between and among Stelor Productions, Inc. ("Stelor") and Steven Silvers, Stelor hereby certifies as follows:

1.     Stelor has not increased the amount of the stock options created under the original stock option plan.

2.     No royalty payments from Stelor to Mr. Silvers are owed or outstanding as of December 31, 2004.

3.     Stelor does not presently offer any products for sale except the music available on itunes.

I declare under penalty of perjury that the foregoing statements are true and correct.

3.8-05
Date

Steven A. Esrig, President

Exhibit  FF

# Absolutely.net



**contact absolutely**

| **Web Search** | | **Buy Poster** |
|---|---|---|

**EXCLUSIVE:** Eisley's rich lyrical imagery, catchy hooks, & harmony will make your ears hum.

## Netherlands 6 Top Albums in Children's Music

**Homepage**

**What's New**

**Movie Reviews**

**Photo Gallery**

**Download Music** NEW!

**Wallpaper**

**Screensaver**

**Contact Celeb**

Click on the title to buy and download music.
You need iTunes sofware from Apple to play the music.
**Download Here**

# Google

| | |
|---|---|
| **Site Search** | |

**Page: 1**

ADVERTISEMENT





### 1. Baby Genius: Best of... The IQ Builder! - Baby Genius

*Baby Genius: Best of... The IQ Builder! by Baby Genius*

**Artist:** Baby Genius
**Album:** Baby Genius: Best of... The IQ Builder!
**Copyright:**
**Released Date:** 02 December 2004
**Published Date:** Sat, 29 Jan 2005 10:14:28 -800



### 2. Classical Vitamins - Baby Genius

*Classical Vitamins by Baby Genius*

**Artist:** Baby Genius
**Album:** Classical Vitamins
**Copyright:**
**Released Date:** 02 December 2004
**Published Date:** Sat, 29 Jan 2005 10:14:28 -800



### 3. One GooWorld - The Googles from Goo

*One GooWorld by The Googles from Goo*

**Artist:** The Googles from Goo
**Album:** One GooWorld
**Copyright:** 2004 Stelor Productions
**Released Date:** 05 July 2004
**Published Date:** Sat, 29 Jan 2005 10:14:28 -800



### 4. Kidz Bop Christmas - Kidz Bop Kids

*Kidz Bop Christmas by Kidz Bop Kids*

**Artist:** Kidz Bop Kids
**Album:** Kidz Bop Christmas
**Copyright:** 2003 Razor & Tie
**Released Date:** 2002



Absolutely Music Download: Netherlands 6 Top Albums in Children's Music                    Page 2 of 2



**Published Date:** Sat, 29 Jan 2005 10:14:28 -800



### 5. Smart Play With Classical - Heidi Brende

*Smart Play With Classical by Heidi Brende*

**Artist:** Heidi Brende
**Album:** Smart Play With Classical
**Copyright:**
**Released Date:** 02 December 2004
**Published Date:** Sat, 29 Jan 2005 10:14:28 -800



The Mozart
Effect - Musi...
Leopold Mozart
New $10.98!
Used $3.99!



### 6. TRAVEL SONG SING ALONGS - Kevin Roth

*TRAVEL SONG SING ALONGS by Kevin Roth*

**Artist:** Kevin Roth
**Album:** TRAVEL SONG SING ALONGS
**Copyright:** 2004 STAR GAZER PRODUCTIONS
**Released Date:** 26 February 2004
**Published Date:** Sat, 29 Jan 2005 10:14:28 -800



Children's
Favorites
Favorites
Series
New $6.98!

**Page: 1**



For Our
Children
Various Artists
New $13.99!



Papa's Dream
Los Lobos With
Lalo Guerrero
New $11.99!
Used $7.99!



Stay Awake
Various Artists
New $13.98!
Used $8.99!



Classical Music
for Chil...
Johann
Sebastian Bach

**Homepage - What's New - Movie - Photo - Wallpaper - Screensaver - Contact Us**



Target the position.


©2005 Absolutely Celebrity Network

# Absolutely.net



**contact absolutely**

Add FREE New Emotion Icons for your Email

OK

| Web Search | | Buy Poster |

EXCLUSIVE: Eisley's rich lyrical imagery, catchy hooks, & harmony will make your ears hum.

## UK 100 Top Songs in Children's Music 3

**Homepage**

**What's New**

**Movie Reviews**

**Photo Gallery**

**Download Music** NEW!

**Wallpaper**

**Screensaver**

**Contact Celeb**

**Click on the title to buy and download music.**
**You need iTunes sofware from Apple to play the music.**
### Download Here

Page: **1 2 3 4 5 6 7 8 9 10**



**Site Search**

ADVERTISEMENT



**Whose body is this?**

**Answer to get $100 FREE'!**

**Angelina Joli**

**Jennifer Lope**

**Britney Spear**

*See offer details
© 2005 AnyFreeGift.com



### 21. Being Jewish Is Fun - Judy Caplan Ginsburgh

*Being Jewish Is Fun by Judy Caplan Ginsburgh from the album Havdalah Pajama*

**Artist:** Judy Caplan Ginsburgh
**Album:** Havdalah Pajama
**Copyright:** 2000 Judy Caplan Ginsburgh
**Released Date:** 26 July 2000
**Published Date:** Sat, 29 Jan 2005 03:39:19 -800



### 22. The Cuckoo Waltz - Verne Langdon

*The Cuckoo Waltz by Verne Langdon from the album Circus Clown Calliope!/Circus Clown Calliope!, Vol.2*

**Artist:** Verne Langdon
**Album:** Circus Clown Calliope!/Circus Clown Calliope!, Vol.2
**Copyright:** 1999 Electric Lemon
**Released Date:** 26 October 1999
**Published Date:** Sat, 29 Jan 2005 03:39:19 -800



### 23. The Lion and the Mouse - Michael Mish

*The Lion and the Mouse by Michael Mish from the album Aesop's Fables*

**Artist:** Michael Mish
**Album:** Aesop's Fables
**Copyright:** 2003 MishMashMusic
**Released Date:** 05 June 2003
**Published Date:** Sat, 29 Jan 2005 03:39:19 -800



### 24. Frosty the Snowman - Kidz Bop Kids

*Frosty the Snowman by Kidz Bop Kids from the album Kidz Bop Christmas*

Absolutely Music Download: UK 100 Top Songs in Children's Music 3



**Artist:** Kidz Bop Kids
**Album:** Kidz Bop Christmas
**Copyright:** 2003 Razor & Tie
**Released Date:** 2002
**Published Date:** Sat, 29 Jan 2005 03:39:19 -800



Circus Music from the Bi...
Merle Evans
Circus Band
New $7.98!



Children Of Eden
Stephen Schwartz
New $26.99!



Classic Disney
Various Artists
New $42.99!



Classical Music for Chil...
Johann Sebastian Bach
New $3.98!
Used $1.99!



Smithsonian Folkways Chi...
Various Artists
New $10.99!



Stay Awake
Various Artists
New $13.98!
Used $8.99!

