FILED by ____ D.C.
ELECTRONIC

Jul 18 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

           Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

           Defendant.
_____/

### PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR RECONSIDERATION

Plaintiff Stelor Productions, LLC ("Stelor"), by and through undersigned counsel, hereby replies as follows to Defendant STEVEN A. SILVERS' ("Silvers") Response to Plaintiff's Request for Reconsideration:

### STELOR'S IRREPARABLE HARM

The record establishes that Stelor will suffer irreparable harm absent entry of a preliminary injunction. As the Second Circuit held in *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 37-38 (2d Cir. 1995), irreparable harm exists "where a party is threatened with the loss of a business": where "the availability of a product is essential to the life of the business", where "the damages caused by loss of the product will be . . . difficult to quantify" and the loss threatens "the very viability of the plaintiff's business", "[i]n such cases, injunctive relief is appropriate." *Id.*

This is exactly such a case. The www.googles.com internet address is essential to the life of Stelor's business. An unknown and previously unused domain name is not a viable substitute.

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.
OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

Dockets.Justia.com

CASE NO. 05-80393 CIV HURLEY/HOPKINS

Without continued access to that internet address, the very viability of Stelor's business is threatened and the damages it will suffer are simply incalculable. Unfortunately, this harm is not speculative, as Silvers contends. It is real, and is demonstrated by the record in this case.

A.   **Loss of Customers and Goodwill.**

Without continued access to the www.googles.com internet address, Stelor will suffer a loss of prospective customers and goodwill threatening the destruction of its business. Stelor's entire business revolves around the License Agreement with Silvers, and continued access to the www.googles.com internet address. Stelor has operated its website at that address for three-years, and has built up a foundation of over 600,000 registered users, with continued traffic of tens, if not hundreds, of thousands of hits on a daily basis. Esrig Decl. (DE # 16) ¶¶ 4, 14-20; Supp. Esrig Decl. (DE # 53) ¶¶ 34-39; Jeffery Decl. (DE # 59) ¶¶ 2-12.

Notwithstanding Silvers' suggestion to the contrary, every aspect of Stelor's business operates through the website – including the 150 new characters and related stories about to be unveiled on the website, as well as the patent-pending security technology that will make Stelor's website safe for kids. Esrig Decl. ¶¶ 7-9; Supp. Esrig Decl. ¶ 33; Jeffery Decl. ¶¶ 4-5. Stelor's ability to use that website to continue to develop its business, moreover, by attracting critically-needed investment capital and finalizing contracts with the prospective licensees, depends on continued access to the www.googles.com internet address. Supp. Esrig Decl. ¶ 38; Jeffery Decl. ¶ 9.

The reason for this is because that internet address is unique. There is no reasonable substitute available to Stelor. The declarations of Mr. Esrig and Mr. Jeffery establish as a matter of record that, without continued access to that address, Stelor's business is not commercially

2

CASE NO. 05-80393 CIV HURLEY/HOPKINS

viable.  As the uncontradicted evidence shows, when Stelor lost access to the www.googles.com address, the number of hits on its website dropped from hundreds of thousands to ZERO. Investors refused to proceed with previously committed investments.  The severe disruption to Stelor's business created unrest and uncertainty, and crushed the morale of its staff.  Once the site was restored, Stelor was able to proceed with the trade show; the volume of traffic on its website gradually returned to the pre-shut-down levels; and the interest of potential licensees and investors has soared.  Supp. Esrig Decl. ¶¶ 34-38; Jeffery Decl. ¶¶ 6-10.

Nor is Stelor's claim at all speculative that finalizing contracts with these potential licensees depends on continued access to the googles.com address.  As the Second Supplemental Declaration of Steven Esrig explains ("2nd Supp Esrig Decl.) ¶¶ 2-6, Stelor is actively negotiating with 12 licensees, negotiations developed as a result of the success at the recent trade show. Each of those licensees has made clear that continued access to the www.googles.com address – and not some unknown and never-before-used substitute site – is an essential condition for their interest.  Mr. Esrig generally describes the nature of these licensees and the status of the negotiations, but Stelor is understandably reluctant to identify these potential licensees to Silvers, who has repeatedly attempted to interfere with and sabotage Stelor's business.  *Id.*

What is entirely speculative and unfounded is Silvers' continued assertion that Stelor could simply use a different domain name – such as "gootopia.com", a never-before-used and entirely unrecognized domain name – to promote its website and conduct its business.  Or, that Stelor can be adequately compensated by money damages at the conclusion of this lawsuit. Silvers has not – and cannot – present a shred of evidence to support the claim that Stelor's base of registered users would simply migrate to a different internet address, or that licensees and

3

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

investors would remain interested in Stelor should it lose access to the googles.com address. As Stelor has shown, its users likely will not migrate. Jeffery Decl. ¶ 8. Silvers knows full well that the address is unique, that there is no reasonable substitute, and that Stelor's ongoing business is simply not viable without continued access to the www.googles.com address.

In addition to the decisions from the Eleventh and other Circuits cited in Stelor's papers,[1] the Ninth Circuit expressly recognized in *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.,* 240 F.3d 832, 841 (9th Cir. 2001) (citing *Saban*), that an injunction was required to ensure a continued supply of goods needed for a company to fulfill initial orders for new customers. "The district court found that, without the injunction, Sisco stood to lose its newfound customers and accompanying goodwill and revenue. Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Id.* That is exactly the case here, where Stelor stands to lose its new licensees and accompanying goodwill – not to mention substantial associated revenues – unless it has continued access to the googles.com internet address.

