FILED by ___ D.C.
ELECTRONIC

**Nov 23 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

        Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

        Defendant.

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
## FOR ATTORNEYS' FEES AND EXPENSES, AND RULE 11 SANCTIONS

Plaintiff Stelor Productions, LLC hereby opposes on the following grounds Defendant Steven A. Silvers' ("Silvers") motion for attorneys' fees and expenses, and Rule 11 sanctions ("Motion") (DE #83) and the accompanying bill of costs (DE #82):

## INTRODUCTION

This action was dismissed for lack of subject matter jurisdiction, when Stelor advised the Court that diversity did not exist promptly after learning that it had a Florida sub-member.  As detailed below, Stelor had repeatedly inquired of its members to confirm there were no Florida residents.  Stelor received that confirmation, until one its members advised in August of 2005 that he had forgotten giving a small interest to his daughter who lived in Florida.

These circumstances – detailed in the declarations of Steven Esrig, Martin Jeffery, Arthur and Bruce Salk, filed herewith (and attached as Exhibits "B"-"E") – do not entitle Silvers to fees or costs as a prevailing party.  The established rule in this Circuit – and other circuits – is that a dismissal for lack of subject matter jurisdiction simply does not create any entitlement to

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

1 of 45

DJ/88

Dockets.Justia.com

prevailing party fees.  Incredibly, Silvers entirely ignores this controlling Eleventh Circuit law, attempting instead to rely on an inapplicable line of cases dealing with a party's voluntary dismissal.

The established rule is especially applicable here, where Silvers cannot legitimately claim to have prevailed in any way in the action.  In fact, the November 15, 2005 Order just handed down by the Eleventh Circuit (attached as Exhibit "A" hereto) undermines any claim by Silvers that he somehow prevailed, based on the district court's decision regarding Stelor's motion for preliminary injunction.  Thus, the Eleventh Circuit remanded with instructions to vacate the district court's order on the injunction, holding that it lacked subject matter jurisdiction to enter any such order.  Indeed, Stelor is likely the prevailing party, based on the Magistrate's finding for purposes of Stelor's motion for preliminary injunction that Stelor had the substantial likelihood of success on the merits of its claim (DE #24, at 4).  In addition, at Stelor's request, the district court entered, and then extended, a temporary restraining order, implementing the Magistrate's recommendation (DEs ## 32, 49).

Nor are sanctions justified under Rule 11 or section 57.105.  Stelor has not acted in bad faith, improperly or recklessly.  On the contrary, Stelor has demonstrated total candor to the Court, promptly advising of its discovery regarding the Florida sub-member.  Especially where Defendant Silvers never complied with the prerequisite of serving a Rule 11 or 57.105 motion, required under the safe harbor provisions of those rules, no basis for sanctions here exists.

In any event, the underlying dispute between these parties – that Silvers' wrongly terminated the Agreements, which remain in full force and effect – remains to be decided.  This issue is of critical importance to Stelor.  Its business depends on the continued validity of the

Burlington • Weil • Schwiep • Kaplan & Blonsky, P.A.

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com  www.bwskb.com

License Agreement and Settlement Agreement, and Stelor's rights to use the intellectual property licensed to it under those Agreements. The fight has simply shifted to another front. The issue is now raised in the action pending before the Honorable Judge Ryskamp, Case No. 05-80387, styled *Steven A. Silvers v. Google Inc.* Stelor was joined as a counterclaim defendant by Google. Stelor, in turn, has filed in that action its own claims for trademark infringement against Google, including a claim against Silvers for a declaration that the Agreements were wrongly terminated, that they remain in full force and effect, and that Stelor – and not Silvers – has the right to pursue the action against Google.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Stelor initially brought this action in Federal Court believing that diversity jurisdiction existed, and because the Settlement Agreement specifically provided for exclusive jurisdiction in this court (DE #4, at 5 ¶ 17). No doubt, if Stelor had filed in State Court, Silvers would have removed the action, or filed a motion to dismiss based on that jurisdictional provision. Stelor did not misrepresent the facts or act in bad faith in alleging that diversity jurisdiction existed at the time. Stelor reasonably believed it did, based on its pre-filing investigation of the issue. Esrig Decl. ¶ 7.

Stelor's investors are limited in number, and the principals of all of the investors are personally known to Stelor's officers. Steve Esrig frequently visits the investors himself. Thus, he knows not only "on paper" where they are based, but also from his own visits with them.

---

[1] The Court in the Google Action has federal question jurisdiction over Stelor's trademark claims against Google and Silvers, and supplemental jurisdiction under 28 U.S.C. § 1367 over Stelor's common law claims against Silvers.

3

Prior to the filing of this action, in late April of 2005, Mr. Esrig reviewed Stelor's list of members, and confirmed that none of the members resided in Florida. Esrig Decl. ¶ 9.

To the extent that a few of the membership interests were held by other entities, and not individuals, Mr. Esrig specifically spoke to the representatives of those entities to confirm that none of their members, resided in Florida. Mr. Esrig wanted to speak to them personally, since Stelor had only recently converted from a Delaware Corporation to a limited liability company and the process of completing all of the membership documents was not yet been completed. The representatives confirmed there were no Florida members, and Mr. Esrig communicated that information to counsel. Esrig Decl. ¶¶ 8, 10.

Again, on or about May 20, 2005, when Silvers raised the issue of lack of jurisdiction in his opposition to Stelor's motion for preliminary injunction, Mr. Esrig again reviewed the members' citizenships once more, and confirmed his understanding that none of them lived in Florida. Accordingly, he testified to that in his declaration, filed on May 23, 2005 (DE #16, ¶ 28(a)). Esrig Decl. ¶ 11.

When Silvers raised the issue in his motion to dismiss (DE #19), filed on May 26, 2005, Stelor repeated this process again. Mr. Esrig spoke once more to the representatives of each of the members to confirm the absence of a Florida member. Again, he received that confirmation. Based on that investigation, therefore, Mr. Esrig verified Stelor's Memorandum of Law In Opposition to Defendant's Motion to Dismiss (DE # 34), including the attached exhibit of what Stelor fully believed at the time was an accurate listing of the citizenship of each of its members, filed on June 13, 2005. Esrig Decl. ¶ 12.

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

Given Silvers ongoing efforts to disrupt and interfere with Stelor's business, Stelor has been understandably reluctant to disclose any more information about its business or its investors than is absolutely required.  Silvers has a demonstrated propensity to misuse Stelor's proprietary information, disrupt Stelor's business, and otherwise attempt however possible to cause harm. Stelor owes a responsibility to its investors to attempt to shield them from such abuses, and to prevent Silvers' unnecessary access to any information related to Stelor's business, other than as required by the Agreements.  Yet, Stelor takes very seriously its obligations of candor to this Court, and at every stage of this litigation, has presented the facts accurately, as understood by Stelor.  Esrig Decl. ¶¶ 4-6; Jeffery Decl. ¶¶ 3-5.

