Stelor Productions, v. Silvers                                                    Doc. 89

Case 9:05-cv-80393-DTKH      Document 89      Entered on FLSD Docket 11/25/2005      Page 1 of 25      D.C.

FILED by _____ ELECTRONIC

**Nov 23 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

        Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

        Defendant.

_____/

## <u>PLAINTIFF'S NOTICE OF FILING</u>

PLEASE TAKE NOTICE that Plaintiff, by and through undersigned counsel, hereby files the

following Declarations:

A.  Declaration of Steven A. Esrig in Opposition to Defendant's Motion for Fees.

B.  Declaration of Martin I. Jeffery in Opposition to Defendant's Motion for Fees.

C.  Declaration of Arthur Salk in Opposition to Defendant's Motion for Fees.

D.  Declaration of Bruce Salk in Opposition to Defendant's Motion for Fees.

E.  Declaration of Jeffrey B. Crockett.

        RESPECTFULLY SUBMITTED,

        BURLINGTON, WEIL, SCHWIEP,
          KAPLAN & BLONSKY, P.A.
        Attorneys for Stelor Productions, LLC
        2699 South Bayshore Drive, Penthouse
        Miami, Florida 33133
        Tel: 305-858-2900
        Fax: 305-858-5261
        Email:  kkaplan@bwskb.com

        By: /s/ Kevin C. Kaplan
            Kevin C. Kaplan

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

1 of 25

Dockets.Justia.com

Case No. 05-80387 CIV RYSKAMP/VITUNIC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served electronically and via

U.S. mail on this 23rd day of November, 2005 upon the following:

Adam T. Rabin, Esq.                Kenneth R. Hartmann, Esq.
DIMOND, KAPLAN &                   Gail M. McQuilkin, Esq.
   ROTHSTEIN, P.A.              KOZYAK TROPIN &
Trump Plaza                           THROCKMORTON, P.A.
525 S. Flagler Drive, Suite 200    2525 Ponce de Leon Blvd., 9th Floor
West Palm Beach, Florida 33401     Coral Gables, Florida 33134


/s/ Kevin C. Kaplan
Kevin C. Kaplan

2

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

2 of 25

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

       Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

       Defendant.

_____/

**DECLARATION OF STEVEN A. ESRIG IN OPPOSITION TO
DEFENDANT'S MOTION FOR FEES**

I, Steven A. Esrig, hereby declare as follows:

1.       As set forth in my initial declaration in this case, I am the President and CEO of Stelor Productions, L.L.C. ("Stelor").  I have been employed by Stelor since its inception, and I have held my current position for more than two years.  The facts stated herein are based upon my own personal knowledge and/or on corporate records and documents maintained by Stelor in the ordinary course of business.

**THE CRITICAL IMPORTANCE OF THIS DISPUTE TO STELOR**

2.       As set forth in Stelor's complaint and in my previously-filed declarations, this lawsuit against Steven Silvers raised an issue of critical importance to Stelor:  the continued validity of the License Agreement and Settlement Agreement upon which Stelor's business depends.  The intellectual property licensed to Stelor pursuant to those Agreements is the foundation of Stelor's business.  Thus, confirming that Silvers' wrongly terminated those

CASE NO.  05-80393 CIV HURLEY/HOPKINS

Agreements, and that they remain in full force and effect, is critical to the future of Stelor's business.

3.    This issue still has not been decided by the courts.  The issue is now directly raised in the action pending before the Honorable Judge Ryskamp, Case No. 05-80387, styled *Steven A. Silvers v. Google Inc.*  Stelor was joined as a counterclaim defendant by Google. Stelor, in turn, has filed in that action its own claims for trademark infringement against Google, including a claim against Silvers for a declaration that the Agreements were wrongly terminated, that they remain in full force and effect, and that Stelor – and not Silvers – has the right to pursue the action against Google.

