UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

        Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

        Defendant.

_____/

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY
TO DEFENDANT'S REPLY TO STELOR'S
RESPONSE TO MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Plaintiff Stelor Productions, LLC, by and through undersigned counsel, hereby moves on

the following grounds for leave to file the attached Sur-Reply to Defendant's Reply to Stelor's

Response to Motion for Attorneys' Fees and Expenses:

Alleging perjured testimony, intentional concealment, and secret evidence for the first

time in his Reply, Silvers seeks to deny Stelor the opportunity to show Silvers' egregious

mischaracterizations of the facts and the law. Clearly, Silvers seeks to inflame this court with

false allegations and ambush tactics to support an entirely unwarranted claim for fees. That

tactic should not be permitted, especially given the astronomical fees claimed by Silvers in the

pending motion.

It would be highly unfair, and violative of basic notice requirements, to deny Stelor the

opportunity to refute Silvers' unfounded allegations. Accordingly, Stelor attaches its proposed

Sur-Reply, with the accompanying declarations of Stelor's CEO, three of its Board Members,

and its Systems Administrator.

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

CASE NO.  05-80393 CIV HURLEY/HOPKINS

WHEREFORE, Stelor respectfully requests entry of an order deeming the attached Sur-Reply filed, and denying Silvers' Motion for Fees and Expenses.

> BURLINGTON, WEIL, SCHWIEP,
> KAPLAN & BLONSKY, P.A.
> Attorneys for Plaintiff
> Office in the Grove, Penthouse A
> 2699 South Bayshore Drive
> Miami, Florida 33133
> Tel: 305-858-2900
> Fax: 305-858-5261
>
> By: /s/ Kevin C. Kaplan
> Kevin C. Kaplan, Esq.
> Florida Bar No. 933848
> David J. Zack, Esq.
> Florida Bar No. 641685

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic mail and U.S. mail on this 12th day of December 2005 upon the following:

Adam T. Rabin, Esq.
DIMOND, KAPLAN &
   ROTHSTEIN, P.A.
Trump Plaza
525 S. Flagler Drive, Suite 200
West Palm Beach, Florida 33401

Kenneth R. Hartmann, Esq.
Gail M. McQuilkin, Esq.
KOZYAK TROPIN &
   THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134

/s/ Kevin C. Kaplan
Kevin C. Kaplan

2

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

   Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

   Defendant.

_____/

**PLAINTIFF'S SUR-REPLY TO DEFENDANT'S REPLY TO STELOR'S
RESPONSE TO MOTION FOR ATTORNEYS' FEES AND EXPENSES**

  Silvers seeks to inflame this court with false allegations and ambush tactics to support an entirely unwarranted claim for fees.  Alleging perjured testimony, intentional concealment, and secret evidence for the first time in his Reply, Silvers seeks to deny Stelor the opportunity to address these new issues, and show Silvers' egregious mischaracterizations of the facts and the law.  Silvers' tactics should not be permitted.  His ploy should be seen for what it is, a blatant attempt to mislead this Court, factually and legally, in support of an otherwise unfounded motion for fees. His Motion for Fees should be denied.

**I.**

**PRELIMINARY STATEMENT**

  Why in the world would Stelor and its CEO, Steve Esrig, intentionally conceal and misrepresent facts relating to jurisdiction?  There is no conceivable reason.  Stelor's sole interest is in having this dispute resolved as expeditiously as possible.  The pending litigation and surrounding uncertainty regarding the License Agreement is seriously disruptive and harmful to Stelor's business, the continued viability of which depends on Stelor's rights to the Googles

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

property.

Stelor brought this action in Federal Court because it honestly believed that diversity existed and that it was required to file in Federal Court under the exclusive jurisdiction provision in the Settlement Agreement (DE #4, ¶ 17). Stelor had no motivation whatsoever to bring this action, invest its own substantial resources, including in seeking expedited injunctive relief, only to risk dismissal for lack of jurisdiction. If Stelor had known that diversity did not exist, it clearly would not have asserted it did.

Indeed, that is even more obviously true here, where Stelor had the ability to raise its claims in Federal Court, based on supplemental jurisdiction under 28 U.S.C. 1367(a), in the pending action that Silvers brought against Google, Inc., Case No. 05-80387. That is exactly what Stelor has done, following the dismissal without prejudice of this action. Rather than continuing to pursue this case had it known that diversity did not exist, Stelor would simply have filed its claim a bit sooner in the Google Action.

Stelor's actions in immediately disclosing to this Court the existence of a Florida sub-member, resulting in the dismissal without prejudice of this action, also belie any suggestion that Stelor intentionally concealed information. In fact, Silvers ironically complains that this happened so quickly that he did not have time to serve a fee motion in compliance with Rule 11's safe harbor provisions.

Silvers' wild assertions that Stelor intentionally concealed the identity of its members to conceal that diversity did not exist are unfounded and simply make no sense. Nor is there any legal basis, given the procedural posture of this case, to assess prevailing party fees or sanctions under Rule 11 or Florida's counterpart, section 57.105.

2

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

CASE NO.  05-80393 CIV HURLEY/HOPKINS

## II.

## SILVERS' UNFOUNDED NEW FACTUAL ALLEGATIONS

**A.    Silvers' New Allegations of Intentional Concealment Are False.**

Silvers' new allegations that Stelor has intentionally concealed jurisdictional facts are false.  Most disturbing is the suggestion by Silvers – a convicted felon with a history of interfering with Stelor and its business – and his counsel that they have somehow stolen Stelor's corporate records.  Silvers is hardly being straightforward with this Court when he claims that he "and his counsel have now confirmed that Stelor maintains computer records" purportedly showing a member's address in Florida, but fails to include any evidence whatsoever to substantiate that assertion.  Stelor has again exhaustively researched its records and found no such thing; the only listed address for Mr. Epstein is in Maryland.  *See* Supplemental Declaration Esrig of Steven A. Esrig in Opposition to Defendant's Motion for Fees, Exhibit "1" hereto, ¶¶ 9-10 & Exh. "A"; Declaration of Steve Hemstreet, Exhibit "6" hereto, ¶ 3.

With respect to the allegations that Stelor concealed the Florida residences of two of its members, Stelor did not.  First, with respect to Mr. Gruendl, Silvers has pieced together certain records to reach the wrong conclusion.  Mr. Gruendl was *NOT* a Florida resident at the time this action was filed.  He and his wife did live in Florida previously, but moved to Washington State in 2002.  That is where they lived when this action was filed.  After the action was filed, they decided to return to Florida, and moved back in August of 2005.  Mr. Gruendl's Declaration confirming these facts is filed herewith (and attached as Exhibit "2").[1]  For jurisdictional purposes, of course, what counts is the parties' residence at the time of initial filing; subsequent

---

[1] Mr. Esrig already disclosed this in his recent declaration (DE #88, Exh. B, ¶ 12).

3

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

moves will not defeat diversity. *See Freeport-McMoran, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 428, 111 S. Ct. 858, 860 (1991).

Second, with respect to Mr. Epstein, no intentional concealment occurred. As confirmed by the accompanying declarations of Mr. Esrig, and three Stelor Board Members, Mr. Weinstein, Dr. Rothstein, and Mr. Epstein (Exhibits "1", and "3" to "6" hereto), as well as Steve Hempstreet, Stelor's Systems Manager, Stelor reasonably assumed Mr. Epstein lived in Maryland. All of Stelor's information – including its computerized member lists and the information prepared in connection with its March 2005 transition to a limited liability company – lists Mr. Epstein's address as Chevy Chase, Maryland. Supp. Esrig Decl. ¶¶ 9-10 & Exh. "A". Nor is there any "evidence" in the record to suggest otherwise, beyond the unsupported assertion that Silvers and his counsel have mysteriously confirmed otherwise.

In addition, as the declarations explain, frequent contact occurred with Mr. Epstein in Maryland – in person at Stelor meetings and in Chevy Chase where Mr. Epstein lives, and over the phone with Mr. Epstein in Chevy Chase. Given these contacts, and knowing that Mr. Epstein spends substantial time in Maryland with his wife and young child, who attends school in Chevy Chase, Stelor reasonably assumed that Mr. Epstein was a Maryland resident. Supp. Esrig Decl. ¶¶ 13-16; Rothstein Decl. ¶¶ 6-10; Weinstein Decl. ¶¶ 6-8. Although they had some information that Mr. Epstein had family in Florida, they had no idea whatsoever of Mr. Epstein's additional connections to Florida. Supp. Esrig Decl. ¶ 16; Rothstein Decl. ¶ 10. As Mr. Epstein himself put it, although he has a home and office in Florida (which he uses "irregularly"), he "never advertised this fact to my Maryland friends and business associates." Epstein Decl. ¶ 7.

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

However Silvers may try to confuse these issues, mischaracterize the facts, and scream perjury, he cannot turn this into a case of intentional concealment by Stelor. As Stelor has itself documented, it did not know of certain Florida connections, but immediately upon their discovery, Stelor itself promptly advised the Court. Stelor did not conceal those facts; nor did Stelor attempt to delay dismissal once the facts were learned. Ironically, Silvers complains the correction occurred too quickly for him even to serve a motion for fees in compliance with Rule 11's safe harbor provision. Indeed, as Silvers' counsel's fee records confirm, they spent all told roughly $2,000.00 worth of time litigating the jurisdictional issue. That demonstrates how Stelor's actions minimized and essentially avoided any waste of resources on that issue.

Nor can Silvers legitimately claim that the jurisdictional issue resulted in the expenditure of resources he would not otherwise have spent. Those same resources would have been spent regardless, and the record created in this case will be used in connection with this dispute in whichever forum it proceeds.

**B.** **Silvers Dramatically Mischaracterizes the Record in this Action.**

Silvers' charge that Mr. Esrig has previously filed false statements in this action is blatantly false. Not only is that absolutely irrelevant to the fee motion presently before the Court, but clearly there is no finding of any type in the record to support that claim. These charges are nothing more than inflammatory arguments by Silvers' counsel, initially made to try and paper over the fact that Silvers rashly and wrongly terminated the License Agreement based on trumped up allegations of breaches by Stelor. As Magistrate Hopkins held, after careful consideration of the record, "it is likely that [Silvers] April 27, 2005 termination of the License Agreement between Stelor and Silvers was *improper.*" (DE #24, at 4). Nor does the flood of

5

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM WWW.BWSKB.COM

additional paper filed by Silvers – referenced in his renewed effort (again rashly and wrongly) to tar Stelor – justify any change in that conclusion.

Thus, Silvers trundles out the same old allegations regarding a CafePress.com on-line store selling Googles merchandise for which Silvers allegedly never received royalties and the non-necessity of the www.googles.com domain name. As already fully demonstrated in the detailed submissions by Stelor (DE ##53-59), these allegations are totally unfounded. The CafePress store was the work of a renegade consultant, who apparently proceeded with it even after explicit **written** instruction from Stelor not to do so! *See* Supplemental Declaration of Steven Esrig, filed July 1, 2005, ¶ 7, Exh. C (DE# 53) (a true and correct copy of the Declaration and referenced exhibit is attached hereto as Exhibit "7"). Silvers' charge of perjured testimony by Mr. Esrig is based solely on a declaration from that same consultant, who disingenuously failed even to mention in his declaration the letter from Stelor. Of course, Silvers' claims of perjury become simply incredible in light of the information that the only completed CafePress order as of April 2005, was of a single coffee mug priced at $10.99, allegedly generating a commission of $2.00, no share of which was ever remitted to Stelor. *Id.* ¶ 9, Ex. D.

Similarly, Silvers flatly mischaracterizes Stelor's position regarding the googles.com domain name. Stelor and Mr. Esrig have repeatedly explained the importance of continued access to the www.googles.com internet address to their business. The point was not that no other address could be used to display Stelor's content. Rather, the point was that no other internet address available to Stelor could provide what the googles.com address did, with its existing registered user base (more than 600,000 in number) and continued daily traffic (**hundreds** of thousands of hits a day). Those factors, as Mr. Esrig explained, were (and remain)

6

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM WWW.BWSKB.COM

critical to attracting the licensees and investors on which Stelor's continued development depended. *Id.* ¶¶ 30-40. Silvers' attempt to set up a straw man argument and then to present a declaration by a so-called internet expert clearly does not make Mr. Esrig's testimony "perjured." Indeed, that testimony regarding Stelor's business, and the realistic demands of its investors and licensees, remains uncontroverted!

That Silvers would persist in his claim that "Stelor never actually intended to use the www.googles.com domain name at the Licensing Show" is also incredible, especially in light of Stelor's submissions proving that the featured piece of Stelor's entire booth at the show referenced www.googles.com in bold letters and colors, as did other promotional materials for the show. *Id.* ¶ 39, Exs. O & P.

Silvers' reference to these arguments again in his Reply is a mischaracterization of the record in this action. The arguments demonstrate Silvers' surprising tactics of inflammatory but unfounded assertions in connection with this present motion.

## III.

## SILVERS' REQUEST FOR SANCTIONS IS BARRED

**A.    Silvers' Request for Sanctions Is Barred.**

Silvers' request for sanctions under Rule 11 and the parallel provisions of section 57.105 is impermissible and should be stricken. He failed to comply with the mandatory safe-harbor provisions and would have no entitlement to payment of his fees even were the Court to issue a show-cause order and consider sanctions on its own initiative. The request is therefore barred, and should be stricken.

7

CASE NO. 05-80393 CIV HURLEY/HOPKINS

1.     *Silvers' Request for Sanctions Is Barred for Failure to Comply with the Rules' Safe Harbor Procedures.*

Silvers, incredibly, suggests that this Court may simply ignore the safe harbor provisions of Rule 11. Thus, Silvers entirely misreads the case of *In re Kirk Murphy Holding, Inc.,* 313 B.R. 918 (N.D. Fla. Bankr. 2004), which Stelor initially cited. That Court flatly denied as procedurally defective a motion for sanctions that failed to comply with the safe harbor provision. *Id.* at 923. Then, the Court assessed fees ***against*** the moving party for bringing a procedurally improper sanctions motion. Applying *Kirk* here, the only party against which fees could be assessed is ***SILVERS***.[2] Nor can Silvers' non-compliant motion satisfy the procedural requirement of a show-cause order for a court-initiated motion. *See Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 778 (9th Cir. 2001). Indeed, Silvers' argument that he did not have time to comply with the safe harbor provisions totally undermines his claim. Stelor's own actions in promptly advising the Court that no diversity existed resolved the issue, which is exactly the type of voluntary response that Rule 11 was designed to effect.

