FILED by ___ D.C.
ELECTRONIC

Dec 27 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, L.L.C., a
Delaware limited liability company,
f/k/a STELOR PRODUCTIONS, INC.,

        Plaintiff,

vs.

STEVEN A. SILVERS, a Florida resident,

        Defendant.
_____/

### PLAINTIFF'S REPLY TO SILVERS' OPPOSITION TO MOTION FOR LEAVE TO FILE SUR-REPLY TO DEFENDANT'S REPLY TO STELOR'S RESPONSE TO MOTION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiff Stelor Productions, LLC, by and through undersigned counsel, hereby replies as follows to Silvers' Memorandum in Opposition to Plaintiff's Motion for Leave to File Sur-Reply:

Silvers, again, attempts to mislead this Court with respect to the directly controlling Eleventh Circuit decision in *Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co.,* 827 F.2d 1454, 1458 (11th Cir. 1987). Silvers finally admits that the case denies a motion for prevailing party attorneys fees **under Florida law,** but Silvers then disingenuously argues the case is somehow not controlling because the Court did not analyze who was the prevailing party under the test articulated by the Florida Supreme Court in *Moritz v. Hoyt Enters., Inc.,* 604 So. 2d 807 (Fla. 1992). That is absurd! The *Laborers* Court clearly and expressly held that no award of fees was appropriate under Fla. Stat. 713.29 or 57.105, "[g]iven that the federal court dismissed the case for lack of subject matter jurisdiction and the merits of

---

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM


dockets.Justia.com

CASE NO. 05-80393 CIV HURLEY/HOPKINS

the state claims have yet to be tried." As the Court emphasized, "it would be inappropriate to award fees under either of these Florida provisions at this time." 827 F.2d at 1458.

In *Moritz,* the Court adopted the test articulated by the United States Supreme Court for determining the prevailing party, and applied it in a case decided on the merits after a final hearing. 604 So. 2d at 809, 809-10.[1] As the *Laborers'* decision made clear, however, that standard has no application where the merits of a case remain undecided and a case has been dismissed on jurisdictional grounds. The decision in *Prosperi v. Code, Inc.,* 626 So. 2d 1360, 1361 (Fla. 1993), is similarly inapplicable, where the Court applied the *Moritz* test to determine a prevailing party *after* a judgment on the merits.

Nor does the decision in *Baratta v. Valley Oak Homeowners' Assoc.,* 891 So. 2d 1063, 1064 (Fla. 2d DCA 2004), support Silvers' position here. That case involved an award of prevailing party fees following a dismissal for lack of prosecution under Rule 1.420(e), Fla. R. Civ. P. As set forth in Stelor's Sur-Reply, dismissals for lack of prosecution under subsection (e) of the Rule are not subject to the express exception included for involuntary dismissals under subsection (b) of the Rule, which provides that "a dismissal for lack of jurisdiction" does ***NOT*** "operate[] as an adjudication on the merits." Stelor, thus, ignored *Baratta* because it is inapplicable. Silvers, however, continues to ignore the express provisions of Rule 1.420(b), because they entirely undermine his argument.

Notwithstanding the voluminous papers filed by Silvers in connection with his fee motion, he still has not cited to a single decision under Florida law awarding prevailing party fees following a dismissal for lack of jurisdiction. Yet, he again asks this Court to ignore the

---

[1] Clearly, the *Laborers* Court was aware of that federal test, based on the Supreme Court's 1983 decision in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S. Ct. 1933 (1983).

2

Burlington • Weil • Schwiep • Kaplan & Blonsky, P.A.

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com   www.bwskb.com

2 of 10

directly controlling cases – including the Eleventh Circuit's decision in *Laborers* – holding that a dismissal for lack of jurisdiction simply does ***NOT*** trigger any right to prevailing party fees.

Additionally, Silvers cannot overcome the obvious and fatal procedural defect to his request for sanctions: he never served a motion as required by Rule 11 and by Fla. Stat. § 57.105. That mandates denial of his motion, as the Florida Court of Appeal again just re-confirmed, *O'Daniel v. Board of Commissioners,* 2005 WL 3300956 (Fla. 3d DCA Dec. 7, 2005). Given Stelor's own initiative in advising this Court about the jurisdictional issue, resulting in dismissal of the action, moreover, this case does not justify issuance of an order to show cause regarding sanctions on the Court's initiative.[2]

Indeed, Silvers' suggestion that he had no "personal knowledge of Stelor's members" is simply unbelievable, given the independent research that Silvers and his counsel have apparently done regarding those members. Silvers and his counsel have long-since known the identity of many of Stelor's members, including Mr. Epstein. In fact, counsel for Silvers had requested during the pendency of the action that Mr. Epstein be made available for deposition. Silvers is playing a game of cat-and-mouse. Rather than disclose information it appears to have had for some time; Silvers chose to try and set Stelor up, disclosing selective information in its reply memo (and now in its opposition to Stelor's sur-reply). Silvers' tactic should not now be rewarded; his request for sanctions should be denied, for failure to comply with the express procedural requirements.

