FILED _____ D.C.
ELECTRONIC

**Aug 10 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80393 CIV HURLEY/HOPKINS

STELOR PRODUCTIONS, LLC,
f/k/a STELOR PRODUCTIONS, INC.

      Plaintiff,

v.

STEVEN A. SILVERS,

      Defendant

_____/

### DEFENDANT'S  OBJECTIONS TO MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

      Pursuant to Magistrate Judge Rule 4(b), Defendant STEVEN A. SILVERS ["Silvers"] files

his Objections to Magistrate Judge James M. Hopkins' July 17, 2006 Report and Recommendation,

recommending that Silvers' (1) Bill of Costs, and (2) Verified Motion for Attorneys' Fees and

Expenses, and Rule 11 Sanctions, be denied.   This Court should decline to adopt Magistrate

Hopkins' Report and Recommendation ["Magistrate's Report"] because Silvers was the "successful

or prevailing party" under his contract with Stelor, and therefore entitled to recover his attorneys'

fees and costs.   Alternatively, this Court should decline to adopt the Magistrate's Report because

Stelor had no legal or factual basis for claiming that this Court had subject matter jurisdiction over

this action at the time it was filed or anytime thereafter.

1

115
Dockets.Justia.com

I.    **FACTUAL BACKGROUND**.[1]

In May 2005, Stelor filed suit against Silvers to enforce the terms of a written settlement agreement executed by the parties on or about January 28, 2005 ["Settlement Agreement"].   The complaint alleged that this Court had jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a) because "the parties are residents of different states."[2]   The complaint sought the issuance of a preliminary and permanent injunction against Silvers  and a declaration that Stelor had complied with its obligations under the Settlement Agreement.

Silvers immediately moved to dismiss the complaint, claiming that the court lacked subject matter jurisdiction because Stelor had failed to properly allege that there was no diversity of citizenship between the parties.   But instead of conceding that there was no diversity, which Stelor knew or should have known from the outset, it relentlessly argued to this Court  that Silvers' position on jurisdiction was "absurd"  and forced Silvers to litigate the issue for five months to achieve dismissal.[3]

Over the next five months, Stelor fought Silvers tooth and nail over the issue of jurisdiction.

---

[1]  Although the Magistrate's Report contains a brief procedural and factual history of the case, it omits a number of critical facts that are directly relevant to whether Silvers prevailed on the significant issues in the lawsuit, and whether Stelor knew or should have known that its claim that subject matter jurisdiction existed was legally and factually baseless.  Because those issues are dispositive of the Motion for Attorney's Fees and Expenses, we have included a brief summary of the omitted facts here for the Court's consideration.

[2]  For purposes of establishing jurisdiction under 28 U.S.C. § 1332 (a), a limited liability company is considered a citizen of any state where one of its members resides.  *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F. 3d 1020 (11th Cir. 2004).

[3]  Silvers raised the jurisdictional issue four times during the course of this case: first in its memorandum in opposition to Stelor's Motion for Preliminary Injunction [DE 13], then in its motion to dismiss the verified complaint [DE 19], at the hearing on the motion for preliminary injunction [DE 26], and again in its opposition to the Magistrate's Report and Recommendation that this Court grant Stelor's preliminary injunction (which this Court rejected in substantial part)[DE 46].   Yet each time, Stelor adamantly insisted that there was diversity and that none of its members was a citizen of Florida.

2

On three separate occasions, it filed multiple sworn documents in which it insisted that diversity jurisdiction existed, and that neither it, nor any of its members, was a Florida resident. On May 5, 2005, Stelor filed a verified complaint in which it stated under oath that diversity jurisdiction existed. Later that month, Stelor's President and CEO, Steven Esrig, filed an affidavit in which he called Silvers' suggestion that jurisdiction was improper "absurd," and in which he stated that ["N"]o owner of any membership interest in Stelor resides in Florida." [DE 18, p. 10]. The following month, Esrig filed yet another affidavit in which he represented under oath that "[N]o owner of any membership interest resides in Florida," and that each alleged member of Stelor is a citizen of a state other than Florida. [DE 34, p. 3, Ex. A.] We now know these sworn statements were lies. Not only was Stelor a resident of Florida, but the record clearly establishes that Stelor knew or should have known at the time it sued Silvers that this was the case.

In its pleadings filed with the Court, Stelor has sought to characterize these intentional misrepresentations as inadvertent. But Stelor's actions were anything but an honest mistake. *At the time Stelor filed its complaint*, Stelor maintained computer records that contained the name and residence of each investor/member. These records – which were readily available to Esrig at the time he filed Stelor's Verified Complaint and his two sworn declarations – clearly show that Henry Epstein, Stelor's Chairman of the Board and a member of the limited liability company, resided in Lake City, Florida *at the time this action was filed*. Epstein's voter's registration, car registration, and driver's license, which are all a matter of public record and which Silvers' counsel obtained during the post-dismissal phase of this case, prove he resided in Florida *at the time this action was filed*. [D.E. 83] It is inconceivable that Esrig would have not known that Epstein was a Florida resident at the time he filed his affidavits, since Stelor had access to these records, Epstein was

3

Stelor's Chairman of the Board, and Esrig was on Stelor's board.[4]