(Prices May Change)
Privacy Information



### 25. The Syllable I Stress - Los McCroskey

*The Syllable I Stress by Los McCroskey from the album Â¿CÃ³mo? Fun, New Songs for Learning Spanish and Loving God*

**Artist:** Los McCroskey
**Album:** Â¿CÃ³mo? Fun, New Songs for Learning Spanish and Loving God
**Copyright:** 2002 McCroskey Music
**Released Date:** 12 February 2002
**Published Date:** Sat, 29 Jan 2005 03:39:19 -800



### 26. My First Child - Carla Lynne Hall

*My First Child by Carla Lynne Hall from the album My First Child CD Single*

**Artist:** Carla Lynne Hall
**Album:** My First Child CD Single
**Copyright:** 2004 Moxie Entertainment
**Released Date:** 18 April 2004
**Published Date:** Sat, 29 Jan 2005 03:39:19 -800



### 27. Amy - Celeste Krenz, Linda W. Purdy

*Amy by Celeste Krenz, Linda W. Purdy from the album Pirates & Cowboys, More Songs for You & Me*

**Artist:** Celeste Krenz, Linda W. Purdy
**Album:** Pirates & Cowboys, More Songs for You & Me
**Copyright:** 2003 Mountain Creek Records
**Released Date:** 05 January 2003
**Published Date:** Sat, 29 Jan 2005 03:39:19 -800



### 28. It's Raining, It's Pouring - Rain, Rain, Go Away - David Jacobi - Aimee Fischer

*It's Raining, It's Pouring - Rain, Rain, Go Away by David Jacobi - Aimee Fischer from the album Favorite Nursery Rhymes*

**Artist:** David Jacobi - Aimee Fischer
**Album:** Favorite Nursery Rhymes
**Copyright:**
**Released Date:** 02 December 2004
**Published Date:** Sat, 29 Jan 2005 03:39:19 -800



### 29. Zoomin' - The Googles from Goo

*Zoomin' by The Googles from Goo from the album One GooWorld*

**Artist:** The Googles from Goo
**Album:** One GooWorld
**Copyright:** 2004 Stelor Productions
**Released Date:** 05 July 2004

Absolutely Music Download: UK 100 Top Songs in Children's Music 3
Page 5 of 5

Publi    d Date: Sat, 29 Jan 2005 03:39:19 -800



### 30. Dudley, a Llama With Attitude - Diane White-Crane

*Dudley, a Llama With Attitude by Diane White-Crane from the album Songs for Llama Lovers*

**Artist:** Diane White-Crane
**Album:** Songs for Llama Lovers
**Copyright:** 2000 Orchard
**Released Date:** 07 March 2000
**Published Date:** Sat, 29 Jan 2005 03:39:19 -800

Page: 1 2 3 4 5 6 7 8 9 10

Homepage - What's New - Movie - Photo - Wallpaper - Screensaver - Contact Us



©2005 Absolutely Celebrity Network

# Absolutely.net

## Netherlands 6 Top Albums in Children's Music



3. One GooWorld - The Googles from Goo

*One GooWorld by The Googles from Goo*

**Artist:** The Googles from Goo
**Album:** One GooWorld
**Copyright:** 2004 Stelor Productions
**Released Date:** 05 July 2004
**Published Date:** Sat, 29 Jan 2005 10:14:28 -800

# Absolutely.net

## UK 100 Top Songs in Children's Music 3



29. Zoomin' - The Googles from Goo

*Zoomin' by The Googles from Goo from the album One GooWorld*

**Artist**: The Googles from Goo
**Album**: One GooWorld
**Copyright**: 2004 Stelor Productions
**Released Date**: 05 July 2004
**Published Date**: Sat, 29 Jan 2005 03:39:19 -800

Exhibit  GG

## GAIL A MCQUILKIN - Kevin -

| | |
|---|---|
| **From:** | GAIL A MCQUILKIN |
| **To:** | kkaplan@bwskb.com |
| **Date:** | 3/9/2005 6:15 PM |
| **Subject:** | Kevin - |

Kevin -

copy of pages from www.absolutely.net that shows that the Googles CD is ranked by nation as the most popular downloaded childrens CD,

offered for sale (despite Esrig's sworn statement of no products offered for sale, go to www.cafepress.com/googles)

Let's talk tomorrow.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

# Exhibit  HH

**From:**     GAIL A MCQUILKIN
**To:**        kkaplan@bwskb.com
**Date:**      3/23/2005 1:43:23 PM
**Subject:**   the ad that appeared in the pre-show publication


Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com



Exhibit  II

## GAIL A MCQUILKIN - here is the record of the helath insurance payments -

**From:**     GAIL A MCQUILKIN
**To:**       Yano Rubinstein
**Date:**     2/15/2005 1:44 PM
**Subject:**  here is the record of the helath insurance payments -

deduct the Dec and Jan payments because they do not apply.  Stelor needs to pay Steve for Feb forward.

Call me when you can.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

# The Aurora Collection Inc
RE:  Insurance Premiums – Neighborhood Health Partnership
     Paid by:  Steven A Silvers

| Month/Year | Date Rec'd | Check No./Reference | Amount Paid |
|---|---|---|---|
| April 2003 | April/2003 | Per Bank Statement | $144.07 |
| May  2003 | May/2003 | Per Bank Statement | $144.07 |
| June 2003 | June/2003 | Per Bank Statement | $144.07 |
| July  2003 | July/2003 | Per Bank Statement | $144.07 |
| Aug  2003 Sept 2003 | Aug 01/2003 | Per Bank Statement | $288.14 |
| Oct  2003 Nov  2003 Dec  2003 | Oct 09/2003 | Bank Ck#67030727 | $432.21 |
| Jan  2004 | Jan  07/2004 | Per Bank Statement | $144.07 |
| Feb  2004 | Feb 10/2004 | Per Bank Statement | $144.07 |
| Mar  2004 | Mar 09/2004 | Per Bank Statement | $144.07 |
| Apr  2004 | Apr  06/2004 | Per Bank Statement | $275.00 |
| May  2004 | May 06/2004 | Per Bank Statement | $275.00 |
| June 2004 | June 04/2004 | Per Bank Statement | $275.00 |
| July 2004 | July 04/2004 | Per Bank Statement | $275.00 |
| Aug  2004 | Aug  05/2004 | Per Bank Statement | $275.00 |
| Sept 2004 | Sept 01/2004 | Per Bank Statement | $275.71 |
| April thru August | Sept  01/2004 | Per Bank Statement | $  3.55 |
| Oct  2004 | Sept 30/2004 | Per Bank Statement | $275.71 |
| Nov  2004 | Nov  03/2004 | Per Bank Statement | $275.71 |
| Dec  2004 | Nov 29/2004 | Per Bank Statement | $603.72 |
| Jan  2005 | Dec  20/2004 | Ck# 1034 | $603.72 |
| Feb  2005 | Jan  20/2005 | Ck# 1037 | $603.72 |
|  |  |  |  |
| TOTAL |  |  | **$5,745.68** |

Exhibit  JJ

## GAIL A MCQUILKIN - RE: stuff

**From:**    GAIL A MCQUILKIN
**To:**       Yano Rubinstein
**Date:**    2/22/2005 1:53 PM
**Subject:** RE: stuff

make it around 5:30, I have a conference call at 5.  Thanks.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

>>> "Yano Rubinstein" <yano@sumrub.com> 2/22/2005 12:37:45 PM >>>
OK, I will call you around 5 PM your time.

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Tuesday, February 22, 2005 8:28 AM
**To:** yano@sumrub.com
**Subject:** stuff

Yano -

   I have not heard back from Esrig and I need to get answers to some things.  Can you run interference?