Similarly, in *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 269 F.3d 1149, 1156 (10th Cir. 2001), the Court issued an injunction requiring the defendant to activate satellite television services for the Plaintiff's subscribers. The Court held that the threatened loss of subscribers, coupled with concerns about the effects of the disruption in service on a launch of Dominion's expanded business (which was heavily dependent on word-of-mouth), supported entry of an injunction. As the Court explained, "no remedy could repair the damage to

---

[1] *See* Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction (DE # 18) at 2-4; Plaintiff's Opposition to Silvers' Objection to Report and Recommendation (DE # 55) at 19.

4

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

4 of 7

Dominion's reputation and credibility." *Id.* at 1157. That case is directly analogous to the situation here. Only through continued access to the www.googles.com internet address can Stelor preserve its reputation and credibility, which – once lost – cannot be repaired.

**B.     Stelor's Damages Would be Immeasurable.**

Silvers also knows that the damages Stelor would suffer from a loss of access to the googles.com address during the pendency of this action would be simply incalculable. The damages cannot be measured under the circumstances, given the transformation that Stelor's business is now enjoying from the successful launch at the trade show and the unique value of the internet address and the Licensed property, without which Stelor's business is not commercially viable. Esrig Decl. ¶¶ 16-17; Supp. Esrig Decl. ¶ 38; Jeffery Decl. ¶ 9.

As the Court explained in *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 22 F.3d 546, 551-52 (4th Cir. 1994),

> "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." Thus, when "the record indicates that [plaintiff's loss] is a matter of simple mathematic calculation," a plaintiff fails to establish irreparable injury for preliminary injunction purposes. However, when the failure to grant preliminary relief creates the possibility of permanent loss of customers . . . or the loss of goodwill, the irreparable injury prong is satisfied.

There, the damages related to a line of cable television service that Plaintiff had only recently started to provide; accordingly, its historical revenues did not provide an adequate basis for measuring the potential loss. That is exactly the case here, where (as Silvers himself points out), Stelor is in the midst of launching the new developments in its business, and solidifying the resulting relationships with prospective licensees, which will provide future revenues dramatically more substantial than past revenues. Not only would the loss of that opportunity be devastating to Stelor's business, it would be immeasurable.

5

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

CASE NO. 05-80393 CIV HURLEY/HOPKINS

Similarly, citing the Eleventh Circuit's decision in *Ferrero v. Associated Materials, Inc.,* 923 F.2d 1441, 1449 (11th Cir. 1991), the Court in *Basicomputer Corp. v. Scott,* 973 F.2d 507, 512 (6th Cir. 1992), emphasized that the damages flowing from the loss of customer goodwill are, by their nature, "difficult to compute". The Court in *Dominion* also recognized this point. *See* 269 F.3d at 1156.

The damages Stelor would suffer absent continued access to the www.googles.com internet address are simply immeasurable. That satisfies the irreparable harm requirement and justifies entry of injunctive relief.

C.  **Silvers' Uncollectibility and the Alleged Limitation of Liability Provision in the License Agreement Eliminate Any Adequate Remedy at Law in any Event.**

Silvers also knows that Stelor has no adequate remedy at law, since his utter lack of financial resources makes him entirely unable to satisfy any monetary judgment Stelor ultimately obtains. 2nd Supp. Esrig Decl. ¶ 7; *see Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 52 (1st Cir. 1986). In addition, Silvers has taken pains to point out that the License Agreement contains a limitation of liability provision that, if enforceable, would prevent Stelor from recovering sufficient damages to compensate its losses. Indeed, Silvers' reliance on that provision itself undermines his argument of an adequate remedy at law. *See Allen v. State of Minnesota,* 867 F. Supp. 853, 859 (D. Minn. 1994) (no adequate remedy at law where damages claim legally barred).

## CONCLUSION

For these reasons, based on the Opposition submitted by Stelor and as set forth in this Motion for Reconsideration, Plaintiff respectfully requests that this Court reconsider the

6

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

6 of 7

CASE NO. 05-80393 CIV HURLEY/HOPKINS

Defendant's objections and the Magistrate's Report and approve entry of the preliminary injunction recommended by the Magistrate.

        BURLINGTON, WEIL, SCHWIEP,
          KAPLAN & BLONSKY, P.A.
        Attorneys for Plaintiff
        Office in the Grove, Penthouse A
        2699 South Bayshore Drive
        Miami, Florida 33133
        Tel: 305-858-2900
        Fax: 305-858-5261
        Email: kkaplan@bwskb.com

By: /s/ Kevin C. Kaplan
     Kevin C. Kaplan
     Florida Bar No. 933848
     David J. Zack
     Florida Bar No. 641685

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via Telefax, electronic mail, and U.S. mail on this 18th day of July, 2005 upon the following:

Adam T. Rabin, Esq.
DIMOND, KAPLAN &
  ROTHSTEIN, P.A.
Suite 708
200 S.E. First Street
Miami, Florida 33131

Kenneth R. Hartmann, Esq.
Gail M. McQuilkin, Esq.
KOZYAK TROPIN &
  THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134

/s/ Kevin C. Kaplan
Kevin C. Kaplan

7