In August, however, Stelor was told for the first time by Arthur Salk, a representative of one of Stelor's members, that a Florida connection might exist.  Mr. Esrig and Mr. Jeffery, Stelor's Senior Vice President, were in Chicago at the time, meeting in person with Mr. Salk. Mr. Salk is a representative of Goo Investments LLC ("Goo Investments"), a member of Stelor. In light of the Court's August 8th Order (DE #67), Mr. Esrig asked again for confirmation that none of the members in Goo Investments lived in Florida.  Mr. Salk again confirmed that.  Esrig Decl. ¶ 13; Jeffery Decl. ¶ 6; Arthur Salk Decl. ¶ 8.

After the meeting, however, Mr. Esrig received a call from Mr. Salk on his cell phone while Mr. Jeffery and he were in a taxi on the way to the airport.  Mr. Jeffery and Mr. Esrig spoke to Mr. Salk together, through the cell phone's speaker phone.  Mr. Salk told them that, after the meeting with them, he spoke with his son Bruce, and mentioned the discussion he had had with them.  Mr. Salk said that Bruce thought a small percentage interest had been given to Mr. Salk's daughter who lived in Florida.  Mr. Salk said that Bruce was going to check the

5

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

papers and confirm it.  Mr. Salk said he was sorry about the misunderstanding; he simply did not recall that his daughter had an interest.  Esrig Decl. ¶ 14; Jeffery Decl. ¶ 7; Arthur Salk Decl. ¶¶ 9-10, 12; Bruce Salk Decl. ¶ 7.

Mr. Esrig was very surprised and concerned by what Mr. Salk said.  Mr. Esrig asked Mr. Salk immediately to call Stelor's counsel in Florida, Mr. Kaplan.  Mr. Salk did, and also put Mr. Kaplan in touch with Bruce Salk.  Mr. Esrig also immediately informed counsel.   Esrig Decl. ¶ 15; Jeffery Decl. ¶ 8; Arthur Salk Decl. ¶ 10; Bruce Salk Decl. ¶ 8.

Stelor followed up with Mr. Salk and his son to confirm the accuracy of the information. Upon confirming the information, Stelor advised the Court.  Stelor wanted to ensure that the Court was aware of the information.  Stelor did so twice, first in its Notice of Similar Actions and Request for Transfer (DE #74), and then in its Response to Order Granting Without Prejudice Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (DE #76). Accordingly, the action was dismissed without prejudice for lack of subject matter jurisdiction (DE #80).  Esrig Decl. ¶¶ 16-17; Jeffery Decl. ¶ 9; Arthur Salk Decl. ¶ 11; Bruce Salk Decl. ¶ 8. The dispute, in any event, continues in the Google Action pending before Judge Ryskamp.

## ARGUMENT

Based on these facts, and under the controlling law of the Eleventh Circuit, no basis exists for awarding fees or costs to Silvers.  Because the case was dismissed for lack of subject matter jurisdiction, Silvers is not a prevailing party, and the Court lacks jurisdiction to award fees under a contractual prevailing party provision.  Nor does Stelor's conduct in any way justify the imposition of sanctions in this case.

6

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

**A.    The Dismissal for Lack of Subject Matter Jurisdiction
        Does Not Entitle Silvers to Fees.**

As the Court's October 5, 2005 Final Order of Dismissal (DE #80) makes clear, this action was dismissed without prejudice for lack of subject matter jurisdiction. A dismissal for lack of jurisdiction, does not trigger a prevailing party fee provision. *See Laborers Local 938 Joint Health & Welfare Trust Fund. V. B.R. Starnes Co.,* 827 F.2d 1454, 1458 (11th Cir. 1987); *DeShiro v. Branch,* 183 F.R.D. 281, 286 (M.D. Fla. 1998); *Daugherty v. Westminster Schools, Inc.,* 174 F.R.D. 118, 120-22 (N.D. Ga. 1997). The Eleventh Circuit's holding in *Laborers Local* is directly controlling. There, the Court affirmed the lower courts refusal to award prevailing party fees under either Florida Statute §§ 713.29 (governing mechanics liens) or 57.105, as well as under the fee provisions of the ERISA statute, 29 U.S.C. § 1132(g)(1). As the Court explained: "Given that the federal court dismissed the case for lack of subject matter jurisdiction and the merits of the state claims have yet to be tried, it would be inappropriate to award fees under either of these Florida provisions at this time." The decision was based both on the rationale that such a dismissal is not a decision on the merits and does not result in a prevailing party, and that the dismissal eliminates the court's jurisdiction to decide a party's substantive right to fees. *Id.*

Also controlling is the Eleventh Circuit's decision in *The Miami Herald Publishing Co. v. City of Hallandale,* 742 F.2d 590, 591 (11th Cir. 19984). There, the Court held that the Miami Herald was not a prevailing party, and had no entitlement to fees under 42 U.S.C. § 1988, where the district court lacked jurisdiction to hear the merits of the case. Similarly, in *Taylor v.*

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

*Sterret,* 640 F.2d 663, 669 (5th Cir. 1981),[2] the Former Fifth Circuit held that a party did not prevail, where the district court should have declined jurisdiction.

This Eleventh Circuit precedent, which in itself forecloses Silvers' claim, is supported by decisions throughout the circuits. *E.g. Associated General Contractors, Inc. v. County of Shelby*, 5 Fed. Appx. 374, 377 (6th Cir. 2001) (party did not prevail on merits once case was terminated for lack of jurisdiction, and fee request under 42 U.S.C. § 1988 properly denied); *Branson v. City of Los Angeles*, 187 F.3d 646, 1999 WL 439383, at 1 (9th Cir. 1999) (district court properly denied request for fees "because there is no prevailing party in an action dismissed for lack of subject matter jurisdiction"); *Reyes v. Nissan*, 168 F.3d 501, 1999 WL 47399 (9th Cir. 1999) (district court properly denied request for fees, because parties "who were dismissed for lack of subject matter jurisdiction, are not prevailing parties"); *Cliburn v. Police Jury Assoc. of Louisiana*, 165 F.3d 315, 316 (7th Cir. 1999) ("Given that the district court lacked jurisdiction to hear . . . claims under ERISA, it logically follows that the court lacked jurisdiction to entertain the . . . request for fees, costs and expenses under ERISA.); *State of Missouri v. Cuffley*, 112 F.3d 1332, 1338 (8th Cir. 1997) (vacating district court's award of fees because it was without jurisdiction to decide the merits of the case and was thus also without jurisdiction to award fees); *The Assoc. for Retarded Citizens of Connecticut, Inc. v. Thorne*, 68 F.3d 547, 552 (2nd Cir. 1995) ("[w]here there is no subject matter jurisdiction to proceed with the substantive claim, as a matter of law, 'that lack of jurisdiction bar[s] an award of attorneys fees under section 1988"); *Branson v. Nott*, 62 F.3d 287, 293 (9th Cir. 1995) (same); *W.G., As Sister and Next Best Friend of D.G. v. Senatore*, 18 F.3d 60, 64 (2nd Cir. 1994) ("Simply stated . . . , when a determination is made that

---

[2] This decision is binding authority under *Bonner v. City of Prichard,* 661 F.2d 1206 (1981).