4.    Silvers unfortunately has a history of actively trying to harm Stelor and disrupt its business.  For example, recognizing the harm that an unfounded attempt by him to terminate Stelor's license would have, he promised he would not do so.  I detailed those facts in my Declaration filed on May 23, 2005, ¶ 20 & Exh. C p. 4.  Yet, Silvers did anyway, and did so in a manner designed to have maximum detrimental impact on Stelor.  Thus, in addition to having his counsel send a termination letter without any notice of the alleged breaches or opportunity to cure, he simultaneously took concerted action to shut down Stelor's website, eliminate Stelor's control of its related domain names, and unilaterally pursue a trademark infringement action against Google Inc.  Esrig's May 23rd Decl. ¶¶ 11-14.

5.    Under these circumstances, Stelor has been understandably reluctant to disclose any more information about its business or its investors than is absolutely required.  Given Silvers' demonstrated propensity to misuse Stelor's proprietary information, disrupt Stelor's business, and otherwise attempt however possible to cause harm, Stelor owes a responsibility to its investors to attempt to shield them from such abuses, and to prevent Silvers' unnecessary

2

access to any information related to Stelor's business, other than as required by the Agreements.

6.     Yet, Stelor takes very seriously its obligations of candor to this Court, and at every stage of this litigation, has presented the facts accurately, as understood by Stelor. Stelor has done so after a full investigation of the issues. Especially with respect to the jurisdictional issues, moreover, Stelor has repeated its investigations of the issues, and has ensured that this Court was immediately advised upon Stelor's discovery of a sub-member residing in Florida.

## STELOR'S INVESTIGATION OF THE JURISDICTIONAL ISSUES

7.     Stelor initially brought this action in Federal Court believing that diversity jurisdiction existed, and because the Settlement Agreement specifically provided for exclusive jurisdiction in this court. No doubt, if Stelor had filed in State Court, Silvers would have removed the action, or filed a motion to dismiss based on that jurisdictional provision. Stelor did not misrepresent the facts or act in bad faith in alleging that diversity jurisdiction existed at the time. Stelor reasonably believed it did, based on its pre-filing investigation of the issue.

8.     As Stelor has previously explained, it recently converted from a Delaware Corporation to a limited liability company. The conversion was completed as of mid March 2005, although the process of completing all of the membership documents is still ongoing. The documentation still being completed includes the LLC Membership Unit Certificates, Membership Unit Restricted Stock Agreements, and Membership Unit Option Agreements.

9.     Stelor's investors are limited in number, and the principals of all of the investors are personally known to Stelor's officers. In fact, I frequently visit the investors myself. Thus, I know not only "on paper" where they are based, but also from my own visits with them. Prior to the filing of this action, in late April of 2005, I reviewed our list of members, and confirmed that none of the members resided in Florida.

CASE NO.  05-80393 CIV HURLEY/HOPKINS

10.     To the extent that a few of the membership interests were held by other entities, and not individuals, I specifically spoke to the representatives of those entities to confirm that none of their members, resided in Florida.  The representatives confirmed that to me, and I communicated that information to our counsel.  I wanted to make sure that I spoke personally to those representatives, because the documentation process related to the members was still ongoing, and Stelor's records were therefore incomplete.

11.     Again, on or about May 20, 2005, when Silvers raised the issue of lack of jurisdiction in his opposition to Stelor's motion for preliminary injunction, I reviewed the members' citizenships once more, and confirmed my understanding that none of them lived in Florida.  Accordingly, I testified to that in my declaration, filed on May 23, 2005.  I also explained in detail the status of the conversion and the ongoing documentation process.

12.     When Silvers raised the issue in his motion to dismiss, filed on May 26, 2005, we repeated the process again.  I spoke once more to the representatives of each of the members to confirm the absence of a Florida member.  Again, I received that confirmation.  At that time, I did learn that one of our members was planning to move to Florida, but had not yet moved.  As of that time (and certainly as of the filing of this action), I still understood it to be the case from my investigation that no member resided in Florida.  Based on that investigation, therefore, I verified Stelor's Memorandum of Law In Opposition to Defendant's Motion to Dismiss, including the attached listing of what we fully believed at the time was an accurate listing of the citizenship of each of our members, filed on June 13, 2005.