2.     *Silvers Cannot Claim Fees Under Rule 11(c)(2).*

As Rule 11(c)(2) itself expressly provides, a court may award attorneys' fees under the Rule *only* "if imposed on motion" under Rule 11(c)(1)(A). "By its terms, the rule thus precludes a court from awarding attorneys' fees on its own initiative." *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.,* 174 F.3d 87, 94 (2d Cir. 1999); *see Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,* 222 F.3d 52, 57 (2d Cir. 2000); *Thornton v. General Motors Corp.,* 136 F.3d

---

[2] Nor can Silvers be permitted to rely on a district court case from New Jersey, decided ***prior to*** the 1993 amendment to Rule 11 adding in the safe harbor provision. *See Itel Containers Int'l Corp. v. Puerto Rico Marine Management, Inc.,* 108 F.R.D. 96 (D.N.J. 1985).

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

450, 455 (5th Cir. 1998).  Accordingly, Silvers' request for prevailing party fees violates this provision of the Rule as well.

### 3.    Silvers Ignores the Akin-to-Contempt Standard Under Rule 11(c)(a)(B).

Silvers' argument is also disingenuous because he fails to address the heightened standard that would apply if the court were to issue a show-case order on its own initiative.  That standard requires conduct "akin to contempt," above and beyond the reasonableness inquiry Silvers suggests.  *See Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255-56 (11th Cir. 2003).  Silvers simply ignores this directly controlling Eleventh Circuit precedent.

### 4.    Silvers Cannot Seek Fees Against Counsel.

Not only does Silvers pursue a sanctions claim that is barred as set forth above, and without factual basis in any event.  But, he also tries in his Reply to reverse his position not to seek fees against Stelor's Counsel.  Thus, his initial Motion made clear that fees were sought *solely against Stelor.*  In addition, counsel for Silvers confirmed in a discussion prior to the filing of his Motion that "it was not our intention to seek <u>fees</u> against you or your firm".  Counsel further confirmed that the Motion "did not specifically ask for them against you or your firm."  A true and correct copy of counsel's exchange of emails is attached hereto as Exhibit "8".  Clearly, that constitutes a waiver of any request for sanctions against counsel.  *See Kerzner v. Lerman,* 849 So. 2d 1185, 1187 (Fla. 4th DCA 2003).  Silvers should not be permitted to reverse that position, as he seeks to do in footnote 2 of his Reply.[3]

---

[3] There is no factual basis either for Silvers' assertion that the "fact that the lack of diversity was easily ascertained from Stelor's own records."  Stelor's "own records" as stated in the declarations filed herewith refer exclusively to a Maryland address for Mr. Epstein.  Nor is there any basis whatsoever for suggesting that Counsel's conduct was "akin to contempt", the standard applicable for a court-initiated motion for fees.

9

CASE NO. 05-80393 CIV HURLEY/HOPKINS

**B.  Silvers' Claim for Prevailing Party Fees Is Based On Mischaracterizations of Controlling Law and Should Be Denied.**

Silvers wrongly references the Eleventh Circuit's decision in *Laborers Local* in support of his contention that "[e]very case cited by Stelor for its argument that Silvers is not a 'prevailing party' involved claims that arose under federal statutes, not state law or diversity jurisdiction." Reply at 6. That is flatly incorrect. The Eleventh Circuit affirmed the lower courts refusal to award prevailing party fees ***under Florida Statute § 713.29*** (governing mechanics liens) and 57.105, as well as under the fee provisions of the ERISA statute, 29 U.S.C. § 1132(g)(1). *See Laborers Local 938 Joint Health & Welfare Trust Fund. V. B.R. Starnes Co.,* 827 F.2d 1454, 1458 (11th Cir. 1987). That case, decided based on Florida law, is directly controlling here. Silvers does not – and cannot – distinguish it.

Nor does Silvers point to a single Florida case that awards prevailing party fees following a dismissal for lack of jurisdiction. Silvers also fails to address the express language of Rule 1.420(b), Fla. R. Civ. P., which expressly excludes "a dismissal for lack of jurisdiction" as an order that "operates as an adjudication on the merits." *See Al-Hakim v. Holder,* 787 So. 2d 939, 942 (Fla. 2d DCA 2001) (dismissal for lack of jurisdiction not an adjudication on the merits); *Smith v. St. Vil,* 714 So. 2d 603, 604 (Fla. 4th DCA 1998) (dismissal for lack of jurisdiction not on the merits); *Thomson McKinnon Securities, Inc. v. Slater,* 615 So. 2d 781, 783 (Fla. 1st DCA 1993) (such a dismissal has no res judicata effect). This express exception entirely undermines Silvers' reliance on cases awarding prevailing party fees after a ***voluntary dismissal*** pursuant to subsection (a) of Rule 1.420.

Silvers also uniformly mischaracterizes the holdings in the federal cases cited in Section A of his Reply, at 4-5. With respect to the Eleventh Circuit's decision in *Schafler v. Fairway*

10

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

*Park Condominium Assoc.,* 147 Fed. Appx. 113 (11th Cir. 2005), as a threshold matter it is a non-published decision and is "not considered binding precedent" pursuant to 11th Cir. R. 36-2. Second, the issue there was the district court's authority to determine the amount of appellate attorneys' fees on remand after an appeal. In that context, the Court rejected the argument that the district court lacked jurisdiction to do so. Clearly, that decision is not controlling here.

Similarly, the case of *Lanphere Enters., Inc. v. Jiffy Lube Int'l, Inc.,* 138 Fed. Appx. 20, 25 (1005 WL 1279227), did not involve a dismissal for lack of subject matter jurisdiction, but a summary judgment on the merits. The dismissals in *Kona Enterprises, Inc. v. Estate of Bishop,* 229 F.3d 877 (9th Cir. 2000) and *Citizens for a Better Environment v. Steel Company,* 230 F.3d 923 (7th Cir. 2000), were dismissals *with prejudice* that effectively concluded the litigation between the parties, and were thus viewed by the court as creating a prevailing party. Finally, the fee award in *Smart v. First Union National Bank,* 245 F. Supp. 2d 1229 (M.D. Fla. 2003), was based on § 1927, and not a prevailing party provision.[4]

## CONCLUSION

For the foregoing reasons, Silvers' Motion is entirely without merit and should be denied.

BURLINGTON, WEIL, SCHWIEP,
KAPLAN & BLONSKY, P.A.
Attorneys for Plaintiff
2699 South Bayshore Drive, PH
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261

---

[4] No basis exists for fees under 28 U.S.C. § 1927 in this case. There has been no bad-faith here, a finding of which is required before any assessment of fees under § 1927. *See Glatter v. Mroz,* 65 F.3d 1567, 1575 (11th Cir. 1995). On the contrary, Stelor and its counsel have acted in good-faith to minimize rather than multiply these proceedings, promptly advising the Court upon their discovery that diversity did not exist.

11

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM WWW.BWSKB.COM

CASE NO.  05-80393 CIV HURLEY/HOPKINS

By: /s/ Kevin C. Kaplan
    Kevin C. Kaplan, Esq.
    Florida Bar No. 933848
    David J. Zack, Esq.
    Florida Bar No. 641685

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic mail and U.S. mail on this 12th day of December 2005 upon the following:

Adam T. Rabin, Esq.
DIMOND, KAPLAN &
    ROTHSTEIN, P.A.
Trump Plaza
525 S. Flagler Drive, Suite 200
West Palm Beach, Florida 33401

Kenneth R. Hartmann, Esq.
Gail M. McQuilkin, Esq.
KOZYAK TROPIN &
    THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134

/s/ Kevin C. Kaplan
Kevin C. Kaplan

12

# **EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

        Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

        Defendant.

_____/

## SUPPLEMENTAL DECLARATION OF STEVEN A. ESRIG IN OPPOSITION TO DEFENDANT'S MOTION FOR FEES

I, Steven A. Esrig, hereby declare as follows:

1.     As set forth in my prior declarations in this case, I am the President and CEO of Stelor Productions, L.L.C. ("Stelor"). I have been employed by Stelor since its inception, and I have held my current position for more than two years. The facts stated herein are based upon my own personal knowledge and/or on corporate records and documents maintained by Stelor in the ordinary course of business.

2.     I have reviewed the allegations in Defendant's Reply to Stelor's Response to Motion for Attorneys' Fees and Expenses that Stelor intentionally concealed facts relating to the residency of its residents.

3.     Those allegations are simply false.

4.     As an initial point, his claim that Stelor and I would intentionally conceal and misrepresent the residencies of Stelor's members makes no sense whatsoever. Our sole interest

CASE NO.  05-80393 CIV HURLEY/HOPKINS

is in having this dispute resolved as expeditiously as possible.  Stelor would have been happy to bring the case initially in State Court, but believed it was required to bring it in Federal Court based on the express provision in the Settlement Agreement and its understanding that diversity jurisdiction existed.  Stelor, though, had no motivation whatsoever to bring this action, invest its own substantial resources, including in seeking expedited injunctive relief, only to risk an ultimate dismissal if jurisdiction did not exist.  If Stelor had known that diversity did not exist, it clearly would not have asserted it.

5.      Indeed, that is even more obviously true here, where Stelor had the ability to raise its claims in Federal Court based on other jurisdictional grounds besides diversity in the pending action against that Silvers brought against Google, Inc.  That is exactly what Stelor has done, following the dismissal without prejudice in this action.  Rather than continuing to pursue this case had it known that diversity did not exist, Stelor would simply have filed its claim in the Google Action, as it subsequently has done.

6.      The specific allegations in Silvers' reply regarding Mr. Gruendl and Mr. Epstein are also false.

7.      With respect to Mr. Gruendl, as his declaration explains, he was not a Florida resident at the time the lawsuit was filed.  Although I understand his subsequent move to Florida is not relevant for jurisdictional purposes, I did bring that issue to the Court's attention in my Declaration of November 23, 2005, in which I advised that I had learned in or about early June that one of our members was planning to move to Florida, but had not yet moved.

8.      Similarly, with respect to Mr. Epstein, my understanding has always been that he resided in Chevy Chase, Maryland.  In fact, that has been the uniform understanding of Stelor's Board of Directors – including its Recording Secretaries, Steven Weinstein and Robert

2

CASE NO. 05-80393 CIV HURLEY/HOPKINS

Rothstein.

9.      Most disturbing is the suggestion by Silvers – a convicted felon with a history of interfering with Stelor and its business – and his counsel that they have somehow stolen Stelor's corporate records. Silvers is hardly being straightforward with this Court when he claims that he "and his counsel have now confirmed that Stelor maintains computer records" purportedly showing a member's address in Florida, but fails to include any evidence whatsoever to substantiate that assertion. Stelor has again exhaustively researched its records and found no such thing. Stelor's records uniformly show a Chevy Chase, Maryland address.

10.     In fact, when I read the claim in Silvers' Reply, I instructed that the company's computer records be searched again to confirm that Stelor has no such information. Each and every computer at Stelor was searched, and none shows any Florida address for Mr. Epstein. The only address Stelor has in its records for Mr. Epstein is in Chevy Chase, Maryland. The lists are attached as Exhibit "A" hereto.

11.     Indeed, Stelor has had problems with certain personnel, including one who stole information and disappeared earlier this year. Incredibly, Silvers' counsel, Gail McQuilkin, herself had called this employee at Stelor's offices shortly before those events. Hopefully, Silvers and his counsel were not behind those actions, and are not in possession of improperly obtained information.

12.     Again, as I explained in my initial Declaration, prior to the filing of this action, in late April of 2005, I reviewed our list of members, and confirmed that none of the members resided in Florida. With respect to Mr. Epstein, his listed address is in Chevy Chase, Maryland.

CASE NO.  05-80393 CIV HURLEY/HOPKINS

13.    Nor was I aware of any information whatsoever even to suggest that Mr. Epstein might in fact have a Florida residence.  As I described in my prior Declaration, Stelor's investors are limited in number, and the principals of all of the investors are personally known to me, including Mr. Epstein.  I speak to him frequently, and also see him personally with frequency.  Thus, as I described, I knew not only "on paper" where he was based, but also from my own visits with him.

14.    All of my contact with Mr. Epstein has been in Maryland, where I clearly understand him to live.  Thus, when I speak to him by telephone, that is generally from Chevy Chase.  When I see him, it is in Chevy Chase or nearby.  In fact, he and his wife have a young daughter, whom I understand attends school in the Chevy Chase area.

15.    I was simply unaware of any address for Mr. Epstein in Florida, and had no knowledge whether Florida was Mr. Epstein's residence for any purpose.

16.    Nor would I have had any reason to think that Mr. Epstein might have a residence other than Chevy Chase.  I do recall that Mr. Epstein has some family in Florida – I believe his mother-in-law may live there – but I had no idea whatsoever of any other Florida connection Mr. Epstein may have had.

17.    Again, I reiterate that neither I nor Stelor ever intentionally misrepresented any facts in this litigation, including those relating to the residencies of Stelor's members.  We diligently – and repeatedly – investigated that information to confirm its accuracy, and I believed Stelor's representations to be entirely true when made.  I would not intentionally mislead this Court, or allow inaccurate information to be provided or to stand without being corrected.

18.    Indeed, upon learning that a sub-member with Mr. Salk's group was a Florida resident, I ensured that this Court was immediately informed.

4

DEC.13.2005 03:50                                                                #1316 P.006/006

CASE NO.  05-80393 CIV HURLEY/HOPKINS

I declare under penalties of perjury that the foregoing is true and correct.  Dated this _12th_

day of December, 2005.

_____

Steven A. Esrig

5

# EXHIBIT A

**Exhibit A**
**Stelor Productions LLC**

| Member Name | City/State |
|---|---|
| Henry David Epstein | Chevy Chase, MD |

**Exhibit A**
**Stelor Productions LLC**

| Henry David Epstein | 7405 Pinehurst Parkway | Chevy Chase, MD 20815 |

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

       Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

       Defendant.
_____/

## DECLARATION OF IGOR GRUENDL IN OPPOSITION TO DEFENDANT'S MOTION FOR FEES

I, Igor Gruendl, hereby declare as follows:

1.     I am over the age of 21 and have personal knowledge of the matters set forth below.

2.     I am in investor in Stelor Productions.  I have been a shareholder and member individually, and also through certain limited liability companies and trusts of which my wife, Carol Gruendl, and I are the members and trustees.