---

[2] Stelor contends that the same standards and procedures applicable before a court may issue sanctions on its own initiative pursuant to Rule 11 also should apply to court-initiated sanctions under Fla. Stat. § 57.105. Although Stelor's research has disclosed no Florida cases addressing the requirements under that statute, the Florida cases have consistently "construe[d] it as its prototype has been construed in federal courts," *Mullins v. Kennelly,* 847 So. 2d 1151, 154 (Fla. 5th DCA 2003).

3

Burlington • Weil • Schwiep • Kaplan & Blonsky, P.A.

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com  www.bwskb.com

3 of 10

CASE NO. 05-80393 CIV HURLEY/HOPKINS

Finally, Silvers attaches as Exhibit A to his Opposition a spreadsheet, purportedly "created by Stelor" with "embedded properties" showing "that it was authored by Esrig himself in 2004, and has been maintained by Julie Depue, a current employee of Stelor." Opposition at 5. Silvers, however, provides no substantiation whatsoever for this. He offers no explanation of how he obtained what he himself describes as a proprietary Stelor document, and gives no indication of the source of that purported document. Clearly, that document has not been authenticated, and Stelor cannot check its validity or test its accuracy. It is simply not evidence!

As Stelor has advised, it has had problems with certain personnel, including one who stole information and disappeared earlier this year. Supplemental Declaration of Steven A. Esrig In Opposition to Defendant's Motion for Fees, ¶ 11. A true and correct copy of a February 16, 2005 police report relating to the incident is attached hereto as Exhibit "A". Incredibly, Silvers' counsel, Gail McQuilkin, herself had called this employee at Stelor's offices shortly before those events. Esrig Decl. ¶ 11. With each new paper Silvers files, unfortunately, it appears more likely that Silvers and his counsel are in possession of improperly obtained information. Rather than requesting the Court to sanction Stelor, Silvers should be ordered immediately to return all improperly obtained information to Stelor, and should be excluded from using such material in any way in connection with these proceedings.

WHEREFORE, Stelor respectfully requests entry of an order (1) denying Silvers' Motion for Fees and Expenses, (2) requiring Silvers and his counsel immediately to return all improperly obtained information to Stelor, and (3) excluding all such information from use in connection with these proceedings.

RESPECTFULLY SUBMITTED,

4

Burlington • Weil • Schwiep • Kaplan & Blonsky, P.A.

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com  www.bwskb.com

4 of 10

CASE NO. 05-80393 CIV HURLEY/HOPKINS

                        BURLINGTON, WEIL, SCHWIEP,
                          KAPLAN & BLONSKY, P.A.
                        Attorneys for Plaintiff
                        Office in the Grove, Penthouse A
                        2699 South Bayshore Drive
                        Miami, Florida 33133
                        Tel: 305-858-2900
                        Fax: 305-858-5261


                        By: /s/ Kevin C. Kaplan
                            Kevin C. Kaplan, Esq.
                            Florida Bar No. 933848
                            David J. Zack, Esq.
                            Florida Bar No. 641685


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic mail and U.S. mail on this 27th day of December 2005 upon the following:

| | |
|---|---|
| Adam T. Rabin, Esq. | Kenneth R. Hartmann, Esq. |
| DIMOND, KAPLAN & | Gail M. McQuilkin, Esq. |
|    ROTHSTEIN, P.A. | KOZYAK TROPIN & |
| Trump Plaza |    THROCKMORTON, P.A. |
| 525 S. Flagler Drive, Suite 200 | 2525 Ponce de Leon Blvd., 9th Floor |
| West Palm Beach, Florida 33401 | Coral Gables, Florida 33134 |