Furthermore, Stelor went to great lengths to intentionally conceal, or recklessly disregard, the identity of its members from Silvers in order to keep him – and this Court– from discovering that diversity did not exist.  Instead of alleging the names and residences of each member, as it was required to do, Stelor filed a list of unidentified addresses with its response to its motion to dismiss [DE 34, Ex. A].  Not only did this list deliberately omit the names of each member and their states of residency so that Silvers could have no way of verifying the truthfulness of this information, but it falsely provided out of state addresses for Epstein and Gruendl, both of whom were residing in Florida at the time this action was filed.  In addition, when Silvers sought to discover the identities of Stelor's members, Stelor refused to provide them, even though this information would have been dispositive of the issue of jurisdiction and avoided five months of needless litigation.  Only when confronted with an order of dismissal with leave to amend did Stelor finally "fess up," and even then failed to disclose that two of its other members also were Florida residents.[5]

---

[4] Esrig claimed in his November 22, 2005 Declaration that he conducted a "full investigation" of the jurisdictional issue, including checking Stelor's computer records, but that no document existed that lists Epstein's address in Florida. [DE 88, 89].  However, an Excel spreadsheet *authored by Esrig and maintained by Stelor* lists Epstein's residence as Lake City, Florida.  [DE 97, Ex. A]  Esrig's self-serving and false statement is clearly not competent substantial evidence.  Moreover, at the time that the case was filed, public records also showed that Igor Gruendl, the managing member of Gruendl Enterprises, LLC, a submember of Stelor, also maintained his primary residence in Florida. [DE 97, Ex. B].  For Esrig to claim that he was unaware of the residences of *both* of these members when he supposedly undertook a "full investigation" into the issue of jurisdiction is simply preposterous, since a simple e-mail or telephone call to each would have answered these issues quite easily.

[5] Esrig also lied to this Court in other filings. For instance, Esrig lied in his May 23, 2005 Declaration when he disavowed knowledge of any licensed products being offered for sale. He also falsely stated that he had only recently learned that Googles merchandise was being sold through Cafepress.com, and disavowed any knowledge of how that account was opened.  Subsequently, however, Silvers obtained evidence that showed that not only did Esrig know since 2002 that Googles merchandise was being sold through Cafepress.com, he was instrumental in setting up the Cafepress.com account, selected the merchandise and approved the art work for the Googles Cafepress.com website.

4

None of these facts is cited anywhere in the Magistrate's Report, nor is there any indication that he considered them, as he should have, when determining whether Silvers was entitled to attorneys' fees under the successful or prevailing party provision of the Settlement Agreement, or Florida Statute § 57.105, or an order to show cause under Federal Rule 11.[6]

## II.     THE MAGISTRATE ERRONEOUSLY CONCLUDED THAT SILVERS WAS NOT THE "PREVAILING PARTY" UNDER THE SETTLEMENT AGREEMENT.

The Magistrate conceded that Silvers prevailed on the issue of subject matter jurisdiction. *See* Report at 10.   He also conceded that Silvers was successful in convincing this Court to deny Stelor's motion to extend its temporary restraining order.   *See* Report at 6-7.

> [T]he Defendant consistently argued that this Court lacked subject matter jurisdiction because Plaintiff failed to properly allege the citizenship of each member of the limited liability company.   Before this issue was resolved on the merits in Defendant's favor, Plaintiff successfully obtain [sic] injunctive relief in the form of a temporary restraining order.   *Thus, each party "prevailed" on at least one issue litigated in this case* before it was dismissed without prejudice.

(Report at 10)(emphasis added).   Nevertheless, the Magistrate declined to award Silvers attorney's fees pursuant to the attorneys' fee provision in Silvers' contract with Stelor because the Magistrate determined that Silvers did not prevail on the merits of the case and instead only secured a dismissal for lack of jurisdiction.   *See* Report at 26 ("Because this case was dismissed without prejudice for lack of subject matter jurisdiction, neither party prevailed on the merits").   The Magistrate's

---

[6]  Esrig stated in his May 23, 2005  Declaration that he had "numerous and repeated conversations" with each investor/member in which he "directly" asked each to confirm that none currently reside in Florida.  However, the Declarations filed by Epstein and Gruendl  never state that Esrig or anyone from Stelor directly asked them to provide their state of domicile for the purpose of this litigation, as they were obligated to do prior to filing this lawsuit.  A simple e-mail, address for, and /or conversation directed to each member easily would have answered this question and saved this Court and Silvers hundreds of unnecessary hours of litigation and his counsel hundreds of thousands of dollars in time.

5

conclusion, however, is both legally and factually erroneous.[7]

Under Florida law, a party is deemed to be a "prevailing party" under a contract providing for recovery of attorneys' fees if he prevails on the significant issues tried before the court. *Moritz v. Hoyt Enterprises, Inc.*, 604 So.2d 807 (Fla. 1992)[hereinafter *"Moritz II"*].[8]   Determining whether to grant attorneys' fees pursuant to a *contract*, such as the one at issue here, is a separate and distinct inquiry from the *statutory* "prevailing party" analysis utilized by courts deciding whether to award awards. *Frankenmuth Mut. Ins. Co. v. Escambia County*, 289 F.3d 723 (11th Cir. 2002); *Fixel Enterprises, Inc. v. Theis*, 524 So.2d 1015 (Fla. 1988).   A party need not succeed on every issue to be considered the "prevailing party."  *See Munao v. Homwoners Ass'n of La Buona Vita Mobile Home Park, Inc.*, 740 So.2d 73, 78 (Fla. Dist. Ct. App. 1999)(party that succeeds on *any* significant issue is the prevailing party); *Prosperi v. Code, Inc.*, 626 So.2d 1360 (Fla. 1993)(fact that a party obtains a net judgment is a significant, but not dispositive factor in determining who should be considered the prevailing party).   Moreover, absent compelling circumstances, a trial court *must* find one party to be the  "prevailing party" under a contractual fee-shifting provision. *Brickell Bay Club Condo. Ass'n, Inc. v. Forte*, 397 So.2d 959, 960 (Fla. Dist. Ct. App. 1981); *Lasco Enterprises, Inc. v. Kohlbrand*, 819 So.2d 821 (Fla. Dist. Ct. App. 2002).[9] [10]