1.  Confirm that we are getting a check for these at the end of this month

   Feb and March payment
   reimbursement for the insurance premiums
   reimbursement for the domain name renewals

2.  A date to go there next week (I really need to get this scheduled asap).

3.  What information we are sending to Bridges now

4.  Need a letter from Aurora terminating Steve's coverage so he can convert to an individual plan under NHP. The wording on this needs to be careful so we need to discuss.

Can you find this out and then call me later today.  Thanks.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

# Exhibit  KK

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Aragon, Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

-----Original Message-----
From: GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
Sent: Wednesday, March 02, 2005 4:43 PM
To: Kevin C. Kaplan
Subject: Googles

Kevin -

    Here are the issues we need to resolve under the settlement agreement:

1. Silvers is owed two checks for $5000 each for Feb and March.  The checks going forward need to be to me by the 1st of the month.

2. Attached is the chart showing payments made by Silvers on his insurance premiums during the life of the consulting agreement.  The only two payments Stelor is not to reimburse him for are Dec 2004 and Jan 2005.  Under the settlement he is to be reimbursed staring Feb. 1. He is now owed for March 2005 too.  By my calculation the total it comes to $5,141.96.

3. Health insurance termination.   This is very critical to Silvers so that he can continue with health care coverage.  Silvers is trying to convert to an individual plan through NHP, Aurora's insurance company. That will reduce the premiums by a couple hundred dollars a month.  But to do that Aurora needs to send to Neighborhood Health Partnership on Aurora official letter head, addressed to "Premium Services" informing them that April 1, 2005, Aurora will no longer be offering health insurance benefits to "ANY" of their employees, and that they have informed Steven A. Silvers of this event and that he has 63 days within which to secure a non-group conversion policy.  This really needs to get done asap for everyone's benefit.

4. Silvers is owed  for domain name registration renewals.  He submitted the receipts for these to Stelor already for $318.00.

5. Options.  Under the consulting agreement Silvers was entitled to 1,000 options for Stelor stock under Stelor stock option plan, and another 1,000 if anyone's available options increase.  Before the settlement, Stelor sent Silvers an option agreement that provided only for 1000 options that would vest over time. As part of the settlement Stelor was to provide written confirmation that no additional options have been granted.

6.  Stelor needs to confirm in writing that no royalty payments to Silvers are outstanding and thus no royalty statements are due.

7.  Audit.  We need a date for the auditor to go to Stelor.  As we discussed, the sooner the better, and we can work on how we will use him to benefit our negotiations with Inc.

8.  Stelor needs to provide us with samples of all products they are offering for sale.

9.  Stelor needs to provide proof that all trademark applications and registrations and domain names with the "GOO" prefix or identified as Googles IP in the License Agreement show Silvers as the owner.

One of the things Silvers needed to do was to change the correspondent on all trademark registrations to Larry Hefter.  We did that and I have informed Larry of that.

Yano and I discussed the issue of the domain name password.  Under the agreement Silvers agreed to give Stelor as the Admin contact the ability to control the DNS records (to select and change the server).  We learned form Godaddy that it cannot do that so it is impossible to do.  Yano and I agreed that if Stelor needs to change the server for the domain name, they will call me and I will have the records changed and that will satisfy this.

## REDACTED

Talk to you soon.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

# Exhibit  LL

## GAIL A MCQUILKIN - Googles

**From:**    GAIL A MCQUILKIN
**To:**      kkaplan@bwskb.com
**Date:**    3/3/2005 1:40 PM
**Subject:**  Googles

Kevin -

   No checks arrived today.  Can you find out what is going on.  Thanks.

Gail.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  MM

| | |
|---|---|
| **From:** | "Kevin C. Kaplan" <kkaplan@bwskb.com> |
| **To:** | <GAM@kttlaw.com> |
| **Date:** | 3/5/2005 10:17:04 AM |
| **Subject:** | Googles |

Gail,

I have the following information in response to your recent email.

1. I understand you received the checks.

2. Stelor finds the chart confusing. Please just provide us with receipts or proof of the actual payments, and Stelor will provide the reimbursement.

3. Stelor is just trying to work through the pending issues with Aurora, and is committed to taking care of this issue expeditiously. Please allow Stelor a few more days to do so.

4. Stelor has no record of receiving the receipts. Please provide us with copies, and Stelor will provide the reimbursement.

5. Stelor will confirm in writing that no one's available options have increased.

6. Stelor will provide written confirmation.

7. Stelor will provide a date prior to March 15, 2005.

8. There are no such samples, as Stelor is not yet offering any product for sale.

9. Stelor will provide proof regarding the applications, registrations and names.

10. By the same token, Stelor requires proof that Silvers changed the correspondent information. As of my last conversation with Larry Hefter, he was unaware that had been done. Please provide us with this proof as soon as possible.

I appreciate your view on providing information to Bridges. I will get back to you on that quickly.

Kevin

********************************************
Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
  Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: (305) 858-2900
Fax: (305) 858-5261
kkaplan@bwskb.com

********************************************

Exhibit  NN

## GAIL A MCQUILKIN - Re: Googles

**From:**  GAIL A MCQUILKIN
**To:**  Kevin C. Kaplan
**Date:**  3/5/2005 11:12 AM
**Subject:**  Re: Googles

Kevin -

REDACTED

He is giving them three buisness days to get into compliance.

1.  I understand you received the checks.  **Yes we did.**

2.  Stelor finds the chart confusing.  Please just provide us with receipts or proof of the actual payments, and Stelor will provide the reimbursement.  **There is nothing in the least bit confusing about the chart.  Stelor has three days to get us the check.  FYI - putting aside the amounts paid thru Nov that Silvers is to be reimbursed for, the settlement was signed in Jan and Stelor was to provide us up front payment for Feb (which they did not) and March (which they did not).**

3.  Stelor is just trying to work through the pending issues with Aurora, and is committed to taking care of this issue expeditiously. Please allow Stelor a few more days to do so.  **They have three days.**

4.  Stelor has no record of receiving the receipts.  Please provide us with copies, and Stelor will provide the reimbursement.  **He has provided these three times already.  They have three days to pay.**

5.  Stelor will confirm in writing that no one's available options have increased.  **Make it under oath, notarized, under penalty of perjury.**

6.  Stelor will provide written confirmation.   **Make it under oath, notarized and under penalty of perjury.**

7.  Stelor will provide a date prior to March 15, 2005.  **Three days to give us a date.**

8.  There are no such samples, as Stelor is not yet offering any product for sale.  **Make it under oath, notarized, and under penalty of perjury.**

9.  Stelor will provide proof regarding the applications, registrations and names.  **They have three days**

10.  By the same token, Stelor requires proof that Silvers changed the correspondent information.  As of my last conversation with Larry Hefter, he was unaware that had been done.  Please provide us with this proof as soon as possible.  **There is nothing in the agreement that obligates us to do this, and everything was changed electronically so there is nothing to provide.  Stelor knows how to go online to the USPTO office to view the changes.  It will take all of ten minutes to do this.  I talked to Larry and showed him the e-mail I had sent him, and he knows about the changes.**

REDACTED

Exhibit  OO

## GAIL A MCQUILKIN - letter from Blumquist

**From:**   GAIL A MCQUILKIN
**To:**     kkaplan@bwskb.com
**Date:**   4/1/2005 5:13 PM
**Subject:**  letter from Blumquist

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

# THE AURORA COLLECTION INC
P O Box 260545
Pembroke Pines, FL 33026

April 01, 2005

Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, MD 20874

To Whom It May Concern:

RE:  Steven A Silvers
     Medical Insurance Issue

On behalf of The Aurora Collection, Inc. and as the Chairman of the Board of this Company, I hereby confirm the fact that as of November 30, 2004, the Company had received from Steven A. Silvers an amount of $4,538.24.