8

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

no jurisdiction lies, the district court has 'no power to do anything but to strike the case from the docket.'"); *Kenne Corporation v. Cass*, 908 F.2d 293, 297-98 (8th Cir. 1990) (district court erred in awarding fees where action dismissed for lack of subject matter jurisdiction because that lack of jurisdiction barred the award and because there was no prevailing party); *Finn v. United States of America*, 856 F.2d 606, 608 (4th Cir. 1988) (no prevailing party where action dismissed for lack of subject matter jurisdiction); *Sanders v. Commissioner of Internal Revenue*, 813 F.2d 859 , 862 (7th Cir. 1987) (tax court's dismissal for lack of jurisdiction barred its consideration of motion for fees); *Tucker v. Summers*, 784 F.2d 654, 656 (5th Cir. 1986) (entry of an order by a court which should have declined jurisdiction cannot serve as the basis for prevailing-party status); *Hidahl v. Gilpin County Department of Social Services*, 699 F.Supp. 846, 849 (D. Colo. 1988) (section 1988 does not authorize awarding attorneys' fees to a defendant who gains dismissal on the grounds of lack of jurisdiction); *Sellers v. Local 1598*, 614 F. Supp. 141, 143 (E.D. Pa. 1985) (defendant cannot be said to have "prevailed" on an issue which evaporated prior to the court addressing it); *California Paralyzed Veterans Ass'n v. FCC,* 496 F. Supp. 125, 132 (C.D. Cal. 1980) ("Because this court never entertained jurisdiction . . . , it will not, and probably cannot, now award attorneys' fees"); *but see United States of America v. Praxair, Inc*., 389 F.3d 1038, 1058 (10th Cir. 2004) (fees awarded where dismissal "forecloses the plaintiff's claim"); *Citizens For A Better Environment v. Steel Company*, 230 F.3d 923, 930 (7th Cir. 2000) (fees awarded where, as a result of dismissal, plaintiff is prohibited from any further litigation).

The *Laborers* decision – which Silvers disingenuously fails even to cite, let alone distinguish – also entirely undermines Silvers' reliance on a set of cases involving voluntary dismissals by the parties' themselves.  Motion at 6.  Thus, *Laborers* refused to award fees under

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

CASE NO.  05-80393 CIV HURLEY/HOPKINS

the Florida mechanics lien statute, even though courts have awarded fees under that statute in situations involving voluntary dismissals, *see Reineke v. McKinstry,* 445 So. 2d 361, 361-62 (Fla. 4th DCA 1984); *Gordon v. Warren Heating & Air Conditioning,* 340 So. 2d 1234, 1235 (Fla. 4th DCA 1976).  Clearly, a significant distinction exists between a dismissal for lack of subject matter jurisdiction, and a party's voluntary dismissal.  Silvers' cases are undermined by the directly controlling Eleventh Circuit precedent, and decisions from around the federal courts.

### B.    Silvers Is Not the Prevailing Party In Any Event.

As a factual matter, moreover, Silvers is not the prevailing party.  No determination of the merits of this dispute has yet been made.  As the Eleventh Circuit's recent Order (Exhibit "A") directs, the Court's decision on the preliminary injunction motion is to be vacated.  Accordingly, Silvers cannot properly rely on that order to support his argument.

To the extent the merits were addressed at all, moreover, the indication was that Stelor – and not Silvers – demonstrated its substantial likelihood to prevail on the merits.  Thus, the Magistrate's Report and Recommendation dated June 3, 2005 (DE #24), specifically held as follows:  "[Silvers] has effectively admitted to breach of the contract" and "it is likely that [Silvers'] April 27, 2005 termination of the License Agreement between Stelor and Silvers was improper."  Report at 4.

Silvers also mischaracterizes the procedural history related to the injunction motion.  He did not prevail.  Rather, based on the Magistrate's Recommendation, the District Court Judge entered a temporary restraining order implementing the injunction recommended by the Magistrate (DE #32).  The District Court Judge then entered a second order, extending the duration of the TRO until the end of the critical trade show in New York, although the Judge

10

BURLINGTON • WEIL • SCHWIEP • KAPLAN ⓐ BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

declined to extend the TRO beyond that time (DE #49) or otherwise to implement the injunction. One rationale for that decision, as the Court explained in its July 5, 2005 Order Rejecting In Part and Approving In Part the Magistrate's Report and Recommendation (DE #52), was the Court's observation that the "preliminary injunctive relief sought by plaintiff has in large part already been satisfied by the court's temporary restraining orders partially implementing the injunction recommended by the Magistrate Judge."  Order at 2.

Based on this record, Silvers certainly cannot claim to have prevailed in this action. Indeed, based on the TRO, Stelor is likely the prevailing party, having obtained relief through the TRO that "materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ed] the plaintiff."  *Dillard v. City of Greensboro,* 213 F.3d 1347, 1354-55 (11th Cir. 2000).

In addition, the underlying dispute between these parties – that Silvers' wrongly terminated the Agreements, which remain in full force and effect – remains to be decided.  This issue is of critical importance to Stelor.  Its business depends on the continued validity of the License Agreement and Settlement Agreement, and Stelor's rights to use the intellectual property licensed to it under those Agreements.  Esrig Decl. ¶ 2; Jeffery Decl. ¶ 2.  The fight has simply shifted to another front.  The issue is now directly raised in the action pending before the Honorable Judge Ryskamp, Case No. 05-80387, styled *Steven A. Silvers v. Google Inc.*  Stelor was joined as a counterclaim defendant by Google.  Stelor, in turn, has filed in that action its own claims for trademark infringement against Google, including a claim against Silvers for a declaration that the Agreements were wrongly terminated, that they remain in full force and effect, and that Stelor – and not Silvers – has the right to pursue the action against Google.

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com   www.bwskb.com

Even if Silvers' effort to prevent litigation of these claims in the Google Action succeeds, the case will at best shift to state court, where Silvers himself has (improperly) filed a competing action against Stelor addressing these issues.  That case is pending in the Eleventh Judicial Circuit, in and for Miami-Dade County, as Case No. 05-18033 CA 03.

Thus, the hundreds of thousands of dollars worth of time allegedly spent by Silvers' lawyers would have been spent wherever this action had been brought.  The underlying work – which likely could have been performed much more efficiently – clearly relates to the ongoing dispute.  Indeed, whichever court ultimately decides the merits of this action, that court certainly can take judicial notice of the existing record in this action.

## C.    No Award of Costs Is Justified.

Nor is Silvers entitled to recover any costs in this action.  Silvers' claimed costs are in excess of $16,478.57.  Only $357.40 of those costs, however, are statutorily authorized.  The remaining $16,121.17 are not, and thus are presumably sought based on the prevailing party provision of the Settlement Agreement.  As set forth above, based on the dismissal for lack of subject matter jurisdiction, Silvers is not a prevailing party, and this Court has no jurisdiction to award costs (or fees) under the Agreements.