13.     In August, however, I was told for the first time by Arthur Salk, a representative of one of Stelor's members, that a Florida connection might exist.  I was in Chicago at the time, meeting in person with Mr. Salk.  Stelor's Senior Vice President, Martin Jeffery, was with me.

4

CASE NO.  05-80393 CIV HURLEY/HOPKINS

Mr. Salk is a representative of Goo Investments LLC ("Goo Investments"), a member of Stelor. In light of the Court's August 8th Order, I asked again for confirmation that none of the members in Goo Investments lived in Florida.  Mr. Salk again confirmed that.

14.    After the meeting, however, I received a call from Mr. Salk on my cell phone while Mr. Jeffery and I were in a taxi on the way to the airport.  Mr. Jeffery and I spoke to Mr. Salk together, through the cell phone's speaker phone.  Mr. Salk told us that, after the meeting with us, he spoke with his son Bruce, and mentioned the discussion he had had with us.  Mr. Salk said that Bruce thought a small percentage interest had been given to Mr. Salk's daughter in Florida.  Mr. Salk said that Bruce was going to check the papers and confirm it.  Mr. Salk said he was very, very sorry about the misunderstanding; he simply did not recall that his daughter had an interest.

15.    I was very surprised and concerned by what he told him.  I asked Mr. Salk immediately to call Stelor's counsel in Florida, Mr. Kaplan.  I understand that he did so, and that he also put Mr. Kaplan in touch with his son Bruce.  I also immediately informed counsel.

16.    I followed up with Mr. Salk and his son to confirm the accuracy of the information.  Upon our confirming the information, Stelor advised the Court of the development.  Stelor wanted to ensure that the Court was aware of the information.

17.    Under these circumstances, Stelor did not act in bad faith, improperly or recklessly.  Stelor undertook a full investigation into the issue, and repeated the inquiry several times as the issue continued to arise in the case.  Stelor was simply unaware of the existence of a Florida-based sub-member.  In fact, Mr. Salk himself did not recall that his daughter in Florida had an interest in their company.  Once Stelor learned of the situation, we immediately and fully disclosed the existence of the Florida sub-member to the Court, with the result that the action

5

CASE NO. 05-80393-CIV-HURLEY/HOPKINS

was dismissed without prejudice. At no time did Stelor ever act to conceal or misrepresent any information from or to the Court.

I declare under penalties of perjury that the foregoing is true and correct. Dated this 22 day of November, 2005.

Steven A. Esrig

6

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

       Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

       Defendant.

_____/

**DECLARATION OF MARTIN I. JEFFERY IN OPPOSITION TO
DEFENDANT'S MOTION FOR FEES**

I, Martin I. Jeffery, hereby declare as follows:

1.      As set forth in my initial declaration in this case, I am the Senior Vice President
of Stelor Productions, L.L.C. ("Stelor").  The facts stated herein are based upon my own personal
knowledge and/or on corporate records and documents maintained by Stelor in the ordinary
course of business.

**THE CRITICAL IMPORTANCE OF THIS DISPUTE TO STELOR**

2.      As set forth in Stelor's complaint and in my previously-filed declaration, this
lawsuit against Steven Silvers raised an issue of critical importance to Stelor:  the continued
validity of the License Agreement and Settlement Agreement upon which Stelor's business
depends.  The intellectual property licensed to Stelor pursuant to those Agreements is the
foundation of Stelor's business.  Thus, confirming that Silvers' wrongly terminated those
Agreements, and that they remain in full force and effect, is critical to the future of Stelor's

business.