3.     I am aware of the allegations in Defendant's Reply to Stelor's Response to Motion for Attorneys' Fees and Expenses that Stelor intentionally concealed the fact that I was a Florida resident.

4.     That allegation is simply false.

5.     When this lawsuit was commenced in May of 2005, I was *NOT* a resident of Florida (and neither was my wife).  We were residents of Gig Harbor, Washington.

CASE NO. 05-80393 CIV HURLEY/HOPKINS

6. My wife and I did recently move back to Florida, in August of 2005, and are at this time Florida residents. We were not, however, when this lawsuit was filed, and our decision to move back to Florida was not made until after the lawsuit was filed.

7. In addition, my wife and I previously resided in Florida, but moved away in September of 2002 to Washington State, as stated above.

8. Accordingly, the Declaration of Domicile included with Exhibit "C" to Silvers' Reply was accurate in 1999 when it was dated. But, it was not accurate in May of 2005, 6 years later, when this lawsuit was commenced.

9. Similarly, the information showing a Sarasota residence address for my wife and me is accurate as of September 2005, when the report is dated, but was not accurate as of May 2005 when the lawsuit was commenced.

10. Obviously, Silvers is jumping to an unfounded conclusion, and attempting to distort the facts as support.

I declare under penalties of perjury that the foregoing is true and correct. Dated this _11_ day of December, 2005.

IGOR GRUENDL

2

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

       Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

       Defendant.

_____/

## DECLARATION OF STEVEN WEINSTEIN IN OPPOSITION TO DEFENDANT'S MOTION FOR FEES

I, Steven Weinstein, hereby declare as follows:

1.     I am over the age of 21 and have personal knowledge of these matters.

2.     I am in investor in Stelor Productions.  I have been a shareholder and member, and have also sat on the Board of Directors, since the formation of the company.  Until June of 2005, I was the Recording Secretary of the Board, with responsibility for ensuring the accuracy of information related to the Board and its members.

3.     The Board presently has 9 members, 4 of whom have been involved since the company's inception.  The Board is in frequent contact, and the members have had or have developed personal relationships with one another during this time.

4.     As such, I have worked with Henry D. Epstein, who has also been one of Stelor's Board Members since inception.  He is presently the Vice Chairman.

5.     In addition to working with Mr. Epstein on the Board, I also know him personally.  I live in Baltimore, speak to Mr. Epstein periodically, and also see him regularly on Stelor business.

CASE NO. 05-80393 CIV HURLEY/HOPKINS

6.    Essentially all of my contact with Mr. Epstein has been in Maryland, where I understand him to live. When I speak to him by telephone, that is generally from his house in Chevy Chase. When I see him, it is in Maryland (other than an occasional Stelor Board meeting elsewhere). In fact, he and his wife have a young daughter, whom I understand attends school in the Chevy Chase area.

7.    As Recording Secretary of Stelor's Board, moreover, my information was that Mr. Epstein's address was in Chevy Chase.

8.    I am unaware of any address for Mr. Epstein in Florida, and have no knowledge that Florida is Mr. Epstein's residence for any purpose. Nor would I have had any reason to think that Mr. Epstein might have a residence other than Chevy Chase.

9.    I am aware of the litigation between Stelor and Steven Silvers. I know that Stelor had represented that none of its members were residents in Florida. At the time Stelor made those representations, I and Mr. Esrig believed them to be entirely true. Had I learned any representations were incorrect, I would have insisted they be corrected immediately.

10.    In fact, I understand that is exactly what Stelor did upon learning that a sub-member with Mr. Salk's group was a Florida resident.

I declare under penalties of perjury that the foregoing is true and correct. Dated this 11ʰ day of December, 2005.

_____
STEVEN WEINSTEIN

2

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

        Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

        Defendant.

_____/

## DECLARATION OF ROBERT J. ROTHSTEIN, M.D. IN OPPOSITION TO DEFENDANT'S MOTION FOR FEES

I, Robert J. Rothstein, M.D., hereby declare as follows:

1.     I am over the age of 21 and have personal knowledge of these matters.

2.     I am an emergency room physician, and have been the Chairman of the Department of Emergency Medicine at Suburban Hospital in Bethesda, Maryland since 1986.

3.     I am also an investor in Stelor Productions. I have been a shareholder and member, and have also sat on the Board of Directors, since the formation of the company. In June of 2005, I became the Recording Secretary of the Board, with responsibility for ensuring the accuracy of information related to the Board and its members.

4.     The Board presently has 9 members, 4 of whom have been involved since the company's inception. The Board is in frequent contact, and the members have had or have developed personal relationships with one another during this time.

5.     As such, I have worked closely with Henry D. Epstein, who has also been one of Stelor's Board Members since inception. He is presently the Vice Chairman.

CASE NO. 05-80393 CIV HURLEY/HOPKINS

6.    In addition to working with Mr. Epstein on the Board, I also know him personally.  I speak to Mr. Epstein frequently, and I also see him personally in Chevy Chase, Maryland.

7.    All of my contact with Mr. Epstein has been in Maryland, where I understand him to live.  Thus, when I speak to him by telephone, that is generally from Chevy Chase.  When I see him, it is in Maryland.  In fact, he and his wife have a young daughter, whom I understand attends school in the Chevy Chase area.

8.    As Recording Secretary of Stelor's Board, moreover, my information was that Mr. Epstein's address was in Chevy Chase.

9.    I am unaware of any address for Mr. Epstein in Florida, and have no knowledge that Florida is Mr. Epstein's residence for any purpose.

10.    Nor would I have had any reason to think that Mr. Epstein might have a residence other than Chevy Chase.  I do recall that Mr. Epstein has some family in Florida – I believe his mother-in-law may live there – but I had no idea whatsoever of any other Florida connection Mr. Epstein may have had.

11.    I am aware of the litigation between Stelor and Steven Silvers, and am generally familiar with the papers that have been filed by Stelor in the case.  I know that Stelor had represented that none of its members were residents in Florida.  At the time, Stelor made those representations, I and Mr. Esrig believed them to be entirely true.  Had I learned any representations were incorrect, I would have insisted they be corrected immediately.

2

CASE NO. 05-80393 CIV HURLEY/HOPKINS

12.    In fact, I understand that is exactly what Stelor did upon learning that a sub-member with Mr. Salk's group was a Florida resident.

I declare under penalties of perjury that the foregoing is true and correct. Dated this _12/14_ day of December, 2005.

ROBERT J. ROTHSTEIN, M.D.

3

# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited Liability Company,
f/k/a STELOR PRODUCTIONS, INC.,

      Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

      Defendant.

_____/

## DECLARATION OF HENRY D. EPSTEIN IN OPPOSITION TO DEFENDANT'S MOTION FOR FEES

I, Henry D. Epstein, hereby declare as follows:

1.     I am 78 years old and essentially retired.

2.     I am an investor in Stelor Productions. I have been a shareholder and member, and have also sat on the Board of Directors, since the formation of the company. I am presently Vice Chairman of the Board.

3.     I understand that Silvers has alleged that Stelor, and Steven Esrig in particular, intentionally concealed information about my residence.

4.     That is simply false.

5.     I spend much of my time in Maryland, where I have two daughters, one in Bethesda and one in Chevy Chase. My second wife, Barbara Tannenbaum owns a house in Chevy Chase and our daughter attends school in Chevy Chase. My two grandsons attend school in Rockville Maryland.

6.     As the declarations of Mr. Esrig, Mr. Weinstein and Dr. Rothstein explain, my



17.-11-05

CASE NO. 05-80393 CIV HURLEY/HOPKINS

contact with Stelor has been from Maryland.

7.      I have been a resident of Florida for 12 years with a home in Fort White and an office in Lake City which I use irregularly. However, I have to my knowledge, never advertised this fact to my Maryland friends and business associates.

8.      I frequently speak to Stelor's Board Members and Officers when I am in Chevy Chase.

9.      Mr. Esrig and Dr. Rothstein have been to see me in Chevy Chase several times as well.

10.     I am generally aware of the litigation between Stelor and Steven Silvers, and from time to time have reviewed certain of the papers.

11.     Under the circumstances, Stelor and Mr. Esrig may have thought I was a Maryland resident.

I declare under penalties of perjury that the foregoing is true and correct. Dated this 11 th day of December 2005.

_____
HENRY D. EPSTEIN

# **<u>EXHIBIT 6</u>**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited Liability Company,
f/k/a STELOR PRODUCTIONS, INC.,

        Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

        Defendant.

_____/

## DECLARATION OF STEVE HEMSTREET IN OPPOSITION TO
## DEFENDANT'S MOTION FOR FEES

    I, Steve Hemstreet, hereby declare as follows:

    1.    I am over the age of 21 and have personal knowledge of these matters.

    2.    I am the Systems Administrator of Stelor Productions, and am responsible for the company's computer systems and its computerized records.

    3.    At Mr. Esrig's instruction, I conducted a search of the records on each and every computer at Stelor regarding information about Henry D. Epstein, including specifically his listed addresses.  I confirmed that the only address Stelor has in its records for Mr. Epstein is in Chevy Chase, Maryland. Our records contain no mention of any address for Mr. Epstein in Florida.

    I declare under penalties of perjury that the foregoing is true and correct.  Dated this 12th day of December, 2005.

                                       Steve Hemstreet

# **<u>EXHIBIT 7</u>**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C. a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

Defendant.

_____/

**NIGHT BOX FILED**

DEC 0 1 2005

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## NOTICE OF FILING SUPPLEMENTAL DECLARATION OF STEVEN A. ESRIG

PLEASE TAKE NOTICE that Plaintiff, by and through undersigned counsel, hereby files

the Supplemental Declaration of Steven A. Esrig.

Respectfully submitted,

BURLINGTON, WEIL, SCHWIEP,
KAPLAN & BLONSKY, P.A.
Attorneys for Plaintiff
Office in the Grove, Penthouse A
2699 South Bayshore Drive
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261

By: _____
Kevin C. Kaplan, Esq.
Florida Bar No. 933848
David J. Zack, Esq.
Florida Bar No. 641685

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

CASE NO. 05-80393 CIV HURLEY/HOPKINS

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true copy of the foregoing is being served by U.S.

Mail this 1st day of July, 2005, upon Gail A. McQuilkin, Esq. and Kenneth Hartmann, Esq.,

Kozyak Tropin & Throckmorton, P.A., counsel for Defendant, 2525 Ponce de Leon, 9th Floor,

Miami, Florida 33134 and Adam T. Rabin, Esq., Dimond Kaplan & Rothstein, P.A., Trump

Plaza, 525 S. Flagler Drive, Suite 200, West Palm Beach, Florida 33401.

Kevin C. Kaplan
David J. Zack

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

       Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

       Defendant.

_____/

### SUPPLEMENTAL DECLARATION OF STEVEN A. ESRIG

I, Steven A. Esrig, hereby declare as follows:

1.     As set forth in my initial declaration, I am the President and CEO of Stelor Productions, L.L.C. ("Stelor").  I have been employed by Stelor since its inception, and I have held my current position for more than two years.  The facts stated herein are based upon my own personal knowledge and/or on corporate records and documents maintained by Stelor in the ordinary course of business.

### ROYALTY ISSUES

2.     I have reviewed the late-filed declarations of Ms. McQuilkin and Mr. Worsham.  I wholeheartedly reaffirm the testimony in my initial declaration.  Mr. Silvers' attempt to discredit me is entirely unfounded, as I explain below.

3.     As a threshold matter, I want to emphasize that although Stelor has just begun to earn some small revenues, Stelor has already paid Silvers hundreds of thousands of dollars in consulting fees and advances against future (but unearned) royalties.

CASE NO.  05-80393 CIV HURLEY/HOPKINS

4.    The suggestion that Stelor has failed to disclose revenues is wrong.    The certification I signed as Stelor's CEO on March 8, 2005 accurately stated that "no royalty payments from Stelor to Mr. Silvers are owed or outstanding as of December 31, 2004." As set forth below, the statement also accurately explained that Stelor offered no products for sale except the music available on itunes.  A true and correct copy of the statement is attached as Exhibit A hereto.

5.    Silvers claims in his declaration that we failed to account for a purchase an un-named "associate" of his allegedly made of the googles music on itunes on August 31, 2004. The so-called download confirmation (exhibit D to his declaration) shows that the "associate" downloaded the entire One Goo World album.  It is priced at $12.96, which is the retail price from Apple.  In fact, Stelor did account for that sale.  As we have advised Mr. Silvers, our very first statement for itunes downloads was dated February 25, 2005.  A true and correct copy of that statement is attached hereto as Exhibit B.  That statement covers the period beginning June 2004, and reports cumulative revenues on a monthly basis.  The listing for August of 2004 closed on August 28th, but a download of the entire One GooWorld album is listed for September of 2004.  It shows a price of $6.50, which is the wholesale price.  The revenues from this sale were included in the royalty statement that Stelor provided to Silvers on April 29, 2005 (exhibit 12 to my initial declaration), which was timely provided pursuant to ¶ III(B) of the License Agreement, within 30 days of the expiration of the first quarter of 2005.

## CAFEPRESS

6.    The newly filed declaration from Paul Worsham presents an inaccurate fragment of a story of an adversarial relationship that Stelor ended in the fall of 2002.  In fact, as Mr. Worsham apparently admits at the conclusion of his declaration (¶ 12), he had no contact

2

CASE NO.  05-80393 CIV HURLEY/HOPKINS

whatsoever with me, Stelor or the purported Googles store at Cafepress *"[a]fter the October-November 2002 timeframe."* Indeed, all of the alleged events referenced in the declaration occurred before then, more than two and a half years ago.