                                        /s/ Kevin C. Kaplan
                                        Kevin C. Kaplan

5

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

5 of 10

# EXHIBIT A

**EVENT REPORT**
Montgomery County, Maryland
Department of Police

| Field | Value |
|---|---|
| 2. DST-CR NUMBER | R05-008238 |
| 1. VICTIM (PERSON, FIRM, AGENCY) | [redacted] |
| 3. ADDRESS / CITY-STATE-ZIP | [redacted] |
| 4. R.V.O. CODE | OK |
| 5A. CLASSIFICATION | 2938 |
| 5B. CLASSIFICATION CHANGED TO | 3821 |
| 6A. VICTIM'S PLACE OF EMPLOYMENT OR SCHOOL | Stelor Productions Inc. |
| 6B. ADDRESS | 14701 Mockingbird Dr. Darnestown MD |
| 7. RACE-SEX-D.O.B. | [redacted] |
| 8. PHONE RES/BUS | [redacted] |
| 9. CRIME/INCIDENT | Simple Assault - Police Information |
| 10. CONN. CR. NO. MASTER | |
| 11. BEAT | 124 / 5601 |
| 12. NATURE OF INJURIES AND LOCATION ON BODY | None |
| 13. LOCATION OF CRIME OR INCIDENT | Sia & 6B |
| 14. SOCIAL SECURITY NUMBER | [redacted] |
| 15. VICTIM TREATED | No |
| 16. WHEN OCCURRED | 02-15-05 to 02-15-05  1330 - 1335 |
| WHEN REPORTED | 02-15-05  1244 |
| 18A. COMPLAINANT'S NAME | Esrig, Steven |
| RACE-SEX-AGE | 2-M-47 |
| 18B. COMPLAINANT'S ADDRESS | Sia #6B |
| 17. UNIT NOTIFIED - NAME | None |
| 19. TSS NOTIFIED / LATENTS / PHOTOS - NAME | None |
| 20. NAME | None |
| 21. TYPE OF DOCUMENT | None |
| 22. DESCRIBE TYPE OF AREA OR PREMISES | Business |
| 23. MEANS — TOOL, WEAPON USED IN CRIME | Threats |
| 24. METHOD — HOW CRIME WAS COMMITTED | Spoken |
| 25. POINT OF ENTRY | N/A |
| 26. TRADEMARKS OF SUSPECT(S) | Suspect stated he would kill the victim and complainant. |
| 27A. SUSPECT | [redacted] Unk |
| ITEM NO. | 6B  20874 |
| STATUS | Open |
| INVESTIGATING OFFICER | Ofc. Ramsburg  2040  183 |
| DATE | 02-16-05 |
| CASE TALLY | 1/10 |
| Page | 1 of 3 |
| CR NUMBER | R05-008238 |

M.C.P. 100 REVISED 11/98

RECORDS

**CONTINUATION REPORT**
Montgomery County, Maryland
Department of Police

1. VICTIM/PERSON/FIRM FOR WHOM COMPLAINT WAS MADE: [redacted]
3. ADDRESS: [redacted] CITY-STATE-ZIP

2. DIST - CR NUMBER: R05-008238
4. CLASSIFICATION: 2938 0821

PAGE 2 OF 3 PAGES

NARRATIVE:

On the above date and time the I/o responded to 14701 Mockingbird Dr, Darnestown MD 20874 for a report of threats that had just occurred.

Upon arriving on the scene the I/o met with the complainant Steven Esrig (CEO/President of Stelor Productions). Esrig advised the I/o of the following:

That an employee of his, [redacted], threatened to kill another employee of his along with Esrig and Esrig's wife Lori Esrig. These threats occurred after an altercation between [redacted] and [redacted] (the employee [redacted] threatened to kill).

The I/o had Esrig bring [redacted] to the scene to obtain the information as to what happened (Esrig was not present when threats were made). When the I/o met with [redacted] she was able to fill the I/o in on exactly what happened. According to [redacted] had been acting "weird" for a couple of days.

Then on 03/15/05 [redacted] noticed [redacted] downloading files ([redacted] is the comptroller and should not be downloading any files) to his personal files/disks. The items being downloaded were financial figures.

[redacted] stated that [redacted] kept saying that he was quitting and he was trying to get [redacted] to quit as well. [redacted] kept saying that [redacted] kept stating "you're going to quit", "you're going to be my spy."

[redacted] then put [redacted] in his car and started to drive off towards Turkeyfoot Rd. As [redacted] was riding in [redacted] car (described as a [redacted]) she noticed a Manilla folder full of files next to the passenger

**CONTINUATION REPORT**
Montgomery County, Maryland
Department of Police

1. VICTIM/PERSON/FIRM FOR WHOM COMPLAINT WAS MADE
3. ADDRESS   CITY-STATE-ZIP
2. DIST - CR NUMBER: R05-008238
4. CLASSIFICATION: 2938 0624

PAGE 3 OF 3 PAGES

NARRATIVE:

Seat. When ▮▮▮ reached Turkeyfoot Rd he turned the vehicle around and dropped ▮▮▮ off at Stelor Productions Inc. ▮▮▮ originally got in the vehicle because she was scared, also she did not know where ▮▮▮ was taking her).

Before she (▮▮▮) got out of the car she reached to take the manilla folder out of the car when ▮▮▮ slapped the folders. Then, ▮▮▮ began tugging at the folders, while n ▮▮▮ stated that if she did not leave the folders, ▮▮▮ would kill her and the Esrig's.

▮▮▮ then told ▮▮▮ to go get Paul Murphy (another employee) however when she came back to where ▮▮▮ car was, he was gone. (no one knew why ▮▮▮ asked for Paul Murphy).

The Ilo informed both the Esrig's and ▮▮▮ on how to obtain a protection order against ▮▮▮ and the Ilo gave ▮▮▮ / Esrig's a Victim/Witness Assistance Information sheet prior to leaving the scene.



Department of Police
Records Division
2350 Research Blvd., Room 100
Rockville, Maryland 20850
240-773-5330

EARLE HOLLAND     OSC