---

[7] This Court has jurisdiction to award Silver attorneys' fees and costs, notwithstanding the fact that it dismissed the case for lack of subject matter jurisdiction.  *See Schefler v. Fairway Park Condominium Ass'n*, 147 Fed. Appx. 113, 114 n. 1 (11th Cir. 2005).

[8] The Magistrate correctly concluded that Florida governs Silvers' entitlement to attorneys' fees and expenses pursuant to his contract with Stelor.  However, he failed to apply the proper legal standard under Florida law when determining whether Silvers was the "prevailing party" under the Settlement Agreement.  *See* pages 7-8, *infra.*

[9] In his Report, the Magistrate noted that the Florida Third District Court of Appeals has held that when an equitable claim is governed by a contract containing an attorneys' fee provision, the trial court is without discretion to decline to enforce the parties' fee shifting provision.  *See Brickell Bay Club Condo. Ass'n, Inc. v. Forte*, 397 So.2d 959, 960 (Fla. Dist. Ct. App. 1981).  In fact, the Third District has deemed this

The Magistrate erroneously concluded that to be considered a prevailing party under Florida law, Silvers was required to point to "a resolution of the dispute which materially altered the legal relationship between himself and Stelor." (Report at 26-27). But nowhere in *Moritz II* or any of the Florida jurisprudence that follows it is there any mention of such a requirement, much less that it would apply to a party seeking to recover attorney's fees under a contractual fee-shifting provision.[11] On the contrary, Florida courts have uniformly held that when a case is dismissed either voluntarily by a party or involuntarily by the court, the defendant is considered the prevailing party for purposes of an attorney's fee award. *See Rushing v. Caribbean Food Products*, 870 So.2d 953, 954-55 (Fla. Dist. Ct. App. 2004); *Prescott v. Anthony*, 803 So.2d 835, 836 (Fla. Dist. Ct. App. 2001); *Arango v. United Automobile Ins. Co.*, 901 So.2d 320 (Fla. Dist. Ct. App. 2005)(where insurer's brief was involuntarily dismissed by appellate court, insured was considered the "prevailing party," notwithstanding the fact that there was no decision on the merits). This is true,

---

rule to apply to legal claims as well. *See Roberts v. Row*, 743 So.2d 1145 (Fla. Dist. Ct. App. 1999).

[10] There is a split of authority in the Florida appellate courts concerning whether a trial court has discretion to find there was no prevailing party in cases where neither party to a contract entitling the prevailing party to attorney's fees is at fault. The majority of Florida appellate courts hold that a trial court may find that neither party is entitled to contractual attorney's fees in cases where both parties to a contract are at fault. *See Lasco*, 819 So.2d at 826; *KCIN v. Canpro Investments, Ltd.*, 675 So.2d 222 (Fla. Dist. Ct. App. 1996); *Hutchinson v. Hutchinson*, 687 So.2d 912 (Fla. Dist. Ct. App. 1997). However, the Florida Third District Court of Appeal has repeatedly held that where a contract provides for an award of attorney's fees to the prevailing party, a trial court is without discretion to enforce this provision of the contract, regardless of the equities. *See Roberts v. Row*, 743 So.2d 1145 (Fla. Dist. Ct. App. 1999). The issue is academic in this case, however, since there was no finding that Silvers was in any way at fault, nor is there any evidence in the record that would support such a finding.

[11] The "material alteration" requirement comes from *Texas State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-93 (1989), a United States Supreme Court case involving an award of attorney's fees under a federal civil rights statute. However, the standard for determining who is the "prevailing party" under a contractual fee agreement is not the same as the standard for determining who is a prevailing party under a statutory fee provision. *See Frankenmuth Mut. Ins. Co. v. Escambia County*, 289 F.3d 723 (11th Cir. 2002); *Fixel Enterprises, Inc. v. Theis*, 524 So.2d 1015 (Fla. 1988); *see also Nicholas v. Taylor County Board of Ed.*, 7 F.Supp. 2d 789 (N.D. W. Va. 1998)(noting that material alteration standard generally applicable "in all cases *in which Congress has authorized an award of fees to a 'prevailing party'*")(emphasis added).

7

regardless of whether the party whose case is dismissed prevailed in some preliminary way on an issue before the case was ultimately dismissed. *See Baratta v. Valley Oak Homeowners' Assoc. at the Vineyards, Inc.*, 891 So.2d 1063, 1064 (Fla. Dist. Ct. App. 2004).