This amount of $4,538.24, in addition to those funds received by The Aurora Collection, Inc. from Stelor Productions, Inc., were applied to Mr. Silvers' monthly insurance premiums due Neighborhood Health Partnership.

I trust you will find this information satisfactory to your needs. Should you have any further inquiry regarding this matter, please feel free to contact me directly at (850)443-1022.

Respectfully submitted,

Brian C. Blomquist
Chairman of the Board

# Exhibit  PP

Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com
>>> "Kevin C. Kaplan" <kkaplan@bwskb.com> 04/01/05 5:18 PM >>>

Do you have a signed letter?


*****************************************

Kevin C. Kaplan, Esq.

Burlington, Weil, Schwiep,

   Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel: (305) 858-2900

Fax: (305) 858-5261

kkaplan@bwskb.com


*****************************************

CONFIDENTIALITY NOTE: This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Friday, April 01, 2005 5:14 PM
**To:** Kevin C. Kaplan
**Subject:** letter from Blumquist




Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Friday, April 01, 2005 5:40 PM
**To:** Kevin C. Kaplan
**Subject:** RE: letter from Blumquist


give me a freakin' break.  He e-mailed this to us.  He put his telephone number in the letter, call him if you want to verify.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com
>>> "Kevin C. Kaplan" <kkaplan@bwskb.com> 04/01/05 5:18 PM >>>

Do you have a signed letter?


*******************************************

Kevin C. Kaplan, Esq.

Burlington, Weil, Schwiep,

  Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel:  (305) 858-2900

Fax: (305) 858-5261

kkaplan@bwskb.com



*******************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

---

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Friday, April 01, 2005 5:14 PM
**To:** Kevin C. Kaplan

## GAIL A MCQUILKIN - RE: letter from Blumquist

**From:**     GAIL A MCQUILKIN
**To:**       Kevin Kaplan
**Date:**     4/1/2005 5:40 PM
**Subject:**  RE: letter from Blumquist

give me a freakin' break.  He e-mailed this to us.  He put his telephone number in the letter, call him if you want to verify.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com
>>> "Kevin C. Kaplan" <kkaplan@bwskb.com> 04/01/05 5:18 PM >>>

Do you have a signed letter?


******************************************

Kevin C. Kaplan, Esq.

Burlington, Weil, Schwiep,

  Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel:  (305) 858-2900

Fax: (305) 858-5261

kkaplan@bwskb.com


******************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

## GAIL A MCQUILKIN - RE: letter from Blumquist

**From:**    "Kevin C. Kaplan" <kkaplan@bwskb.com>
**To:**      "GAIL A MCQUILKIN" <GAM@kttlaw.com>
**Date:**    4/1/2005 5:44 PM
**Subject:** RE: letter from Blumquist

Forward me the email from him which includes the letter as an attachment.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Kevin C. Kaplan, Esq.

Burlington, Weil, Schwiep,

  Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel: (305) 858-2900

Fax: (305) 858-5261

kkaplan@bwskb.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTE: This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Friday, April 01, 2005 5:40 PM
**To:** Kevin C. Kaplan
**Subject:** RE: letter from Blumquist

give me a freakin' break.  He e-mailed this to us.  He put his telephone number in the letter, call him if you want to verify.

Gail A. McQuilkin, Esq.

## GAIL A MCQUILKIN - RE: letter from Blumquist

**From:**    GAIL A MCQUILKIN
**To:**    Kevin Kaplan
**Date:**    4/1/2005 6:02 PM
**Subject:**    RE: letter from Blumquist

i can't.  Call him to verify.  He is a nice person.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

>>> "Kevin C. Kaplan" <kkaplan@bwskb.com> 04/01/05 5:43 PM >>>

Forward me the email from him which includes the letter as an attachment.


*******************************************

Kevin C. Kaplan, Esq.

Burlington, Weil, Schwiep,

  Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel:  (305) 858-2900

Fax: (305) 858-5261

kkaplan@bwskb.com


*******************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

**Subject:** letter from Blumquist

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  QQ

## GAIL A MCQUILKIN - settlement

**From:**  GAIL A MCQUILKIN
**To:**  Yano Rubinstein
**Date:**  2/1/2005 8:52 AM
**Subject:**  settlement

Yano -

A few housekeeping items.

1. Who is going to be the correspondent for Stelor for the trademark registrations - Hefter or you?

2. All payments paid directly to Silvers need to be made out to Silvers Entertainment Group, Inc.

3. How is the insurance premium payments going to be handles?  Paid directly to Aurora?

4. It is probably a good idea for me to have a contact person at Stelor regarding the payments who can call me as well if there are issues or problems.  I also need to ask about Silvers 1099 for 2004.  Probably a good idea to send it to me.

5. Domain names.  There are several "GOO" domain names that Stelor registered through a registrar different than godaddy.com  To create the database for renewals we need to have all the "GOO" related domain names registered at Godaddy.  I'm not sure how to make this change.  It might be a good idea for me to speak to a person at Stelor who has responsibility for this.  That way I can also informed directly if there are admin issues that need to be addressed by Silvers.

6. We need a date for the auditor to go to Stelor.  We should talk about what we want from the auditor that will help us with Inc.

7. We need to file a joint stipulation of dismissal.  I drafted one already and will send it to you under a different e-mail.

Call me later when you have time.  I am leaving to go out of town this evening but have my cell.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  RR

## GAIL A MCQUILKIN - to who at stelor should I send back the check?

**From:**    GAIL A MCQUILKIN
**To:**      Yano Rubinstein
**Date:**    2/7/2005 4:04 PM
**Subject:** to who at stelor should I send back the check?

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

## GAIL A MCQUILKIN - RE: to who at stelor should I send back the check?

**From:**      "Yano Rubinstein" <yano@sumrub.com>
**To:**        "'GAIL A MCQUILKIN'" <GAM@kttlaw.com>
**Date:**      2/7/2005 5:22 PM
**Subject:**   RE: to who at stelor should I send back the check?

Mike Sagan


Yano Rubinstein
SUMMERS RUBINSTEIN P.C.
580 California Street
16th Floor
San Francisco, CA 94104

tel: 415.439.4816
fax: 415.651.9853
cel: 415.819.6817

email: yano@sumrub.com

www.sumrub.com

The contents of this e-mail, including any attachments, are intended solely for the use of the person or entity to whom the e-mail was addressed.  It contains information that may be protected by the attorney-client privilege, work-product doctrine, or other privileges, and may be restricted from disclosure by applicable state and federal law. If you are not the intended recipient of this message, be advised that any dissemination, distribution, or use of the contents of this message is strictly prohibited. If you received this e-mail message in error, please contact the sender by reply e-mail. Please also permanently delete all copies of the original e-mail and any attached documentation. Thank you.

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Monday, February 07, 2005 1:05 PM
**To:** yano@sumrub.com
**Subject:** to who at stelor should I send back the check?


Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  SS

## GAIL A MCQUILKIN - stuff

**From:**    GAIL A MCQUILKIN
**To:**      Yano Rubinstein
**Date:**    2/22/2005 11:27 AM
**Subject:** stuff

Yano -

I have not heard back from Esrig and I need to get answers to some things.  Can you run interference?