Similarly, Silvers cannot recover even the $357.40 in statutory costs, since the provisions of Rule 54(d) and 28 U.S.C. § 1920 apply only to prevailing parties.  *See Miles v. State of California,* 320 F.3d 986, 988 (9th Cir. 2003): *Hygenics Direct Co. v. Medline Indus., Inc.,* 33 Fed. Appx. 621, 625 (3d Cir. 2002) (no costs awarded where case dismissed for lack of subject matter jurisdiction and merits of case not reached).

12

An award of costs under 28 U.S.C. § 1919 is also not supported here. *See Hygenics,* 33 Fed. Appx. at 625-26. As in *Hygenics,* Stelor "had 'plausible grounds for asserting the existence of federal jurisdiction' and . . . did not act in a 'vexatious or frivolous' manner." *Id.*

### D.   Sanctions Are Not Justified Under Rule 11 or 57.105.

Nor is an award of fees or costs justified under Rule 11 or 57.105.

### 1.   *Silvers Failure to Comply with the Rules' Safe Harbor Procedures Bars Him From Seeking Sanctions.*

As a threshold matter, Silvers failed to comply with the safe harbor provision of these rules. Rule 11 explicitly requires service of a motion for sanctions 21 days prior to filing of the motion with the court. *See* Rule 11. As the Rule and the Advisory Committee Notes make clear, this provision is intended to provide a "safe harbor", ensuring that a party is exposed to sanctions only after it refuses to withdraw its position. Accordingly, the courts have strictly applied these procedural requirements, holding it is an abuse of discretion to impose Rule 11 sanctions when a motion is not served in compliance with this safe harbor requirement. *E.g., Gordon v. Unifund CCR Partners,* 345 F.3d 1028, 1029-30 (8th Cir. 2003) (district court's awarding of sanctions in contravention of explicit procedural requirements of Rule 11 was abuse of discretion); *Metcalf v. Anchorage Daily News, Inc.,* 78 Fed. Appx. 24, 25 (9th Cir 2003) (Rule 11's procedural requirements are mandatory; defendant's failure to follow procedure prevents it from obtaining sanctions); *First Bank v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 510-11 (6th Cir. 2002) (district court correctly ruled Rule 11 sanctions unavailable where no motion served); *Perpetual Securities, Inc. v. Tang,* 290 F.3d 132, 142 (2d Cir. 2002) (district court abused discretion in

13

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

awarding Rule 11 sanctions where no motion served); *In re Kirk-Murphy Holding, Inc.,* 313 B.R. 918, 921 (N.D. Fla. Bankr. 2004) (same under parallel provisions of Rule 9011, Fed. R. Bankr.).

The same requirements apply under 57.105, which also contains a safe-harbor provision modeled after Federal Rule 11. As the Florida Courts have confirmed, "[b]ecause section 57.105 is patterned after Federal Rule 11, we construe it as its prototype has been construed in federal courts . . . ." *Mullins v. Kennelly*, 847 So. 2d 1151, 1154 (Fla. 5th DCA 2003).

Here, no motion for sanctions was ever served prior to the filing of this post-judgment motion. Accordingly, Silvers cannot seek sanctions under Rule 11 or 57.105.[3]

### 2.    *Silvers Is Not a Prevailing Party as Required under 57.105.*

In addition, Silvers is not a prevailing party, as required before sanctions can be imposed under section 57.105. *See Wendy's Int'l, Inc. v. Nu-Cape Constr., Inc.,* 169 F.R.D. 680, 688 (M.D. Fla. 1996) ("in order to receive attorney fees and costs under F.S. 57.105, . . . the party must demonstrate to the court that he or she is the prevailing party"); *Steinhardt v. Easter Shores White House Ass'n, Inc.,* 413 So. 2d 785, 786 (Fla. 3d DCA 1982) (no 57.105 fees "unless the merits of the controversy have been passed upon on the pleadings or proof, or both").

As discussed above, Silvers is not the prevailing party here, where the action was dismissed for lack of subject matter jurisdiction. Again, the Eleventh Circuit's decision in *Laborers* is directly controlling. As the Court explicitly held, "it would be inappropriate to award fees" under 57.105 based on a dismissal for lack of jurisdiction. Similarly, in *Westwood*

---

[3]    Silvers' Motion confirms that he is not seeking imposition of Rule 11 or 57.105 sanctions against counsel for Stelor, but only against Stelor itself. Motion at 1, 16. Accordingly, Silvers has waived his ability – if any – to seek fees jointly against Stelor's counsel. *See Kerzner v. Lerman,* 849 So. 2d 1185, 1187 (Fla. 4th DCA 2003). There is no basis for sanctions against counsel here, in any event.

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

*Community Two Ass'n v. Lewis,* 662 So. 2d 1011, 1012 (Fla. 4th DCA 1995), the Court emphasized that "there is no authority for holding that filing a claim in an inappropriate forum can result in a finding that the claim is void of any justiciable issues such that an award of attorney's fees is permitted pursuant to section 57.105(1)."  *See also Executive Center, Inc. v. Durability Seating & Interiors, Inc.,* 402 So. 2d 24, 25-26 (Fla. 3d DCA 1981) ("voluntary dismissal without prejudice cannot be deemed evidence that the complaint and motion . . . are totally devoid of merit.  Such a dismissal does not go to the merits of the case").

There is no basis here that would support a finding that Stelor knowingly advanced a frivolous position, or pursued claims based on a complete absence of justiciable issues of law or fact as required before sanctions can be imposed under section 57.105, even if Silvers were the prevailing party.  *See Muckenfuss v. Deltona Corp.,* 508 So. 2d 340, 341 (Fla. 1987); *Langford v. Ferrera,* 823 So. 2d 795, 796-97 (Fla. 1st DCA 2002).

Accordingly, Silvers' request for section 57.105 sanctions should be denied.

### 3.     *This Situation Does Not Justify Sanctions Based on the Court's Own Initiative.*

Nor is this a situation justifying the imposition of sanctions under these rules based on the Court's own initiative.  Stelor clearly has not engaged in conduct "akin to contempt", as is required before a Court can impose sanctions on its own initiative.  *See Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255-56 (11th Cir. 2003).  As the Court explained in *Kaplan,* where "'no "safe harbor" opportunity exists to withdraw or correct a submission challenged in a court-initiated proceeding", additional procedural and substantive safeguards are required.  Thus, "the initiating court must employ (1) a 'show-cause' order to provide notice and

15

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

15 of 45

an opportunity to be heard; and (2) a higher standard ("akin to contempt") than in the case of party-initiated sanctions."

Although Silvers ignores the requirements of this higher standard, he recognizes the heavy burden before sanctions will be imposed, even where a party complies with the safe harbor requirements. Thus, he concedes the need to show either that Stelor (1) "knew when the action was filed that diversity was lacking and concealed it", or (2) that Stelor entirely ignored its duty "to perform a reasonable investigation to determine whether and of its members resided in Florida." Motion at 9-10. As discussed above and fully explained in the accompanying declarations of Steven Esrig, Martin Jeffery, Arthur and Bruce Salk (Exhibits "B"-"E" hereto), neither of these assertions is true. Stelor undertook a full investigation into the issue of jurisdiction, and repeated the inquiry as the issue continued to arise in the case. Stelor reasonably relied on the information from a member's representative, who mistakenly failed to recollect that his daughter living in Florida had a small interest in the company. Once Stelor learned of the situation, its counsel immediately and fully disclosed the facts to the Court twice, with the result that the action was dismissed without prejudice. Certainly, Stelor did not know before then that diversity was lacking, and never concealed any such information from the Court. Stelor did not act in bad faith, improperly or recklessly.