3.      Silvers unfortunately has a history of actively trying to harm Stelor and disrupt its business.  For example, recognizing the harm that an unfounded attempt by him to terminate Stelor's license would have, he promised he would not do so.  Mr. Esrig detailed those facts in his Declaration filed on May 23, 2005, ¶ 20 & Exh. C p. 4.  Yet, Silvers did anyway, and did so in a manner designed to have maximum detrimental impact on Stelor.  Thus, in addition to having his counsel send a termination letter without any notice of the alleged breaches or opportunity to cure, he simultaneously took concerted action to shut down Stelor's website, eliminate Stelor's control of its related domain names, and unilaterally pursue a trademark infringement action against Google Inc.  Jeffery Decl. filed July 1, 2005 (DE # 59) ¶¶ 13-15.

4.      Under these circumstances, Stelor has been understandably reluctant to disclose any more information about its business or its investors than is absolutely required.  Given Silvers' demonstrated propensity to misuse Stelor's proprietary information, disrupt Stelor's business, and otherwise attempt however possible to cause harm.  Stelor owes a responsibility to its investors to attempt to shield them from such abuses, and to prevent Silvers' unnecessary access to any information related to Stelor's business, other than as required by the Agreements.

5.      Yet, Stelor takes very seriously its obligations of candor to this Court, and at every stage of this litigation, has presented the facts accurately, as understood by Stelor.  Stelor has done so after a full investigation of the issues.  Especially with respect to the jurisdictional issues, moreover, Stelor has repeated its investigations of the issues, and has ensured that this Court was immediately advised upon Stelor's discovery of a sub-member residing in Florida.  Mr. Esrig has detailed that investigation in his Declaration.

CASE NO.  05-80393 CIV HURLEY/HOPKINS

## THE MEETING AND CALL WITH MR. SALK IN CHICAGO

6.      Along with Mr. Esrig, I visited Mr. Salk in Chicago in August 2005.  Mr. Salk is a representative of one of Stelor's members, Goo Investments LLC ("Goo Investments"), a member of Stelor.  At the meeting, Mr. Esrig asked Mr. Salk to confirm that none of the members in Goo Investments lived in Florida.  I understood from the conversation that they had previously discussed that issue, and that Mr. Salk had confirmed Goo Investments had no Florida members.  Mr. Salk again confirmed that.

7.      After the meeting, however, Mr. Esrig received a call from Mr. Salk on his cell phone while we were in a taxi on the way to the airport.  Mr. Esrig and I spoke to Mr. Salk together, through the cell phone's speaker phone.  Mr. Salk told us that, after the meeting with us, he spoke with his son Bruce, and mentioned the discussion he had had with us.  Mr. Salk said that Bruce thought a small percentage interest had been given to Mr. Salk's daughter in Florida.  Mr. Salk said that Bruce was going to check the papers and confirm it.  Mr. Salk said he was very, very sorry about the misunderstanding; he simply did not recall that his daughter had an interest.

8.      Mr. Esrig said he was very surprised and concerned by what Mr. Salk told him.  Mr. Esrig asked Mr. Salk immediately to call Stelor's counsel in Florida, Mr. Kaplan.  Mr. Esrig also immediately informed our counsel.

9.      I understand that upon Stelor's confirming the information, Stelor advised the Court of the development.  Stelor wanted to ensure that the Court was aware of the information.

10.      Under these circumstances, Stelor did not act in bad faith, improperly or recklessly.  Stelor undertook a full investigation into the issue, and repeated the inquiry several times as the issue continued to arise in the case.  Stelor was simply unaware of the existence of a

3

Florida-based sub-member.  In fact, Mr. Salk himself did not recall that his daughter in Florida

had an interest in their company.  Once Stelor learned of the situation, we immediately and fully

disclosed the existence of the Florida sub-member to the Court, with the result that the action

was dismissed without prejudice.  At no time did Stelor ever act to conceal or misrepresent any

information from or to the Court.

I declare under penalties of perjury that the foregoing is true and correct.  Dated this 2 7

day of November, 2005.