7.    The reason for the abrupt end of all contact was because I terminated any relationship with Mr. Worsham by letter dated October 3, 2002. Stelor had been attempting to work with Mr. Worsham, who had presented a comprehensive plan for the development of Stelor's entire intellectual technology infrastructure. During 2002, I had ongoing contact with Mr. Worsham as he attempted to develop this plan. By the fall of 2002, though, I and other members of Stelor's board believed Mr. Worsham to be unreliable and untrustworthy, and refused to have any further dealings with him of any type. As my letter details, many of the problems with Mr. Worsham resulted from his close relationship and apparent friendship with Silvers.    Thus, rather than taking direction from me, Mr. Worsham continually initiated unauthorized work at Silvers' direction, as Silvers continued to try and meddle with Stelor's business. Cafepress was one example. In the midst of the ongoing IT work, Mr. Worsham at one point advised me that *he* had set up an online store at *Cafepress, and wanted to sell googles* merchandise through it, as his email to me of September 12, 2002 confirms. I did not recall this, until I searched through our files after reviewing his declaration. Stelor, however, was not at all interested in having such a store, and especially not interested in working with Mr. Worsham at that point. In fact, we had received an email on September 30, 2002 advising of fraudulent activity with the Cafepress account. Accordingly, I advised Mr. Worsham to take no action whatsoever on Stelor's behalf, including maintaining any Cafepress account for googles. A true and correct copy of my October 3, 2002 letter to Mr. Worsham, and the September 12 and 30, 2002 emails, are attached as Composite Exhibit C hereto.

3

CASE NO. 05-80393 CIV HURLEY/HOPKINS

8.    Apparently, Mr. Worsham did not follow the instruction, and proceeded without authorization to maintain the Cafepress account. As I testified in my initial declaration, until recently I remained unaware that the account had in fact been maintained, or that googles products were being sold, notwithstanding our express instructions to Mr. Worsham not to maintain the account. To the extent Mr. Worsham's declaration fails to explain why he had no further contact with me or Stelor after the Fall of 2002, and how he failed to comply with my explicit instructions that he take no action, that declaration – and not mine – is clearly misleading. Also incredibly suspicious is the fact that Mr. Worsham – using a business card listing himself as B.J. Worsham – came to Stelor's booth at the recent trade show, misrepresenting himself as a potential licensee, and using that ruse to obtain proprietary Stelor information that obviously should not have been given to him. A copy of his business card is also included in Composite Exhibit C hereto.

9.    The entire Cafepress.com issue, moreover, is a sidelight at best. The information that Stelor recently obtained from Cafepress after learning about the site, confirms that the only completed order as of April 2005, was of a single coffee mug priced at $10.99, allegedly generating a commission of $2.00, no share of which was ever remitted to Stelor. The statement we obtained from CafePress in April of 2005 is attached hereto as Exhibit D. Indeed, other than orders from 2002, that apparently never went through, the only other orders then pending were for the various samples I ordered.

**STELOR HAS OFFERED TO PROVIDE ALL AVAILABLE SAMPLES**

10.    I reiterate that after Silvers' counsel came to our offices in February of 2005 and reviewed all available samples and promotional materials, we again offered Silvers an opportunity to inspect those materials at our counsel's office in Florida. In fact, the materials we

4

CASE NO.  05-80393 CIV HURLEY/HOPKINS

offered to provide included samples and promotional materials documenting the entire history of

Stelor's development.

11.    Silvers' counsel instead sent the April 27, 2005 termination letter, and refused to

come see the materials.

12.    Silvers also attempts to distort the requirements relating to samples under the

Agreements. Paragraph VI(C) of the License Agreement provides as follows:

> Prior to the commencement of manufacture and sale of the Licensed Products,
> LICENSEE shall submit to LICENSOR for his input, at not cost to LICENSOR, a
> reasonable number of samples of Licensed Products which LICENSEE intends to
> manufacture and sell and of all promotional and advertising material associated
> therewith.

Silvers claims the provision is designed to ensure he can exercise quality control over the

products Stelor markets. Objection at 11. The provision, however, gives him no such right. It

merely permits him to provide "input". Silvers has no right to approve, disapprove, or require

changes to any of the products. Nor is Stelor required to accept any input Silvers may have.

13.    Silvers' counsel herself confirmed that, remarking in a revealing March 23, 2005

email (a true and correct copy of which is attached as Exhibit E hereto) as follows:

> According to the license agreement Stelor is to provide these to Silvers for his
> "input." *There is nothing in the agreement that says Stelor has to listen or do
> anything with his input but this keeps Silvers happy. Silvers will communicate
> his "input" only to me.*

(Emphasis added).   As this candid email confirms, there is no substance whatsoever to the

provision allowing Silvers to provide "input". Silvers' counsel just wanted to keep her client

appeased, advising that *only* she would listen to any "input" Silvers might have, and not even

bother to communicate it to Stelor!  This admission confirms that the requirement is essentially

immaterial

CASE NO. 05-80393 CIV HURLEY/HOPKINS

14.   As Silvers knows full well, moreover, the only "product" Stelor is presently selling is its music on itunes. (As Silvers confirms, the cafepress "store" has been shut down). Accordingly, the "samples" shown to Silvers' counsel in February are not products that are being sold, but are promotional materials and designs that Stelor has developed. Silvers' counsel similarly recognized this in her March 23, 2005 email, when she asked for copies of "any ads going out . . . for Silvers to preview." This material does not even fall within the definition of samples to be submitted to Silvers.

## STELOR PROVIDED AN OPTION LETTER

15.   Silvers claims that Stelor has failed to comply with the now-expired Consulting Agreement by failing to provide Silvers with an option agreement. Stelor, however, sent Silvers a formal Option Letter dated December 10, 2004, advising that the Board of Directors of Stelor had approved a grant to Silvers of 1000 options at $10.00 per share. The Letter asked Silvers to execute the letter and return it to Stelor to confirm his agreement with those terms and acceptance of the option. The Letter, along with the federal express proof of delivery, confirming that Mr. Silvers himself signed for the package, is attached hereto as Exhibit F.

16.   Stelor has repeatedly reminded Silvers about this Letter and asked him to provide an executed copy, including in our Counsel's letter of April 29, 2005. (Exhibit D to our Complaint). Silvers and his counsel have refused even to respond to this issue, choosing instead to try and preserve a totally unfounded claim.

## · THE IMPORTANCE OF THE NOTICE AND CURE PROVISION

17.   I also want to emphasize the importance of the express notice and cure provision included in ¶ IX of the License Agreement.

18.   The parties entered into a complicated, long-term relationship (a 30 year term,

automatically renewed for 10 years) pursuant to the License Agreement.  *See* "Schedule A" to License Agreement.  There are numerous obligations owed by each of the parties to the other, and an obvious risk exists that the parties will, at certain stages of the relationship, disagree about whether the requirements of the Agreements were met.  The notice provision, therefore, imposes a clear obligation on a party believing that a breach has occurred to provide written notice detailing the alleged breach and allowing a 60 day period for it to be cured.  The cure period also enables a party to seek judicial intervention in the interim, if a disagreement appears insoluble.  This notice procedure is clearly required to ensure that the Licensor (the Licensee can terminate for any reason on 30 days' notice, ¶ IX(B)) cannot trump up a breach, and terminate the license at will whenever it suits him – which is exactly what Silvers has done.  The provision is obviously designed to protect Stelor, as the licensee, and ensure that the value of the multiple years and many millions of dollars it invests in developing the property under the Agreement is not jeopardized, at least before Stelor has an opportunity to cure an alleged breach.

### SILVERS HAS REJECTED STELOR'S ONGOING EFFORTS TO PERFORM UNDER THE AGREEMENTS

19.     Indeed, notwithstanding the unfounded termination of the Agreements, Stelor has since offered and attempted repeatedly to continue performing under the Agreements.

20.     Thus, our counsel sent an initial letter dated April 29, 2005 (Exhibit D to the Complaint).

21.     Silvers' counsel rejected Stelor's efforts, advising that "Mr. Silvers has terminated the License and intends to go in a different direction . . . ." (Exhibit E to the Complaint).

22.     Once we received the Court's June 9, 2005 Order, and knew that we could proceed with the show, our counsel advised Mr. Silvers' counsel that they could review the

promotional materials for the show at our counsel's offices. A true and correct copy of that June 17, 2005 letter is attached hereto as Exhibit G.

23.    Mr. Silvers' counsel refused to come look, demanding that the materials be forwarded to her. A true and correct copy of her June 17, 2005 letter is attached hereto as Exhibit H.

24.    Notwithstanding our concern about providing information to Mr. Silvers, given his admitted non-compliance with the Agreements, our counsel nevertheless forwarded the materials to Mr. Silvers counsel by letter dated June 21, 2005, a true and correct copy of which is attached as Exhibit I hereto. We received no "input" back from Mr. Silvers. That letter also delivered additional checks to Mr. Silvers, and again offered to allow Mr. Silvers to proceed with an audit immediately, proposing June 27, 2005 as a date.

25.    Mr. Silvers counsel responded by letter dated June 21, 2005 (but not delivered until June 22, 2005), refusing to accept any performance by Stelor, while simultaneously purporting to complain about the defects and timing of Stelor's ongoing efforts to perform. A true and correct copy of that letter is attached as Exhibit J hereto.

26.    Nevertheless, we continued to attempt to comply with the Agreements, providing extensive information by letter dated June 24, 2005 regarding the numerous administrative actions Stelor has pursued with respect to the Googles intellectual property, and addressing each of the purported issues under the Agreements. We specifically requested that Silvers' counsel advise us what alleged breaches "you contend remain uncured", emphasizing that "Stelor is unaware of and disputes that any breaches exist[], but Stelor will continue to make every reasonable effort to ensure that all obligations under the Agreements are discharged." A true and correct copy of this June 24th letter is attached hereto as Exhibit K.

8

CASE NO.  05-80393 CIV HURLEY/HOPKINS

27.    The terse response from Silvers' counsel was that "[u]nless a jury finds otherwise, the License Agreement is terminated."  This June 27, 2005 letter is attached hereto as Exhibit L.

28.    With respect to her suggestion that she would hold the royalty checks in her office, *we advised her that the checks belonged to her client, and should be forwarded to him immediately.*  Our counsel's June 30, 2005 letter is attached hereto as Exhibit M.

29.    Stelor has made every effort to continue to comply with the Agreements.  All of our efforts, however, have been rejected by Silvers, notwithstanding his wrongful termination of the Agreements.

## THE CRITICAL IMPORTANCE TO STELOR OF
## THE WWW.GOOGLES.COM INTERENT ADDRESS

30.    I also want to emphasize again the critical importance to Stelor of the www.googles.com internet address.

31.    Stelor has the exclusive right to control, use and protect the valuable Googles intellectual property.  The googles.com domain name (and the corresponding www.googles.com internet address) *is a critical component of that property, and the foundation of the business* Stelor has spent three years and $4 million developing.

32.    The general business plan of Stelor is to "launch" the new content and technology it has developed for its website, and thereby expand the base of users for the website and attract licensees and additional investors for the business.  The launch successfully commenced at the trade show in New York held by the Licensing Industry Merchandisers' Association (LIMA) during the week of June 21, 2005.  Stelor is now using the momentum from that show to continue to implement this plan during the weeks and months to come.  Interest from potential licensees and promoters is at an unprecedented height, as are the prospects for the ongoing

CASE NO. 05-80393 CIV HURLEY/HOPKINS

development of Stelor's business. Any interruption in access to the www.googles.com internet address now, after the successful trade show, will be even more disastrous to Stelor's business.

33. Stelor plans formally to "unveil" the new developments to its website this Fall. In addition to Stelor's proprietary technology that will make the site "kids safe", Stelor has also developed 160 additional characters and related story-lines. Stelor has chosen the Fall because we expect our license relationships will be established and the website will then have the maximum impact.

34. The website is essential to our business because all of our Googles programming content is created to be interactive. Children will be directed from the cartoons, live shows, web casts, publications, and any other medium to go to our website at the www.googles.com internet address. They are asked, for example, to go to the "Frolic Forest" on www.googles.com, so they can find lost or imaginary animals, solve group puzzles or be recognized as GooKids for prizes. This form of interaction, from the Googles character to www.googles.com is a pillar in our product concept.

35. In addition to the general importance of the website to us, though, it is critical that our website be located at the www.googles.com internet address. Our business simply could not survive if we lost access to that address, and were forced to display the content on our website through a different domain name or internet address. The reason is that the www.googles.com address has a proven ability to attract users to the address, and has already enabled Stelor to build a registered user base of more than 600,000 in number. Each day, moreover, the site attracts tens and frequently hundreds of thousands of additional users.

36. The recent history of usage on the site is instructive. On May 1, 2005 – before Silvers re-directed the domain name – the site had 108,053 hits! By June 1, 2005, the number of

10

CASE NO.  05-80393 CIV HURLEY/HOPKINS

hits had dropped to 8.  Once Stelor's access to the address was restored following entry of this Court's Order on June 9, 2005, the number of hits began to increase.  On June 10, 2005, when the site was actually restored, the number of hits reached 20,774.  As of June 22, 2005, during the trade show, the number of hits surged to 135,173.  A true and correct copy of the Googles Usage Statistics report is attached as Exhibit N hereto.

37.    A different internet address simply would not have this ongoing volume of traffic. Any prolonged disruption of Stelor's access to the www.googles.com address, moreover, would likely result in the loss of Stelor's existing users.  Stelor simply has no way to migrate those users to a different internet address, and hope to keep them as users.  A user who has been repeatedly accessing our address, will obviously be frustrated when the website at that address goes dark or changes, and the user has to search to try and find the site at a new address.  The risk that users will simply give up, and never try again, is severe, especially if access to our site continues to be disrupted.

38.    The existing registered user base and continued traffic on the www.googles.com address are critical points in all of our discussions with potential licensees, investors and in our general promotion of the business.  This performance history related specifically to the www.googles.com address has proved to be a key factor in attracting investment capital and potential licensees.    Without the user base and ongoing traffic associated with the www.googles.com address, our business is simply not commercially viable.  Indeed, as a result of Mr. Silvers' actions·in redirecting the domain name and shutting down our website, Stelor lost an investor who had previously committed to invest.  Stelor was advised that the investor would "look at us again when we got control of our site."  Without access to www.googles.com Stelor's entire business is at risk.

11

CASE NO. 05-80393 CIV HURLEY/HOPKINS

39.    For these reasons, Stelor has always emphasized the "googles.com" domain name in its marketing efforts.  Consistent with that approach, Stelor's displays and promotional materials at the recent trade show firmly demonstrate the critical importance of the www.googles.com name.  Thus, the featured piece of Stelor's entire booth referenced www.googles.com in bold letters and colors, as the photographs attached as Exhibit O show. The promotional material for the show similarly featured the www.googles.com domain name. Samples are attached as Composite Exhibit P hereto.  To the extent Silvers claims that we did not feature the googles.com name at our show, he is simply wrong.

40.    I have reviewed the Declaration of Mr. Tewksbury, and to the extent he suggests Stelor could simply use a different internet address to display our website, he entirely fails to understand the devastating effect that would have on our business as set forth above.