In *Baratta*, a case substantially similar to the one here, a resident of a community sued his homeowners' association for a temporary and permanent injunction to prevent the association from assessing, without the required votes, a fee to each resident for new mailboxes and signposts. *Id*. The resident successfully obtained a temporary injunction; however, after there was no record activity for a period of one year, the association filed a motion to dismiss for failure to prosecute and to dissolve the temporary injunction. The trial court granted the motion to dismiss without prejudice, dissolved the injunction, and entered an award of attorneys' fees against the resident. *Id*.[12]

On appeal, the appellate court affirmed the attorneys' fees award, even though the resident succeeded – as Stelor did here initially – in obtaining a temporary injunction:

> We are not unsympathetic to [the resident's] contention that he should be deemed the prevailing party because he succeeded in getting the relief he requested, a temporary injunction. However, [the resident] still had a claim for permanent injunction pending in the court. Although he won the battle at the temporary injunction hearing, he lost the war when his case was *involuntarily dismissed* after a year of no record activity and his temporary injunction was dissolved . . . .

*Id.* at 1065 n.2.[13] (emphasis added).

The Magistrate declined to follow *Prescott* and *Rushing* because they "support their holdings with pre-*Moritz II* "prevailing party" jurisprudence," and therefore "may no longer be good law." Report at 9. The Magistrate Judge overlooked the fact that both cases also cited to *Landry v.*

---

[12] All dismissals for failure to prosecute are without prejudice. *See* Fla.R.Civ.P. 1.420.

[13] The court also held that the trial court did not abuse its discretion in declining to find that neither party prevailed in the litigation, because this was not a case where "no one won and no one lost." *Id.* at 1065 n.3.

8

*Countrywide Home Loans, Inc.*, 731 So.2d 137, 139 (Fla. 1ˢᵗ DCA 1999), which was decided seven years after *Moritz II,* and which is still good law.   There is absolutely no indication, let alone any decision, that would support the conclusion that either *Prescott* or *Rushing* are no longer good law. More importantly, the Magistrate completely ignored the decision in *Baratta,* even though it clearly holds that a party who succeeds in having a case dismissed prior to a decision on the merits may still be the "prevailing party" for purposes of a contractual fee award if he prevails on the significant issues, regardless of whether the dismissal is with or without prejudice.[14]

Moreover, the Magistrate's finding that the breach-of-contract and declaratory-judgment claims were the significant issues in the case is not supported by the record.  The breach-of-contract and declaratory-judgment claims hinged on this Court being able to exercise subject matter jurisdiction over this case.   But from the very beginning, the issues raised by the breach-of-contract and declaratory-judgment claims were overshadowed by the more critical – and ultimately case-dispositive – question of whether the court had subject matter jurisdiction, and whether Stelor was entitled to injunctive relief.   On both of these issues, Silvers prevailed.

The Magistrate found  that Stelor "prevailed," at least in part, on the injunction issue because it succeeded in obtaining a temporary restraining order.   However, the Magistrate  ignored the fact that this Court ultimately declined to extend the temporary restraining order, and rejected Stelor's request for a preliminary injunction.   *See* [DE 52].  Thus, any "success" Stelor may have had was illusory.  Moreover, it is clear from  the record that the jurisdictional issue was not a minor or technical one, but a matter which was heavily litigated by both sides.   Time after time, Silvers argued that this court lacked subject matter jurisdiction because there was no diversity between the

---

[14]  Silvers' devotes almost an entire page of its motion to a discussion of *Baratta*.   Yet the Magistrate's Report does not even mention the case, let alone attempt to distinguish it.

parties.   *See* note 3, *supra*   Yet again, time after time, Stelor continued to deny this, repeatedly

misstating *under oath* that it was  a foreign defendant.   Silvers filed no fewer than three memoranda

with the court addressing this issue, all of which were met with intense opposition from Stelor.

The Magistrate's reliance on *Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R.*

*Starnes Co.*, 827 F.2d 1454 (11th Cir. 1987), *Miami Herald Publ'g Co. v. City of Hallandale*, 742

F.2d 590 (11th Cir. 1984) and *DeShiro v. Branch*, 183 F.R.D. 281 (M.D. Fla. 1998) is entirely

misplaced.  The issue in *Laborers* was whether the district court erred in denying a plaintiff's motion

for attorney's fees in an ERISA action dismissed for lack of subject matter jurisdiction under 29

U.S.C. § 1132 (g)(1), and Florida Statutes § 57.105, and § 713.29, Florida's mechanics lien statute.[15]

The case did not involve an award of attorneys' fees under a contract containing a prevailing party

fee-shifting provision, which involves a completely different legal analysis.  *Frankenmuth Mut. Ins.*

*Co. v. Escambia County*, 289 F.3d 723 (11th Cir. 2002); *Fixel Enterprises, Inc. v. Theis*, 524 So.2d

1015 (Fla. 1988)(definition imposed upon term "prevailing party" under Fla.Stat. § 713.29 not

extended beyond the context of mechanic's lien law statute).   More importantly, *Laborers* was

decided five years prior to *Moritz II* without any discussion of who prevailed on the significant

issues, which is the applicable standard for determining entitlement to fees in this case.   To the

extent that *Laborers*  relied on federal law and/or the Florida mechanic's lien statute  to determine

the plaintiff's entitlement to attorneys' fees, it is inapplicable. To the extent that it relied on pre-

---

[15]  29 U.S.C. § 1132 (g)(1) provides:

In any action under this subchapter, . . . by a participant, beneficiary or fiduciary, the court in its
discretion may allow a reasonable attorney's fee and costs of action to either party.