1.  Confirm that we are getting a check for these at the end of this month

    Feb and March payment
    reimbursement for the insurance premiums
    reimbursement for the domain name renewals

2.  A date to go there next week (I really need to get this scheduled asap).

3.  What information we are sending to Bridges now

4.  Need a letter from Aurora terminating Steve's coverage so he can convert to an individual plan under NHP.
The wording on this needs to be careful so we need to discuss.

Can you find this out and then call me later today.  Thanks.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  TT

| From: | GAIL A MCQUILKIN |
|---|---|
| To: | kkaplan@bwskb.com |
| Date: | 3/2/2005 4:42:32 PM |
| Subject: | Googles |

Kevin -

Here are the issues we need to resolve under the settlement agreement:

 1. Silvers is owed two checks for $5000 each for Feb and March. The checks going forward need to be to me by the 1st of the month.

2. Attached is the chart showing payments made by Silvers on his insurance premiums during the life of the consulting agreement. The only two payments Stelor is **not** to reimburse him for are Dec 2004 and Jan 2005. Under the settlement he is to be reimbursed staring Feb. 1. He is now owed for March 2005 too. By my calculation the total it comes to $5,141.96.

3. Health insurance termination. This is very critical to Silvers so that he can continue with health care coverage. Silvers is trying to convert to an individual plan through NHP, Aurora's insurance company. That will reduce the premiums by a couple hundred dollars a month. But to do that Aurora needs to **send to Neighborhood Health Partnership on Aurora official letter head, addressed to "Premium Services" informing them that April 1, 2005, Aurora will no longer be offering health insurance benefits to "ANY" of their employees, and that they have informed Steven A. Silvers of this event and that he has 63 days within which to secure a non-group conversion policy.** This really needs to get done asap for everyone's benefit.

4. Silvers is owed for domain name registration renewals. He submitted the receipts for these to Stelor already for $318.00.

5. Options. Under the consulting agreement Silvers was entitled to 1,000 options for Stelor stock under Stelor stock option plan, and another 1,000 if anyone's available options increase. Before the settlement, Stelor sent Silvers an option agreement that provided only for 1000 options that would vest over time. As part of the settlement Stelor was to provide written confirmation that no additional options have been granted.

6. Stelor needs to confirm in writing that no royalty payments to Silvers are outstanding and thus no royalty statements are due.

7. Audit. We need a date for the auditor to go to Stelor. As we discussed, the sooner the better, and we can work on how we will use him to benefit our negotiations with Inc.

8. Stelor needs to provide us with samples of all products they are offering for sale.

9. Stelor needs to provide proof that all trademark applications and registrations and domain names with the "GOO" prefix or identified as Googles IP in the License Agreement show Silvers as the owner.

One of the things Silvers needed to do was to change the correspondent on all trademark registrations to Larry Hefter. We did that and I have informed Larry of that.

Yano and I discussed the issue of the domain name password. Under the agreement Silvers agreed to give Stelor as the Admin contact the ability to control the DNS records (to select and change the server). We learned form Godaddy that it cannot do that so it is impossible to do. Yano and I agreed that if Stelor needs to change the server for the domain name, they will call me and I will have the records changed and that will satisfy this.

REDACTED

GAIL A MCQUILKIN - Googles

Page 2

## REDACTED

Talk to you soon.


Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  UU

## GAIL A MCQUILKIN - i did receive the fed ex this afternoon - problem

**From:**    GAIL A MCQUILKIN
**To:**      kkaplan@bwskb.com
**Date:**    3/3/2005 3:58 PM
**Subject:** i did receive the fed ex this afternoon - problem

we are suppose to recevie a check each month for the insurance premium.  We did not get the March payment for that.  Is Stelor sending that along with the reimbursements for prior premiums?  When will we get that?  I don't mean to be a pest, its just that we really want to get this all cleaned up so we can focus on the bigger picture.  Thanks.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

**From:** GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
**Sent:** Friday, April 01, 2005 5:14 PM
**To:** Kevin C. Kaplan
**Subject:** letter from Blumquist

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit  VV



From: Origin ID  (301)983-3636
Steven Essig
STEELOII PRODUCTIONS, INC
14701 MOCKINGBIRD DRIVE

DARNESTOWN, MD 20814

SHIP TO:  (305)372-1800         BILL SENDER
Gail McQuilkin

2525 Ponce de Leon
9th floor
Coral Gables, FL 33134

Ship Date: 04AP005
Actual Wgt: 1 LB
System#: 1503350INE17000
Account#: S

REF:

Delivery Address Bar Code

PRIORITY OVERNIGHT

TRK#  7928 8821 9092        FORM
                            5501

33134    -FL-US

TUE
Deliver By:
05AP005
A?

MIA

XH JDMA

FedEx Express

The World On Time

Express
FedEx

# Exhibit  WW

## GAIL A MCQUILKIN - information from Stelor

**From:**     GAIL A MCQUILKIN
**To:**       kkaplan@bwskb.com
**Date:**     4/7/2005 5:01 PM
**Subject:**  information from Stelor

Kevin -

   Esrig said he would get me a disc with all the presentation stuff.  I need it asap so I can work that information into the complaint.  Also, remember to get from him samples of confusion evidence.  Thanks.

Gail.

Checks???????????????????

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

Exhibit XX

## GAIL A MCQUILKIN - silvers

| | |
|---|---|
| **From:** | GAIL A MCQUILKIN |
| **To:** | kkaplan@bwskb.com |
| **Date:** | 4/8/2005 10:44 AM |
| **Subject:** | silvers |

Kevin -

   Can you please resolve these pending issues -

Settlement Agreement:

1.  Check for reimbursement of health insurance payments

2. Checks for Feb, March and April advance against royalties for health insurance

3. Reimbursement for domain name renewal costs

4. Options

5. All checks are to be made out to Silvers Entertainment Group. THe check we received for April was made out to Steven Silvers.  Why do we have to keep telling Stelor this?

License Agreement:

1. Royalty statements are due for the 3d and 4th quarter of 2004, and first quarter of 2005.

2. We need to see the Products Liability Insurance has Silvers names as an insured.

3. We need to see all promotional materials Stelor intends to use.

4. Stelor is suppose to place on all materials the phrase "created by Steven A. Silvers."  Stelor persists on placing those words in tiny font and using the phrase "based on a concept created by" rather than "created by" as required.  We went though this once before and Stelor agreed to change it, but still they keep doing it.

5. There are still issues relating to the list of trademarks and domain names, but I will address those with Larry Hefter.

I need the materials from Stelor to add to the complaint asap.  Esrig said he was going to come here next week.  I think that is a good idea because I need to see this presentation, and we need to talk about the upcoming trade show and how to use it to our advantage.

Let me know about all this.

Gail.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134

# Exhibit  YY

**From:**     GAIL A MCQUILKIN
**To:**       julie@stelorproductions.com
**Date:**     4/9/2005 2:42:34 PM
**Subject:**  Re: Silvers royalty advance check

 Not a problem at all.  Let me know about the health insurance.  Going forward the simplist way to do this is
to combine the 5k and 1k amounts into one 6k check.  In case you do not know this, these payments are
an advance against future royalties.  Make sure you are booking these correctly and keeping track of the
amounts so that when royalties begin to be paid by Stelor they are offset by these amounts.  Thanks for
your help.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com
>>> "Julie" <julie@stelorproductions.com> 04/09/05 10:17 AM >>>
Gail,

 I just got your email at home.  I had already left the office for the day
yesterday when you sent your email- I can have the check there on Tuesday
morning - will that be alright?  I'll ask Steve about the health insurance.