This situation does not even approach satisfying the heightened standard of misconduct "akin to contempt" required for imposition of sanctions on the Court's own initiative. Even under the standards for party-initiated motions, Stelor's assertions of jurisdiction in its papers were entirely justifiable at the time they were signed. Stelor did not knowingly advance a frivolous position, or pursue claims based on a complete absence of justiciable issue of law or

16

Burlington • Weil • Schwiep • Kaplan & Blonsky, P.A.

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com   www.bwskb.com

fact as required for sanctions to be imposed under Rule 57.105.  *See Muckenfuss v. Deltona Corp.,* 508 So. 2d 340, 341 (Fla. 1987); *Langford v. Ferrera,* 823 So. 2d 795, 796-97 (Fla. 1st DCA 2002).  Nor were Stelor's claims objectively frivolous as required before sanctions can be imposed under Rule 11.  *See Laborers,* 827 F.2d at 1458.

Silvers' cases, moreover, are clearly distinguishable, both because they do not address the heightened standard under *Kaplan,* and on their facts.  *See Mopaz Diamonds v. Institute of London Underwriters,* 822 F. Supp. 1053, 1055 (S.D.N.Y. 1993); *Hendrix v. Naphtal,* 971 F.2d 398, 399-400 (9th Cir. 1992)*; International Shipping Co, S.A. v. Hydra Offshore, Inc.,* 675 F. Supp. 146, 152 (S.D.N.Y. 1987).  In all of those cases, a party alleged and continued to argue that jurisdiction existed, even with knowledge of the facts defeating jurisdiction.  In *Mopaz,* the party's notice of removal itself demonstrated that the amount at issue failed to satisfy the jurisdictional threshold.  In *Hendrix,* the party alleging Florida residency had moved to California and was selling his Florida house.  And, in *Hydra*, a corporation that admitted it was a foreign corporation (in an action where the defendant was a foreign corporation as well) nevertheless continued to argue diversity existed.  These situations are radically different from the case here, where Stelor conducted a reasonable investigation, believed its members had no Florida residents, and immediately advised the Court when it learned otherwise.

    **E.**    **The Claimed Fees Are Unfounded.**

Finally, Silvers' claimed fees are exaggerated and unfounded.  As a threshold matter, Silvers' motion is devoid of any confirmation that Silvers has either paid, or has the obligation to pay, any of the claimed fees.  In general, Florida law provides that an opponent cannot be responsible for fees for which a client is not responsible.  *E.g., Burger King Corporation v.*

17

BURLINGTON • WEIL • SCHWIEP • KAPLAN ⊛ BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

17 of 45

CASE NO. 05-80393 CIV HURLEY/HOPKINS

*Mason,* 719 F.2d 1480, 1499 (11th Cir. 1983), *cert. denied,* 465 U.S. 1102 (1984).  In the Motion at 14, Silvers makes the cryptic and unexplained statement that there is a "contingent fee agreement" for some or all of the counsel.  Exhibits C (From the Dimond, Kaplan firm), and Exhibit B (from the Kozyak, Tropin firm) bear some indicia of being actual invoices.  The reference to a "contingent fee agreement" (presumably triggered by ultimate success on the breach of contract issues and/or recovery of money from some source – neither of which has yet occurred) and the lack of reference anywhere in Silvers' extensive papers to any payment made or due, however, suggest that at this time no attorneys' fee of any type is owed by Mr. Silvers.  Based on Florida law, therefore, Silvers cannot seek reimbursement from Stelor for fees he is not required to pay.

The amount of fees sought by Silvers – $230,730.00 – is also excessive and unfounded.  As the Declaration of Jeffrey Crockett confirms (Exhibit "F" hereto), the amount is more double than the fees incurred by counsel for Stelor.  Crockett Decl. ¶ 1.  In addition, the total fees associated with the jurisdictional issues are approximately $2,000.00.  The remainder of the work, moreover, obviously relates to the ongoing dispute between the parties, which remains pending and will certainly continue in a different court.  *Id.* ¶ 2.

<u>**CONCLUSION**</u>

For the foregoing reasons, Silvers' Motion is entirely without merit and should be denied.

> BURLINGTON, WEIL, SCHWIEP,
>   KAPLAN & BLONSKY, P.A.
> Attorneys for Plaintiff
> Office in the Grove, Penthouse A
> 2699 South Bayshore Drive
> Miami, Florida 33133
> Tel: 305-858-2900
> Fax: 305-858-5261

18

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

18 of 45

CASE NO. 05-80393 CIV HURLEY/HOPKINS

By: /s/ Kevin C. Kaplan
        Kevin C. Kaplan, Esq.
        Florida Bar No. 933848
        David J. Zack, Esq.
        Florida Bar No. 641685

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic mail

and U.S. mail on this 23rd day of November 2005 upon the following:

| | |
|---|---|
| Adam T. Rabin, Esq. | Kenneth R. Hartmann, Esq. |
| DIMOND, KAPLAN & | Gail M. McQuilkin, Esq. |
|    ROTHSTEIN, P.A. | KOZYAK TROPIN & |
| Trump Plaza |    THROCKMORTON, P.A. |
| 525 S. Flagler Drive, Suite 200 | 2525 Ponce de Leon Blvd., 9th Floor |
| West Palm Beach, Florida 33401 | Coral Gables, Florida 33134 |