Martin I. Jeffery

4

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA


CASE NO.  05-80393 CIV HURLEY/HOPKINS


STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

       Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

       Defendant.

_____/

### DECLARATION OF ARTHUR SALK IN OPPOSITION TO DEFENDANT'S FEE MOTION FOR FEES

I, Arthur Salk, hereby declare as follows:

1.     I am a businessman residing in Highland Park, Illinois.

2.     I am over the age of 18, and have personal knowledge of the matters set forth herein.

3.     I am an investor in Goo Investments LLC ("Goo Investments"), which is a member of Stelor Productions, LLC.  Goo Investments is an Illinois limited liability company.

4.     At my instruction, my son, Bruce Salk, an attorney licensed in the State of Illinois, handled the process of forming Goo Investments.  I am in my eighties now, and although still very actively involved in my family's business, my son handles certain of the legal details.

5.     When Bruce set up the company in April of 2004, he gave a small membership interest in Goo Investments to each of my daughters, one of whom lives in Florida.  This was consistent with how I had structured other investments in the recent past. At the time, I did not

CASE NO. 05-80393 CIV HURLEY/HOPKINS

concentrate on the exact distribution of membership interests in Goo Investments.

6.    I am generally aware of the ongoing problems with Steven Silvers, and of the filing of this action against Silvers in the Spring of 2005.

7.    I recall Mr. Esrig asking me in late April of 2005 if Goo Investments had any Florida members. My recollection at that time was that my daughter in Florida had no interest. I informed Mr. Esrig of my recollection.

8.    The issue came up a second time in August of 2005, when Mr. Esrig and Marty Jeffery, the Senior Vice President of Stelor, were in Chicago meeting with me. During the meeting, Mr. Esrig asked me to confirm that none of the members in Goo Investment lived in Florida. I told him that was my recollection and that I would confirm this with Bruce Salk.

9.    After the meeting, though, I spoke with my son Bruce, and mentioned the discussion I had with Mr. Esrig. It was then that Bruce told me he thought a small percentage interest had been given to my daughter in Florida. He said he would check the papers and confirm it.

10.    I immediately called Mr. Esrig on his cell phone to advise him of what I had learned. He asked me immediately to call Stelor's counsel in Florida, Mr. Kaplan. I did so. I also put Mr. Kaplan in touch with my son Bruce.

11.    Bruce subsequently confirmed that my daughter had in fact been given a small percentage interest in Goo Investments, and I understand that he also spoke directly to Mr. Kaplan.

12.    I told Mr. Esrig I was sorry about the misunderstanding. I simply did not recall that my daughter had an interest.

2

CASE NO.  05-80393 CIV HURLEY/HOPKINS

I declare under penalties of perjury that the foregoing is true and correct.  Dated this 22

day of November 2005.

_____
Arthur Salk

3

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

       Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

       Defendant.

_____/

## DECLARATION OF BRUCE SALK IN OPPOSITION TO
## DEFENDANT'S FEE MOTION FOR FEES

I, Bruce Salk, hereby declare as follows:

1.     I am a businessman residing in Deerfield, Illinois.

2.     I am over the age of 18, and have personal knowledge of the matters set forth herein.

3.     I am an attorney, licensed to practice law in the State of Illinois, and work with my father, Arthur Salk, handling various personal and family investments.

4.     One of our family investments is in Goo Investments LLC ("Goo Investments"), an Illinois limited liability company formed in April 2004 for the purpose of owning stock in Stelor Productions, Inc. (now known as Stelor Productions, LLC).

5.     I handled the process of forming Goo Investments. My father is in his eighties now, and although still very actively involved in the family's business, I handle certain of the details.

CASE NO. 05-80393 CIV HURLEY/HOPKINS

6.      When I set up the company, I listed a small membership interest in Goo Investments as belonging to myself and each of my sisters, one of whom lives in Florida, as my father had done on other recent investments. I maintained all of the records for the company.