41.    In his declaration, Mr. Tewksbury also repeatedly speaks of a website called Gootopia.  There is no such entity as a "Gootopia Website".  The site www.googles.com is the only website in existence.  'Gootopia' is the name we use for a software application.  It is the program that allows user access to many activities via www.googles.com.  The program also transports children to over 300 hundred unrelated children's Internet sites.  If Silvers' suggestion is that Stelor could provide access to its website through a different internet address, for example gootopia.com, the above paragraphs of my declaration clearly explain why as a practical matter that change would be devastating to the business of Stelor.

I declare under penalties of perjury that the foregoing is true and correct.  Dated this ____ day of June, 2005.

Steven A. Esrig

12

# EXHIBIT A

# CERTIFICATION

Pursuant to the January 28, 2004 Settlement Agreement between and among Stelor Productions, Inc. ("Stelor") and Steven Silvers, Stelor hereby certifies as follows:

1.  Stelor has not increased the amount of the stock options created under the original stock option plan.

2.  No royalty payments from Stelor to Mr. Silvers are owed or outstanding as of December 31, 2004.

3.  Stelor does not presently offer any products for sale except the music available on itunes.

I declare under penalty of perjury that the foregoing statements are true and correct.

3.8-05
Date

Steven A. Esrig, President

# EXHIBIT B

JUN.28.2005  08:27                                                                              #0426 P.002 /004



**AWAL Statement Date**
**February 25, 2005**

CLIENT :
ARTIST : The Googlies from Goo

THIS STATEMENT TOTAL      $48.82

| Date | Title | ORIGIN | Downloads | @ | DOWNLOAD TOTAL $88.10 | AWAL RATE | AWAL SHARE $16.27 | TOTAL DUE $48.82 | LABEL |
|------|-------|--------|-----------|---|------|-----------|-----------|-----------|-------|
| 07/83/20 | Responsibility | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 07/81/20 | I Feel Good About Myself | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 07/81/20 | One GodWorld | U.S.A. | 1 | 0.60 | $0.60 | .25 | $1.65 | $4.98 | Solar Productions |
| 08/02/20 | Responsibility | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 08/02/20 | Recycle... Don't Litter | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 08/02/20 | Trees | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 08/08/20 | Rain | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 08/08/20 | I Feel Good About Myself | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 08/08/20 | GodMorning | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 08/08/20 | GodFriends | U.K. | 1 | 0.04 | $0.04 | .25 | $0.21 | $0.62 | AWALGlies r Productions |
| 08/08/20 | Zoom!? | U.K. | 1 | 0.04 | $0.04 | .25 | $0.21 | $0.62 | AWALGlies r Productions |
| 08/22/20 | I Feel Good About Myself | U.K. | 1 | 0.04 | $0.04 | .25 | $0.21 | $0.62 | AWALGlies r Productions |
| 08/25/20 | Recycle... Don't Litter | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.21 | $0.62 | AWALGlies r Productions |
| 09/25/20 | Responsibility | U.S.A. | 2 | 0.05 | $1.20 | .25 | $0.53 | $0.49 | AWALGlies r Productions |
| 08/25/20 | Trees | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 09/08/20 | Rain | U.S.A. | 1 | 0.05 | $0.04 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 09/12/20 | Zoom!? | U.S.A. | 1 | 0.05 | $0.04 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 10/25/20 | I Feel Good About Myself | U.S.A. | 1 | 0.60 | $0.60 | .25 | $1.65 | $4.98 | Solar Productions |
| 09/25/20 | One GodWorld | A | 2 | 0.50 | $1.20 | .25 | $0.53 | $0.49 | AWALGlies r Productions |
| 10/25/20 | Responsibility | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 10/25/20 | Recycle... Don't Litter | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 10/80/20 | Trees | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 10/80/20 | Rain | U.S.A. | 1 | 0.05 | $0.04 | .25 | $5.25 | $0.75 | Solar Productions |
| 10/80/20 | One GodWorld | A | 1 | 0.06 | $0.06 | .25 | $0.22 | $0.67 | AWALGlies r Productions |
| 11/27/20 | GodMorning | U.K. | 1 | 0.00 | $0.05 | .25 | $0.16 | $0.49 | Solar Productions |
| 11/27/20 | Responsibility | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.46 | AWALGlies r Productions |
| 11/27/20 | GodMorning | U.S.A. | 1 | 0.05 | $0.05 | .25 | $1.65 | $4.98 | Solar Productions |
| 11/27/20 | One GodWorld | A | 1 | 0.50 | $0.50 | .25 | $0.16 | $0.49 | AWALGlies r Productions |
| 12/25/20 | One GodWorld | U.S.A. | 1 | 0.05 | $0.05 | .25 | $0.16 | $0.49 | AWALGlies r Productions |

Currently Apple / iTunes pay MCPS the Mechanicals due on downloads made in the UK and (Bane) Europe.
Mechanicals due on downloads made outside of these territories are the responsibility of the Contract Holder.

Note that where amounts are shown in the PUBLISHING SHARE column from it is the responsibility of the Contract Holder to pay the relevant amounts to the Publisher / Songwriter.

Currency:     8.85%

Page 1

JUN.26.2005 06:27



**AWAL Statement Date**
**February 25, 2005**

**THIS STATEMENT TOTAL**
**$48.82**

CLIENT :
ARTIST : The Googies from Goo

| Title | ORIGIN | Downloads | @ | DOWNLOAD TOTAL | AWAL RATE | AWAL SHARE | TOTAL DUE | LABEL |
|---|---|---|---|---|---|---|---|---|
| | | | | **$65.10** | | **$16.27** | **$48.82** | |
| ✓ 2/25/20 Responsibility | U.S.A. | S | 1 | 0.05 | $0.44 | .25 | $0.16 | $0.46 | AWAL Star Productions |
| ✓ 2/25/20 Recycle, Don't Litter | U.S.A. | S | 1 | 0.05 | $0.44 | .25 | $0.16 | $0.46 | AWAL Star Productions |
| ✓ 2/25/20 We're the Googies | U.S.A. | S | 1 | 0.05 | $0.44 | .25 | $0.16 | $0.46 | AWAL Star Productions |
| ✓ 2/25/20 Articles | U.S.A. | S | 1 | 0.05 | $0.44 | .25 | $0.16 | $0.46 | AWAL |
| ✓ 2/25/20 Zoom! | U.K. | S | 1 | 0.10 | $0.50 | .25 | $0.23 | $0.68 | AWAL Star Productions |
| ✓ 2/25/20 I Feel Good About Myself | U.K. | S | 1 | 0.10 | $0.50 | .25 | $0.23 | $0.68 | AWAL Star Productions |
| ✓ 1/28/200 Geohming | E.U. | S | 1 | 0.09 | $0.89 | .25 | $0.22 | $0.67 | AWAL Star Productions |
| ✓ 1/28/200 One GooWorld | E.U. | A | 1 | 9.75 | $8.76 | .25 | $2.19 | $4.38 | Studio Productions |

Currently: 0.80%

Currently Apple / iTunes pay MCPS the Mechanicals due on downloads made in the UK and (Euro) Europe.
Mechanicals due on downloads made outside of those territories are the responsibility of the Contract Holder.

Note that where amounts are shown in the PUBLISHING SHARE column then it is the responsibility of the Contract Holder to pay the relevant amount to the Publisher / Songwriter.

Page 1

# AWAL

**AWAL Statement Date**
May 18, 2005

**THIS STATEMENT TOTAL**
**$21.60**

CLIENT :
ARTIST : **The Googles from Goo**



MAY 2 6 2005

| Date | Title | Origin | Downloads | @ | DOWNLOAD TOTAL $29.54 | AWAL RATE | AWAL SHARE $7.13 | TOTAL DUE $21.60 | ABEL |
|---|---|---|---|---|---|---|---|---|---|
| 1/24/2005 | Responsibility | U.K. | 1 | 0.09 | $0.09 | 25 | $0.22 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | Trees | U.K. | 1 | 0.09 | $0.09 | 25 | $0.22 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | GooFriends | U.K. | 1 | 0.09 | $0.09 | 25 | $0.22 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | GooMorning | U.K. | 1 | 0.09 | $0.09 | 25 | $0.22 | $0.07 | i WAL/Stellar Productions |
| 1/24/2005 | One GooWorld | E.U. | A | 8.74 | $8.74 | 25 | $2.19 | $0.00 | Stellar Productions |
| 1/24/2005 | GooNight | E.U. | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | Responsibility | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | It's Gotta Be a Goo Thing | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | Recycle... Don't Litter | USA | 9 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | Trees | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | GooBye | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | GooMorning | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | Responsibility | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | It's Gotta Be a Goo Thing | USA | 9 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | GooBye | USA | 9 | 0.05 | $1.05 | 25 | $0.40 | $1.00 | i WAL/Stellar Productions |
| 1/24/2005 | We're the Googles | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | Tiene Que Ser una Cosa de Goo | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL |
| 1/24/2005 | El GooBay | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL |
| 1/24/2005 | Trees | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | GooBye | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | GooFriends | USA | 9 | 1.05 | $1.05 | 25 | $0.35 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | Zoom! | USA | 2 | 0.05 | $1.00 | 25 | $0.35 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | GooBye | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | GooMorning | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | We're the Googles | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL/Stellar Productions |
| 1/24/2005 | El GooBay | USA | 1 | 0.05 | $0.05 | 25 | $0.10 | $0.00 | i WAL |

# EXHIBIT C



Paul Worsham
205 Highland Avenue
Rockville, MD. 20850

10/3/02

Dear Paul,

I recently had a conversation with the Stelor Board of Directors regarding your continued participation in the Google's project. They were very upset to learn that in spite of you being explicitly told not to continue on with the Cafe Press idea that you have set up pages at your online store / account with products bearing the Googles logo which you claimed you had gotten from Steven Silvers but also the plain word googles on everything from clocks to coffee mugs.(Remember our conversation after your email on August 14th that we had highly accomplished artist providing us with all artwork?-I also did not like your idea for a mug with GOOGLES on it but once again you have ignored my direction) I am sure you are tired of hearing me constantly admonish you for initiating work on this project at Steven Silvers request but I want to remind you yet again that Steven is NOT in control of Stelor Productions and his plans for marketing the Googles from Goo are not necessarily commensurate with Stelor's long range goals to commercialize this project which Stelor has the sole right as exclusive licensee to do. I realize you and Steven are close friends but this situation has become completely untenable with you doing the bidding for the Licensor and ignoring the request of the Licensee (us!)

You still have never provided me with any report on the financial projections on the Café Press idea as well as your Googles Club idea and I have been getting increased complaints from Spinning Doors about your attitude with them as well.

The email you copied me on showing a large fraudulent order at Café Press is the last straw. I have expressed my concern to you on numerous occasions that as a start up company we have to be extra vigilant about everything we do as a company and we are focused on building the proper foundation as well as strictly adhering to our License agreement with Silvers. We cannot as a new Company continue to endure Steven Silvers ongoing interference in our business activities including you taking direction from him and ignoring the wishes and direction of the President and Board of Directors of Stelor.

I had hoped you would see the bigger picture and we could work out our relationship but I believe your devotion to Silvers as a friend and the decision you have apparently made to work for him will preclude us from continuing our relationship.

**14701 Mockingbird Drive • Damestown, Maryland • 20874**
**301-963-3636 • 301-890-3636 fax**

I am grateful for the time and effort you have extended and feel sad that we will be unable to continue working together. Illa was looking forward to getting to know your daughter as a new friend.

I realize you are still angry at the Boards rejection of your IT plan. As we had discussed, the GooglesClub kit was one of many concepts the Board felt was not well thought out and unreasonable.

I appreciate you sharing with me how rich we would all be if "Steve Silvers gets what he wants" but as I have shared with you we believe this property will be bigger than Disney (G-D Willing!)
Would you kindly send me confirmation of the above? Even though I believe that the Cafepress account is still in your name I would like to have something that shows my Board that you have removed any product with our name on it.

Again Paul, thank you for everything. I am sorry that our relationship did not work out.

Very Truly Yours,

Steven A. Earig

CEO/President

**Subject: New Googles Homepage Designs**
**Date: Thursday, September 12, 2002 11:02 PM**
**From: Paul Worsham <paul@ujazz.com>**
**To: hank mitchell <hank@silvercrayon.com>**
**Cc: Steven Esrig <sesrig@stelorproductions.com>**

Hank,

Here are some designs proposed for googles.com.  Also, based on the meeting
that I had with Steve Esrig (Stelor Productions CEO) tonight, he'd like to
get together and meet you.  Weekends are okay.  We're looking at more work
than just the one game I spoke to you about earlier, since the site needs
more games in order to launch the games section on the best foot.

The 3 designs are:

  http://s-d.biz/googles/goog2.0a1/design/googlesclient/home1.htm

  http://s-d.biz/googles/goog2.0a1/design/googlesclient/home2.htm

  http://s-d.biz/googles/goog2.0a1/design/googlesclient/home3.htm

I put up a CafePress shop for Googles, and we may also need your help, as
you have some experience with that.  We want the designs to print well, and
I know you are good with the design issues, regarding colors in particular.
The link for the store is:

  http://www.cafeshops.com/googles

Paul

Page 1 of 1

JUL.02.2005 02:53    #0466 P.003 /005

Mon, Jun 27, 2005 6:11 PM

**Subject: RE: Googles report**
**Date:** Monday, September 30, 2002 11:13 PM
**From:** Paul Worsham <paul@ujazz.com>
**To:** <arun@s-d.biz>, Steve Esrig <sesrig@stelorproductions.com>
**Cc:** Salil Kumar <salil@s-d.biz>

Hello Arun,

Thank you for the report.  I have some small questions about the timing of
the stats (when are they run) and if there are partial days reported.

Also, there have been over 2 dozen items ordered from the CafePress
"Googles" store... however, all but 1 item is marked with a status of "fraud
suspect".  Someone with the name OLABGUN OLBODE" ordered over a dozen shirts
and a half dozen caps — all suspect.  This information is food for the
requirements for the shopping/fulfilment process for later.  The good news
is that they (CafePress) handle the liability in this case, but if you have
anyone with comments on how to spot fraud in an internet order-processing
environment, please pass them on.