The statute does not require the court to determine who prevailed on the significant issues, or to even
determine who the "prevailing party" is.

10

*Moritz II* jurisprudence to determine his entitlement to fees, it is no longer good law.

*Miami Herald Publ'g Co. v. City of Hallandale*, 742 F.2d 590 (11th Cir. 1984) and *DeShiro v. Branch*, 183 F.R.D. 281 (M.D. Fla. 1998) are misplaced here for the same reasons.  In *Miami Herald*, the Eleventh Circuit was asked to decide whether a newspaper in a civil rights action brought under 42 U.S.C. § 1988 was a "prevailing party" where the majority of the claims brought by the plaintiff were dismissed for lack of subject matter jurisdiction.   The case did not involve the right of a party to recover attorneys' fees under a contractual fee provision or the application of Florida law,  rendering it irrelevant for purposes of this case.  *See Frankenmuth*, 289 F.3d at 723.[16] Furthermore, *Miami Herald* was decided before *Moritz II,* which specifically requires the trial court to determine which party prevailed on the significant issues – something the court in *Miami Herald* failed to do.

*DeShiro v. Branch*, 183 F.R.D. 281 (M.D. Fla. 1998)  is equally unavailing.   Aside from the fact that *De Shiro* is not controlling, it involves an entirely different standard from the one at issue here.   The court in *De Shiro* was asked to determine whether an employer in a civil rights action brought pursuant to Title VII was the prevailing party.   The court concluded *based on federal civil rights law* that the defendant was not the prevailing party under 42 U.S.C. § 200e-5(k).   The court did not make a determination as to who prevailed on the "significant issues," as *Moritz II* requires, but instead focused on the Congressional purpose of awarding fees to the prevailing party under

---

[16]  The Eleventh Circuit held that the newspaper was not a prevailing party *under 42 U.S.C. § 1988* because "*[p]revailing  for purposes of § 1988* is exhibited by the fact that the litigant 'has acquired the primary relief sought.'" *Id.* at 591.  (emphasis added).    The Eleventh Circuit in no way held that the newspaper was not the prevailing party under a contractual fee provision, nor could it have, since Florida law contains no such requirement. *See Rushing*, 870 So.2d at 954-5; *Prescott*, 803 So.2d at 836;  *Arango*, 901 So.2d at 320).

11

Title VII. *De Shiro*, 183 F.R.D. 281.[17]  *De Shiro* is not dispositive of the outcome here, and the

Magistrate erred in relying on it in determining whether Silvers was the "prevailing party" under the

Settlement Agreement.[18]

### III. THE MAGISTRATE ERRONEOUSLY DETERMINED THAT SILVERS WAS NOT ENTITLED TO RECOVER HIS FEES AND COSTS PURSUANT TO FLORIDA STATUTE § 57.105.

The Magistrate erroneously determined that Silvers was not entitled to recover his costs and

attorneys' fees pursuant to Florida Statute § 57.105.

Florida Statute § 57.105 provides in relevant part:

*Upon the court's own initiative* or motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney *knew or should have known* that a claim or defense when initially presented to the court or at any time before trial:

(a) was not supported by the material facts necessary to establish the claim or defense; or

(b) would not be supported by the application of then-existing law to those material facts.

---

[17]  The Court noted that the Congressional purpose of awarding fees to the prevailing party under Title VII was twofold.  First, the provision was designed to enable and to encourage plaintiffs to pursue meritorious claims.    Second, Congress intended the provision "as a means to discourage frivolous, groundless, or unreasonable suits." *Id.* at 283.  None of these policy considerations, however, are implicated in a district court's decision to award fees under a contractual prevailing party fee-shifting provision.

[18]  Although the Magistrate does not explicitly say so, he implies that Silvers is not the prevailing party because he did not prevail in a "dispute." *See* Report at 3 (citing to provision in the Settlement Agreement which states that "In the event that a dispute arises concerning the obligations of any Party under this Agreement, the Parties agree to submit any such dispute to this court for resolution.  The successful or prevailing party (as determined by the Court) shall be entitled to recover its reasonable attorneys' fees and other costs incurred in that litigation from the unsuccessful or non-prevailing party in addition to any other relief to which the prevailing party might be entitled**.")**(emphasis omitted).  This argument is easily disposed of.  Silvers clearly was successful in the overall dispute in this case, as well as the specific disputes concerning subject matter jurisdiction and Stelor's request for a preliminary and permanent injunction.

Florida Statute. § 57.105 (emphasis added). The statute does not require a party to show a complete absence of a justiciable issue of fact or law, but instead allows recovery of fees for any claims or defenses that are unsupported. *Yakavonis v. Dolpin Petroleum, Inc.*, 2006 WL 2057223 (Fla. Dist. Ct. App. 2006)(citing *Wendy's of N.E. Florida, Inc. v. Vandergriff*, 865 So.2d 520 (Fla. Dist. Ct. App. 2003).    In determining whether a party is entitled to fees under Florida Statute § 57.105, frivolousness is determined when the claim or defense was initially filed.   If the claim or defense is not initially frivolous, the court must determine whether the claim or defense became frivolous after the suit was filed.   *Id.*    Although the definition of "frivolous" is incapable of precise determination, a review of Florida case law reveals that there are established guidelines for determining when an action is frivolous.   "These include where a case is found: (a) to be completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (b) *to be contradicted by overwhelming evidence*; (c) as having been undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injury another; or (d) *as asserting material factual statements that are false.*"   *Visoly v. Sec. Pacific Credit Corp.*, 768 So.2d 482 (Fla. Dist. Ct. App. 2000)(emphasis added).[19]   Sanctions under Florida Statute § 57.105 may be imposed upon motion of a party, or *sua sponte* by the court on its own initiative.   *Gibson v. Autonation,* Inc., 2004 WL 3422027 (Fla. Cir. Ct. 2004)(unpublished); *Cone Corp. v. Hillsborough County*, 157 F.R.D 533, 536-37 (M.D. Fla. 1994).