Thanks for understanding!  You have a great weekend yourself!

Regards,

Julie
----- Original Message -----
From: "Gail A. McQuilkin, Esq." <gam@kttlaw.com>
To: "Julie DePue" <julie@stelorproductions.com>
Sent: Friday, April 08, 2005 6:15 PM
Subject: Re: Silvers royalty advance check

 No problem, stuff happens.  You can send it for Monday delivery.  There
should also be a check for $1000 to cover his health care premiums.  Ask
Steve if you can send that too.  Thanks.  Have a good weekend.
-----Original Message-----
From: "Julie DePue" <julie@stelorproductions.com>
Date: Fri, 08 Apr 2005 17:48:42
To:<gmcquilkin@tmo.blackberry.net>
Subject: Silvers royalty advance check

Dear Gail,

 Steve just told me about the error on Silvers check  I am so sorry!  Its
completely my fault  I have been sort of put back into the accountants chair
rather abruptly and just went a little too fast through my tasks.

 Id be happy to cut another check and send it Fed Ex Saturday delivery if
you want.  Please let me know as soon as you can, and where youd like it
sent.

Sorry for the trouble,

Julie DePue
Stelor Productions

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134
(305)372-1800 office
(305)372-3508 fax
gam@kttlaw.com

Exhibit  ZZ

## GAIL A MCQUILKIN - Latest threats

**From:**     Steven Esrig <steven@stelorproductions.com>
**To:**       <gam@kttlaw.com>, Marty Jeffery <marty@stelorproductions.com>
**Date:**     4/11/2005 6:05 PM
**Subject:**  Latest threats
**CC:**       "Kevin C. Kaplan" <kkaplan@bwskb.com>

Gail,

Just got off the phone with Kevin. Do you think we can possibly move beyond the posturing and ridiculous threats and get on to business?-I am willing to go out on a limb in spite of my Boards position regarding adherence to our license and settlement agreement but I am just as willing to run my business and let you finance Mr. Silvers next lawsuit with Stelor.
I am deeply concerned that these silly little turf wars could cost all of us the big picture.
In other words, do you plan to proceed as a co-counsel or counsel for Steven A. Silvers only. Marty and I look forward to a phone call from you at your earliest convenience.

Steve

Ps-you promised us your "work of art" last Friday. We will take care of all Silvers outstanding checks upon receipt of the complaint. I have authorized Kevin to release the checks he is holding to you as well when we receive the draft complaint.

STEVEN A. ESRIG



301.963.0000

Exhibit  AAA

# Exhibit  BBB

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Aragon, Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

-----Original Message-----
From: GAIL A MCQUILKIN [mailto:GAM@kttlaw.com]
Sent: Wednesday, March 02, 2005 4:43 PM
To: Kevin C. Kaplan
Subject: Googles

Kevin -

Here are the issues we need to resolve under the settlement agreement:

1.  Silvers is owed two checks for $5000 each for Feb and March.  The checks going forward need to be to me by the 1st of the month.

2.  Attached is the chart showing payments made by Silvers on his insurance premiums during the life of the consulting agreement.  The only two payments Stelor is not to reimburse him for are Dec 2004 and Jan 2005.  Under the settlement he is to be reimbursed staring Feb. 1. He is now owed for March 2005 too.  By my calculation the total it comes to $5,141.96.

3.  Health insurance termination.   This is very critical to Silvers so that he can continue with health care coverage.  Silvers is trying to convert to an individual plan through NHP, Aurora's insurance company. That will reduce the premiums by a couple hundred dollars a month.  But to do that Aurora needs to send to Neighborhood Health Partnership on Aurora official letter head, addressed to "Premium Services" informing them that April 1, 2005, Aurora will no longer be offering health insurance benefits to "ANY" of their employees, and that they have informed Steven A. Silvers of this event and that he has 63 days within which to secure a non-group conversion policy.  This really needs to get done asap for everyone's benefit.

4.  Silvers is owed  for domain name registration renewals.  He submitted the receipts for these to Stelor already for $318.00.

5.  Options.  Under the consulting agreement Silvers was entitled to 1,000 options for Stelor stock under Stelor stock option plan, and another 1,000 if anyone's available options increase.  Before the settlement, Stelor sent Silvers an option agreement that provided only for 1000 options that would vest over time. As part of the settlement Stelor was to provide written confirmation that no additional options have been granted.

6.   Stelor needs to confirm in writing that no royalty payments to Silvers are outstanding and thus no royalty statements are due.

7. Audit. We need a date for the auditor to go to Stelor. As we discussed, the sooner the better, and we can work on how we will use him to benefit our negotiations with Inc.

8. Stelor needs to provide us with samples of all products they are offering for sale.

9. Stelor needs to provide proof that all trademark applications and registrations and domain names with the "GOO" prefix or identified as Googles IP in the License Agreement show Silvers as the owner.

One of the things Silvers needed to do was to change the correspondent on all trademark registrations to Larry Hefter. We did that and I have informed Larry of that.

Yano and I discussed the issue of the domain name password. Under the agreement Silvers agreed to give Stelor as the Admin contact the ability to control the DNS records (to select and change the server). We learned form Godaddy that it cannot do that so it is impossible to do. Yano and I agreed that if Stelor needs to change the server for the domain name, they will call me and I will have the records changed and that will satisfy this.

## REDACTED

Talk to you soon.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

# Exhibit  CCC

## GAIL A MCQUILKIN - Googles

**From:** GAIL A MCQUILKIN
**To:** kkaplan@bwskb.com
**Date:** 3/3/2005 1:40 PM
**Subject:** Googles

Kevin -

No checks arrived today.  Can you find out what is going on.  Thanks.

Gail.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

# Exhibit  DDD

## GAIL A MCQUILKIN - Re: Googles

**From:** GAIL A MCQUILKIN
**To:** Kevin C. Kaplan
**Date:** 3/5/2005 11:12 AM
**Subject:** Re: Googles

Kevin -

### REDACTED

He is giving them three buisness days to get into compliance.

1. I understand you received the checks. **Yes we did.**

2. Stelor finds the chart confusing. Please just provide us with receipts or proof of the actual payments, and Stelor will provide the reimbursement. **There is nothing in the least bit confusing about the chart. Stelor has three days to get us the check. FYI - putting aside the amounts paid thru Nov that Silvers is to be reimbursed for, the settlement was signed in Jan and Stelor was to provide us up front payment for Feb (which they did not) and March (which they did not).**

3. Stelor is just trying to work through the pending issues with Aurora, and is committed to taking care of this issue expeditiously. Please allow Stelor a few more days to do so. **They have three days.**

4. Stelor has no record of receiving the receipts. Please provide us with copies, and Stelor will provide the reimbursement. **He has provided these three times already. They have three days to pay.**

5. Stelor will confirm in writing that no one's available options have increased. **Make it under oath, notarized, under penalty of perjury.**

6. Stelor will provide written confirmation. **Make it under oath, notarized and under penalty of perjury.**

7. Stelor will provide a date prior to March 15, 2005. **Three days to give us a date.**

8. There are no such samples, as Stelor is not yet offering any product for sale. **Make it under oath, notarized, and under penalty of perjury.**

9. Stelor will provide proof regarding the applications, registrations and names. **They have three days**

10. By the same token, Stelor requires proof that Silvers changed the correspondent information. As of my last conversation with Larry Hefter, he was unaware that had been done. Please provide us with this proof as soon as possible. **There is nothing in the agreement that obligates us to do this, and everything was changed electronically so there is nothing to provide. Stelor knows how to go online to the USPTO office to view the changes. It will take all of ten minutes to do this. I talked to Larry and showed him the e-mail I had sent him, and he knows about the changes.**

### REDACTED

# Exhibit  EEE

## GAIL A MCQUILKIN - Silvers declaration

**From:**    GAIL A MCQUILKIN
**To:**      kkaplan@bwskb.com
**Date:**    4/5/2005 5:17 PM
**Subject:** Silvers declaration

Kevin -

   Can we now get the checks you are holding.  The attachment to the declaration is the chart you already have. Thanks.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

DECLARATION

I, Steven A. Silvers, declare and state under the penalty of perjury, that:

1.    I paid to Aurora Collections, Inc. the amounts reflected in the attached chart to cover the costs of insurance premiums through November 30, 2004.