        /s/ Kevin C. Kaplan
        Kevin C. Kaplan

19

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

19 of 45

# EXHIBIT A

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 05-14258-II

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

NOV 1 5 2005

THOMAS K. KAHN
CLERK
```

STELOR PRODUCTIONS, L.L.C.,
a Delaware corporation,
f.k.a. Stelor Productions, Inc.,

Plaintiff-Appellant,

versus

STEVEN A. SILVERS,
a Florida resident,

Defendant-Appellee.

Appeal from the United States District Court for the
Southern District of Florida

Before DUBINA, HULL, and MARCUS, Circuit Judges.

BY THE COURT:

The district court lacked subject-matter jurisdiction to deny Appellant's motion for injunctive

relief.  See 28 U.S.C. § 1332.  This case is REMANDED with instructions to vacate that order and

to dismiss the action for lack of subject-matter jurisdiction.  See United States v. Corrick, 298 U.S.

435, 440, 56 S.Ct. 829, 832, 80 L.Ed. 1263 (1936); Bender v. Williamsport Area Sch. Dist., 475 U.S.

534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); Tamiami Partners, Ltd. ex rel. Tamiami

Dev. Corp. v. Miccosukee Tribe of Indians of Fla., 177 F.3d 1212, 1221 (11th Cir. 1999); Green v.

Brantley, 981 F.2d 514, 521 (11th Cir. 1993). Appellee's motion to dismiss the appeal is DENIED as moot.

2

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

      Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

      Defendant.

_____/

### DECLARATION OF STEVEN A. ESRIG IN OPPOSITION TO DEFENDANT'S MOTION FOR FEES

I, Steven A. Esrig, hereby declare as follows:

1.     As set forth in my initial declaration in this case, I am the President and CEO of Stelor Productions, L.L.C. ("Stelor").  I have been employed by Stelor since its inception, and I have held my current position for more than two years.  The facts stated herein are based upon my own personal knowledge and/or on corporate records and documents maintained by Stelor in the ordinary course of business.

### THE CRITICAL IMPORTANCE OF THIS DISPUTE TO STELOR

2.     As set forth in Stelor's complaint and in my previously-filed declarations, this lawsuit against Steven Silvers raised an issue of critical importance to Stelor:  the continued validity of the License Agreement and Settlement Agreement upon which Stelor's business depends.  The intellectual property licensed to Stelor pursuant to those Agreements is the foundation of Stelor's business.  Thus, confirming that Silvers' wrongly terminated those

CASE NO.  05-80393 CIV HURLEY/HOPKINS

Agreements, and that they remain in full force and effect, is critical to the future of Stelor's business.

3.      This issue still has not been decided by the courts.  The issue is now directly raised in the action pending before the Honorable Judge Ryskamp, Case No. 05-80387, styled *Steven A. Silvers v. Google Inc.*  Stelor was joined as a counterclaim defendant by Google. Stelor, in turn, has filed in that action its own claims for trademark infringement against Google, including a claim against Silvers for a declaration that the Agreements were wrongly terminated, that they remain in full force and effect, and that Stelor – and not Silvers – has the right to pursue the action against Google.

4.      Silvers unfortunately has a history of actively trying to harm Stelor and disrupt its business.  For example, recognizing the harm that an unfounded attempt by him to terminate Stelor's license would have, he promised he would not do so.  I detailed those facts in my Declaration filed on May 23, 2005, ¶ 20 & Exh. C p. 4.  Yet, Silvers did anyway, and did so in a manner designed to have maximum detrimental impact on Stelor.  Thus, in addition to having his counsel send a termination letter without any notice of the alleged breaches or opportunity to cure, he simultaneously took concerted action to shut down Stelor's website, eliminate Stelor's control of its related domain names, and unilaterally pursue a trademark infringement action against Google Inc.  Esrig's May 23rd Decl. ¶¶ 11-14.

5.      Under these circumstances, Stelor has been understandably reluctant to disclose any more information about its business or its investors than is absolutely required.  Given Silvers' demonstrated propensity to misuse Stelor's proprietary information, disrupt Stelor's business, and otherwise attempt however possible to cause harm, Stelor owes a responsibility to its investors to attempt to shield them from such abuses, and to prevent Silvers' unnecessary

2

CASE NO.  05-80393 CIV HURLEY/HOPKINS

access to any information related to Stelor's business, other than as required by the Agreements.

6.     Yet, Stelor takes very seriously its obligations of candor to this Court, and at every stage of this litigation, has presented the facts accurately, as understood by Stelor.  Stelor has done so after a full investigation of the issues.  Especially with respect to the jurisdictional issues, moreover, Stelor has repeated its investigations of the issues, and has ensured that this Court was immediately advised upon Stelor's discovery of a sub-member residing in Florida.

## STELOR'S INVESTIGATION OF THE JURISDICTIONAL ISSUES

7.     Stelor initially brought this action in Federal Court believing that diversity jurisdiction existed, and because the Settlement Agreement specifically provided for exclusive jurisdiction in this court.  No doubt, if Stelor had filed in State Court, Silvers would have removed the action, or filed a motion to dismiss based on that jurisdictional provision.  Stelor did not misrepresent the facts or act in bad faith in alleging that diversity jurisdiction existed at the time.  Stelor reasonably believed it did, based on its pre-filing investigation of the issue.

8.     As Stelor has previously explained, it recently converted from a Delaware Corporation to a limited liability company.  The conversion was completed as of mid March 2005, although the process of completing all of the membership documents is still ongoing.  The documentation still being completed includes the LLC Membership Unit Certificates, Membership Unit Restricted Stock Agreements, and Membership Unit Option Agreements.

9.     Stelor's investors are limited in number, and the principals of all of the investors are personally known to Stelor's officers.  In fact, I frequently visit the investors myself.  Thus, I know not only "on paper" where they are based, but also from my own visits with them.  Prior to the filing of this action, in late April of 2005, I reviewed our list of members, and confirmed that none of the members resided in Florida.

3

CASE NO.  05-80393 CIV HURLEY/HOPKINS

10.     To the extent that a few of the membership interests were held by other entities, and not individuals, I specifically spoke to the representatives of those entities to confirm that none of their members, resided in Florida.  The representatives confirmed that to me, and I communicated that information to our counsel.  I wanted to make sure that I spoke personally to those representatives, because the documentation process related to the members was still ongoing, and Stelor's records were therefore incomplete.

11.     Again, on or about May 20, 2005, when Silvers raised the issue of lack of jurisdiction in his opposition to Stelor's motion for preliminary injunction, I reviewed the members' citizenships once more, and confirmed my understanding that none of them lived in Florida.  Accordingly, I testified to that in my declaration, filed on May 23, 2005.  I also explained in detail the status of the conversion and the ongoing documentation process.

12.     When Silvers raised the issue in his motion to dismiss, filed on May 26, 2005, we repeated the process again.  I spoke once more to the representatives of each of the members to confirm the absence of a Florida member.  Again, I received that confirmation.  At that time, I did learn that one of our members was planning to move to Florida, but had not yet moved.  As of that time (and certainly as of the filing of this action), I still understood it to be the case from my investigation that no member resided in Florida.  Based on that investigation, therefore, I verified Stelor's Memorandum of Law In Opposition to Defendant's Motion to Dismiss, including the attached listing of what we fully believed at the time was an accurate listing of the citizenship of each of our members, filed on June 13, 2005.