7.      In August of 2005, I spoke with my father by telephone after a meeting he had with Mr. Esrig and Marty Jeffery, the Senior Vice President of Stelor, in Chicago. My father mentioned that Mr. Esrig had asked him to confirm that none of the Goo Investments' members lived in Florida. I told my father that I thought my sister had a small percentage interest. He asked me to review the records immediately and confirm it.

8.      I did, and called him back to confirm that she had an interest. He asked me to speak to Stelor's counsel, Mr. Kaplan, which I did.

I declare under penalties of perjury that the foregoing is true and correct. Dated this 22nd day of November, 2005.

_____
Bruce Salk

2

# EXHIBIT E

## DECLARATION OF JEFFREY B. CROCKETT

This declaration is given in relation to the fee application of Defendant, Steven Silvers, in the matter, Stelor Productions LLC v. Silvers, Case No. 05-80393-civ-Hurley. I have been retained on behalf of Stelor Productions LLC to address issues of the reasonable attorney's fees sought by Silvers. I have reviewed the fee submission of Defendant Silvers, other pleadings and papers in this action, and have consulted with counsel for Stelor.

I am a 1981 graduate of Yale Law School, admitted to practice in Florida in 1982, following a year's clerkship on the Ninth Circuit Court of Appeals. My career included service as an Assistant United States Attorney for five years (1985-1989). I am now a partner at the Jorden Burt LLP law firm. I have practiced in the area of civil and criminal litigation for 23 years, with extensive experience in federal court in this district. I have testified on attorney's fee issues by affidavit and at hearings, and have litigated fee issues as an advocate. I am familiar with and have considered all of the pertinent considerations for the determination of court-ordered reasonable attorney's fees in the state and federal courts of this district, as well as the factors relating to "reasonable attorney's fees" under Florida and federal precedent.

1.        Addressing the amount of the fees attributable to the alleged errors and omissions (leaving aside defects of jurisdiction and liability) Silvers' request

appears overstated for any number of reasons. Time entries listed relate to numerous issues arising from to the dispute between the parties, or various business relationships involving one or both of the parties. (E.g., 5/20, 2.0 hours research on "remedies for termination of license;" 6/26. 4.8 hours "research on new technology"; 6/9 2.0 hours research on "whether a court will enforce the terms of a contract;" etc.) Many of the entries are redacted in such a manner that there is no way for the reader to know the task that was being performed (7/15, "legal research re [redacted]; draft memo re [redacted]). Silvers' statement that "Silvers' legal expenses were for naught" is not accurate because those expenses, like those of the opposite party, resulted in analysis, discovery and research relating to the still-pending dispute between the parties, which will be resolved before other courts. Presumably, counsel's efforts and discovery during the period of the pendency of this action will be useful in the remaining ongoing litigation between the parties. Further, the hours of Silvers' counsel appear disproportionate to the hours expended by Stelors' counsel in litigating the same issues. As proferred by Stelor's counsel, Stelor's total hours expended in the case are less than half those expended by Silvers as listed in their motion.

2. The key issue, however, is that Silvers has not prevailed on all issues as would be necessary for Silvers to plausibly claim reimbursement for 100% of the time spent in this action. Nor has Silvers attempted to demonstrate any additional

("marginal") costs and fees incurred by virtue of litigation in this particular forum, nor litigation of the jurisdictional issue specifically.  From the time records submitted, Silvers' fees which specifically seem to relate to the jurisdictional issue are in the range of $2,000. (See entries of 5/10; 8/9-8/10; 8/29-8/31).   A very small percentage of the paper filed by Silvers in this case (approximately five pages) relate to the jurisdictional issue.  By contrast, hundreds and hundreds of pages were prepared and filed by Silvers in addressing his view of the merits.   The amount of fees incurred by Silvers in addressing the jurisdictional issue is minimal.

I declare that the foregoing is true and correct to the best of my knowledge, information and belief.

JEFFREY B. CROCKETT