Regards,

Paul


——Original Message——
From: Arun Soni [mailto:arun@s-d.biz]
Sent: Monday, September 30, 2002 11:54 AM
To: Steve Esrig; Paul Worsham
Cc: Salil Kumar
Subject: Googles report


Dear Steve,

Please find attached this week's urchin report.  I have checked the print
preview and all the graphs look to be in entirety.  Please have a look and
see if its printing out ok for you.  If not, it may be some print settings.
The reason some pages have only one graph on them is because we have broken
the report by sections, and some sections have only one graph.

Thanks

Arun

**Freedom Studio**

B.J. Wernham
7731 Tuckerman Lane, Suite 200
Potomac, MD 20854

phone: 1.877.599.4485
fax: 1.301.659.3743

www.freedomstudio.com
bj@thefreedomstudio.com

User ID: 100876
Pass: Ozweg84y

# EXHIBIT D

JUN 29 2005 06:55

**cafepress**
.com

My Account   Sign Out   Help   Cart: 0 Items   Checkout

Order by Phone 1-877-809-1659
Service Hours

welcome   marketplace   books   music   politics   what's hot   create & buy   ▸ open a shop

**Account Info**

Account Login

Subscriptions

Payment & Shipping

Order History

Referral Program

My CafePress > Sales Reports > Transaction Report

# Transaction Report

**View Reports**

- **Transaction Report**
- Order Report
- Product Report

● Glossary Of Terms

**Sell Online**

Create & Manage

Promote Your Shop

**Earnings & Sales**

Payee Information

**Completed Transactions**
1/1/1999 - 12/31/2100

» Run New Report
» See Totals

| Transaction Date | Release Date | Transaction Description | Check # | $0.00 |
|---|---|---|---|---|
| 12/13/2002 | 1/12/2003 | Commission Earned (googles.3287120) | none | $2.00 |
| | | | **TOTAL:** | **$2.00** |

Back to Top

**Save $, Buy Bulk**
Need merch for an event?
Order 15+ of any one product
and get big discounts. More...

About Us | Press Center | We're Hiring! | Corporate Solutions | Help | Contact Us

All Content Copyright © 1999-2005 CafePress.com.
CafePress.com® is a registered trademark of CafePress.com. All rights reserved.
Use of this web site constitutes acceptance of the Terms of Service.
Privacy Policy | Intellectual Property Policy

# cafépress.com

My Account   Sign Out   Help   Cart: 0 items   Checkout

welcome | marketplace | books | music | politics | what's hot | create & buy | › open a shop

Order by Phone
1-877-809-1659
Service Hours

**Account Info**
Account Login
Subscriptions
Payment & Shipping
Order History
Referral Program

**Sell Online**
Create & Manage
Promote Your Shop
**Earnings & Sales**
Payee Information

**Save $, Buy Bulk**
Need merch for an event?
Order 15+ of any one product
and get big discounts. More...

My CafePress > Sales Reports > Order Report

## Order Report

**View Reports**
- Transaction Report
- **Order Report**
- Product Report

• Glossary Of Terms

Jump to: Pending | Cancelled/Declined

**Completed Orders**
1/1/1999 - 12/31/2100

» Run New Report
» See Totals

| Completed | Ordered | Shop | Order No | Customer | Location | Product | Qty | Base Price | Markup | Commission |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/13/2002 | 12/12/2002 | googles | 2569525 | Margaret Mauro | NY, US | 3287120: Googles (word) Mug | 1 | 10.99 | 2.00 | 2.00 |
| | | **Orders:** | 1 | | | **Totals:** | 1 | $10.99 | | $2.00 |

» Back to Top

**Pending Orders**
1/1/1999 - 12/31/2100

» Run New Report
» See Totals

| Ordered | Shop | Order No | Customer | Location | Product | Status | Qty | Base Price | Markup | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3286984: Googles GooShip Snap Bib | new | 2 | 5.99 | 1.00 | 2.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3286992: Googles Infant/Toddler T-Shirt | new | 2 | 7.99 | 2.00 | 4.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3287103: Googles (word) Black Cap | new | 2 | 13.99 | 2.00 | 4.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3287044: Googles (word) Wall Clock | new | 2 | 10.99 | 1.00 | 2.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3211866: Googles (TM) T-Shirt - White | new | 2 | 13.99 | 2.00 | 4.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3287036: Googles (word) White T-Shirt | new | 2 | 13.99 | 2.00 | 4.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3287050: Googles (word) Golf Shirt | new | 2 | 16.99 | 3.00 | 6.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3211973: Googles Baseball Jersey | new | 2 | 16.99 | 1.00 | 2.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3287186: Googles (word) Baseball Jersey | new | 2 | 16.99 | 2.00 | 4.00 |
| 3/31/2005 | googles | 14642278 | Steven | MD, US | 3211896: | new | 2 | 20.99 | 4.00 | 8.00 |

| Ordered | Shop | Order No | Customer | Location | Product | Status | Qty | Base Price | Markup | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Esrig | | Googles (TM) Sweatshirt | | | | | |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3211909: Googles (TM) Mug | new | 2 | 10.99 | 3.00 | 6.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3287120: Googles (word) Mug | new | 2 | 10.99 | 2.00 | 4.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3211951: Mousepad | new | 2 | 10.99 | 0.00 | 0.00 |
| 3/31/2005 | googles | 14642278 | Steven Esrig | MD, US | 3287066: Googles (word) Mousepad | new | 2 | 10.99 | 2.00 | 4.00 |
| 11/14/2002 | googles | 2294481 | google | ma, US | 3211909: Googles (TM) Mug | waiting for PayPal | 1 | 10.99 | 3.00 | 3.00 |
| 11/14/2002 | googles | 2294481 | google | ma, US | 3287181: Googles (word)Stainless Steel Travel Mug | waiting for PayPal | 1 | 14.99 | 2.00 | 2.00 |
| 9/22/2002 | googles | 1940386 | OLSEGUN OLBODE | WESTERN, GN | 3287050: Googles (word) Golf Shirt | pending verification | 8 | 16.99 | 3.00 | 24.00 |
| 9/22/2002 | googles | 1940386 | OLSEGUN OLBODE | WESTERN, GN | 3211866: Googles (TM) T-Shirt - White | pending verification | 8 | 13.99 | 2.00 | 16.00 |
| 9/22/2002 | googles | 1940386 | OLSEGUN OLBODE | WESTERN, GN | 3287126: Googles (word) Baseball Cap | pending verification | 6 | 12.99 | 2.00 | 12.00 |
| 9/19/2002 | googles | 1926960 | olawale | lagos, NG | 3211896: Googles (TM) Sweatshirt | pending verification | 5 | 20.99 | 4.00 | 20.00 |
| 9/19/2002 | googles | 1926960 | olawale | lagos, NG | 3211866: Googles (TM) T-Shirt - White | pending verification | 2 | 13.99 | 2.00 | 4.00 |
| 9/17/2002 | googles | 1911574 | Supreet | Punjab, IN | 3211973: Baseball Jersey | waiting for check | 1 | 16.99 | 0.00 | 0.00 |
| | | Orders: | 5 | | | | Totals: 60 | $867.40 | | $135.00 |

» Back to Top

## Cancelled/Declined Orders
### 1/1/1999 - 12/31/2100

» Run New Report
» See Totals

| Ordered | Shop | Order No | Customer | Location | Product | Status | Qty | Base Price | Markup | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/26/2002 | googles | 2712318 | Vandyck Dartey | NC, US | 3211896: Googles (TM) Sweatshirt | declined | 2 | 20.99 | 4.00 | 8.00 |
| 12/26/2002 | googles | 2712318 | Vandyck Dartey | NC, US | 3287036: Googles (word) White T-Shirt | declined | 2 | 13.99 | 2.00 | 4.00 |
| 12/26/2002 | googles | 2712318 | Vandyck Dartey | NC, US | 3493751: Googles Lunchbox | declined | 1 | 13.99 | 5.00 | 5.00 |
| 12/26/2002 | googles | 2712318 | Vandyck Dartey | NC, US | 3286992: Googles Infant/Toddler T-Shirt | declined | 2 | 7.99 | 2.00 | 4.00 |
| 11/21/2002 | googles | 2343901 | rashid luckman | PA, US | 3287126: Googles (word) Baseball Cap | declined | 5 | 12.99 | 2.00 | 10.00 |
| 11/21/2002 | googles | 2343677 | rashid luckman | PA, US | 3287044: Googles (word) Wall Clock | declined | 5 | 10.99 | 1.00 | 5.00 |
| | | Orders: | 3 | | | | Totals: 17 | $219.83 | | $36.00 |

» Back to Top

Items that do not qualify for volume bonuses are indicated in a lighter gray. To see which products do and do not qualify, see the Product Pricing page.

# EXHIBIT E

**Kevin C. Kaplan**

---

**From:**   GAIL A MCQUILKIN [GAM@kttlaw.com]
**Sent:**   Wednesday, March 23, 2005 1:40 PM
**To:**   Kevin C. Kaplan
**Subject:** good conversation

I think we are moving forward a bit. Should we call Weinstein again?

IN the meantime, I really need you to help me get a few things done relating to Silvers so we can keep the balance of our energies on Inc.

1. We need an accounting for the 1099 - there is an extra $6500 in there and he needs to file his tax return soon.

 2. If there are any ads going out can we please have a copy for Silvers to preview. According to the license agreement Stelor is to provide these to Silvers for his "input." There is nothing in the agreement that says Stelor has to listen or do anything with his input but this keeps Silvers happy. Silvers will communicate his "input" only to me. 

3. I will forward to you the ad that appeared in the preview to the licensing show. Silvers had no problem with this ad other than that the license agreement says at Article I (E) that the phrase "created by Steven A. Silvers" or other similar wording is suppose to be on it. We've had this issue before and Stelor promised to increase the font so you don't need a microscope to see it. I don't disagree that Stelor can use the phrase "based on a concept created by" but can they just make it legible, PLEASE!

4. We still need the list of all current domain names. Hefter was suppose to be working on that but we still don't have it.

5. Options. The settlement agreement says once Stelor is changed to an LLC it will issue Silvers 1,000 units of interest or however it is structured to take the place of the 1,000 stock options.

I think that is all that is left for Stelor to do under the settlement other than the audit.

You would be doing me the biggest favor in the world if you can get Stelor to accept Steve's chart on the insurance payments so we can pay Silvers and put this issue to rest. Think of it as quid pro quo for agreeing to postpone the audit.

Talk to you soon.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office

EXHIBIT F



Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, MD  20874

Mr. Steven A. Silvers
8983 Okeechobee Blvd.
Suite 202, PO Box 203
West Palm Beach, FL  23411

December 10, 2004

Dear Mr. Silvers,

Pursuant to the Letter Agreement dated June 1, 2002 between you and Stelor Productions, Inc.,  the Board of Directors of Stelor Productions, Inc. has approved granting you 1,000 stock options at the subscription price of ten dollars ($10.00) per share.  These options vest one-third after the end of 2004, one-third after the end of 2005, and one-third after the end of 2006 and expire after the end of 2007.

If you desire to accept these 1,000 stock options, please execute this letter where indicated below and return it to me at the above address.

Sincerely,

Steven A. Esrig

I have read, understand, and agree with the above offer and

accept the 1,000 stock options under the above terms.

_____          _____
        Steven A, Silvers                                        Dated

cc: Lawrence R. Hefter, esq.

14701 Mockingbird Drive    Darnestown MD, 20874
Phone: 301.963.0000  Fax: 301.990.4646
www.stelorproductions.com

Untitled

5/18/05 10:21 A



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

05/18/2005

Dear Customer:

Here is the proof of delivery for the shipment with tracking number 848464454926. Our records reflect the following information.

## Delivery Information:

**Signed for by:** S.TEVEN
**Delivery Date:** Dec 11, 2004 10:47

## Shipping Information:

Tracking number: 848464454926     Ship Date: Dec 10, 2004

If you are the shipper, recipient, or third-party payor for this shipment and require additional Signature Proof of Delivery information, please log-in using your My FedEx login ID.

**Recipient:**
WEST PALM BEACH , FL US

**Shipper:**
DARNESTOWN , MD US

Thank you for choosing FedEx Express. We look forward to working with you in the future.

FedEx Worldwide Customer Service
1-800-Go-FedEx®

# EXHIBIT G



BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM   WWW.BWSKB.COM

June 17, 2005

## VIA FACSIMILE AND U.S. MAIL

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

      Re:    <u>Silvers/Stelor</u>

Dear Gail:

      Please be advised we have additional samples, including promotional materials for next week's trade show, available for your client's inspection and review at our offices.  Please advise me immediately with what arrangements you would like to make.

                     Sincerely,

                     Kevin C. Kaplan

                     Kevin K. Kaplan

KCK/mjp

                    DICTATED BUT NOT READ
                    TO EXPEDITE MAILING

# LAW OFFICES
## BURLINGTON, WEIL,
## SCHWIEP, KAPLAN & BLONSKY, P.A.
### *OFFICES IN THE GROVE*

---

## FACSIMILE TRANSMITTAL SHEET

---

TO:       GAIL MCQUILKIN

FROM:     KEVIN C. KAPLAN, ESQ.

FAX NUMBER:    (305) 372-3508

PHONE NUMBER: (305) 372-1800

TOTAL NUMBER OF PAGES (INCLUDING COVER PAGE): 2

RE:       STELOR PRODUCTIONS, LLC VS SILVERS

---

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for the postage. Thank you.

**PLEASE NOTIFY US IMMEDIATELY IF NOT RECEIVED PROPERLY.**

FILE NO. 1882.001                    DATE: June 17, 2005

TRANSMISSION VERIFICATION REPORT

```
                                    TIME  :  06/17/2005 13:21
                                    NAME  :  BURLINGTONWEILETAL
                                    FAX   :  3058505261
                                    TEL   :  3058502900
                                    SER.# :  BROC5J232435
```

```
DATE.TIME           06/17  13:20
                    2041809441#3058272350R#
DURATION            00:01:01
PAGE(S)             02
RESULT              OK
MODE                STANDARD
```

# LAW OFFICES
# BURLINGTON, WEIL,
# SCHWIEP, KAPLAN & BLONSKY, P.A.
## OFFICES IN THE GROVE

---

## FACSIMILE TRANSMITTAL SHEET

---

**TO:**  GAIL MCQUILKIN

**FROM:**  KEVIN C. KAPLAN, ESQ.

**FAX NUMBER:**  (305) 372-3508

**PHONE NUMBER:** (305) 372-1800

**TOTAL NUMBER OF PAGES (INCLUDING COVER PAGE):**  2

**RE:**  STELOR PRODUCTIONS, LLC VS SILVERS

---

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for the postage. Thank you.