---

[19]   *See In re: Forfeiture of 1997 Jeep Cherokee*, 898 So.2d 223,225 (Fla. Dist. Ct. App. 2005)(trial court abused its discretion in refusing to award attorney's fees to vehicle owner pursuant to Florida Statute § 57.105 where city failed to verify that predicate misdemeanor conviction existed to support felony offense owner was charged with; " If the City had simply reviewed Pinellas County traffic records before filing its complaint, it would have known that its claim against Allen was unsupported by the material facts"); *Yakavonis*, 2006 WL 2057223, at 4 (affirming award of attorney's fees pursuant to Florida Statute § 57.105 where litigant failed to investigate whether claim was viable before filing suit)

13

In *Itel Containers Int'l Corp. v. Puero Rico Marine Mgt.*, 108 F.R.D. 96 (D.N.J. 1985), a case involving a situation nearly identical to this one, the district court used its inherent authority to impose Rule 11 sanctions against a party who willfully concealed the lack of subject matter jurisdiction from the court.[20]  The party in *Itel* drafted documents so as to conceal the fact that there was no diversity.   The district court found Rule 11 sanctions were warranted because the offending party and its counsel consciously and intentionally drafted the document as part of a "pattern" and "strategy of concealment and deception."   *See also Mopaz Diamonds v. Institute of London Underwriters*, 822 F.Supp. 1053, 1055 (S.D.N.Y. 1993); *Hendrix v. Naphtal*, 971 F.2d 398, 399-400 (9th Cir. 1992); *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 675 F.Supp. 146, 152 (S.D.N.Y. 1987).

In the case at bar, the Magistrate found that an award of fees pursuant to Fla.Statute § 57.105 because the lawsuit was not frivolous at its inception.   However, that is not the correct standard for determining whether fees are warranted under Florida Statute § 57.105.   Although it is true that frivolousness is determined when a claim or defense is initially filed, a trial court still has discretion to award fees under Florida Statute § 57.105 if a claim or defense becomes frivolous after suit was filed.  *See Yakavonis*, 2006 WL 2057223 (Fla. Dist. Ct. App. 2006); *Wendy's of N.E. Florida, Inc. v. Vandergriff*, 865 So.2d 520, 524 (Fla. Dist. Ct. App. 2004)(examining whether claims were frivolous at any time before final summary judgment); *Visoly.*, 768 So.2d at 482.[21]  To the extent that

---

[20]  Because Florida courts construe Fla.Stat. § 57.105 in the same manner as federal courts construe Fed.R.Civ.P. 11, this Court may look to those cases in determining whether fees are appropriate under Fla.Stat. § 57.105.  *See  Mullins v. Kennelly*, 847 So.2d 1151, 1154 (Fla. Dist. Ct. App. 2003).

[21]  *But see Langford v. Ferrera*, 823 So.2d 795 (Fal. Dist. Ct. App. 2001)(if suit can pass muster at the time it is initially presented, subsequent developments that render the claim frivolous should not subject the losing party to attorneys' fees).  Although the Magistrate cites *Connelly v. Old Bridge Vill. Co-Op, Inc.*, 915 So.2d 652 (Fla. Dist. Ct. App. 2005) and  *Murphy v. WISU Props, Ltd.*, 895 So.2d 1088 (Fla. Dist Ct.

14

the Magistrate concluded that Silvers was not entitled to attorney's fees under Florida Statute §57.105 because Stelor's assertion that diversity jurisdiction was not frivolous at the time it filed suit, the Magistrate misapplied the law.

But even if the Magistrate had applied the correct standard in deciding whether Silvers was entitled to attorney's fees under Florida Statute § 57.105, this Court still should decline to adopt his recommendation because the record plainly establishes that he knew or should have known both at the time he filed suit and thereafter that Stelor had multiple members who were citizens of the state of Florida.   At the time Stelor filed its lawsuit in this case, Henry Epstein and Igor Greundl both maintained their principal residences in Florida.  *See* page 4, *infra;* [DE 97 Ex. A, B ].  These facts must have been known to Stelor's principal, Steven Esrig, at the time he filed his affidavit, because they were a matter of public record and both he and Epstein were members of the closely-held company's board with Epstein serving as Chairman. *See In re: Forfeiture of 1997 Jeep Cherokee*, 898 So.2d at 225.   Furthermore,  even if Esrig were somehow unaware that both men resided in Florida – an inconceivable position, given the record in this case – he still had an obligation after the motion to dismiss was filed, and prior to the time he filed his first affidavit, to determine whether his jurisdictional allegations were true.  See *Yakavonis*, 2006 WL 2057223, at 4 (awarding fees under Florida Statute § 57.105 where plaintiff failed to conduct an investigation to determine whether claims had merit).   Instead, he continued to maintain under oath –  at great burden to Silvers' counsel – facts which ultimately were found to be false and which could have been readily