2.    I require $1000 per month to cover the costs of my health insurance coverage which should be considered an advance against future royalties per the Settlement Agreement.

Dated:   April 5, 2005

Executed by: _____
                        Steven A. Silvers

Exhibit  FFF

## GAIL A MCQUILKIN - information from Stelor

**From:**     GAIL A MCQUILKIN
**To:**        kkaplan@bwskb.com
**Date:**      4/7/2005 5:01 PM
**Subject:**   information from Stelor

Kevin -

   Esrig said he would get me a disc with all the presentation stuff.  I need it asap so I can work that information into the complaint.  Also, remember to get from him samples of confusion evidence.  Thanks.

   Gail.

 Checks???????????????????

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

# Exhibit  GGG

## GAIL A MCQUILKIN - silvers

| | |
|---|---|
| **From:** | GAIL A MCQUILKIN |
| **To:** | kkaplan@bwskb.com |
| **Date:** | 4/8/2005 10:44 AM |
| **Subject:** | silvers |

Kevin -

Can you please resolve these pending issues -

Settlement Agreement:

1.  Check for reimbursement of health insurance payments

2.  Checks for Feb, March and April advance against royalties for health insurance

3. Reimbursement for domain name renewal costs

4.  Options

5.  All checks are to be made out to Silvers Entertainment Group. THe check we received for April was made out to Steven Silvers.  Why do we have to keep telling Stelor this?

License Agreement:

1.  Royalty statements are due for the 3d and 4th quarter of 2004, and first quarter of 2005.

2.  We need to see the Products Liability Insurance has Silvers names as an insured.

3.  We need to see all promotional materials Stelor intends to use.

4.  Stelor is suppose to place on all materials the phrase "created by Steven A. Silvers."  Stelor persists on placing those words in tiny font and using the phrase "based on a concept created by" rather than "created by" as required.  We went though this once before and Stelor agreed to change it, but still they keep doing it.

5.  There are still issues relating to the list of trademarks and domain names, but I will address those with Larry Hefter.

I need the materials from Stelor to add to the complaint asap.  Esrig said he was going to come here next week.  I think that is a good idea because I need to see this presentation, and we need to talk about the upcoming trade show and how to use it to our advantage.

Let me know about all this.

Gail.


Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134

# Exhibit  HHH

## GAIL A MCQUILKIN - Latest threats

**From:** Steven Esrig <steven@stelorproductions.com>
**To:** <gam@kttlaw.com>, Marty Jeffery <marty@stelorproductions.com>
**Date:** 4/11/2005 6:05 PM
**Subject:** Latest threats
**CC:** "Kevin C. Kaplan" <kkaplan@bwskb.com>

Gail,

Just got off the phone with Kevin. Do you think we can possibly move beyond the posturing and ridiculous threats and get on to business?-I am willing to go out on a limb in spite of my Boards position regarding adherence to our license and settlement agreement but I am just as willing to run my business and let you finance Mr. Silvers next lawsuit with Stelor.
I am deeply concerned that these silly little turf wars could cost all of us the big picture.
In other words, do you plan to proceed as a co-counsel  or counsel for Steven A. Silvers only. Marty and I look forward to a phone call from you at your earliest convenience.

Steve

Ps-you promised us your "work of art" last Friday. We will take care of all Silvers outstanding checks upon receipt of the complaint. I have authorized Kevin to release the checks he is holding to you as well when we receive the draft complaint.


STEVEN A. ESRIG



301.963.0000

# Exhibit  III

From:       GAIL A MCQUILKIN
To:         kkaplan@bwskb.com
Date:       4/17/2005 4:37:40 PM
Subject:    Re: Inc

Kevin -

   Got the checks.  Still down one though, ando of course there are the other issues.  I am availble for a call tomorrow.  Do we have the CD or materials from Stelor yet?


Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com
>>> "kevin kaplan" <kkaplan@bwskb.com> 04/17/05 4:00 PM >>>
Gail,

I've left you a bunch of messages but haven't heard back. Please confirm you received the checks, and let me know when you're available for a call tomorrow. Steve has some issues to discuss.  By the way, for efficiency of our ongoing communications, I have no problem with Steve talking to you directly and authorize you to talk to him directly even if I am unavailable.

Kevin

*****************************************

Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
   Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: (305) 858-2900
Fax: (305) 858-5261
kkaplan@bwskb.com

*****************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.


Sent wirelessly via BlackBerry from T-Mobile.

# Exhibit JJJ

LAW OFFICES

## KOZYAK TROPIN & THROCKMORTON, P.A.

2525 PONCE DE LEON • 9TH FLOOR

CORAL GABLES, FLORIDA 33134-6037

GAIL A. MCQUILKIN
DIRECT DIAL (305) 377-0656
gam@kttlaw.com

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

Via Federal Express
AWB# 7929-0844-8480

April 27, 2005

Steven A. Esrig
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland 20874

Re:    Silvers/Stelor License Agreement

Dear Mr. Esrig:

On November 12, 2004, we served notice on Stelor that it was in breach of several material provisions of both the License Agreement and Letter Agreement, a copy of which is attached. Because Stelor did not cure those breaches, on January 13, 2005 we served on Stelor a notice of termination of the License Agreement, a copy of which is attached.

On January 28, 2005, Stelor and Silvers entered into a Settlement Agreement in which Silvers agreed to withdraw his notice of termination provided Stelor perform its obligations under the Settlement Agreement. Stelor, however, has:

- failed to provide Silvers with unit interests in Stelor LLC under paragraph 9;

- failed to pay Silvers monthly installments on royalty advances on the first of every month under paragraph 10 (a);

- failed to pay on April 1, 2005 the monthly advance on royalties required by Silver to maintain his insurance coverage through the Aurora Collection under paragraph 10 (b);

- failed to cooperate in the audit of the books and records of Stelor under paragraph 14; and

- failed to provide Silvers samples of Licensed Products that are being offered for sale under paragraph 15.

Furthermore, although Stelor has provided a written statement that it is not offering any

Page 2

Furthermore, although Stelor has provided a written statement that it is not offering any products for sale, and no royalties due, that statement has proven to be false.

Stelor continues to be in breach of the License Agreement as outlined in our letter of November 12, 2004. This is to provide notice to you that due to Stelor's failure to perform its obligations under the Settlement Agreement, and failure to cure the breaches under the License Agreement, Silvers is reinstating his notice of termination of the License Agreement effective immediately.