13.     In August, however, I was told for the first time by Arthur Salk, a representative of one of Stelor's members, that a Florida connection might exist.  I was in Chicago at the time, meeting in person with Mr. Salk.  Stelor's Senior Vice President, Martin Jeffery, was with me.

4

CASE NO.  05-80393 CIV HURLEY/HOPKINS

Mr. Salk is a representative of Goo Investments LLC ("Goo Investments"), a member of Stelor. In light of the Court's August 8th Order, I asked again for confirmation that none of the members in Goo Investments lived in Florida.  Mr. Salk again confirmed that.

14.     After the meeting, however, I received a call from Mr. Salk on my cell phone while Mr. Jeffery and I were in a taxi on the way to the airport.  Mr. Jeffery and I spoke to Mr. Salk together, through the cell phone's speaker phone.  Mr. Salk told us that, after the meeting with us, he spoke with his son Bruce, and mentioned the discussion he had had with us.  Mr. Salk said that Bruce thought a small percentage interest had been given to Mr. Salk's daughter in Florida.  Mr. Salk said that Bruce was going to check the papers and confirm it.  Mr. Salk said he was very, very sorry about the misunderstanding; he simply did not recall that his daughter had an interest.

15.     I was very surprised and concerned by what he told him.  I asked Mr. Salk immediately to call Stelor's counsel in Florida, Mr. Kaplan.  I understand that he did so, and that he also put Mr. Kaplan in touch with his son Bruce.  I also immediately informed counsel.

16.     I followed up with Mr. Salk and his son to confirm the accuracy of the information.  Upon our confirming the information, Stelor advised the Court of the development.  Stelor wanted to ensure that the Court was aware of the information.

17.     Under these circumstances, Stelor did not act in bad faith, improperly or recklessly.  Stelor undertook a full investigation into the issue, and repeated the inquiry several times as the issue continued to arise in the case.  Stelor was simply unaware of the existence of a Florida-based sub-member.  In fact, Mr. Salk himself did not recall that his daughter in Florida had an interest in their company.  Once Stelor learned of the situation, we immediately and fully disclosed the existence of the Florida sub-member to the Court, with the result that the action

5

CASE NO. 05-80393 CIV HURLEY/HOPKINS

was dismissed without prejudice. At no time did Stelor ever act to conceal or misrepresent any information from or to the Court.

I declare under penalties of perjury that the foregoing is true and correct. Dated this 22 day of November, 2005.

Steven A. Esrig

6

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

       Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

       Defendant.

_____/

## DECLARATION OF MARTIN I. JEFFERY IN OPPOSITION TO DEFENDANT'S MOTION FOR FEES

I, Martin I. Jeffery, hereby declare as follows:

1.      As set forth in my initial declaration in this case, I am the Senior Vice President of Stelor Productions, L.L.C. ("Stelor").  The facts stated herein are based upon my own personal knowledge and/or on corporate records and documents maintained by Stelor in the ordinary course of business.

## THE CRITICAL IMPORTANCE OF THIS DISPUTE TO STELOR

2.      As set forth in Stelor's complaint and in my previously-filed declaration, this lawsuit against Steven Silvers raised an issue of critical importance to Stelor:  the continued validity of the License Agreement and Settlement Agreement upon which Stelor's business depends.  The intellectual property licensed to Stelor pursuant to those Agreements is the foundation of Stelor's business.  Thus, confirming that Silvers' wrongly terminated those Agreements, and that they remain in full force and effect, is critical to the future of Stelor's

CASE NO.  05-80393 CIV HURLEY/HOPKINS

business.

3.      Silvers unfortunately has a history of actively trying to harm Stelor and disrupt its business.  For example, recognizing the harm that an unfounded attempt by him to terminate Stelor's license would have, he promised he would not do so.  Mr. Esrig detailed those facts in his Declaration filed on May 23, 2005, ¶ 20 & Exh. C p. 4.  Yet, Silvers did anyway, and did so in a manner designed to have maximum detrimental impact on Stelor.  Thus, in addition to having his counsel send a termination letter without any notice of the alleged breaches or opportunity to cure, he simultaneously took concerted action to shut down Stelor's website, eliminate Stelor's control of its related domain names, and unilaterally pursue a trademark infringement action against Google Inc.  Jeffery Decl. filed July 1, 2005 (DE # 59) ¶¶ 13-15.

4.      Under these circumstances, Stelor has been understandably reluctant to disclose any more information about its business or its investors than is absolutely required.  Given Silvers' demonstrated propensity to misuse Stelor's proprietary information, disrupt Stelor's business, and otherwise attempt however possible to cause harm.  Stelor owes a responsibility to its investors to attempt to shield them from such abuses, and to prevent Silvers' unnecessary access to any information related to Stelor's business, other than as required by the Agreements.

5.      Yet, Stelor takes very seriously its obligations of candor to this Court, and at every stage of this litigation, has presented the facts accurately, as understood by Stelor.  Stelor has done so after a full investigation of the issues.  Especially with respect to the jurisdictional issues, moreover, Stelor has repeated its investigations of the issues, and has ensured that this Court was immediately advised upon Stelor's discovery of a sub-member residing in Florida.  Mr. Esrig has detailed that investigation in his Declaration.

2

CASE NO.  05-80393 CIV HURLEY/HOPKINS

## THE MEETING AND CALL WITH MR. SALK IN CHICAGO

6.      Along with Mr. Esrig, I visited Mr. Salk in Chicago in August 2005.  Mr. Salk is a representative of one of Stelor's members, Goo Investments LLC ("Goo Investments"), a member of Stelor.  At the meeting, Mr. Esrig asked Mr. Salk to confirm that none of the members in Goo Investments lived in Florida.  I understood from the conversation that they had previously discussed that issue, and that Mr. Salk had confirmed Goo Investments had no Florida members.  Mr. Salk again confirmed that.

7.      After the meeting, however, Mr. Esrig received a call from Mr. Salk on his cell phone while we were in a taxi on the way to the airport.  Mr. Esrig and I spoke to Mr. Salk together, through the cell phone's speaker phone.  Mr. Salk told us that, after the meeting with us, he spoke with his son Bruce, and mentioned the discussion he had had with us.  Mr. Salk said that Bruce thought a small percentage interest had been given to Mr. Salk's daughter in Florida.  Mr. Salk said that Bruce was going to check the papers and confirm it.  Mr. Salk said he was very, very sorry about the misunderstanding; he simply did not recall that his daughter had an interest.

8.      Mr. Esrig said he was very surprised and concerned by what Mr. Salk told him.  Mr. Esrig asked Mr. Salk immediately to call Stelor's counsel in Florida, Mr. Kaplan.  Mr. Esrig also immediately informed our counsel.

9.      I understand that upon Stelor's confirming the information, Stelor advised the Court of the development.  Stelor wanted to ensure that the Court was aware of the information.

10.      Under these circumstances, Stelor did not act in bad faith, improperly or recklessly.  Stelor undertook a full investigation into the issue, and repeated the inquiry several times as the issue continued to arise in the case.  Stelor was simply unaware of the existence of a

3

Florida-based sub-member. In fact, Mr. Salk himself did not recall that his daughter in Florida had an interest in their company. Once Stelor learned of the situation, we immediately and fully disclosed the existence of the Florida sub-member to the Court, with the result that the action was dismissed without prejudice. At no time did Stelor ever act to conceal or misrepresent any information from or to the Court.

I declare under penalties of perjury that the foregoing is true and correct. Dated this 27 day of November, 2005.

Martin I. Jeffery

4

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

        Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

        Defendant.

_____/

**DECLARATION OF ARTHUR SALK IN OPPOSITION TO
DEFENDANT'S FEE MOTION FOR FEES**

I, Arthur Salk, hereby declare as follows:

1.     I am a businessman residing in Highland Park, Illinois.