**PLEASE NOTIFY US IMMEDIATELY IF NOT RECEIVED PROPERLY.**

FILE NO. 1882.001

EXHIBIT H

**Kozyak Tropin & Throckmorton, P.A.**
2525 Ponce de Leon, 9th Floor
Coral Cables, Florida 33134

Gail A. McQuilkin
gam@kttlaw.com

Telephone (305) 372-1800
Fax (305) 372-3508

<u>Via e-mail</u>

June 17, 2005

Kevin C. Kaplan, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive
Miami, Florida 33133

  Re: <u>Stelor Productions, Inc. v. Steven A. Silvers</u>

Dear Kevin:

  I appreciate the exceptionally late "offer" for us to come to your office to view samples of product and advertising relating to the upcoming trade show that begins on Tuesday. You should, however, look at the requirements of the License Agreement. Samples and all advertising and promotional materials must be *submitted* to Mr. Silvers, not made available at some location. As counsel for Mr. Silvers we will accept delivery of the materials at our office on Monday.

  Be advised that nothing in this letter should be construed as a waiver of Mr. Silvers' right to terminate the License Agreement, or file claims against Stelor arising from its failure to cure its prior breaches under the License Agreement, and failure to perform under the Settlement Agreement.

    Sincerely,

    Gail A. McQuilkin

254076.101

# EXHIBIT I

BURLINGTON · WEIL · SCHWIEP · KAPLAN Ⓚ BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM    WWW.BWSKB.COM

June 21, 2005

**VIA HAND DELIVERY**

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

Re:    Silvers/Stelor

Dear Gail:

Enclosed please find Stelor's June royalty advance payment in the amount of $5,000.00 pursuant to paragraph 10(a) of the Settlement Agreement. We had hoped to issue a single check including the additional insurance payment pursuant to paragraph 10(b) of the Settlement Agreement, but you have still not provided us the required documentation to show the amount required by Mr. Silvers to maintain his insurance coverage. Unless and until Stelor receives that information, Stelor is obviously unable and not required pursuant to the Agreement to provide any payment at this time. Stelor stands ready, willing and able to do so immediately upon our receipt of the required documentation. Simply send a copy of a cancelled check or an invoice from the insurance carrier. We ask once again that this information be provided promptly.

In addition, we were surprised by the suggestion in your recent court papers that Stelor's tender of the prior royalty payments was somehow insufficient, as well as Stelor's request for the promised letter listing the information the auditors required for their audit. Your letter of May 20, 2005 clearly advised that Mr. Silvers had no intention of proceeding in any way under the Agreement. If that is not the case, or if his position has now changed in light of the recent rulings, we include with this letter the checks that were previously tendered.

Also, if Silvers now wants to proceed with an audit, we would be happy to coordinate the audit for next Monday, June 27, 2005. Again, we ask that you promptly provide us with the letter listing the information requested for the audit, which you previously advised would be provided but never has been, so we can assure the proper information will be available. Under the circumstances, and given Mr. Silvers' positions in the pending litigation, please also confirm to us in writing that the audit and all information obtained in connection with the audit will be held in confidence, will in no way be disclosed to any third parties, and will be used by Mr. Silvers solely for purposes authorized and appropriate under the License and Settlement Agreements. We look forward to your prompt response

Gail A. McQuilkin, Esq.
June 21, 2005
Page 2


Notwithstanding your unfounded refusal to review materials at our offices, where we advised they were available last week, we enclose copies of additional samples and promotional materials.

Finally, with respect to Mr. Silvers' claimed options, we reiterate that LLC certificates and options have not yet been issued. Stelor did provide Mr. Silvers with a letter in December of 2004 asking him to confirm his claimed options, but for whatever reason, he failed and refused to sign or return that letter. If his position has changed, please have him execute and return that letter now.

This letter does not and is in no way intended to constitute a waiver of any of Stelor's rights and remedies, all of which are expressly reserved.

Sincerely,

Kevin C. Kaplan

KCK/mjp

**2755**

**STELOR PRODUCTIONS, INC.**
PO BOX 8000
~~GAITHERSBURG, MD 20898~~

CITIBANK, F.S.B.
WASHINGTON, DC 20036-0967
7-2618/2810

PAY TO THE
ORDER OF.    Silvers Entertainment Group                          $ **1,000.00

One Thousand and 00/100**********************************************************    DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Royalty/insurance advance May '05

⑆002755⑆ ⑈052002166⑈ ⑆175974054⑆

---

**STELOR PRODUCTIONS, INC.**
    Silvers Entertainment Group                          04/28/05          2755
 04/28/05                              Bill #042005                              1,000.00

Citibank Checkin  Royalty/insurance advance May '05                          1,000.00



2753

**STELOR PRODUCTIONS, INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

CITIBANK, F.S.B.
WASHINGTON, DC 20038-0957
7-218-520

04/28/05

PAY TO THE
ORDER OF_____ Silvers Entertainment Group                    $ **1,000.00

One Thousand and 00/100*************************************************** DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Royalty/insurance advance, Apr '05

⑈002753⑈ ⑆052002166⑆ ⑈175974051⑈

---

STELOR PRODUCTIONS, INC.
    Silvers Entertainment Group                        04/28/05        2753
    04/28/05                    Bill #052005                        1,000.00

Citibank Checkin  Royalty/insurance advance, Apr '05                    1,000.00





2752

**STELOR PRODUCTIONS, INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

CITIBANK, F.S.B.
WASHINGTON, DC 20036-0867
7-216-520

04/28/05

PAY TO THE
ORDER OF ___ Silvers Entertainment Group _____ $ **5,000.00

Five Thousand and 00/100************************************************************** DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO   Advance Against Royalty May 05

⑈002752⑈ ⑆052002166⑆   ⑈175974059⑈

---

**STELOR PRODUCTIONS, INC.**
Silvers Entertainment Group          04/28/05          2752
04/28/05                  Bill #royapril                    5,000.00

Citibank Checkin  Advance Against Royalty May 05                    5,000.00



2751

**STELOR PRODUCTIONS, INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

CITIBANK, F.S.B.
WASHINGTON, DC 20066-0957
7-216-520

04/28/05

PAY TO THE
ORDER OF    Silvers Entertainment Group                    $ **5,000.00

Five Thousand and 00/100**************************************************************    DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Advance Against Royalty April 05

⑆002751⑆ ⑆052002166⑆ ⑆17597405⑆

---

**STELOR PRODUCTIONS, INC.**

Silvers Entertainment Group                            04/28/05        2751
04/28/05                        Bill #roymay                            5,000.00

Citibank Checkin  Advance Against Royalty April 05                        5,000.00

**STELOR PRODUCTIONS, LLC**
OPERATING ACCOUNT
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

1501

05/31/05

PAY TO THE
ORDER OF    Silvers Entertainment Group                    $ **5,000.00

Five Thousand and 00/100******************************************************** DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Advance Against Royalty June 05

AUTHORIZED SIGNATURE

⑈001501⑈ ⑆252073018⑆ 0985420132⑈

STELOR PRODUCTIONS, LLC                                          1501

Silvers Entertainment Group                    05/31/05

5,000.00

Provident - Oper  Advance Against Royalty June 05                    5,000.00



**Your personal passport to:**

# Information on the
# Biggest Kid's
# Event Ever!

**This passport is your chance to participate in the Kid's promo of the year! You will find details and information on ways for your company to benefit. Plus! Great family discount packages, specials for your friends, business and much, much more.**

Keep this card and then go to: www.stelor.net.
*This is a limited offer and available only to:*

Enter this
Password



**Your personal passport to:**

# Information on the
# Biggest Kid's
# Event Ever!

**This passport is your chance to participate in the Kid s promo of the year! You will find details and information on ways for your company to benefit. Plus! Great family discount packages, specials for your friends, business and much, much more.**

Keep this card and then go to: www.stelor.net.
*This is a limited offer and available only to:*

Enter this
Password





**Your personal passport to:**

# Information on the
# Biggest Kid's
# Event Ever!

**This passport is your chance to participate in the Kid s promo of the year! You will find details and information on ways for your company to benefit. Plus! Great family discount packages, specials for your friends, business and much, much more.**

Keep this card and then go to: www.stelor.net.
*This is a limited offer and available only to:*

Enter this
Password



**Your personal passport to:**

# Information on the
# Biggest Kid's
# Event Ever!

**This passport is your chance to participate in the Kid s promo of the year! You will find details and information on ways for your company to benefit. Plus! Great family discount packages, specials for your friends, business and much, much more.**

Keep this card and then go to: www.stelor.net.
*This is a limited offer and available only to:*

Enter this
Password



















# Check out one of many original stories in the FUN FACTORY!

A gootian looks different than a human. Its body is stubbier, and covered with soft, brightly-colored short fur. It has four eyes, not two like us. But underneath their fur and extra eyes, Googles and humans are mostly the same.































Stelor Productions © 2005
The Googles from Goo™ are a creation of Steven A. Silvers



# EXHIBIT J



**KOZYAK · TROPIN**
**THROCKMORTON**
A T T O R N E Y S   A T   L A W

Gail A. McQuilkin, Esq.
gam@kttlaw.com | 305.377.0656

<u>Via e-mail</u>

June 21, 2005

Kevin C. Kaplan, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse A
Miami, Florida 33133

  Re: <u>Stelor Productions, Inc. v. Steven A. Silvers</u>

Dear Kevin:

  This is in response to your June 21, 2005 letter. As you know, our position is that the Settlement Agreement and License Agreement have been terminated due to Stelor's failure to perform under both. Your letter once again confirms that Stelor did not perform, and is simply another attempt post-termination to cure some but not all of Stelor's breaches. This is not acceptable to Mr. Silvers.

  Your statement about tending checks *is* wrong. The late checks were never tendered. You sent us *copies* of checks post-termination. Besides, tendering checks post-termination does nothing to cure breaches that occur pre-termination.

  Further, even if the Settlement Agreement were in effect – which it is not because Stelor did not perform – Stelor is once again trying to impose conditions. There is no requirement that Silvers provide proof of payment for the $1000 royalty advance. It is Silvers' option to take up to $1000 per month against *his* future royalties. And, let me remind you that Silvers has already provide a declaration that he requires the $1000 to cover his health insurance premium payments, despite that he had no obligation to so (another condition you imposed before Stelor would honor its obligations).

  Also, there is no condition on Silvers' right to audit Stelor that his auditor provide Stelor a list of information needed for the audit. The License Agreement states that he is entitled to see all the books and records and all documents and material related to the License Agreement.

  As for the options, we will determine the status of the LLC certificates when we conduct discovery. On the topic of discovery, two weeks ago I offered to have a Rule 26 conference. That offer was met with stone cold silence. I am again offering to hold a

Page 2

Rule 26 conference so we can get this matter set for trial on an expedited track (assuming the Court does not dismiss the action). I am available this Friday to hold that conference.

Finally, this is to advise you that the federal discovery rules require that Stelor maintain all electronic documents and communications, including email sent and received. This means that *all* electronic materials must be maintained and preserved to avoid spoliation of evidence.

Sincerely,

Gail A. McQuilkin

3339/101/254634.1

# EXHIBIT K



BURLINGTON · WEIL · SCHWIEP · KAPLAN &BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM   WWW.BWSKB.COM

June 24, 2005

**VIA E-MAIL**

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

        Re:    Silvers/Stelor

Dear Gail:

        I write in response to your letter dated June 21, 2005.  First, please be advised that the letter was apparently not emailed to me until 2:48 p.m. on Wednesday, June 22, 2005.  A copy of the email I received is attached.

        With respect to the substance of your letter, we take issue with your attempt to misconstrue our letter of June 21st as confirmation "that Stelor did not perform".  Stelor has fully performed its obligations under the Agreements, and our letter in no way states otherwise. Indeed, as a fair reading of our June 21st letter and its enclosures demonstrates, it was sent as part of Stelor's efforts to continue to comply with the Agreements, notwithstanding Mr. Silvers' ongoing disregard for those Agreements.  Stelor's efforts in continuing to comply do not mean that Stelor previously failed to comply.

        To the extent your letter suggests that Stelor has cured some, "but not all of [its] breaches", please advise immediately in writing what breaches you contend remain uncured. Stelor is unaware of and disputes that any breaches exists, but Stelor will continue to make every reasonable effort to ensure that all obligations under the Agreements are discharged.

        With respect to the $1000 payment pursuant to paragraph 10(b) of the Settlement Agreement, your reading of the provision ignores the plain language of the paragraph.  The payment is to be "equivalent to that amount required by Silvers to maintain his insurance coverage".  Unlike paragraph 10(a), paragraph 10(b) includes no time provision for the payment. Paragraph 10(c), though, expressly provides that the payments for such insurance "will be provided to Silvers within 15 days of Stelor receiving evidence of paid premiums."  That language does not allow Silvers simply to decide how much he wants, but instead requires him to provide evidence of paid premiums.  The requirement is not difficult to satisfy.  Silvers need only forward a cancelled check or a statement or invoice for the insurance premium.  Rather than attempting to re-write the Agreement, Silvers should simply comply.

Gail A. McQuilkin, Esq.
June 24, 2005
Page 2

With respect to the audit, you were the one who expressly committed to providing us a letter listing the information needed for the audit. In doing so, you clearly recognized that some advance indication of the required information was appropriate, and you committed to providing it. We are simply asking you to stand by your commitment. If you are now changing your position, and want to proceed with an audit without any advance assembly of information, then say so. In fact, what your letter really says – coupled with the inconsistent positions you have taken on the audit in the past (asking that it be scheduled, then deferring it, then advising that a letter would be provided itemizing the required documents, and then terminating the agreement for failing to provide dates before the time frame you yourself suggested) – is that Silvers has no intention of proceeding with an audit, and probably never intended to in the past. Silvers is simply trying to set Stelor up, misdirecting Stelor as to what Silvers intends to do, requiring Stelor to take action not required by the Agreements, and then purporting to terminate the Agreements claiming Stelor failed to perform.