---

App. 2004), in support of the proposition that a claim must be frivolous at the time of inception in order for attorney's fees to be awarded pursuant to Fla.Stat. § 57.105, neither of these cases  stand for this proposition. Moreover, both of the cases which the court in *Langford* relied on were decided under the pre-1999 version of Fla.Stat. § 57.105, which was more restrictive than the current version of the statute. *Wendy's*, 865 So.2d at 523.   To the extent that  *Langford* is read to stand for the proposition that attorney's fees can only be awarded if a claim is not frivolous at the time of inception, it is questionable whether it is still good law.

ascertained by simply reviewing the Excel spreadsheet that he had prepared.  *See* note 3, page 3. There is simply no basis for adopting the Magistrate's recommendation to deny attorney's fees in light of these facts.[22]

The Magistrate found that Silvers was not entitled to attorney's fees pursuant to Florida Statute § 57.105 simply because it did not serve its motion for attorney's fees on Stelor 21 days before filing it.  However, courts have found defendants to have waived the 21-day "safe harbor" defense where, as here, they continue to assert frivolous claims even after being repeatedly placed on notice that their claims are groundless.  *See Gibson v. Autonation, Inc.*, 2004 WL 3422027, at 8 (finding plaintiffs waived safe-harbor defense where they knew defendants intended to pursue attorneys' fees since shortly after complaint was filed; "It is clear and undisputable that Plaintiff and his counsel would have continued this matter no matter how many safe harbors they were afforded."); *accord, Joseph Giganti Veritas Media Group, Inc. v. Gen-X Strategies, Inc*., 2004 WL 1593761 (E.D. Va. July 12, 2004); *Rector v. Approved Fed. Sav. Bank*, 265 F.3d 248, 253 (4th Cir. 2001)(holding that 21-day safe harbor provision was not jurisdictional and could be waived). Indeed, allowing Stelor to invoke the safe-harbor defense would be unjust, because Silvers and his counsel did not know that Stelor had repeatedly lied to this Court about the residency of its members

---

[22]  The Magistrate also declined to impose sanctions *sua sponte* under Fla.Stat. § 57.105 and Fed.R.Civ.P. 11 because he found that Stelor's conduct was not "akin to contempt." The Magistrate's finding in this regard was clearly erroneous in light of the abundant evidence that Esrig: (1) repeatedly lied about none of Stelor's members being Florida residents; (2) deliberately concealed the identity and residence of Stelor's members; and (3) created a document which indicated that Epstein resided in Florida while maintaining in documents filed with the court that Epstein and Gruendl resided elsewhere.  At the very least, the Magistrate should have conducted a hearing or permitted Silvers to take Esrig and Epstein's depositions (which the Magistrate denied) so that Silvers would have had the opportunity to prove the requisite knowledge by Stelor.

16

because Stelor concealed this information from them.[23]  Indeed, Silvers could not in good faith have

served his safe-harbor motion for Florida Statute § 57.105 or Rule 11 sanctions until he acquired

knowledge that Stelor had lied, by which time it was too late to do so.[24]

The Magistrate found Stelor's misstatements about its residence were not intentional or

willful because Stelor was initially successful in obtaining injunctive relief and because the

Settlement Agreement on which the lawsuit was based contained a forum selection clause requiring

suit to be brought in the Southern District of Florida.  This finding is clearly erroneous.  The fact

that Stelor was able to obtain a temporary restraining order for a brief period of time at the outset

of this case in no way proves that it did not intentionally lie or recklessly misrepresent to this Court

its ability to bring this action in this Court.  Nor does the fact that the Settlement Agreement

provided for exclusive jurisdiction in the Southern District of Florida demonstrate that Stelor did

not know at the time it filed suit or thereafter that three of its members or sub-members were Florida

residents – a fact that it repeatedly denied to this Court under oath.  Nothing in the record, including

Esrig's self-serving affidavit, negates that Stelor repeatedly lied to the court for five months about

a fact it knew, or recklessly disregarded, was dispositive of its ability to maintain this action and to

which it  had been alerted within days of filing this lawsuit.[25]

---

[23]  Examples of this are found in: (1) Stelor's opposition to the Motion to Dismiss, (2) Stelor's objections to Silvers' written discovery, and (3) Stelor's response to this Court's August 8, 2005 final order of dismissal. At each turn, Stelor refused to identify its limited liability company members.

[24]  Moreover,  the safe-harbor defense does not apply where the Court, *sua sponte*, elects to award attorney's fees pursuant to Florida Statute § 57.105.  *See DiPaolo v. Moran*, 2003 WL 21961422 (E.D. Pa. June 30, 2003).  To the extent this Court finds that the record supports an award of attorney's fees pursuant to Florida Statute § 57.105 – which we believe it clearly does– it is free to reject the Magistrate's findings and impose such sanctions.