Pursuant to paragraph X of the License Agreement, Stelor must immediately provide Silvers with a complete schedule of all inventory of Licensed Products on hand or on order. Stelor has six (6) months to continue to sell this Inventory, if any, in accordance with the License Agreement. So long as Stelor is actively selling its inventory of Licensed Products, it may continue the use of the Licensed Intellectual Property associated with the inventory for this period. Outside the scope of its efforts to sell its inventory of Licensed Products, Stelor must immediately cease use of the Licensed Intellectual Property, including names, trademarks, signs, advertising, web site, and anything else that might make it appear that it is still handling the articles and products relating to the Googles IP. Further, Stelor must return to Silvers all material relating to the Licensed Intellectual Property and inform its sub-licensees and those selling Googles related merchandise of the termination of the License Agreement.

Because the License Agreement is now terminated, Stelor may not represent Silvers' interest in any legal proceeding or action.

Sincerely,

Gail A. McQuilkin

c:    Steven A. Silvers
      Laurence Hefter
      Kevin Kaplan

251939.1

# Exhibit KKK

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE 2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM    WWW.BWSKB.COM

April 29, 2005

**VIA FACSIMILE AND U.S. MAIL**

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

      Re:     Silvers/Stelor

Dear Gail:

      I write in response to your letter dated April 27, 2005 to Steven Esrig of Stelor Productions purporting to terminate the License Agreement. It is the position of Stelor that the License Agreement and the Settlement Agreement remain enforceable and binding documents and that the purported grounds for termination are all invalid and improper. We will respond to each of those grounds in turn.

      First, Stelor has only recently converted to an LLC and Mr. Silvers has been provided an option letter for unit interests, to which he has not responded.

      Second, monthly installments on royalty advancements have been paid. Indeed, enclosed are copies of royalty advancement checks for April and May that we are prepared to release upon withdrawal of the notice of termination.

      Third, monthly advances on royalties to maintain insurance coverage have also been paid. Enclosed are checks for April and May that we are prepared to release upon withdrawal of the notice of termination. It must be noted, however, that, despite demand, Mr. Silvers has never confirmed the amount of insurance to be paid. As a show of good faith, Stelor has nonetheless paid the maximum each month, but such confirmation must be provided forthwith.

      Fourth, Stelor has cooperated in the audit of the books and records. In fact, just a week ago, on April 22, 2005, you sent an email to Kevin Kaplan stating that "[t]he auditor is preparing a letter that will outline the documents and records he will need available at Stelor to do the audit." We have received no such letter. Whenever Stelor receives such a letter, it will cooperate.

      Fifth, samples of licensed products have been collected and are available to Mr. Silvers pursuant to the agreement, provided that the notice of termination is withdrawn and it is understood that the agreements remain in place.

Gail A. McQuilkin, Esq.
April 29, 2005
Page 2

Finally, no royalties are owed to your client and the advances paid far exceed royalties that have been accumulated. A royalty statement is enclosed reflecting full payment of any amounts due. To the extent that there are any concerns, they can be raised with us. However, there is simply no basis for termination. Instead, the continuing failure of Mr. Silvers to meet his obligations under paragraph 2 of the Settlement Agreement, which has been the subject of prior correspondence, is a breach that he needs to be cured immediately.

Mr. Silvers is obliged to honor the License Agreement and the Settlement Agreement. We hereby demand receipt of written notice by Noon on Monday, May 2, 2005 that the notice of termination has been withdrawn and that Mr. Silvers agrees to abide by his contractual agreements. We also demand written assurance that Mr. Silvers will make no efforts to interfere in any manner with the business of Stelor. Furthermore, Mr. Silvers needs to agree to the submission to the federal court of a consent decree confirming the enforceability of the agreements and the rights that have been conveyed to Stelor. Failing receipt of such notice and assurances, Stelor will initiate an action seeking to enforce the agreements through declaratory and injunctive relief.

All rights and remedies are reserved. Govern yourselves accordingly.

Sincerely,

Daniel Blonsky

DFB:gr
Enclosures
cc: Client (w/ encls.)
    Kevin C. Kaplan, Esq. (w/ encls.)

BURLINGTON · WEIL · SCHWIEP · KAPLAN &BLONSKY, P.A.

**STELOR PRODUCTION , INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

CITIB. , F.S.B.
WASHINGTON, DC  20036-0967
7-216-520

04/28/05

PAY TO THE
ORDER OF___ Silvers Entertainment Group _____    $ **5,000.00

Five Thousand and 00/100********************************************************** DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Advance Against Royalty April 05

MP

⑈002751⑈ ⑈052002166⑈ ⑈17597405⑈

---

**STELOR PRODUCTIONS, INC.**

Silvers Entertainment Group                    04/28/05              2751
04/28/05                      Bill #roymay                    5,000.00

Citibank Checkin  Advance Against Royalty April 05                                5,000.00



2752

**STELOR PRODUCTIONS, INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

CITIBANK, F.S.B.
WASHINGTON, DC 20036-0967
7-216-520

04/28/05

PAY TO THE
ORDER OF ___ Silvers Entertainment Group _____  $ **5,000.00

Five Thousand and 00/100********************************************************
DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO   Advance Against Royalty May 05

⑈00 2752⑈ ⑈05200 2⑈66⑈   ⑈ 1759740 5⑈

MP

---

TELOR PRODUCTIONS, INC.

Silvers Entertainment Group              04/28/05        2752
04/28/05              Bill #royapril                      5,000.00


Citibank Checkin  Advance Against Royalty May 05                     5,000.00



**STELOR PRODUCTIONS, INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

WASH

PAY TO THE
ORDER OF_____  Silvers Entertainment Group

_____ One Thousand and 00/100*********************************

      Silvers Ent. Group
      8983 Okeechobee Blvd
      PMB 203 Suite 202
      West Palm Beach, FL 33411

MEMO    Royalty/insurance advance, Apr '05         ____

⑅"002753"⑅ ⑊052002166⑊     ⑅"175

---

'ELOR PRODUCTIONS, INC.
     Silvers Entertainment Group
    04/28/05             Bill #052005

Citibank Checkin  Royalty/insurance advance, Apr '05



2755

**STELOR PRODUCTIONS, INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

CITIBANK, F.S.B.
WASHINGTON, DC 20036-0967
7-216-520

04/28/05

PAY TO THE
ORDER OF    Silvers Entertainment Group                          $ **1,000.00

One Thousand and 00/100************************************************** DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Royalty/insurance advance May '05                                        MP

⑈002755⑈ ⑈052002166⑈    ⑈17597405⑈

---

STELOR PRODUCTIONS, INC.
    Silvers Entertainment Group                      04/28/05            2755
    04/28/05                      Bill #042005                          1,000.00

Citibank Checkin  Royalty/insurance advance May '05                    1,000.00



**Royalty Statement**
**Silvers Entertainment Group**
**January 1, 2005 – March 31, 2005**

| Transaction | Net Revenue | Royalty Rate | Royalty Amount | Pre-paid Royalty Balance |
|---|---|---|---|---|
| February advance against royalties | | | $5,000 | $5,000 |
| February advance against royalties for insurance premiums | | | $1,000 | $6,000 |
| Net revenue from licensed properties (iTunes) | $47.35 | 6% | $2.84 | $5,997.16 |
| Net revenue from derivative properties (iTunes) | $1.47 | 3% | $0.04 | $5,997.12 |
| March advance against royalties | | | $5,000 | $10,997.12 |
| March advance against royalties for insurance premiums | | | $1,000 | $11,997.12 |