2.     I am over the age of 18, and have personal knowledge of the matters set forth herein.

3.     I am an investor in Goo Investments LLC ("Goo Investments"), which is a member of Stelor Productions, LLC.  Goo Investments is an Illinois limited liability company.

4.     At my instruction, my son, Bruce Salk, an attorney licensed in the State of Illinois, handled the process of forming Goo Investments.  I am in my eighties now, and although still very actively involved in my family's business, my son handles certain of the legal details.

5.     When Bruce set up the company in April of 2004, he gave a small membership interest in Goo Investments to each of my daughters, one of whom lives in Florida.  This was consistent with how I had structured other investments in the recent past. At the time, I did not

CUHEN, SALK&HUVARD, P.C.                     ☑005

CASE NO. 05-80393 CIV HURLEY/HOPKINS

concentrate on the exact distribution of membership interests in Goo Investments.

6.     I am generally aware of the ongoing problems with Steven Silvers, and of the filing of this action against Silvers in the Spring of 2005.

7.     I recall Mr. Esrig asking me in late April of 2005 if Goo Investments had any Florida members. My recollection at that time was that my daughter in Florida had no interest. I informed Mr. Esrig of my recollection.

8.     The issue came up a second time in August of 2005, when Mr. Esrig and Marty Jeffery, the Senior Vice President of Stelor, were in Chicago meeting with me. During the meeting, Mr. Esrig asked me to confirm that none of the members in Goo Investment lived in Florida. I told him that was my recollection and that I would confirm this with Bruce Salk.

9.     After the meeting, though, I spoke with my son Bruce, and mentioned the discussion I had with Mr. Esrig. It was then that Bruce told me he thought a small percentage interest had been given to my daughter in Florida. He said he would check the papers and confirm it.

10.     I immediately called Mr. Esrig on his cell phone to advise him of what I had learned. He asked me immediately to call Stelor's counsel in Florida, Mr. Kaplan. I did so. I also put Mr. Kaplan in touch with my son Bruce.

11.     Bruce subsequently confirmed that my daughter had in fact been given a small percentage interest in Goo Investments, and I understand that he also spoke directly to Mr. Kaplan.

12.     I told Mr. Esrig I was sorry about the misunderstanding. I simply did not recall that my daughter had an interest.

2

CASE NO. 05-80393 CIV HURLEY/HOPKINS


I declare under penalties of perjury that the foregoing is true and correct.  Dated this 22

day of _November_ 2005.

_____
Arthur Salk


3

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

        Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

        Defendant.

_____/

**DECLARATION OF BRUCE SALK IN OPPOSITION TO
DEFENDANT'S FEE MOTION FOR FEES**

I, Bruce Salk, hereby declare as follows:

1.     I am a businessman residing in Deerfield, Illinois.

2.     I am over the age of 18, and have personal knowledge of the matters set forth herein.

3.     I am an attorney, licensed to practice law in the State of Illinois, and work with my father, Arthur Salk, handling various personal and family investments.

4.     One of our family investments is in Goo Investments LLC ("Goo Investments"), an Illinois limited liability company formed in April 2004 for the purpose of owning stock in Stelor Productions, Inc. (now known as Stelor Productions, LLC).

5.     I handled the process of forming Goo Investments. My father is in his eighties now, and although still very actively involved in the family's business, I handle certain of the details.

CASE NO. 05-80393 CIV HURLEY/HOPKINS

6.     When I set up the company, I listed a small membership interest in Goo Investments as belonging to myself and each of my sisters, one of whom lives in Florida, as my father had done on other recent investments. I maintained all of the records for the company.

7.     In August of 2005, I spoke with my father by telephone after a meeting he had with Mr. Esrig and Marty Jeffery, the Senior Vice President of Stelor, in Chicago. My father mentioned that Mr. Esrig had asked him to confirm that none of the Goo Investments' members lived in Florida. I told my father that I thought my sister had a small percentage interest. He asked me to review the records immediately and confirm it.

8.     I did, and called him back to confirm that she had an interest. He asked me to speak to Stelor's counsel, Mr. Kaplan, which I did.

I declare under penalties of perjury that the foregoing is true and correct. Dated this 22nd day of November, 2005.

_____
Bruce Salk

2

# EXHIBIT F

## DECLARATION OF JEFFREY B. CROCKETT

This declaration is given in relation to the fee application of Defendant, Steven Silvers, in the matter, Stelor Productions LLC v. Silvers, Case No. 05-80393-civ-Hurley. I have been retained on behalf of Stelor Productions LLC to address issues of the reasonable attorney's fees sought by Silvers. I have reviewed the fee submission of Defendant Silvers, other pleadings and papers in this action, and have consulted with counsel for Stelor.

I am a 1981 graduate of Yale Law School, admitted to practice in Florida in 1982, following a year's clerkship on the Ninth Circuit Court of Appeals. My career included service as an Assistant United States Attorney for five years (1985-1989). I am now a partner at the Jorden Burt LLP law firm. I have practiced in the area of civil and criminal litigation for 23 years, with extensive experience in federal court in this district. I have testified on attorney's fee issues by affidavit and at hearings, and have litigated fee issues as an advocate. I am familiar with and have considered all of the pertinent considerations for the determination of court-ordered reasonable attorney's fees in the state and federal courts of this district, as well as the factors relating to "reasonable attorney's fees" under Florida and federal precedent.

1.        Addressing the amount of the fees attributable to the alleged errors and omissions (leaving aside defects of jurisdiction and liability) Silvers' request

appears overstated for any number of reasons.  Time entries listed relate to
numerous issues arising from to the dispute between the parties, or various
business relationships involving one or both of the parties.  (E.g., 5/20, 2.0 hours
research on "remedies for termination of license;" 6/26. 4.8 hours "research on
new technology"; 6/9 2.0 hours research on "whether a court will enforce the terms
of a contract;" etc.)   Many of the entries are redacted in such a manner that there is
no way for the reader to know the task that was being performed (7/15, "legal
research re [redacted]; draft memo re [redacted]).   Silvers' statement that "Silvers'
legal expenses were for naught" is not accurate because those expenses, like those
of the opposite party, resulted in analysis, discovery and research relating to the
still-pending dispute between the parties, which will be resolved before other
courts. Presumably, counsel's efforts and discovery during the period of the
pendency of this action will be useful in the remaining ongoing litigation between
the parties.  Further, the hours of Silvers' counsel appear disproportionate to the
hours expended by Stelors' counsel in litigating the same issues.  As proffered by
Stelor's counsel, Stelor's total hours expended in the case are less than half those
expended by Silvers as listed in their motion.

   2.   The key issue, however, is that Silvers has not prevailed on all issues as
would be necessary for Silvers to plausibly claim reimbursement for 100% of the
time spent in this action.  Nor has Silvers attempted to demonstrate any additional

("marginal") costs and fees incurred by virtue of litigation in this particular forum, nor litigation of the jurisdictional issue specifically. From the time records submitted, Silvers' fees which specifically seem to relate to the jurisdictional issue are in the range of $2,000. (See entries of 5/10; 8/9-8/10; 8/29-8/31). A very small percentage of the paper filed by Silvers in this case (approximately five pages) relate to the jurisdictional issue. By contrast, hundreds and hundreds of pages were prepared and filed by Silvers in addressing his view of the merits. The amount of fees incurred by Silvers in addressing the jurisdictional issue is minimal.

I declare that the foregoing is true and correct to the best of my knowledge, information and belief.

JEFFREY B. CROCKETT