Stelor's obligation under the Settlement Agreement was and is to cooperate with Silvers with respect to the audit, which we have been trying to do. Again, we provided you the date of Monday, June 27, 2005 to conduct that audit. Clearly, Silvers has a corresponding obligation to cooperate as well. And, providing an advance indication of what information will be required – in order to ensure that the audit will be efficient and avoid unnecessary disruption to Stelor's operations – is a basic component of that cooperation. Providing a clear response to our proposed date is also an obvious element of cooperation. It is now Friday, June 24, 2005, and you have not bothered to confirm whether or not you plan to perform the audit on the 27th, or whether you propose a different date. We assume, based on your letter, that Silvers does not plan to proceed with the audit on the 27th. If our assumption is wrong, please advise me immediately in writing.

With respect to the options, your letter ignores the option letter Stelor sent to Silvers on December 10, 2004. Again, Stelor has no record of receiving Silvers' executed copy of that letter. If Silvers contends he sent it, then please provide us with a copy of the executed letter. If Silvers did not send it, then please have Silvers execute the letter now, and deliver it to us. If Silvers is unwilling to execute the letter and does not want the options, then please confirm that in writing. Clearly, however, Silvers cannot simply continue to ignore the letter and his failure to respond, while claiming that Stelor somehow breached an obligation to provide options.

Finally, I spoke to your partner Ken Hartmann about the prior request to schedule a Rule 26 conference on Friday, June 10, 2005. I told him I was unavailable as my wife and I were going to Islamorada for our wedding anniversary. I told him I would be happy to schedule a conference the following week, at your convenience. I never heard back, at least until your letter of June 21st, where your failure to follow up with a date has been translated into my "stone cold silence." I propose that we schedule the conference on June 29 or 30th. Please confirm which date you prefer.

Gail A. McQuilkin, Esq.
June 24, 2005
Page 3


In addition, we attach hereto documents pertaining to the prosecution of GOO-formative trademark applications, and other proceedings related to Stelor's efforts to protect the intellectual property.

Finally, we attach a supplemental royalty statement for the first quarter of 2005. It confirms the information on the statement we previously provided, and provides some additional information about units sold, countries of sale, and invoice amounts. With respect to your suggestion that Stelor was required to provide royalty statements for the last two quarters of 2004, paragraph 12 of the Settlement Agreement expressly provides that, once Stelor confirms in writing as it has done, that no royalty payments are outstanding, no royalty statements are due. Nevertheless, although Stelor is obviously not required to do so, we enclose statements for the last two quarters of 2004, confirming there have been no sales.

Of course, this letter does not and is in no way intended to constitute a waiver of any of Stelor's rights and remedies, all of which are expressly reserved.

Sincerely,

Kevin C. Kaplan

KCK/map

# EXHIBIT L



**KOZYAK · TROPIN
THROCKMORTON**
ATTORNEYS AT LAW

**Gail A. McQuilkin**, Esq.
gam@kttlaw.com | 305.377.0656

<u>Via email</u>

June 27, 2005

Kevin C. Kaplan, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse A
Miami, Florida 33133

      Re:   <u>Stelor Productions, Inc. v. Steven A. Silvers</u>

Dear Kevin:

     June 29 is fine for the Rule 26 conference. Please confirm what time.

     This is to repeat our position. Unless a jury finds otherwise, the License Agreement is terminated. We will not accept attempts to cure breaches post-termination, including the latest ones in your June 24 letter. Please advise us what you prefer us to do with the late checks sent to us post-termination. Unless I hear otherwise, I will hold them in my office.

               Sincerely,

               Gail A. McQuilkin

3339/101/254757.1

# EXHIBIT M



BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM   WWW.BWSKB.COM

June 30, 2005

VIA E-MAIL

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

                Re:    Silvers/Stelor

Dear Gail:

        In response to your letter of June 27, 2005, the checks belong to your client.  Please
forward them to him immediately.

                                Sincerely,

                                Kevin C. Kaplan

KCK/map

# EXHIBIT N



| **Daily Statistics for June 2005** | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Day** | **Hits** | | **Files** | | **Pages** | | **Visits** | | **Sites** | | **KBytes** | |
| 1 | 8 | 0.00% | 8 | 0.00% | 6 | 0.00% | 4 | 0.00% | 4 | 0.00% | 398 | 0.00% |
| 2 | 9 | 0.00% | 6 | 0.00% | 7 | 0.00% | 5 | 0.00% | 6 | 0.00% | 243 | 0.00% |
| 3 | 14 | 0.00% | 9 | 0.00% | 8 | 0.00% | 5 | 0.00% | 5 | 0.00% | 466 | 0.00% |
| 4 | 4 | 0.00% | 0 | 0.00% | 2 | 0.00% | 1 | 0.00% | 2 | 0.00% | 0 | 0.00% |
| 5 | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| 6 | 3 | 0.00% | 2 | 0.00% | 3 | 0.00% | 1 | 0.00% | 1 | 0.00% | 9 | 0.00% |
| 7 | 22 | 0.00% | 21 | 0.00% | 16 | 0.00% | 10 | 0.00% | 9 | 0.00% | 938 | 0.00% |
| 8 | 12 | 0.00% | 7 | 0.00% | 8 | 0.00% | 5 | 0.00% | 6 | 0.00% | 466 | 0.00% |
| 9 | 23 | 0.00% | 11 | 0.00% | 13 | 0.00% | 7 | 0.00% | 6 | 0.00% | 148 | 0.00% |
| 10 | 20774 | 1.09% | 16589 | 1.21% | 10734 | 1.19% | 4374 | 1.23% | 4223 | 1.71% | 1083299 | 1.42% |
| 11 | 83279 | 4.35% | 62950 | 4.59% | 39396 | 4.36% | 15333 | 4.32% | 13786 | 5.57% | 3593923 | 4.71% |
| 12 | 87083 | 4.55% | 63575 | 4.63% | 38427 | 4.26% | 14808 | 4.17% | 13425 | 5.42% | 3473051 | 4.55% |
| 13 | 126220 | 6.59% | 95254 | 6.94% | 61697 | 6.83% | 24412 | 6.88% | 21545 | 8.70% | 5731724 | 7.52% |
| 14 | 133633 | 6.98% | 101107 | 7.37% | 64690 | 7.16% | 25707 | 7.24% | 22349 | 9.02% | 5737268 | 7.52% |
| 15 | 135122 | 7.06% | 99596 | 7.26% | 64593 | 7.15% | 25427 | 7.16% | 22047 | 8.90% | 5630774 | 7.38% |
| 16 | 132534 | 6.92% | 96199 | 7.01% | 63463 | 7.03% | 25192 | 7.09% | 22029 | 8.89% | 5375575 | 7.05% |
| 17 | 123884 | 6.47% | 88960 | 6.48% | 58672 | 6.50% | 23012 | 6.48% | 20292 | 8.19% | 4874150 | 6.39% |
| 18 | 100974 | 5.28% | 71931 | 5.24% | 46744 | 5.18% | 18136 | 5.11% | 16199 | 6.54% | 3822917 | 5.01% |
| 19 | 90718 | 4.74% | 63149 | 4.60% | 42544 | 4.71% | 16521 | 4.65% | 15013 | 6.06% | 3354667 | 4.40% |
| 20 | 127467 | 6.66% | 90063 | 6.56% | 61623 | 6.82% | 24681 | 6.95% | 21683 | 8.75% | 5054757 | 6.63% |
| 21 | 134302 | 7.02% | 94231 | 6.87% | 64066 | 7.09% | 25200 | 7.10% | 22444 | 9.06% | 5067389 | 6.65% |
| 22 | 135173 | 7.06% | 95045 | 6.93% | 63391 | 7.02% | 24862 | 7.00% | 21834 | 8.82% | 5161916 | 6.77% |

# EXHIBIT O





# EXHIBIT P





# The Googles from Goo

THE GOOGLES FROM GOO provide compelling educational products designed to enlighten, entertain, and develop children's skill levels.

- ◆ THE GOOGLES FROM GOO will teach children about science and the earth around them.
- ◆ THE GOOGLES FROM GOO will help children build self-esteem.
- ◆ THE GOOGLES FROM GOO music and video will be available in English and Spanish.

GOOGLES SERVICES UNDER DEVELOPMENT INCLUDE LATEST TECHNOLOGIES IN THE CHILDREN'S MARKET

- ◆ Books
- ◆ Science based play kits
- ◆ Broadcast video
- ◆ Music - 38 original songs to date
- ◆ Interactive entertainment
- ◆ Arts and Crafts

- ◆ Stationary
- ◆ Internet site with games and music
- ◆ Apparel and accessories
- ◆ Toys (soft, electronic, games, puzzles)
- ◆ Live shows
- ◆ Infant stimulation products

For more information on the
**THE GOOGLES FROM GOO**
partnering opportunities contact:
Steven A. Esrig • President and CEO
sesrig@stelorproductions.com



www.googles.com

www.stelorproductions.com

Stelor Productions
P.O. Box 8000
Gaithersburg, MD 20883
(301)963-0000



















# EXHIBIT 8

## Kevin C. Kaplan

**From:**  Adam Rabin [arabin@dkrpa.com]
**Sent:**  Wednesday, November 16, 2005 10:29 AM
**To:**  Kevin C. Kaplan
**Subject:** Stelor

Kevin, I also want to clarify my e-mail below that while we did not specifically ask for Fla. Stat. 57.105 fees against you or your firm in our Motion, we also are not waiving the right to recover them in the event the Court on its own initiative decides to issue an order awarding them. 

cc: file

**From:** Adam Rabin
**Sent:** Tuesday, November 15, 2005 5:46 PM
**To:** Kevin C. Kaplan
**Subject:** RE: Stelor

I recall our pre-filing conference that was an effort to settle the motion to tax fees and costs.  I also told you during that discussion that we were seeking fees under the contract's fee-shifting provision and Fla. Stat. 57.105 fees and that it was not our intention to seek fees against you or your firm. 

We did not discuss, however, Rule 11 sanctions and while we did not specifically ask for them against you or your firm in our Motion, we are not waiving the right to recover them in the event the Court on its own initiative decides to issue an order awarding them. 

If there is anything unclear about our position, please let me know immediately.  Thanks.

cc: file

**From:** Kevin C. Kaplan [mailto:kkaplan@bwskb.com]
**Sent:** Tuesday, November 15, 2005 4:50 PM
**To:** Adam Rabin
**Subject:** RE: Stelor

I understand you will get back to me tomorrow.  Remember, though, that you did represent that to me when we spoke before the motion was served.

*******************************************
Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
   Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel:  (305) 858-2900

12/9/2005

Fax: (305) 858-5261
kkaplan@bwskb.com

*****************************************

CONFIDENTIALITY NOTE: This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

**From:** Adam Rabin [mailto:arabin@dkrpa.com]
**Sent:** Tuesday, November 15, 2005 4:35 PM
**To:** Kevin C. Kaplan
**Subject:** RE: Stelor

Okay on extension of time, but the second part of your statement is not correct. I told you that I needed to speak to my co-counsel and would get back to you on our on position re the claim for fees and/or sanctions. I will get back to you tomorrow regarding this. Thanks.

**From:** Kevin C. Kaplan [mailto:kkaplan@bwskb.com]
**Sent:** Tuesday, November 15, 2005 4:43 PM
**To:** Adam Rabin
**Subject:** Stelor

Adam,

To confirm our call, thank you for agreeing to allow us until next Wednesday to respond to the pending fee motion. We will agree to extend you the same courtesy should you require more time for your reply. Also, as you previously advised and again confirmed, the motion for fees pursuant to Rule 11 and 57.105 is directed solely to Stelor, and not to Stelor's counsel. Thanks you for the clarification.

Kevin

*****************************************
Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
  Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: (305) 858-2900
Fax: (305) 858-5261
kkaplan@bwskb.com

*****************************************

CONFIDENTIALITY NOTE: This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the

12/9/2005

Kevin C. Kaplan
_____

**From:**    Adam Rabin [arabin@dkrpa.com]
**Sent:**    Wednesday, November 16, 2005 10:29 AM
**To:**      Kevin C. Kaplan
**Subject:** Stelor

Kevin, I also want to clarify my e-mail below that while we did not specifically ask for Fla. Stat. 57.105 fees against you or your firm in our Motion, we also are not waiving the right to recover them in the event the Court on its own initiative decides to issue an order awarding them. 

cc: file

From: Adam Rabin
Sent: Tuesday, November 15, 2005 5:46 PM
To: Kevin C. Kaplan
Subject: RE: Stelor

I recall our pre-filing conference that was an effort to settle the motion to tax fees and costs. I also told you during that discussion that we were seeking fees under the contract's fee-shifting provision and Fla. Stat. 57.105 fees and that it was not our intention to seek fees against you or your firm. 

We did not discuss, however, Rule 11 sanctions and while we did not specifically ask for them against you or your firm in our Motion, we are not waiving the right to recover them in the event the Court on its own initiative decides to issue an order awarding them. 

If there is anything unclear about our position, please let me know immediately. Thanks.

cc: file

From: Kevin C. Kaplan [mailto:kkaplan@bwskb.com]
Sent: Tuesday, November 15, 2005 4:50 PM
To: Adam Rabin
Subject: RE: Stelor

I understand you will get back to me tomorrow. Remember, though, that you did represent that to me when we spoke before the motion was served.

**************************************
Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
  Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: (305) 858-2900

12/9/2005

Fax: (305) 858-5261
kkaplan@bwskb.com

*****************************************

CONFIDENTIALITY NOTE: This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

**From:** Adam Rabin [mailto:arabin@dkrpa.com]
**Sent:** Tuesday, November 15, 2005 4:35 PM
**To:** Kevin C. Kaplan
**Subject:** RE: Stelor

Okay on extension of time, but the second part of your statement is not correct. I told you that I needed to speak to my co-counsel and would get back to you on our on position re the claim for fees and/or sanctions. I will get back to you tomorrow regarding this. Thanks.

**From:** Kevin C. Kaplan [mailto:kkaplan@bwskb.com]
**Sent:** Tuesday, November 15, 2005 4:43 PM
**To:** Adam Rabin
**Subject:** Stelor

Adam,

To confirm our call, thank you for agreeing to allow us until next Wednesday to respond to the pending fee motion. We will agree to extend you the same courtesy should you require more time for your reply. Also, as you previously advised and again confirmed, the motion for fees pursuant to Rule 11 and 57.105 is directed solely to Stelor, and not to Stelor's counsel. Thanks you for the clarification.

Kevin

*****************************************
Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
  Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: (305) 858-2900
Fax: (305) 858-5261
kkaplan@bwskb.com

*****************************************

CONFIDENTIALITY NOTE: This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the

12/9/2005