[25]  The Magistrate's finding that Silvers failed to submit competent substantial evidence to allow him to conclude that Stelor's conduct was not willful also is clearly erroneous in light of the voluminous evidence in the record establishing that Esrig: (1) continued to insist under oath that none of Stelor's members were

17

## IV.    THE MAGISTRATE ERRONEOUSLY DETERMINED THAT SILVERS WAS NOT ENTITLED TO RULE 11 SANCTIONS.

The Magistrate erroneously determined that Silvers was not entitled to an order to show cause as to why Rule 11 should not be assessed against Stelor.   In the Eleventh Circuit, the standard for determining whether to impose Rule 11 sanctions is "whether the party's claims are objectively frivolous – in view of the facts or law – and then, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry."   *Footman v. Cheung*, 136 Fed. Appx 144, 146 (11th Cir. 2005). Sanctions may be initiated upon motion by a party, or on the court's own initiative.   *See* Fed.R.Civ.P. 11 (1)(B).

The Magistrate declined to recommend entering an order to show cause because he found that Stelor's action was not frivolous at its inception.   For the reasons previously stated herein, including Silver's argument in favor of sanctions pursuant to Florida Statute § 57.105 of these Objections, *supra*, this Court should reject the Magistrate's Report on the Rule 11 issue.

## V.    THE MAGISTRATE ABUSED HIS DISCRETION IN REFUSING TO AWARD COSTS PURSUANT FEDERAL RULE PROCEDURE 54(d).

This Court should decline to adopt the Magistrate's Report with regard to Silvers' entitlement to costs pursuant to Federal Rule Procedure 54 (d).  Rule 54 (d) allows the district court, in its discretion, to award costs to the prevailing party, "unless an express provision regarding costs is made by federal statute or court rule."   In this case, the award of costs is governed by 28 U.S.C. § 1919, which provides: "   Whenever any action or suit is dismissed in any district court . . . for

---

residents of Florida; (2) thwarted Silver's efforts to discover the identity of its members; (3) acknowledged that it failed to adequately investigate the residency of its members after being repeatedly placed on notice by Silvers that no diversity jurisdiction existed; and (4) lied about other facts unrelated to the jurisdictional issue.

want of jurisdiction, such court may order the payment of just costs."

The Magistrate summarily denied Silvers motion for costs under 28 U.S.C. § 1919, stating simply that Silvers had "fail[ed] to explain why such costs are 'just' under the facts and circumstances of this case." *See* Report at 34. The Magistrate's finding is not supported by the record. Silvers' motion and the pleadings filed in conjunction with it plainly demonstrate that Stelor recklessly filed its suit, and that it knew or should have known at the time it filed it that the court lacked jurisdiction. As Silvers has repeatedly asserted throughout this case, this is not a situation where the plaintiff made an honest mistake about diversity. Rather, it is a case where the plaintiff continued to engage in a heated – and *costly* – fight, despite repeated motions, pleadings, and oral argument insisting that the Court had no jurisdiction and that Stelor misrepresented its citizenship. There is no reason why Silvers should be made to bear the burden of this cost, particularly where the Settlement Agreement specifically provided for recovery of costs by the prevailing party. Had Stelor simply produced the names and resident states of each of its members, virtually all of the costs incurred by Silvers in this case could have been avoided. Instead, Stelor forced Silvers to incur thousands of dollars in needless costs. Under the circumstances, an award of costs is more than "just."

## VI.    RELIEF REQUESTED

For all the foregoing reasons, this Court should:

        A.     reject in its entirety the Magistrate's Report;

        B.     grant Silvers' Bill of Costs and award such appropriate costs;

        C.     (1) grant Silvers' Verified Motion for Attorney's Fees and Expenses, and
                      Rule 11 Sanctions, (2) enter an appropriate award of fees, expenses

against Stelor, and (3) enter an Order to Show Cause why Rule 11

sanctions should not be assessed against Stelor;

D.      award Silvers attorney's fees for litigating his entitlement to fees since the

filing of his November 2, 2005 Verified Motion for Attorney's Fees and

Expenses; and

E.      allow Silvers leave to file a supplemental affidavit for attorney's fees

incurred  since the date of filing his November 2, 2005 motion.

Respectfully Submitted,

Dimond Kaplan & Rothstein, P.A.          Kozyak Tropin & Throckmorton, P.A.
Co-counsel for Defendant                 Co-counsel for Defendant
525 S. Flagler Drive, Suite 200          2525 Ponce de Leon Blvd., 9th Floor
West Palm Beach, Florida 33401           Coral Gables, Florida 33134
Telephone: 561-671-1920                  Telephone:     (305) 372-1800
Facsimile: 561-671-1951                  Facsimile:     (305) 372-3508
Adam T. Rabin, Fla. Bar No. 985635       Kenneth R. Hartmann, Fla. Bar No. 664286
                                         Gail A. McQuilkin, Fla. Bar No. 969338

                                         The Law Office of
                                         David H. Pollack, LLC
                                         Co-counsel for Defendant
                                         540 Brickell Key Drive, Suite C-1
                                         Tel. No.: (305) 372-5900
                                         Fax. No.: (305) 372-5904


                                         BY: s/ David H. Pollack
-                                                DAVID H. POLLACK
                                                 Fla. Bar No.  0955840

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed and e-mailed this __10th__ day of August, 2006 to: Kevin C. Kaplan, Esq., Burlington, Weil, Schwiep, Kaplan & Blonsky, P.A., 2699 S. Bayshore Drive, Miami, FL   33133.

LAW OFFICE OF
DAVID H. POLLACK, LLC
540 Brickell Key Drive, Suite C-1
Miami, FL   33131

BY:  s/ David H. Pollack
        David H. Pollack, Esq.
        Fla. Bar No.  0955840